THE HOMAMPOUR LAW FIRM, PLC
ARASH HOMAMPOUR (State Bar No. 165407)
arash@homampour.com
COREY ARZOUMANIAN (State Bar No. 278035)
corey@homampour.com
15303 Ventura Boulevard, Suite 1000
Sherman Oaks, California 91403
Phone:      (323) 658-8077 | Fax:      (323) 658-8477

Attorneys for Plaintiffs KENNETH AARON SHINEDLING and ADDISON LEILANI SHINEDLING, ALEXIA CELESTE SHINEDLING, and AVA AREN SHINEDLING by and through their guardian ad litem, KENNETH AARON SHINEDLING

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH AARON SHINEDLING and ADDISON LEILANI SHINEDLING, ALEXIA CELESTE SHINEDLING, and AVA AREN SHINEDLING by and through their guardian ad litem, KENNETH AARON SHINEDLING,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>SUNBEAM PRODUCTS, INC., a Delaware Corporation; COUNTY OF SAN BERNARDINO; PHELAN PINON HILLS COMMUNITY SERVICES DISTRICT; and DOES 1 through 90, inclusive,<br><br>　　　　Defendants. | **CASE NO: EDCV 12-438 CJC (SPx)**<br><br>**JOINT STIPULATION ON PLAINTIFFS' MOTION TO COMPEL FURTHER DISCOVERY RESPONSES FROM DEFENDANT SUNBEAM**<br><br>Motion Date:　October 15, 2013<br>Time:　　　　10:00 a.m.<br>Courtroom:　3 or 4 - 3rd Floor<br><br>Non-expert discovery<br> cutoff:　　　October 1, 2013<br>Pretrial Motion<br> cutoff:　　　February 3, 2014<br>Pretrial Conf.:　February 10, 2014<br>Trial:　　　　February 24, 2014<br><br>*Complaint Filed December 15, 2011<br>Removed March 27, 2012<br>Assigned to Judge Cormac J. Carney<br>Referred to Magistrate Judge Pym* |

TO THE HONORABLE JUDGE SHERI PYM, UNITED STATES MAGISTRATE

JUDGE:

Pursuant to Local Rules 7-3 and 37-1 and Fed. R. Civ. P. 26, 34, 37, Plaintiffs

and Defendant Sunbeam Products, Inc., hereby submit the following Joint Stipulation

regarding Plaintiffs' Motion to Compel Further Responses to Plaintiff Kenneth Aaron

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

1  Shinedling and Addison Leilani Shinedling's First Set of Special Interrogatories and
2  Plaintiff Kenneth Aaron Shinedling's First Set of Requests for Production of
3  Documents from Defendant Sunbeam Products, Inc.

4       Specifically, Plaintiffs request an Order compelling Defendant to provide
5  further discovery responses to the following:

6       Plaintiff Kenneth Aaron Shinedling's Special Interrogatory Nos. 3, 5, 7, 8 13,
7  14, 15, and 21;

8       Plaintiff Allison Leilani Shinedling's Special Interrogatory Nos. 5, 9, 12, and
9  14; and

10      Kenneth Aaron Shinedling's Production of Documents Nos. 16, 28, 30, 31, 32,
11  33, 39, 40, and 41.

12      This Motion is supported by the parties' joint stipulation and Declaration of
13  Arash Homampour, Elizabeth McNulty, and Richard Prins, filed herewith.

14      This motion is made following the conference of counsel pursuant to Local
15  Rule 7-3 which took place on July 19, 2013.

16

17  Dated:        September 11, 2013        THE HOMAMPOUR LAW FIRM
18                                          A Professional Law Corporation
19                                  By:    _____
20                                          Arash Homampour
21                                          Attorneys for Plaintiffs

22  DATED:  September __, 2013            Hewitt Wolensky McNulty & Hickson
23
                                    By:    _____/s/ Elizabeth V. McNulty_____.
24                                          Elizabeth V. McNulty
25                                          Anne Marie Ellis
26                                          Attorneys for Defendant, SUNBEAM
                                            PRODUCTS INC.
27
28

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

# TABLE OF CONTENTS

**I. Introduction** ................................................................................................ **4**

  A. Plaintiffs' Version of Relevant Facts ................................................... 4

  B. Defendant's Introduction .................................................................... 5

  C. Defendant's Version of Relevant Facts ............................................... 5

**II. The Parties' Legal Contention** ...................................................... **9**

  A. Plaintiffs' Analysis of the Legal Standard .......................................... 9

  B. Defendant's Analysis of the Legal Standard ..................................... 10

  C. Analysis of Disputed Responses ........................................................ 21

**III. Conclusion** ........................................................................................... **178**

  A. Plaintiffs' Conclusion ...................................................................... 178

  B. Defendant's Conclusion .................................................................. 178

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

# I. INTRODUCTION

## A. Plaintiffs' Version of Relevant Facts

This is a products liability and wrongful death lawsuit arising from an allegedly defective heater manufactured and distributed by Defendant Sunbeam Products, Inc. Plaintiffs allege that on January 5, 2011, the subject heater started a fire that resulted in the death of Amy Shinedling. Plaintiffs are Amy's husband, Kenneth, and her children Addison, Alexia and Ava, who survived the fire. Plaintiffs allege that the subject home heater is defective because it overheated and started the fire. It failed to have a properly installed sensor that would have turned the heater off and/or given warning to users. While the specific model heater is a HQH307 Tower Quartz heater, the defect is not unique to this model but is one that exists in home heaters in general. In other words, instances where Defendant's other home heaters overheated or started a fire is relevant to the generic defect in all home heaters. Devices, methods or warnings contained in Defendant's home heaters may be relevant to show the subject heater was defective or could have been designed to prevent the subject fire and incident. Homampour Decl. ¶2.

On April 2, 2013, Plaintiff Kenneth Aaron Shinedling and Addison Leilani Shinedling each served a set of Special Interrogatories to Defendant Sunbeam Products, Inc. Homampour Decl. ¶3 (Exs. A and B). Kenneth Aaron Shinedling also sent Defendant Sunbeam a set of Production Requests. Homampour Decl. ¶4 (Ex. C). On June 7, 2013, Defendant Sunbeam served its responses. Homampour Decl. ¶5 (Exs. D, E, and F).

Finding Defendant's responses improper and/or inadequate, Plaintiffs sent Defendant a detailed meet and confer letter on June 11, 2013 outlining the deficiencies in the responses. Homampour Decl. ¶6 (Ex. G). On July 19, 2013, the parties met and conferred on the defective responses and Defendant agreed that it would provide further responses. Homampour Decl. ¶7 (Ex. H) On August 8, 2013, Defendant provided Plaintiffs with further responses that were insufficient and

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

1  remained evasive. <u>Homampour Decl</u>. ¶8 (Exs. I, J, and K). Additionally, Defendant
2  failed to reproduce documents as requested in a manner that does not obscure the
3  contents in violation of the Stipulated Protective Order (Ex. L, Docket 45 p. 2:27-28
4  and p. 3:20-21) which states "The stamp shall be affixed in such a manner as to not
5  obliterate or obscure any written matter." <u>Homampour Decl</u>. ¶9.

6  **B.  Defendant's Introduction**

7  Plaintiffs' motion is both procedurally and factually flawed.  There are three
8  bases for denial of the motion solely on procedural grounds, as set forth herein:

9  <u>First</u>, pursuant to the current Scheduling Order [Doc. 32], October 1, 2013 is
10  the day by which "all discovery, including discovery motions shall be completed.
11  Discovery motions must be filed and heard prior to this date."  Due to their own lack
12  of diligence, and in complete contravention of the Scheduling Order, Plaintiffs set
13  this Motion for hearing on October 15, 2013--15 days after the discovery cutoff.
14  Motions to compel filed after the close of discovery generally are deemed untimely.
15  *See, e.g., Watts v. Allstate Indem. Co.*, 2:08-CV-01877 LKK, 2012 WL 5289314
16  (E.D. Cal. Oct. 23, 2012);

17  <u>Second</u>, the motion was filed prior to any motion to modify the scheduling
18  order[1], which alone justifies denial of the motion.  When granting a motion to compel
19  discovery would require amendment to the scheduling order, a parties' failure to seek
20  modification of the scheduling order is a sufficient reason to deny the motion.  *See*
21  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992)(noting a Court
22  could properly deny relief that would require amendment to the scheduling order
23  solely because a party failed to request modification of the scheduling order.)

24  <u>Third</u>, as set forth below, Plaintiffs failed to properly meet and confer pursuant
25  to Local Rule 37-1.  See *So v. Land Base, LLC*, CV0803336DDPAGRX, 2009 WL

26  
27  [1] Plaintiffs filed an "Ex Parte Application to Continue the Trial Date and all Related
28  Dates" on September 17, 2013.

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

2407954, at *4 (C.D. Cal. Aug. 4, 2009)(Pregerson, D.J.) (denying motion where there was no evidence that moving party attempted to meet and confer prior to filing).

Fourth, Plaintiffs' motion is devoid of any case law to support their overbroad and unduly burdensome request for information concerning ALL of Sunbeam's home heaters.  This is nothing more than a fishing expedition without any reasonable basis. In light of Sunbeam's disagreement as to the scope of Plaintiffs' discovery requests, it is unwilling to expand the scope beyond the subject heater and those heaters that are similar in design.

Since Plaintiffs' never properly met and conferred with Sunbeam regarding the watermark and the Chinese translations, Sunbeam did not have an opportunity to tell Plaintiffs how it proposed to resolve the issues.  With respect to the allegedly intrusive watermark, Sunbeam offered and as of the filing of the joint stipulation has provided, lightened versions of the watermarked documents to plaintiff, so the issue is moot. With respect to the translation of documents from Chinese to English, Sunbeam produced the requested documents pursuant to Fed. R. Civ. P. 34 as they are kept in the normal course of business.  Furthermore, case law is clear that the requesting party must bear the costs of translating documents written in a foreign language. *In re Puerto Rico Elec. Power Auth.*, 687 F.2d 501, 509 (1st Cir. 1982).

For these reasons, Plaintiffs' motion should be denied in its entirety.

**C.  Defendant's Version of Relevant Facts**

This is a wrongful death products liability claim arising out of a home fire allegedly caused by a heater manufactured by Defendant Sunbeam. Plaintiffs are the husband and three minor children of decedent Amy Shinedling (then age 35) who seek damages for the loss of her love, companionship, care, affection, comfort, support and society of their mother/wife. Plaintiffs also have independent physical injury claims for injuries suffered in the fire, and bystander claims for emotional distress.  Defendant denies that the heater was defective or unsafe or that the heater was a cause of the incident. In its Answer, Defendant has raised several affirmative

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 91403
PHONE (323) 658-8O77 | FAX (323) 658-8477

1    defenses including comparative fault pursuant to Cal. Civ. Code § 1431 et seq. (West)

2        This case was filed in state court on December 15, 2011 and removed to

3    federal court on March, 27, 2012.  See concurrently filed Declaration of Elizabeth V.

4    McNulty in support of Sunbeam's Position to Plaintiffs' Motion to Compel Further

5    Discovery Response ¶4 (hereinafter "McNulty Decl"); [Doc. 1]. On June 14, 2012,

6    the parties submitted the Fed. R. Civ. P. 26(f) Joint Report and on June 21, 2012,

7    Plaintiffs submitted their initial disclosures. (McNulty Decl ¶5) [Doc. 20]  On July

8    13, 2012, the Court issued the first Scheduling Order which provided in pertinent

9    part, "All discovery, including discovery motions shall be completed by May 3, 2013.

10   Discovery motions must be filed and heard prior to this date." (McNulty Decl ¶6)

11   [Doc. 25]  On February 19, 2013, the parties stipulated to continue the trial date and

12   all related dates, and the court continued the non expert discovery completion date to

13   July 3, 2013. (McNulty Decl ¶7) [Doc. 30].  On May 23, 2012, the parties stipulated

14   to continue the trial date and all related dates, and the court continued the non expert

15   discovery completion date to July 3, 2013. (McNulty Decl ¶8) [Doc. 32].

16       On June 7, 2013, Sunbeam responded to Kenneth and Addison Shinedling's

17   interrogatories and requests for production served April 2, 2013.  (McNulty Decl. ¶9)

18   In conjunction with Sunbeam's initial responses, Sunbeam produced "Confidential"

19   documents in electronic format, bates numbered SPI00263-SPI003194 and "Non

20   confidential" documents, bates numbered SPI000001-SPI000262.  (McNulty Decl.

21   ¶9)

22       Plaintiffs' counsel wrote a meet and confer letter concerning these responses,

23   and requested a Local Rule 37-1 conference on June 11, 2013. (McNulty Decl. ¶10)

24   After receiving the letter, on June 14, 2013, Sunbeam's counsel emailed Plaintiffs'

25   counsel suggesting a meet and confer conference on June 21, 2013 pursuant to Local

26   Rule 37-1. (McNulty Decl. ¶11; Ex B) On June 28, 2013, Sunbeam's counsel

27   arranged for a telephonic meet and confer.  (McNulty Decl. ¶12; Ex B)  That same

28   date, Plaintiffs' counsel responded that he was unsure if he would be able to confer

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

1   on that date because he had jury duty. (McNulty Decl. ¶13; Ex B)  On July 1, 2013,

2   Plaintiffs' counsel stated that he would be available for the conference, but

3   Sunbeam's counsel was unavailable due to the Fourth of July holiday.  (McNulty

4   Decl. ¶14; Ex B)  Sunbeam's counsel then proposed July 9, 2013, but there was a

5   conflict with that date, due to the hearing on Plaintiffs' Motion to Quash. (McNulty

6   Decl. ¶15; Ex B)  On July 15, 2013, Plaintiffs' counsel suggested July 18 or July 19,

7   2013.  (McNulty Decl. ¶16; Ex B) The meet and confer call ultimately occurred on

8   July 19, 2013. (McNulty Decl. ¶17; Ex C)  On August 8, 2013, Sunbeam served

9   amended responses to Kenneth and Addison Shinedling's interrogatories and requests

10   for production. (McNulty Decl. ¶18)    Following the meet and confer, Sunbeam

11   served amended discovery responses on August 8, 2013. (McNulty Decl. ¶18)  It was

12   not until September 9, 2013 that Plaintiffs sent a further meet and confer letter

13   addressing new issues.

14          Plaintiffs then waited until September 9, 2013 to further meet and confer

15   regarding the amended responses, and also included additional issues that were not

16   raised in the July 19, 2013 meet and confer, including the translation of documents

17   into Chinese and the watermark issue.   (McNulty Decl ¶19; Ex D) Sunbeam

18   responded to this letter on September 10, 2013, advising Plaintiffs that they were in

19   violation of Local Rule 37-1, and that Sunbeam would be available on September 17,

20   2013 for the meet and confer conference. (McNulty Decl ¶20; Ex E)  Plaintiffs sent

21   Sunbeam a letter dated September 11, 2013 indicating that they could not read

22   documents bates numbered 1-3194.  (McNulty Decl ¶21; Ex F)  Plaintiffs proceeded

23   with the Joint Stipulation on September 13, 2013, without even attempting to meet

24   and confer with Sunbeam. (McNulty Decl ¶22)  On September 13, 2013, Sunbeam

25   engaged in a telephonic meet and confer with Plaintiffs and agreed to provide bates

26   numbers in response to Plaintiffs' requests, and further informed Plaintiffs that it

27   would be available for a meet and confer conference on September 17, 2013.

28   (McNulty Decl ¶23; Ex G)  On September 17, 2013, Sunbeam notified Plaintiffs that

1  it would produce electronic documents, bates numbered SPI000001-0003194 with a

2  lightened watermark no later than September 20, 2013. (McNulty Decl ¶24; Ex H).

3  **II.  THE PARTIES' LEGAL CONTENTIONS**

4      **A.      Plaintiffs' Analysis of the Legal Standard**

5          Fed. R. Civ. P. 26(b) provides that parties may obtain discovery regarding any

6  matter that is not privileged and is relevant to the claim or defense of any party

7  involved in the pending action. The information sought need not be admissible at trial

8  as long as it appears reasonably calculated to lead to the discovery of admissible

9  evidence. *Id*. A "relevant matter" under Fed. R. Civ. P. 26(b)(1) is any matter that

10  "bears on, or that reasonably could lead to other matters that could bear on, any issue

11  that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351,

12  98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978). Relevancy should be "construed 'liberally

13  and with common sense' and discovery should be allowed unless the information

14  sought has no conceivable bearing on the case." *Soto v. City of Concord*, 162 F.R.D.

15  603, 610 (N.D. Cal. 1995)(*quoting Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D.

16  Cal. 1992)). And under California law, the standard is even broader because parties

17  have the statutory right to discovery any non-privileged matter that is "relevant to the

18  subject matter" of the action without leave of court.  See, CCP § 2017.010.

19          Fed. R. Civ. P. 37(a)(l) of the Federal Rules of Civil Procedure, further

20  provides that "[o]n notice to other parties and all affected persons, a party may move

21  for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(4), states that

22  "an evasive or incomplete disclosure, answer, or response must be treated as a failure

23  to disclose, answer, or respond."  Here, Plaintiffs contend that Defendant Sunbeam's

24  responses to Plaintiffs' interrogatory requests are evasive, incomplete and tantamount

25  to a failure to respond for the reasons set forth herein.

26          After Defendant served their supplemental responses, it became clear that

27  Defendant hasn't complied fully with their discovery obligations by referring

28  Plaintiffs to CHINESE documents (covered by a marking which obscures the

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

1   contents in violation of the Stipulated Protective) in response to Special

2   Interrogatories. <u>Homampour Decl</u>. ¶10.

3        Defendant's expected reliance on Fed. R. Civ. P. 33(d) would be improper.

4   First, Defendant did not object on the grounds of Fed. R. Civ. P. 33(d) nor did it

5   reference it in its original response – thereby waiving the right to rely on it. Fed. R.

6   Civ. P. 33(b)(4)("The grounds for objecting to an interrogatory must be stated with

7   specificity. Any ground not stated in a timely objection is waived unless the court, for

8   good cause, excuses the failure").

9        Second, Fed. R. Civ. P. 33(d) does not apply. It states:

10

11            If the answer to an interrogatory may be determined by
12       examining, auditing, compiling, abstracting, or summarizing a
         party's business records (including electronically stored
13       information), and if the burden of deriving or ascertaining the
         answer will be substantially the same for either party, the
14       responding party may answer by: (1) specifying the records that
         must be reviewed in sufficient detail to enable the interrogating
15       party to locate and identify them as readily as the responding party
         could; and (2) giving the interrogating party a reasonable
16       opportunity to examine and audit the records and to make copies,
17       compilations, abstracts, or summaries."

18

19        But, Defendant Sunbeam's production of CHINESE documents in response to

20   Plaintiffs' interrogatories is improper as the answer to the interrogatory cannot be

21   determined by the documents and the burden is not substantially the same as

22   Plaintiffs and their attorneys cannot read highly technical engineering documents in

23   CHINESE. <u>Homampour Decl</u>. ¶11.

24        **B.    Defendant's Analysis of the Legal Standard**

25        **1.    <u>Plaintiffs' Motion is Procedurally and Fatally Flawed</u>**

26        First and foremost, Plaintiffs' motion must fail because it was set for hearing

27   15 days after the October 1, 2013 discovery cutoff date, and Plaintiffs have not filed a

28   motion to amend the scheduling order.  When granting a motion to compel discovery

1    would require amendment to the scheduling order, a parties' failure to seek

2    modification of the scheduling order is a sufficient reason to deny the motion.  *See,*

3    Johnson, 975 F.2d 604(noting a Court could properly deny relief that would require

4    amendment to the scheduling order solely because a party failed to request

5    modification to the scheduling order); *U.S. Dominator, Inc. v. Factory Ship Robert E.*

6    *Resoff*, 768 F.2d 1099, 1104 (9th Cir. 1985)(court may deny as untimely a motion

7    filed after the scheduling order cut-off date where no request to modify the order has

8    been made). This Court cannot and should not grant Plaintiffs any relief without

9    amending the Scheduling Order.[2]

10        Plaintiffs' Motion must also fail since it was filed with a hearing date weeks

11   after the close of non-expert discovery.  Motions to compel filed after the close of

12   discovery generally are deemed untimely.  *See, e.g., Watts*, 2012 WL 5289314.[3]

13   Several courts have determined that compliance with the discovery cutoff requires

14   motions to compel be filed *and heard* sufficiently in advance of the cutoff so that the

15   Court can grant effective relief within the allotted discovery time. S*ee, e.g., Watts,*

16   2012 WL 5289314; *Lacy v. Am. Biltrite, Inc.*, 10CV0830 JM RBB, 2012 WL 909309,

17   at *8 (S.D. Cal. Mar. 16, 2012)("the discovery cutoff includes hearings on motions to

18   compel and discovery ordered as a result of a motion to compel"); *Everett v. Aldi,*

19   *Inc.*, 1:07-CV-275, 2009 WL 940379 (N.D. Ind. Apr. 6, 2009)(Noting that "several

20   district courts have articulated that '[w]here a party has waited to bring a motion to

21   compel until the eve of a discovery deadline, the court is justified in denying the

22   motion'") (internal citations omitted); *Ridge Chrysler Jeep L.L.C. v. Daimler*

---

[2] On September 17, 2013, plaintiffs filed an ex parte application "motion to continue the trial date and all related dates."  As more specifically articulated in Sunbeam's opposition to the ex parte, there is no good cause for the requested relief.

[3] *Clinton v. California Dep't of Corr.*, CIVS05-1600-LKKCMKP, 2009 WL 1308984 (E.D. Cal. May 11, 2009) objections overruled, CIV.S-05-1600LKK CMK, 2009 WL 1617811 (E.D. Cal. June 9, 2009). "Greater uncertainty occurs where the motion is made very close to the discovery cut-off date." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 333 (N.D. Ill. 2005).

28

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
1503 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

*Chrysler Servs. N. Am., L.L.C.*, 03 C 760, 2004 WL 3021842, at *6 (N.D. Ill. Dec. 30, 2004)(denying motion to compel where plaintiff filed it four days before the close of discovery and failed to file a Local Rule 37.1 statement); *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 332 (N.D. Ill. 2005)–42 (denying motion to compel in part where it was filed on the last day of the discovery period); *W. v. W. v. Miller*, 05C4977, 2006 WL 2349988, at *6 (N.D. Ill. Aug. 11, 2006) *aff'd*, 05 C 4977, 2007 WL 541943 (N.D. Ill. Feb. 13, 2007)(denying motion to compel where plaintiff filed it eleven days before the discovery deadline and other factors, such as months of discovery inaction, indicated undue delay).

Plaintiffs also failed to properly meet and confer pursuant to Local Rule 37-1. Courts in the Central District have denied motions to compel for failure to meet and confer pursuant to the Local Rules. *See, e.g., Cavanaugh v. S. California Permanente Med. Grp., Inc.*, 583 F. Supp. 2d 1109, 1139-40 (C.D. Cal. 2008)(Wu, D.J.) (denying motion in part based on moving party's failure to file joint stipulation and meet and confer); *So v. Land Base, LLC*, No. CV 08-03336 DDP (AGRx), So, 2009 WL, at *4(Pregerson, D.J.) (denying motion where there was no evidence that moving party attempted to meet and confer prior to filing). Plaintiffs proceeded with the filing of a motion to compel a mere two days after sending a letter to Sunbeam highlighting perceived deficiencies.  This failure to comply with the Local Rules is grounds for denial of the motion.

**2.    Plaintiffs' Requests for Information Related to "All Heaters" are Grossly Overbroad (Kenneth Shinedling's Interrogatories Nos. 3, 5, 7, 8, 13, 14, 15, Addison Shinedling's Interrogatories Nos. 5, 9, 12, and Kenneth Shinedling's Request for Production Nos. 16, 28, 30, 31, 32, 33, 39, 40, and 41)**

Plaintiffs allege, without any support, that the specific model heater a (HQH307 Tower Quartz heater) is defective because it failed to have a properly installed sensor that would have turned the heater off and/or given a warning to users.

1   Plaintiffs further claim that this is a "generic defect" in all home heaters.  On these

2   specious bases, Plaintiffs seek evidence relating to <u>any single type of home heater</u>

3   made by Sunbeam. The requested discovery is not relevant to the subject matter

4   involved in a pending action if the inquiry is only based on the requesting party's

5   mere suspicion or speculation. *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d

6   1318, 1324 (Fed. Cir. 1990).

7       <u>First</u>, Plaintiffs' requests constitute an impermissible fishing expedition that is

8   not reasonably calculated to lead to the discovery of information relevant to

9   Plaintiffs' claims.  Fed. R. Civ. P. 26(b)(1). In fact, the requests place more burden on

10  Sunbeam than the value of the information warrants.  *Greyhound Corp. v. Superior*

11  *Court In & For Merced Cnty.*, 56 Cal. 2d 355, 384, 364 P.2d 266 (1961). "The

12  district court enjoys broad discretion when resolving discovery disputes, which

13  should be exercised by determining the relevance of discovery requests, assessing

14  oppressiveness, and weighing these factors in deciding whether discovery should be

15  compelled." *Id.* (internal citations and quotation marks omitted).

16      <u>Second</u>, while a party may request documents "in the responding party's

17  possession, custody, or control" pursuant to Fed. R. Civ. P. 26(b)(1), 34(b) requires

18  the requesting party to describe the items to be produced with "reasonable

19  particularity" and specify a reasonable time, place, and manner for the inspection.

20  Fed. R. Civ. P. 34(b)(1-2). A discovery request should be sufficiently definite and

21  limited in scope that it can be said 'to apprise a person of ordinary intelligence what

22  documents are required and [to enable] the court . . . to ascertain whether the

23  requested documents have been produced.'" *Regan-Touhy v. Walgreen Co.*, 526 F.3d

24  641, 649-50 (10th Cir. 2008)(quoting Wright & Miller, 8A Federal Practice and

25  Procedure § 2211, at 415). "'All-encompassing demands' that do not allow a

26  reasonable person to ascertain which documents are required do not meet the

27  particularity standard of Fed. R. Civ. P. 34(b)(1)(A)." *In re Asbestos Products Liab.*

28  *Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009).  The requests for information

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 1 4O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD - SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

related to "all heaters" without limitation as to model or brand, time or scope, are not reasonably particular, and they do not meet the particularity standard.  On this basis alone, the Court should deny Plaintiffs' discovery requests as overbroad.

Third, not only are the requests impermissibly overbroad and burdensome, but evidence of other incidents, accidents or complaints are not admissible to prove a defect unless Plaintiffs can show that the circumstances and details of the other accidents and complaints are "substantially similar" to the facts of the accident in this case.[4]  *See Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991)(citations omitted) ("[a] showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect"); *See also Ault v. Int'l Harvester Co.*, 13 Cal. 3d 113, 121-122, 528 P.2d 1148 (1974); *Elsworth v. Beech Aircraft Corp.*, 37 Cal. 3d 540, 555, 691 P.2d 630 (1984)(holding that evidence of prior accidents is admissible only if they are similar and not too remote).  Substantial similarity must exist in the overall circumstances of the incidents – not merely component parts – that a party wishes to compare to the incident giving rise to the pending matter.  See e.g. *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434 (10th Cir. 1992).

To be "substantially similar", the other accidents, incidents, complaints and lawsuits must not only involve heaters with the same parts, but must also involve similar time, place or circumstance.  *See Brake v. Beech Aircraft Corp.*, 184 Cal. App. 3d 930, 937, 229 Cal. Rptr. 336 (Ct. App. 1986)(evidence of other accidents could not be admitted to show airplane defectively designed because plaintiff failed

_____

[4] While Sunbeam acknowledges that admissibility is not the test, discovery may only ordered if it is possible that information in a particular subject area could be relevant or admissible at the time of trial.  *Maldonado v. Superior Court*, 94 Cal. App. 4th 1390, 1397, 115 Cal. Rptr. 2d 137 (2002).  Surely, there is no possibility that the broad scope of information sought by plaintiffs will be admissible at trial due to the authorities cited herein.

1  to lay foundation of similarity for flight altitude, trim settings, engine power, loading,

2  weather conditions, altitudes, feathering, etc.); *see also Kopfinger v. Grand Cent.*

3  *Pub. Mkt.*, 60 Cal. 2d 852, 860-861, 389 P.2d 529 (1964)(holding the circumstances

4  of proffered accidents to be dissimilar to facts of case and that trial court was well

5  within its discretion in excluding such evidence).   Likewise, Plaintiffs would also

6  have to establish that the other accidents, incidents, complaints and lawsuits they seek

7  to introduce involve a heater with the same equipment and maintenance condition as

8  the heater involved in this accident, and that the other heaters had not been altered or

9  misused.  It is important that Plaintiffs establish the similarity of all of these factors

10  because each of them may have  contributed in some way to the occurrence of <u>this</u>

11  incident.

12      <u>Fourth</u>, evidence of other incidents is not relevant for purposes of notice. Even

13  if notice were an issue in this case, which Sunbeam contends it is not, for a prior

14  accident to be admissible under a "notice" theory, any prior accident must be such as

15  to alert the defendant to the alleged dangerous condition.  *Elsworth*, 37 Cal. 3d at 555

16  (holding that evidence of other accidents is admissible on notice issue because the

17  other accidents were similar enough to the one involved to have alerted defendant to

18  the problem).    Certainly, accidents that happened to a heater that was not

19  substantially similar to the one involved in this accident, and which occurred under

20  circumstances that were substantially different than the incident in this case, do not

21  meet the test and should be excluded for all purposes.

22      <u>Fifth</u>, evidence of any changes in design or information related to later model

23  heaters could be construed as subsequent remedial measures. In the Ninth Circuit,

24  evidence of subsequent remedial measures is <u>not</u> admissible in a products liability

25  action. Fed. R. Evid. 407; *Fasanaro v. Mooney Aircraft Corp.*, 687 F. Supp. 482

26  (N.D. Cal. 1988); see also <u>Ault</u>, 13 Cal. 3d, 118; Cal. Evid. Code § 1151 (West).

27

28

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

### 3. Plaintiffs Have Offered No Evidence That The Information They Seek Encompasses Heater Models Which Are In Any Way Similar To The Quartz Class Of Heaters Or The Subject HQH307

The Plaintiffs in this case have requested information regarding each and every heater ever manufactured by Sunbeam or its predecessor companies. As set forth above, without a showing of product similarity, this information is not discoverable. (*See* <u>Brake</u>, 184 Cal. App. 3d, 937. Plaintiffs have not even attempted to establish any recognizable similarity between the subject HQH307 and any other Sunbeam heater. More recently, Sunbeam has manufactured and sold seven different types of heaters. Specifically, Sunbeam sells: Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters. In 2011, Sunbeam manufactured 4,930,923 heaters, including 167 different models of heaters. In 2012, Sunbeam manufactured 2,892,243 heaters, including 153 different models of heaters. To date, in 2013, Sunbeam manufactured 3,126,103 heaters, including 144 different models of heaters. These totals and models include all classes of heaters. (See Affidavit of Richard J. Prins "Prins Decl." ¶ 6). Each of the different classes of heaters has different designs and varies in their operation and characteristics. Thus, this Court should deny Plaintiffs' discovery requests in its entirety, because the Quartz class of heaters, and the subject HQH307, are unique in Sunbeam's line of heater products and open ended discovery regarding hundreds of different models and millions of different eaters is simply impermissibly overbroad.

### a. The Quartz Heater Class and Subject HQH307 are Unlike Other Sunbeam Heaters

Plaintiffs attempt to argue that they are entitled to information regarding all of Sunbeam's heaters because of a "generic" defect in all Sunbeam heaters. Plaintiffs provide absolutely no evidence or support for this allegation. Sunbeam sells over 100 different model heaters each year which are designed to meet the specific needs of Sunbeam's consumers. (Prins Decl. ¶ 5). The Quartz class heaters, and the subject

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

HQH307, are unlike Sunbeam's other heater classes and have distinct characteristics.

**b.** **The Design of the Quartz Heaters and the Subject HQH307 is Unique**

The subject product is believed to be a Holmes HQH307 Quartz Heater. Quartz Heaters are equipped with a resistive element encased in a quartz tube. (Prins Decl. ¶ 7). This design is exclusive to the Quartz Heater models. (Prins Decl. ¶ 7). Further, the design of current Quartz Heater models differs from the Quartz Heaters manufactured prior to 2010/2011 as they were equipped with a ceramic disc with a push button manual reset thermostat. (Prins Decl. ¶ 8). Whereas, the Quartz Heaters manufactured post 2010/2011 through the present are equipped with a manual rest thermostat and one-shot fuse. (Prins Decl. ¶ 8). No other heater classes utilize these devices. (Prins Decl. ¶ 9).

The construction of Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters are all quite different. For example, Fan Heaters incorporate an octopus heating element (resistive wire coiled into an octagon shape held with mica plates; Ceramic Heaters incorporate a ceramic heating element (ceramic chips glued together to metal heat sinks); Micathermic and Low-Profile Radiant Heaters incorporate a stitched wire element or micathermic plate; PRH/HRH Radiant Heaters incorporate wire elements with ceramic stand-offs; Halogen Heaters incorporate a halogen heating element; Utility Heaters incorporate a coiled element with ceramic standoffs; Oil-Water-filled Heaters incorporate stamped metal welded cavities for oil or water; and Quartz Heaters incorporate a resistive element encased in a quartz tube. (Prins Decl. ¶ 9).

Most significantly, each class of heater utilizes its own overheat technology. (Prins Decl. ¶ 10). The design of the subject HQH307 and Quartz Heaters is unique as they are the only products that incorporate a ceramic disc with push button manual reset thermostat. (Prins Decl. ¶ 10).

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

**c.**    **Underwriters Laboratories Issued A Report Addressing Only the Quartz Heaters Due to the Distinct Characteristics of the Products**

Underwriters Laboratories ("UL") issued its listing report addressing Quartz Heaters Models HQH, BQH or PQH followed by 307, 308, 309, 309A, 319 or 319A and SQH followed by 310 or 315 due to the distinct characteristics of these products. (Prins Decl. ¶ 7). Sunbeam produced all documents, including claim and lawsuit information, related to the above- referenced models contained in the UL listing file, including the listing file itself. (McNulty Decl. ¶25) A UL listing file is created whenever a product manufacturer seeks an evaluation and independent testing by UL that its product meets UL's standards for product safety. The documents within the UL file include: testing documents which details the tests which a product must pass prior to obtaining UL certification; results of testing conducted by both UL and the manufacturer; all correspondence between a manufacturer and UL; product drawings; product manuals; detailed information about product components; reports about UL site visits to manufacturer's facilities and any other document generated that may pertain to a products' make-up or performance with respect to safety. UL groups these documents into files which are separated by product classification ("similar products" are all contained under the same product classification).

Underwriters Laboratories (UL) makes an independent evaluation of heater models and groups of heater to determine whether there are enough similarities between classes of heaters, as well as particular models within a class of heaters, to require independent testing or whether they can be evaluated as a group. (Prins Decl. ¶ 7). By grouping these particular model heaters together, UL independently decided that there were enough similarities in design and operation to be tested and listed together. (Prins Decl. ¶ 7). If other heaters were also similar they would have been listed together. (Prins Decl. ¶ 7). Each class of heaters is individually tested by Underwriters Laboratories and each class of heater has a unique UL listing file as UL

proscribes tests and specifications for each of these classes of heaters.  (Prins Decl. ¶ 11).  As reports issued by UL only address heater models which are similar in design and configuration, the Quartz Heaters are unlike Sunbeam's other heater models and classes.  (Prins Decl. ¶ 11).

In total, Sunbeam has produced to Plaintiffs 3,336 pages of documents which include Quartz heater related documents.   (McNulty Decl ¶26) The documents produced by Sunbeam provide information regarding product design and specifications, quality control procedures, work product instructions, the standards under which the models were made, the tests completed on the models prior to sale by Sunbeam and UL, the components that made up the finished products, as well as the specifics about the components. (McNulty Decl ¶26) Sunbeam has produced all of the documentation in its possession regarding heater models which are similar to the subject HQH307. (McNulty Decl ¶27)  In addition, Sunbeam has produced all documentation in its possession regarding incidents involving these similar products. (McNulty Decl ¶28) For these reasons, this Court should deny Plaintiffs' discovery requests in their entirety.

**4.** **Sunbeam Has Agreed to Produce the Requested Documents with a Lightened Watermark, Plaintiffs' Improper Citation to Fed. R. Civ. P. 33(d), and Plaintiffs Should Bear the Cost of Translating Documents from Chinese *(Kenneth Shinedling's Interrogatories No. 21, Addison Shinedling's Interrogatories No. 14)***

First, Plaintiffs argue that Sunbeam did not reference Fed. R. Civ. P. 33(d) in its responses when it referred to documents in response to Interrogatories Nos. 14 and 21.  In response to Kenneth Shinedling's Interrogatories No. 21, Sunbeam referenced documents bates stamped "SPI000263-SPI001212", and in response to Addison Shinedling's Interrogatories No. 14, Sunbeam referenced documents bates stamped Allstate documents "AS001381-AS001424" (which are equally available to all parties by subpoena) and Sunbeam documents bates stamped "SPI000263-

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

SPI001212". Plaintiffs do not provide any authority for the proposition that Sunbeam was required to recite Fed. R. Civ. P. 33(d) in its response. Rather, the Rule provides that where the information sought may be obtained by examining the responding party's business records, the responding party may answer by specifying the records from which the answer may be obtained, and make them available for inspection. See Fed. R. Civ. P. 33(d); *Daiflon, Inc. v. Allied Chem. Corp.*, 534 F.2d 221, 225 (10th Cir. 1976)[5]. Pursuant to the rule, Sunbeam provided the responsive documents in a manner that permitted the same direct and economical access that is available to the Sunbeam. See *Puerto Rico Aqueduct & Sewer Auth. v. Clow Corp.*, 108 F.R.D. 304, 306 (D.P.R. 1985). Additionally, by bates numbering the records, Sunbeam also adequately "specified the records" from which the answer could be derived. *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 323 (C.D. Cal. 2004). In sum, Sunbeam's identification of documents by Bates number is sufficient pursuant to Fed. R. Civ. P. 33(d).

Second, in response to Addison Shinedling's Interrogatory No. 14, Sunbeam also objected that the interrogatory was overbroad and unduly burdensome pursuant to *IBP, Inc. v. Mercantile Bank of Topeka*, 179 F.R.D. 316, 321 (D. Kan. 1998). In *IBP, Inc.*, 179 F.R.D. 316, as in Plaintiffs' Interrogatory, the request was for "every fact" to support Sunbeam's contentions. In *IBP, Inc.*, 179 F.R.D. 316, the Court held that providing "every fact" could require laborious, time consuming analysis, search and description of incidental, secondary, and perhaps irrelevant and trivial details.

Third, Plaintiffs also argue that the documents produced by Sunbeam were obscured by a watermark. In the three months that Plaintiffs have had possession of these documents, Plaintiffs never addressed this alleged concern until September 11, 2013. (McNulty Decl ¶29) They then proceeded with this Joint Stipulation on

---

[5] See also Adv. Comm. Notes to 1970 Amendment and 2006 Amendments to Fed. R. Civ. P. 33

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

1   September 13, 2013. Thus, Plaintiffs never gave Sunbeam an opportunity to cure the

2   alleged defect. (McNulty Decl ¶22) While Sunbeam contends that the documents are

3   completely legible when viewed electronically, and when printed on a "copier

4   printer", in the spirit of cooperation, Sunbeam offered to re-produce the  documents

5   with a lightened watermark no later than September 20, 2013. (McNulty Decl ¶30)

6   Thus, this issue is moot.

7        Fourth, with respect to the production of documents in Chinese, Plaintiffs

8   should bear the cost of translating the documents.  Plaintiffs have never articulated

9   which documents they believe need to be translated, nor have they proposed a cost

10  sharing approach.  (McNulty Decl ¶29) Instead, it seems that Plaintiffs want Sunbeam

11  to do their work for them.  The requesting party must normally bear the cost of

12  translating documents written in a foreign language.   A production request

13  demanding translation would be unduly burdensome, especially if it comes at a time

14  when the significance of the documents is not known.  *See In re Puerto Rico Elec.*

15  *Power Auth.*, 687 F.2d, 509; *see also In re Fialuridine (FIAU) Products Liab. Litig.*,

16  163 F.R.D. 386, 388 (D.D.C. 1995)

17       Further, "[i]t is generally assumed that each party is to bear the "ordinary

18  burden of financing his own suit." *Id.* citing *Eisen v. Carlisle & Jacquelin*, 417 U.S.

19  156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974).  Without articulating which documents

20  Plaintiffs seek to have translated and without any basis for the translation costs,

21  forcing Sunbeam to incur the cost of translation is unduly burdensome and runs

22  counter to the basic rules of discovery.

23       **C.    Analysis of Disputed Responses**

24       The following are the disputed special interrogatories, the responses and

25  objections raised, the further responses and the reasons why Plaintiffs contend further

26  responses should be compelled and the reasons why Defendant contends further

27  responses should not be compelled.

28

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

**Kenneth Shinedling's Special Interrogatories to Defendant Sunbeam**

**Kenneth Shinedling's Special Interrogatory No. 3:**

Please state all recalls (including both announced and silent recalls) that relate to any of YOUR HOME HEATER(S) including but not limited to SUBJECT HEATER. (The term 'HOME HEATER" refers to any type of home heater made by YOU and includes, but is not limited to, Holmes Quartz, Ceramic, Convection or Radiant Heaters.)

**Defendant's Response:**

Objection. This interrogatory is vague, ambiguous and overly broad in time and scope. Further objecting, this interrogatory seeks information which pertains to other products which are not the same or similar to the subject product and, consequently, will not lead to admissible evidence.

**Defendant's Amended Response:**

Sunbeam incorporates by reference herein its objections set forth above. Without waiving these objections, none of the Holmes Quartz heaters have been recalled.

**Plaintiff's Reasons Why Further Responses Should be Ordered:**

The interrogatory is neither vague nor ambiguous. Nor is the request so broad as to cause Defendant to be unable to determine what information is being requested. Further, the interrogatory request does not limit the heater models to Holmes Quartz heaters. Defendant improperly limits Plaintiffs' discovery requests to only the Holmes Quartz heater, when Plaintiffs are seeking discovery that relates to any of Defendant's home heaters. Again, Plaintiffs allege that the subject home heater is defective because it overheated and started the fire. It failed to have a properly installed sensor that would have turned the heater off and/or given warning to users. While the specific model heater is a HQH307 Tower Quartz heater, the defect is not unique to this model but is one that exists in home heaters in general. In other words, instances where Defendant's other home heaters overheated or started a fire is

1   relevant to the generic defect in all home heaters. Devices, methods or warnings

2   contained in Defendant's home heaters may be relevant to show the subject heater

3   was defective or could have been designed to prevent the subject fire and incident.

4   The Defendant is well aware that the defects within the subject heater are not

5   limited to the Holmes Quartz Heater but exist in other heaters made by Defendant.

6   Further, discovery relating to other heaters is relevant to the issue of notice and

7   ability to remedy the defects. Defendant's improper attempt to limit Plaintiffs'

8   legitimate right to relevant discovery violates Fed. R. Civ. P. 26(b) which provides

9   that parties may obtain discovery regarding any matter that is not privileged and is

10  relevant to the claim or defense of any party involved in the pending action. The

11  information sought need not be admissible at trial as long as it appears reasonably

12  calculated to lead to the discovery of admissible evidence. *Id*. A "relevant matter"

13  under Fed. R. Civ. P. 26(b)(1) is any matter that "bears on, or that reasonably could

14  lead to other matters that could bear on, any issue that is or may be in the case."

15  *Oppenheimer Fund, Inc.*, 437 U.S., 351. Relevancy should be "construed 'liberally

16  and with common sense' and discovery should be allowed unless the information

17  sought has no conceivable bearing on the case." *Soto*, 162 F.R.D., 610(quoting

18  *Miller*, 141 F.R.D., 296).

19  Plaintiff's discovery is aimed at obtaining evidence as to whether Defendant

20  exercised all possible care in the manufacture and sale of its product. *See, e.g., Jones*

21  *v. Boeing Co.*, 163 F.R.D. 15, 16 (D. Kan. 1995)("[a] request for discovery should be

22  considered relevant if there is ***any possibility*** that the information sought may be

23  relevant to the subject matter of this action.  Discovery should ordinarily be allowed

24  under the concept of relevancy ***unless it is clear that the information sought can***

25  ***have no possible bearing upon the subject matter of this action***.") (citations omitted

26  & emphasis added).  The requested information is directly relevant to the issues of

27  product defect (design or manufacture), negligent design/testing, negligent

28  manufacture and notice and should be provided.

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

For the foregoing reasons the Defendant should be ordered to provide a further response and state all recalls (including both announced and silent recalls) that relate to any of Defendant's HOME HEATER(S).

**<u>Defendant's Reasons Why Further Responses Should Not be Ordered:</u>**

Plaintiffs allege, without any support, that the specific model heater a (HQH307 Tower Quartz heater) is defective because it failed to have a properly installed sensor that would have turned the heater off and/or given a warning to users. Plaintiffs further claim that this is a "generic defect" in all home heaters.  On these specious bases, Plaintiffs seek evidence relating to <u>any single type of home heater</u> made by Sunbeam. The requested discovery is not relevant to the subject matter involved in a pending action if the inquiry is only based on the requesting party's mere suspicion or speculation. *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1324 (Fed. Cir. 1990).

<u>First</u>, Plaintiffs' requests constitute an impermissible fishing expedition that is not reasonably calculated to lead to the discovery of information relevant to Plaintiffs' claims.  Fed. R. Civ. P. 26(b)(1). In fact, the requests place more burden on Sunbeam than the value of the information warrants.  *Greyhound Corp. v. Superior Court In & For Merced Cnty.*, 56 Cal. 2d 355, 384, 364 P.2d 266 (1961). "The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." *Id.* (internal citations and quotation marks omitted).

<u>Second</u>, while a party may request documents "in the responding party's possession, custody, or control" pursuant to Fed. R. Civ. P. 26(b)(1), 34(b) requires the requesting party to describe the items to be produced with "reasonable particularity" and specify a reasonable time, place, and manner for the inspection. Fed. R. Civ. P. 34(b)(1-2). A discovery request should be sufficiently definite and limited in scope that it can be said 'to apprise a person of ordinary intelligence what

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

documents are required and [to enable] the court . . . to ascertain whether the requested documents have been produced.'" *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 (10th Cir. 2008)(quoting Wright & Miller, 8A Federal Practice and Procedure § 2211, at 415). "'All-encompassing demands' that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Fed. R. Civ. P. 34(b)(1)(A)." *In re Asbestos Products Liab. Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009).  The requests for information related to "all heaters" without limitation as to model or brand, time or scope, are not reasonably particular, and they do not meet the particularity standard.  On this basis alone, the Court should deny Plaintiffs' discovery requests as overbroad.

Third, not only are the requests impermissibly overbroad and burdensome, but evidence of other incidents, accidents or complaints are not admissible to prove a defect unless Plaintiffs can show that the circumstances and details of the other accidents and complaints are "substantially similar" to the facts of the accident in this case.[6]  *See Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991)(citations omitted) ("[a] showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect"); *See also Ault v. Int'l Harvester Co.*, 13 Cal. 3d 113, 121-122, 528 P.2d 1148 (1974); *Elsworth v. Beech Aircraft Corp.*, 37 Cal. 3d 540, 555, 691 P.2d 630 (1984)(holding that evidence of prior accidents is admissible only if they are similar and not too remote).  Substantial similarity must exist in the overall circumstances of the incidents – not merely component parts – that a party wishes to compare to the incident giving rise to the

---

[6] While Sunbeam acknowledges that admissibility is not the test, discovery may only ordered if it is possible that information in a particular subject area could be relevant or admissible at the time of trial.  *Maldonado v. Superior Court*, 94 Cal. App. 4th 1390, 1397, 115 Cal. Rptr. 2d 137 (2002).  Surely, there is no possibility that the broad scope of information sought by plaintiffs will be admissible at trial due to the authorities cited herein.

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 914O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD - SUITE 1OOO | SHERMAN OAKS, CA 91403
PHONE (323) 658-8O77 | FAX (323) 658-8477

1   pending matter.  See e.g. *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979

2   F.2d 1434 (10th Cir. 1992).

3          To be "substantially similar", the other accidents, incidents, complaints and

4   lawsuits must not only involve heaters with the same parts, but must also involve

5   similar time, place or circumstance.  *See Brake v. Beech Aircraft Corp.*, 184 Cal.

6   App. 3d 930, 937, 229 Cal. Rptr. 336 (Ct. App. 1986)(evidence of other accidents

7   could not be admitted to show airplane defectively designed because plaintiff failed

8   to lay foundation of similarity for flight altitude, trim settings, engine power, loading,

9   weather conditions, altitudes, feathering, etc.); *see also Kopfinger v. Grand Cent.*

10  *Pub. Mkt.*, 60 Cal. 2d 852, 860-861, 389 P.2d 529 (1964)(holding the circumstances

11  of proffered accidents to be dissimilar to facts of case and that trial court was well

12  within its discretion in excluding such evidence).  Likewise, Plaintiffs would also

13  have to establish that the other accidents, incidents, complaints and lawsuits they seek

14  to introduce involve a heater with the same equipment and maintenance condition as

15  the heater involved in this accident, and that the other heaters had not been altered or

16  misused.  It is important that Plaintiffs establish the similarity of all of these factors

17  because each of them may have  contributed in some way to the occurrence of <u>this</u>

18  incident.

19         <u>Fourth</u>, evidence of other incidents is not relevant for purposes of notice. Even

20  if notice were an issue in this case, which Sunbeam contends it is not, for a prior

21  accident to be admissible under a "notice" theory, any prior accident must be such as

22  to alert the defendant to the alleged dangerous condition.  *Elsworth*, 37 Cal. 3d at 555

23  (holding that evidence of other accidents is admissible on notice issue because the

24  other accidents were similar enough to the one involved to have alerted defendant to

25  the problem).   Certainly, accidents that happened to a heater that was not

26  substantially similar to the one involved in this accident, and which occurred under

27  circumstances that were substantially different than the incident in this case, do not

28  meet the test and should be excluded for all purposes.

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 91403
PHONE (323) 658-8O77 | FAX (323) 658-8477

<u>Fifth</u>, evidence of any changes in design or information related to later model heaters could be construed as subsequent remedial measures. In the Ninth Circuit, evidence of subsequent remedial measures is <u>not</u> admissible in a products liability action. Fed. R. Evid. 407; *Fasanaro v. Mooney Aircraft Corp.*, 687 F. Supp. 482 (N.D. Cal. 1988); see also <u>Ault</u>, 13 Cal. 3d, 118; Cal. Evid. Code § 1151 (West).

### **Plaintiffs Have Offered No Evidence That The Information They Seek Encompasses Heater Models Which Are In Any Way Similar To The Quartz Class Of Heaters Or The Subject HQH307**

The Plaintiffs in this case have requested information regarding each and every heater ever manufactured by Sunbeam or its predecessor companies. As set forth above, without a showing of product similarity, this information is not discoverable. **(**See <u>Brake</u>, 184 Cal. App. 3d, 937. Plaintiffs have not even attempted to establish any recognizable similarity between the subject HQH307 and any other Sunbeam heater. More recently, Sunbeam has manufactured and sold seven different types of heaters. Specifically, Sunbeam sells: Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters. In 2011, Sunbeam manufactured 4,930,923 heaters, including 167 different models of heaters. In 2012, Sunbeam manufactured 2,892,243 heaters, including 153 different models of heaters. To date, in 2013, Sunbeam manufactured 3,126,103 heaters, including 144 different models of heaters. These totals and models include all classes of heaters. (See Affidavit of Richard J. Prins "Prins Decl." ¶ 6). Each of the different classes of heaters has different designs and varies in their operation and characteristics. Thus, this Court should deny Plaintiffs' discovery requests in its entirety, because the Quartz class of heaters, and the subject HQH307, are unique in Sunbeam's line of heater products and open ended discovery regarding hundreds of different models and millions of different eaters is simply impermissibly overbroad.

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 I 4O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

a.    **The Quartz Heater Class and Subject HQH307 are Unlike**
      **Other Sunbeam Heaters**

Plaintiffs attempt to argue that they are entitled to information regarding all of Sunbeam's heaters because of a "generic" defect in all Sunbeam heaters.  Plaintiffs provide absolutely no evidence or support for this allegation.  Sunbeam sells over 100 different model heaters each year which are designed to meet the specific needs of Sunbeam's consumers.  (Prins Decl. ¶ 5).   The Quartz class heaters, and the subject HQH307, are unlike Sunbeam's other heater classes and have distinct characteristics.

b.    **The Design of the Quartz Heaters and the Subject HQH307 is**
      **Unique**

The subject product is believed to be a Holmes HQH307 Quartz Heater. Quartz Heaters are equipped with a resistive element encased in a quartz tube.  (Prins Decl. ¶ 7).  This design is exclusive to the Quartz Heater models.  (Prins Decl. ¶ 7). Further, the design of current Quartz Heater models differs from the Quartz Heaters manufactured prior to 2010/2011 as they were equipped with a ceramic disc with a push button manual reset thermostat.  (Prins Decl. ¶ 8).  Whereas, the Quartz Heaters manufactured post 2010/2011 through the present are equipped with a manual rest thermostat and one-shot fuse.  (Prins Decl. ¶ 8).  No other heater classes utilize these devices. (Prins Decl. ¶ 9).

The construction of Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters are all quite different. For example, Fan Heaters incorporate an octopus heating element (resistive wire coiled into an octagon shape held with mica plates; Ceramic Heaters incorporate a ceramic heating element (ceramic chips glued together to metal heat sinks); Micathermic and Low-Profile Radiant Heaters incorporate a stitched wire element or micathermic plate; PRH/HRH Radiant Heaters incorporate wire elements with ceramic stand-offs; Halogen Heaters incorporate a halogen heating element; Utility Heaters incorporate a coiled element with ceramic standoffs; Oil-Water-filled Heaters

1  incorporate stamped metal welded cavities for oil or water; and Quartz Heaters
2  incorporate a resistive element encased in a quartz tube.  (Prins Decl. ¶ 9).

3       Most significantly, each class of heater utilizes its own overheat technology.
4  (Prins Decl. ¶ 10).  The design of the subject HQH307 and Quartz Heaters is unique
5  as they are the only products that incorporate a ceramic disc with push button manual
6  reset thermostat.  (Prins Decl. ¶ 10).

7           c.    <u>**Underwriters Laboratories Issued A Report Addressing Only**</u>
8                 <u>**the Quartz Heaters Due to the Distinct Characteristics of the**</u>
9                 <u>**Products**</u>

10      Underwriters Laboratories ("UL") issued its listing report addressing Quartz
11  Heaters Models HQH, BQH or PQH followed by 307, 308, 309, 309A, 319 or 319A
12  and SQH followed by 310 or 315 due to the distinct characteristics of these products.
13  (Prins Decl. ¶ 7).  Sunbeam produced all documents, including claim and lawsuit
14  information, related to the above- referenced models contained in the UL listing file,
15  including the listing file itself.  (McNulty Decl. ¶25) A UL listing file is created
16  whenever a product manufacturer seeks an evaluation and independent testing by UL
17  that its product meets UL's standards for product safety.  The documents within the
18  UL file include:  testing documents which details the tests which a product must pass
19  prior to obtaining UL certification; results of testing conducted by both UL and the
20  manufacturer; all correspondence between a manufacturer and UL; product drawings;
21  product manuals; detailed information about product components; reports about UL
22  site visits to manufacturer's facilities and any other document generated that may
23  pertain to a products' make-up or performance with respect to safety.  UL groups
24  these documents into files which are separated by product classification ("similar
25  products" are all contained under the same product classification).

26      Underwriters Laboratories (UL) makes an independent evaluation of heater
27  models and groups of heater to determine whether there are enough similarities
28  between classes of heaters, as well as particular models within a class of heaters, to

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

require independent testing or whether they can be evaluated as a group. (Prins Decl. ¶ 7). By grouping these particular model heaters together, UL independently decided that there were enough similarities in design and operation to be tested and listed together. (Prins Decl. ¶ 7). If other heaters were also similar they would have been listed together. (Prins Decl. ¶ 7). Each class of heaters is individually tested by Underwriters Laboratories and each class of heater has a unique UL listing file as UL proscribes tests and specifications for each of these classes of heaters. (Prins Decl. ¶ 11). As reports issued by UL only address heater models which are similar in design and configuration, the Quartz Heaters are unlike Sunbeam's other heater models and classes. (Prins Decl. ¶ 11).

In total, Sunbeam has produced to Plaintiffs 3,336 pages of documents which include Quartz heater related documents. (McNulty Decl ¶26) The documents produced by Sunbeam provide information regarding product design and specifications, quality control procedures, work product instructions, the standards under which the models were made, the tests completed on the models prior to sale by Sunbeam and UL, the components that made up the finished products, as well as the specifics about the components. (McNulty Decl ¶26) Sunbeam has produced all of the documentation in its possession regarding heater models which are similar to the subject HQH307. (McNulty Decl ¶27) In addition, Sunbeam has produced all documentation in its possession regarding incidents involving these similar products. (McNulty Decl ¶28) For these reasons, this Court should deny Plaintiffs' discovery requests in their entirety.

### **Kenneth Shinedling's Special Interrogatory No. 5:**

IDENTIFY each and every PERSON who had reported and/or made a complaint to YOU, and/or who claims (including warranty claims and notice of defect) to have been injured to their person or have suffered damage to their property by a HOME HEATER due to a fire hazard, by stating each PERSON'S full name,

THE HOMAMPOUR LAW FIRM, PLC
1503 VENTURA BOULEVARD - SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

1   home and work address, home work, and cellular telephone number, and email
2   address.

3          **Defendant's Response:**

4          Objection. This interrogatory is vague, ambiguous and overly broad in time
5   and scope. Further objecting, this interrogatory seeks information which pertains to
6   other products which are not the same or similar to the subject product and,
7   consequently, will not lead to admissible evidence. Without waiving these objections,
8   see information contained in the attached correspondence with the Consumer Product
9   Safety Commission (CPSC); investigation continues.

10         **Defendant's Amended Response:**

11         Sunbeam incorporates by reference herein its objections set forth above.
12   Without waiving these objections, see information contained in the previously
13   produced correspondence with the Consumer Product Safety Commission (CPSC)
14   Bates Stamped: SPI001213-SPI2563. The correspondence also includes information
15   regarding heaters similar in design to the HQH307. Further answering, see the
16   attached Complaints Bates Stamped: SPI003292-SPI003326.

17         **Plaintiff's Reasons Why Further Responses Should be Ordered:**

18         For the same reasons noted as to No. 3, Defendant should be ordered to provide
19   a further response to this interrogatory that involves all HOME HEATERS.

20         **Defendant's Reasons Why Further Responses Should Not be Ordered:**

21         Plaintiffs allege, without any support, that the specific model heater a
22   (HQH307 Tower Quartz heater) is defective because it failed to have a properly
23   installed sensor that would have turned the heater off and/or given a warning to users.
24   Plaintiffs further claim that this is a "generic defect" in all home heaters.  On these
25   specious bases, Plaintiffs seek evidence relating to underlined any single type of home heater
26   made by Sunbeam. The requested discovery is not relevant to the subject matter
27   involved in a pending action if the inquiry is only based on the requesting party's
28   mere suspicion or speculation. *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 91403
PHONE (323) 658-8O77 | FAX (323) 658-8477

1318, 1324 (Fed. Cir. 1990).

First, Plaintiffs' requests constitute an impermissible fishing expedition that is not reasonably calculated to lead to the discovery of information relevant to Plaintiffs' claims. Fed. R. Civ. P. 26(b)(1). In fact, the requests place more burden on Sunbeam than the value of the information warrants. *Greyhound Corp. v. Superior Court In & For Merced Cnty.*, 56 Cal. 2d 355, 384, 364 P.2d 266 (1961). "The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." *Id.* (internal citations and quotation marks omitted).

Second, while a party may request documents "in the responding party's possession, custody, or control" pursuant to Fed. R. Civ. P. 26(b)(1), 34(b) requires the requesting party to describe the items to be produced with "reasonable particularity" and specify a reasonable time, place, and manner for the inspection. Fed. R. Civ. P. 34(b)(1-2). A discovery request should be sufficiently definite and limited in scope that it can be said 'to apprise a person of ordinary intelligence what documents are required and [to enable] the court . . . to ascertain whether the requested documents have been produced.'" *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 (10th Cir. 2008)(quoting Wright & Miller, 8A Federal Practice and Procedure § 2211, at 415). "'All-encompassing demands' that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Fed. R. Civ. P. 34(b)(1)(A)." *In re Asbestos Products Liab. Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009). The requests for information related to "all heaters" without limitation as to model or brand, time or scope, are not reasonably particular, and they do not meet the particularity standard. On this basis alone, the Court should deny Plaintiffs' discovery requests as overbroad.

Third, not only are the requests impermissibly overbroad and burdensome, but evidence of other incidents, accidents or complaints are not admissible to prove a

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

defect unless Plaintiffs can show that the circumstances and details of the other accidents and complaints are "substantially similar" to the facts of the accident in this case.[7] *See Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991)(citations omitted) ("[a] showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect"); *See also Ault v. Int'l Harvester Co.*, 13 Cal. 3d 113, 121-122, 528 P.2d 1148 (1974); *Elsworth v. Beech Aircraft Corp.*, 37 Cal. 3d 540, 555, 691 P.2d 630 (1984)(holding that evidence of prior accidents is admissible only if they are similar and not too remote). Substantial similarity must exist in the overall circumstances of the incidents – not merely component parts – that a party wishes to compare to the incident giving rise to the pending matter. See e.g. *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434 (10th Cir. 1992).

To be "substantially similar", the other accidents, incidents, complaints and lawsuits must not only involve heaters with the same parts, but must also involve similar time, place or circumstance. *See Brake v. Beech Aircraft Corp.*, 184 Cal. App. 3d 930, 937, 229 Cal. Rptr. 336 (Ct. App. 1986)(evidence of other accidents could not be admitted to show airplane defectively designed because plaintiff failed to lay foundation of similarity for flight altitude, trim settings, engine power, loading, weather conditions, altitudes, feathering, etc.); *see also Kopfinger v. Grand Cent. Pub. Mkt.*, 60 Cal. 2d 852, 860-861, 389 P.2d 529 (1964)(holding the circumstances of proffered accidents to be dissimilar to facts of case and that trial court was well within its discretion in excluding such evidence). Likewise, Plaintiffs would also

---

[7] While Sunbeam acknowledges that admissibility is not the test, discovery may only ordered if it is possible that information in a particular subject area could be relevant or admissible at the time of trial. *Maldonado v. Superior Court*, 94 Cal. App. 4th 1390, 1397, 115 Cal. Rptr. 2d 137 (2002). Surely, there is no possibility that the broad scope of information sought by plaintiffs will be admissible at trial due to the authorities cited herein.

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
1503 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

1   have to establish that the other accidents, incidents, complaints and lawsuits they seek
2   to introduce involve a heater with the same equipment and maintenance condition as
3   the heater involved in this accident, and that the other heaters had not been altered or
4   misused.  It is important that Plaintiffs establish the similarity of all of these factors
5   because each of them may have  contributed in some way to the occurrence of <u>this</u>
6   incident.

7          <u>Fourth</u>, evidence of other incidents is not relevant for purposes of notice. Even
8   if notice were an issue in this case, which Sunbeam contends it is not, for a prior
9   accident to be admissible under a "notice" theory, any prior accident must be such as
10  to alert the defendant to the alleged dangerous condition.  *Elsworth*, 37 Cal. 3d at 555
11  (holding that evidence of other accidents is admissible on notice issue because the
12  other accidents were similar enough to the one involved to have alerted defendant to
13  the problem).   Certainly, accidents that happened to a heater that was not
14  substantially similar to the one involved in this accident, and which occurred under
15  circumstances that were substantially different than the incident in this case, do not
16  meet the test and should be excluded for all purposes.

17         <u>Fifth</u>, evidence of any changes in design or information related to later model
18  heaters could be construed as subsequent remedial measures. In the Ninth Circuit,
19  evidence of subsequent remedial measures is <u>not</u> admissible in a products liability
20  action. Fed. R. Evid. 407; *Fasanaro v. Mooney Aircraft Corp.*, 687 F. Supp. 482
21  (N.D. Cal. 1988); see also <u>Ault</u>, 13 Cal. 3d, 118; Cal. Evid. Code § 1151 (West).

22  **<u>Plaintiffs Have Offered No Evidence That The Information They Seek</u>**
23  **<u>Encompasses Heater Models Which Are In Any Way Similar To The</u>**
24  **<u>Quartz Class Of Heaters Or The Subject HQH307</u>**

25         The Plaintiffs in this case have requested information regarding each and every
26  heater ever manufactured by Sunbeam or its predecessor companies. As set forth
27  above, without a showing of product similarity, this information is not discoverable.
28  (*See* <u>Brake</u>, 184 Cal. App. 3d, 937.  Plaintiffs have not even attempted to establish

any recognizable similarity between the subject HQH307 and any other Sunbeam heater.  More recently, Sunbeam has manufactured and sold seven different types of heaters.   Specifically, Sunbeam sells:   Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters.  In 2011, Sunbeam manufactured 4,930,923 heaters, including 167 different models of heaters.  In 2012, Sunbeam manufactured 2,892,243 heaters, including 153 different models of heaters.   To date, in 2013, Sunbeam manufactured 3,126,103 heaters, including 144 different models of heaters.  These totals and models include all classes of heaters.  (See Affidavit of Richard J. Prins "Prins Decl." ¶ 6).  Each of the different classes of heaters has different designs and varies in their operation and characteristics.    Thus, this Court should deny Plaintiffs' discovery requests in its entirety, because the Quartz class of heaters, and the subject HQH307, are unique in Sunbeam's line of heater products and open ended discovery regarding hundreds of different models and millions of different eaters is simply impermissibly overbroad.

**a.**    **The Quartz Heater Class and Subject HQH307 are Unlike Other Sunbeam Heaters**

Plaintiffs attempt to argue that they are entitled to information regarding all of Sunbeam's heaters because of a "generic" defect in all Sunbeam heaters.  Plaintiffs provide absolutely no evidence or support for this allegation.  Sunbeam sells over 100 different model heaters each year which are designed to meet the specific needs of Sunbeam's consumers.  (Prins Decl. ¶ 5).   The Quartz class heaters, and the subject HQH307, are unlike Sunbeam's other heater classes and have distinct characteristics.

**b.**    **The Design of the Quartz Heaters and the Subject HQH307 is Unique**

The subject product is believed to be a Holmes HQH307 Quartz Heater. Quartz Heaters are equipped with a resistive element encased in a quartz tube.  (Prins Decl. ¶ 7).  This design is exclusive to the Quartz Heater models.  (Prins Decl. ¶ 7). Further, the design of current Quartz Heater models differs from the Quartz Heaters

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 91403
PHONE (323) 658-8O77 | FAX (323) 658-8477

manufactured prior to 2010/2011 as they were equipped with a ceramic disc with a push button manual reset thermostat. (Prins Decl. ¶ 8). Whereas, the Quartz Heaters manufactured post 2010/2011 through the present are equipped with a manual rest thermostat and one-shot fuse. (Prins Decl. ¶ 8). No other heater classes utilize these devices. (Prins Decl. ¶ 9).

The construction of Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters are all quite different. For example, Fan Heaters incorporate an octopus heating element (resistive wire coiled into an octagon shape held with mica plates; Ceramic Heaters incorporate a ceramic heating element (ceramic chips glued together to metal heat sinks); Micathermic and Low-Profile Radiant Heaters incorporate a stitched wire element or micathermic plate; PRH/HRH Radiant Heaters incorporate wire elements with ceramic stand-offs; Halogen Heaters incorporate a halogen heating element; Utility Heaters incorporate a coiled element with ceramic standoffs; Oil-Water-filled Heaters incorporate stamped metal welded cavities for oil or water; and Quartz Heaters incorporate a resistive element encased in a quartz tube. (Prins Decl. ¶ 9).

Most significantly, each class of heater utilizes its own overheat technology. (Prins Decl. ¶ 10). The design of the subject HQH307 and Quartz Heaters is unique as they are the only products that incorporate a ceramic disc with push button manual reset thermostat. (Prins Decl. ¶ 10).

c.   **Underwriters Laboratories Issued A Report Addressing Only the Quartz Heaters Due to the Distinct Characteristics of the Products**

Underwriters Laboratories ("UL") issued its listing report addressing Quartz Heaters Models HQH, BQH or PQH followed by 307, 308, 309, 309A, 319 or 319A and SQH followed by 310 or 315 due to the distinct characteristics of these products. (Prins Decl. ¶ 7). Sunbeam produced all documents, including claim and lawsuit information, related to the above- referenced models contained in the UL listing file,

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

including the listing file itself.  (McNulty Decl. ¶25) A UL listing file is created whenever a product manufacturer seeks an evaluation and independent testing by UL that its product meets UL's standards for product safety.  The documents within the UL file include:  testing documents which details the tests which a product must pass prior to obtaining UL certification; results of testing conducted by both UL and the manufacturer; all correspondence between a manufacturer and UL; product drawings; product manuals; detailed information about product components; reports about UL site visits to manufacturer's facilities and any other document generated that may pertain to a products' make-up or performance with respect to safety.  UL groups these documents into files which are separated by product classification ("similar products" are all contained under the same product classification).

Underwriters Laboratories (UL) makes an independent evaluation of heater models and groups of heater to determine whether there are enough similarities between classes of heaters, as well as particular models within a class of heaters, to require independent testing or whether they can be evaluated as a group.  (Prins Decl. ¶ 7).  By grouping these particular model heaters together, UL independently decided that there were enough similarities in design and operation to be tested and listed together.  (Prins Decl. ¶ 7).  If other heaters were also similar they would have been listed together.  (Prins Decl. ¶ 7).  Each class of heaters is individually tested by Underwriters Laboratories and each class of heater has a unique UL listing file as UL proscribes tests and specifications for each of these classes of heaters.  (Prins Decl. ¶ 11).  As reports issued by UL only address heater models which are similar in design and configuration, the Quartz Heaters are unlike Sunbeam's other heater models and classes.  (Prins Decl. ¶ 11).

In total, Sunbeam has produced to Plaintiffs 3,336 pages of documents which include Quartz heater related documents.  (McNulty Decl ¶26) The documents produced by Sunbeam provide information regarding product design and specifications, quality control procedures, work product instructions, the standards

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

under which the models were made, the tests completed on the models prior to sale by Sunbeam and UL, the components that made up the finished products, as well as the specifics about the components. (McNulty Decl ¶26) Sunbeam has produced all of the documentation in its possession regarding heater models which are similar to the subject HQH307. (McNulty Decl ¶27)  In addition, Sunbeam has produced all documentation in its possession regarding incidents involving these similar products. (McNulty Decl ¶28) For these reasons, this Court should deny Plaintiffs' discovery requests in their entirety.

**Kenneth Shinedling's Special Interrogatory No. 7:**

IDENTIFY any and all lawsuits filed against YOU are liable for wrongful death relating to a HOME HEATER, due to a fire hazard by stating the name, address and telephone number of the Plaintiff; the name, address and telephone number of the Plaintiffs attorneys; the name, address and telephone number of the courthouse where the lawsuit was filed; the case number of the lawsuit; the caption of the lawsuit; the date of the lawsuit; and the year, model and type of the appliance involved.

**Defendant's Response:**

Objection. This interrogatory is vague, ambiguous and overly broad in time and scope. Further objecting, this interrogatory seeks information which pertains to other products which are not the same or similar to the subject product and, consequently, will not lead to admissible evidence. Without waiving these objections, see information contained in the attached correspondence to the Consumer Product Safety Commission (CPSC); investigation continues.

**Defendant's Amended Response:**

Sunbeam incorporates by reference herein its objections set forth above. Without waiving these objections, see information contained in the previously produced correspondence with the Consumer Product Safety Commission (CPSC) Bates Stamped: SPI001213-SPI2563. The correspondence also includes information

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 91403
PHONE (323) 658-8O77 | FAX (323) 658-8477

1  regarding heaters similar in design to the HQH307. Further answering, see the
2  attached Complaints Bates Stamped: SPI003295-SPI003326.

3  **Plaintiff's Reasons Why Further Responses Should be Ordered:**

4  For the same reasons noted as to No. 3, Defendant should be ordered to provide
5  a further response to this interrogatory that involves all HOME HEATERS.

6  **Defendant's Reasons Why Further Responses Should Not be Ordered:**

7  Plaintiffs allege, without any support, that the specific model heater a
8  (HQH307 Tower Quartz heater) is defective because it failed to have a properly
9  installed sensor that would have turned the heater off and/or given a warning to users.
10  Plaintiffs further claim that this is a "generic defect" in all home heaters.  On these
11  specious bases, Plaintiffs seek evidence relating to <u>any single type of home heater</u>
12  made by Sunbeam. The requested discovery is not relevant to the subject matter
13  involved in a pending action if the inquiry is only based on the requesting party's
14  mere suspicion or speculation. *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d
15  1318, 1324 (Fed. Cir. 1990).

16  <u>First</u>, Plaintiffs' requests constitute an impermissible fishing expedition that is
17  not reasonably calculated to lead to the discovery of information relevant to
18  Plaintiffs' claims.  Fed. R. Civ. P. 26(b)(1). In fact, the requests place more burden on
19  Sunbeam than the value of the information warrants.  *Greyhound Corp. v. Superior*
20  *Court In & For Merced Cnty.*, 56 Cal. 2d 355, 384, 364 P.2d 266 (1961). "The
21  district court enjoys broad discretion when resolving discovery disputes, which
22  should be exercised by determining the relevance of discovery requests, assessing
23  oppressiveness, and weighing these factors in deciding whether discovery should be
24  compelled." *Id.* (internal citations and quotation marks omitted).

25  <u>Second</u>, while a party may request documents "in the responding party's
26  possession, custody, or control" pursuant to Fed. R. Civ. P. 26(b)(1), 34(b) requires
27  the requesting party to describe the items to be produced with "reasonable
28  particularity" and specify a reasonable time, place, and manner for the inspection.

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

Fed. R. Civ. P. 34(b)(1-2). A discovery request should be sufficiently definite and limited in scope that it can be said 'to apprise a person of ordinary intelligence what documents are required and [to enable] the court . . . to ascertain whether the requested documents have been produced.'" *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 (10th Cir. 2008)(quoting Wright & Miller, 8A Federal Practice and Procedure § 2211, at 415). "'All-encompassing demands' that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Fed. R. Civ. P. 34(b)(1)(A)." *In re Asbestos Products Liab. Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009). The requests for information related to "all heaters" without limitation as to model or brand, time or scope, are not reasonably particular, and they do not meet the particularity standard. On this basis alone, the Court should deny Plaintiffs' discovery requests as overbroad.

Third, not only are the requests impermissibly overbroad and burdensome, but evidence of other incidents, accidents or complaints are not admissible to prove a defect unless Plaintiffs can show that the circumstances and details of the other accidents and complaints are "substantially similar" to the facts of the accident in this case.[8] *See Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991)(citations omitted) ("[a] showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect"); *See also Ault v. Int'l Harvester Co.*, 13 Cal. 3d 113, 121-122, 528 P.2d 1148 (1974); *Elsworth v. Beech Aircraft Corp.*, 37 Cal. 3d 540, 555, 691 P.2d 630 (1984)(holding that evidence of prior accidents is admissible only if they are similar and not too remote). Substantial

---

[8] While Sunbeam acknowledges that admissibility is not the test, discovery may only ordered if it is possible that information in a particular subject area could be relevant or admissible at the time of trial. *Maldonado v. Superior Court*, 94 Cal. App. 4th 1390, 1397, 115 Cal. Rptr. 2d 137 (2002). Surely, there is no possibility that the broad scope of information sought by plaintiffs will be admissible at trial due to the authorities cited herein.

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD - SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

similarity must exist in the overall circumstances of the incidents – not merely component parts – that a party wishes to compare to the incident giving rise to the pending matter.  See e.g. *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434 (10th Cir. 1992).

To be "substantially similar", the other accidents, incidents, complaints and lawsuits must not only involve heaters with the same parts, but must also involve similar time, place or circumstance.  *See Brake v. Beech Aircraft Corp.*, 184 Cal. App. 3d 930, 937, 229 Cal. Rptr. 336 (Ct. App. 1986)(evidence of other accidents could not be admitted to show airplane defectively designed because plaintiff failed to lay foundation of similarity for flight altitude, trim settings, engine power, loading, weather conditions, altitudes, feathering, etc.); *see also Kopfinger v. Grand Cent. Pub. Mkt.*, 60 Cal. 2d 852, 860-861, 389 P.2d 529 (1964)(holding the circumstances of proffered accidents to be dissimilar to facts of case and that trial court was well within its discretion in excluding such evidence).  Likewise, Plaintiffs would also have to establish that the other accidents, incidents, complaints and lawsuits they seek to introduce involve a heater with the same equipment and maintenance condition as the heater involved in this accident, and that the other heaters had not been altered or misused.  It is important that Plaintiffs establish the similarity of all of these factors because each of them may have  contributed in some way to the occurrence of <u>this</u> incident.

<u>Fourth</u>, evidence of other incidents is not relevant for purposes of notice. Even if notice were an issue in this case, which Sunbeam contends it is not, for a prior accident to be admissible under a "notice" theory, any prior accident must be such as to alert the defendant to the alleged dangerous condition.  *Elsworth*, 37 Cal. 3d at 555 (holding that evidence of other accidents is admissible on notice issue because the other accidents were similar enough to the one involved to have alerted defendant to the problem).  Certainly, accidents that happened to a heater that was not substantially similar to the one involved in this accident, and which occurred under

1   circumstances that were substantially different than the incident in this case, do not

2   meet the test and should be excluded for all purposes.

3       Fifth, evidence of any changes in design or information related to later model

4   heaters could be construed as subsequent remedial measures. In the Ninth Circuit,

5   evidence of subsequent remedial measures is not admissible in a products liability

6   action. Fed. R. Evid. 407; *Fasanaro v. Mooney Aircraft Corp.*, 687 F. Supp. 482

7   (N.D. Cal. 1988); see also Ault, 13 Cal. 3d, 118; Cal. Evid. Code § 1151 (West).

8   **Plaintiffs Have Offered No Evidence That The Information They Seek**

9   **Encompasses Heater Models Which Are In Any Way Similar To The**

10  **Quartz Class Of Heaters Or The Subject HQH307**

11      The Plaintiffs in this case have requested information regarding each and every

12  heater ever manufactured by Sunbeam or its predecessor companies. As set forth

13  above, without a showing of product similarity, this information is not discoverable.

14  (*See* Brake, 184 Cal. App. 3d, 937.  Plaintiffs have not even attempted to establish

15  any recognizable similarity between the subject HQH307 and any other Sunbeam

16  heater.  More recently, Sunbeam has manufactured and sold seven different types of

17  heaters.   Specifically, Sunbeam sells:   Fan Heaters, Ceramic Heaters, Radiant

18  Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz

19  Heaters.  In 2011, Sunbeam manufactured 4,930,923 heaters, including 167 different

20  models of heaters.  In 2012, Sunbeam manufactured 2,892,243 heaters, including 153

21  different models of heaters.   To date, in 2013, Sunbeam manufactured 3,126,103

22  heaters, including 144 different models of heaters.  These totals and models include

23  all classes of heaters.  (See Affidavit of Richard J. Prins "Prins Decl." ¶ 6).  Each of

24  the different classes of heaters has different designs and varies in their operation and

25  characteristics.    Thus, this Court should deny Plaintiffs' discovery requests in its

26  entirety, because the Quartz class of heaters, and the subject HQH307, are unique in

27  Sunbeam's line of heater products and open ended discovery regarding hundreds of

28  different models and millions of different eaters is simply impermissibly overbroad.

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD - SUITE 1OOO | SHERMAN OAKS, CA 91403
PHONE (323) 658-8O77 | FAX (323) 658-8477

### a. The Quartz Heater Class and Subject HQH307 are Unlike Other Sunbeam Heaters

Plaintiffs attempt to argue that they are entitled to information regarding all of Sunbeam's heaters because of a "generic" defect in all Sunbeam heaters. Plaintiffs provide absolutely no evidence or support for this allegation. Sunbeam sells over 100 different model heaters each year which are designed to meet the specific needs of Sunbeam's consumers. (Prins Decl. ¶ 5). The Quartz class heaters, and the subject HQH307, are unlike Sunbeam's other heater classes and have distinct characteristics.

### b. The Design of the Quartz Heaters and the Subject HQH307 is Unique

The subject product is believed to be a Holmes HQH307 Quartz Heater. Quartz Heaters are equipped with a resistive element encased in a quartz tube. (Prins Decl. ¶ 7). This design is exclusive to the Quartz Heater models. (Prins Decl. ¶ 7). Further, the design of current Quartz Heater models differs from the Quartz Heaters manufactured prior to 2010/2011 as they were equipped with a ceramic disc with a push button manual reset thermostat. (Prins Decl. ¶ 8). Whereas, the Quartz Heaters manufactured post 2010/2011 through the present are equipped with a manual rest thermostat and one-shot fuse. (Prins Decl. ¶ 8). No other heater classes utilize these devices. (Prins Decl. ¶ 9).

The construction of Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters are all quite different. For example, Fan Heaters incorporate an octopus heating element (resistive wire coiled into an octagon shape held with mica plates; Ceramic Heaters incorporate a ceramic heating element (ceramic chips glued together to metal heat sinks); Micathermic and Low-Profile Radiant Heaters incorporate a stitched wire element or micathermic plate; PRH/HRH Radiant Heaters incorporate wire elements with ceramic stand-offs; Halogen Heaters incorporate a halogen heating element; Utility Heaters incorporate a coiled element with ceramic standoffs; Oil-Water-filled Heaters

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 I 4O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

1  incorporate stamped metal welded cavities for oil or water; and Quartz Heaters

2  incorporate a resistive element encased in a quartz tube.  (Prins Decl. ¶ 9).

3       Most significantly, each class of heater utilizes its own overheat technology.

4  (Prins Decl. ¶ 10).  The design of the subject HQH307 and Quartz Heaters is unique

5  as they are the only products that incorporate a ceramic disc with push button manual

6  reset thermostat.  (Prins Decl. ¶ 10).

7       **c.    <u>Underwriters Laboratories Issued A Report Addressing Only</u>**

8            **<u>the Quartz Heaters Due to the Distinct Characteristics of the</u>**

9            **<u>Products</u>**

10      Underwriters Laboratories ("UL") issued its listing report addressing Quartz

11  Heaters Models HQH, BQH or PQH followed by 307, 308, 309, 309A, 319 or 319A

12  and SQH followed by 310 or 315 due to the distinct characteristics of these products.

13  (Prins Decl. ¶ 7).  Sunbeam produced all documents, including claim and lawsuit

14  information, related to the above- referenced models contained in the UL listing file,

15  including the listing file itself.  (McNulty Decl. ¶25) A UL listing file is created

16  whenever a product manufacturer seeks an evaluation and independent testing by UL

17  that its product meets UL's standards for product safety.  The documents within the

18  UL file include:  testing documents which details the tests which a product must pass

19  prior to obtaining UL certification; results of testing conducted by both UL and the

20  manufacturer; all correspondence between a manufacturer and UL; product drawings;

21  product manuals; detailed information about product components; reports about UL

22  site visits to manufacturer's facilities and any other document generated that may

23  pertain to a products' make-up or performance with respect to safety.  UL groups

24  these documents into files which are separated by product classification ("similar

25  products" are all contained under the same product classification).

26      Underwriters Laboratories (UL) makes an independent evaluation of heater

27  models and groups of heater to determine whether there are enough similarities

28  between classes of heaters, as well as particular models within a class of heaters, to

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 91403
PHONE (323) 658-8O77 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

require independent testing or whether they can be evaluated as a group.  (Prins Decl. ¶ 7).  By grouping these particular model heaters together, UL independently decided that there were enough similarities in design and operation to be tested and listed together.  (Prins Decl. ¶ 7).  If other heaters were also similar they would have been listed together.  (Prins Decl. ¶ 7).  Each class of heaters is individually tested by Underwriters Laboratories and each class of heater has a unique UL listing file as UL proscribes tests and specifications for each of these classes of heaters.  (Prins Decl. ¶ 11).  As reports issued by UL only address heater models which are similar in design and configuration, the Quartz Heaters are unlike Sunbeam's other heater models and classes.  (Prins Decl. ¶ 11).

In total, Sunbeam has produced to Plaintiffs 3,336 pages of documents which include Quartz heater related documents.   (McNulty Decl ¶26) The documents produced by Sunbeam provide information regarding product design and specifications, quality control procedures, work product instructions, the standards under which the models were made, the tests completed on the models prior to sale by Sunbeam and UL, the components that made up the finished products, as well as the specifics about the components. (McNulty Decl ¶26) Sunbeam has produced all of the documentation in its possession regarding heater models which are similar to the subject HQH307. (McNulty Decl ¶27)  In addition, Sunbeam has produced all documentation in its possession regarding incidents involving these similar products. (McNulty Decl ¶28) For these reasons, this Court should deny Plaintiffs' discovery requests in their entirety.

### Kenneth Shinedling's Special Interrogatory No. 8:

IDENTIFY any and all lawsuits filed against YOU wherein it was alleged that a HOME HEATER failed and caused injury to their person or property due to a fire hazard by stating the name, address and telephone number of the Plaintiff; the name, address and telephone number of the Plaintiffs attorneys; the name, address and

telephone number of the Courthouse where the lawsuit was filed; the case number of the lawsuit; the caption of the lawsuit; the date of the lawsuit; and the year, model, and type of appliance involved.

**Defendant's Response:**

Objection. This interrogatory is vague, ambiguous and overly broad in time and scope. Further objecting, this interrogatory seeks information which pertains to other products which are not the same or similar to the subject product and, consequently, will not lead to admissible evidence. Without waiving these objections, see information contained in the attached correspondence to the Consumer Product Safety Commission (CPSC); investigation continues.

**Defendant's Amended Response:**

Sunbeam incorporates by reference herein its objections set forth above. Without waiving these objections, see information contained in the previously produced correspondence with the Consumer Product Safety Commission (CPSC) Bates Stamped: SPI001213-SPI2563. The correspondence also includes information regarding heaters similar in design to the HQH307. Further answering, see the attached Complaints Bates Stamped: SPI003292-SPI003326.

**Plaintiff's Reasons Why Further Responses Should be Ordered:**

For the same reasons noted as to No. 3, Defendant should be ordered to provide a further response to this interrogatory that involves all HOME HEATERS.

**Defendant's Reasons Why Further Responses Should Not be Ordered:**

Plaintiffs allege, without any support, that the specific model heater a (HQH307 Tower Quartz heater) is defective because it failed to have a properly installed sensor that would have turned the heater off and/or given a warning to users. Plaintiffs further claim that this is a "generic defect" in all home heaters. On these specious bases, Plaintiffs seek evidence relating to <u>any single type of home heater</u> made by Sunbeam. The requested discovery is not relevant to the subject matter involved in a pending action if the inquiry is only based on the requesting party's

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

1   mere suspicion or speculation. *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d

2   1318, 1324 (Fed. Cir. 1990).

3   <u>First</u>, Plaintiffs' requests constitute an impermissible fishing expedition that is

4   not reasonably calculated to lead to the discovery of information relevant to

5   Plaintiffs' claims. Fed. R. Civ. P. 26(b)(1). In fact, the requests place more burden on

6   Sunbeam than the value of the information warrants. *Greyhound Corp. v. Superior*

7   *Court In & For Merced Cnty.*, 56 Cal. 2d 355, 384, 364 P.2d 266 (1961). "The

8   district court enjoys broad discretion when resolving discovery disputes, which

9   should be exercised by determining the relevance of discovery requests, assessing

10  oppressiveness, and weighing these factors in deciding whether discovery should be

11  compelled." *Id.* (internal citations and quotation marks omitted).

12  <u>Second</u>, while a party may request documents "in the responding party's

13  possession, custody, or control" pursuant to Fed. R. Civ. P. 26(b)(1), 34(b) requires

14  the requesting party to describe the items to be produced with "reasonable

15  particularity" and specify a reasonable time, place, and manner for the inspection.

16  Fed. R. Civ. P. 34(b)(1-2). A discovery request should be sufficiently definite and

17  limited in scope that it can be said 'to apprise a person of ordinary intelligence what

18  documents are required and [to enable] the court . . . to ascertain whether the

19  requested documents have been produced.'" *Regan-Touhy v. Walgreen Co.*, 526 F.3d

20  641, 649-50 (10th Cir. 2008)(quoting Wright & Miller, 8A Federal Practice and

21  Procedure § 2211, at 415). "'All-encompassing demands' that do not allow a

22  reasonable person to ascertain which documents are required do not meet the

23  particularity standard of Fed. R. Civ. P. 34(b)(1)(A)." *In re Asbestos Products Liab.*

24  *Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009). The requests for information

25  related to "all heaters" without limitation as to model or brand, time or scope, are not

26  reasonably particular, and they do not meet the particularity standard. On this basis

27  alone, the Court should deny Plaintiffs' discovery requests as overbroad.

28  <u>Third</u>, not only are the requests impermissibly overbroad and burdensome, but

evidence of other incidents, accidents or complaints are not admissible to prove a defect unless Plaintiffs can show that the circumstances and details of the other accidents and complaints are "substantially similar" to the facts of the accident in this case.[9]   *See Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991)(citations omitted) ("[a] showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect"); *See also Ault v. Int'l Harvester Co.*, 13 Cal. 3d 113, 121-122, 528 P.2d 1148 (1974); *Elsworth v. Beech Aircraft Corp.*, 37 Cal. 3d 540, 555, 691 P.2d 630 (1984)(holding that evidence of prior accidents is admissible only if they are similar and not too remote).   Substantial similarity must exist in the overall circumstances of the incidents – not merely component parts – that a party wishes to compare to the incident giving rise to the pending matter.   See e.g. *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434 (10th Cir. 1992).

To be "substantially similar", the other accidents, incidents, complaints and lawsuits must not only involve heaters with the same parts, but must also involve similar time, place or circumstance.   *See Brake v. Beech Aircraft Corp.*, 184 Cal. App. 3d 930, 937, 229 Cal. Rptr. 336 (Ct. App. 1986)(evidence of other accidents could not be admitted to show airplane defectively designed because plaintiff failed to lay foundation of similarity for flight altitude, trim settings, engine power, loading, weather conditions, altitudes, feathering, etc.); *see also Kopfinger v. Grand Cent. Pub. Mkt.*, 60 Cal. 2d 852, 860-861, 389 P.2d 529 (1964)(holding the circumstances of proffered accidents to be dissimilar to facts of case and that trial court was well

---

[9] While Sunbeam acknowledges that admissibility is not the test, discovery may only ordered if it is possible that information in a particular subject area could be relevant or admissible at the time of trial.  *Maldonado v. Superior Court*, 94 Cal. App. 4th 1390, 1397, 115 Cal. Rptr. 2d 137 (2002).   Surely, there is no possibility that the broad scope of information sought by plaintiffs will be admissible at trial due to the authorities cited herein.

THE HOMAMPOUR LAW FIRM, PLC
1503 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

within its discretion in excluding such evidence).  Likewise, Plaintiffs would also have to establish that the other accidents, incidents, complaints and lawsuits they seek to introduce involve a heater with the same equipment and maintenance condition as the heater involved in this accident, and that the other heaters had not been altered or misused.  It is important that Plaintiffs establish the similarity of all of these factors because each of them may have  contributed in some way to the occurrence of <u>this</u> incident.

Fourth, evidence of other incidents is not relevant for purposes of notice. Even if notice were an issue in this case, which Sunbeam contends it is not, for a prior accident to be admissible under a "notice" theory, any prior accident must be such as to alert the defendant to the alleged dangerous condition. *Elsworth*, 37 Cal. 3d at 555 (holding that evidence of other accidents is admissible on notice issue because the other accidents were similar enough to the one involved to have alerted defendant to the problem).   Certainly, accidents that happened to a heater that was not substantially similar to the one involved in this accident, and which occurred under circumstances that were substantially different than the incident in this case, do not meet the test and should be excluded for all purposes.

Fifth, evidence of any changes in design or information related to later model heaters could be construed as subsequent remedial measures. In the Ninth Circuit, evidence of subsequent remedial measures is <u>not</u> admissible in a products liability action. Fed. R. Evid. 407; *Fasanaro v. Mooney Aircraft Corp.*, 687 F. Supp. 482 (N.D. Cal. 1988); see also <u>Ault</u>, 13 Cal. 3d, 118; Cal. Evid. Code § 1151 (West).

**<u>Plaintiffs Have Offered No Evidence That The Information They Seek Encompasses Heater Models Which Are In Any Way Similar To The Quartz Class Of Heaters Or The Subject HQH307</u>**

The Plaintiffs in this case have requested information regarding each and every heater ever manufactured by Sunbeam or its predecessor companies. As set forth above, without a showing of product similarity, this information is not discoverable.

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

1  (*See* Brake, 184 Cal. App. 3d, 937.  Plaintiffs have not even attempted to establish

2  any recognizable similarity between the subject HQH307 and any other Sunbeam

3  heater.  More recently, Sunbeam has manufactured and sold seven different types of

4  heaters.   Specifically, Sunbeam sells:   Fan Heaters, Ceramic Heaters, Radiant

5  Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz

6  Heaters.  In 2011, Sunbeam manufactured 4,930,923 heaters, including 167 different

7  models of heaters.  In 2012, Sunbeam manufactured 2,892,243 heaters, including 153

8  different models of heaters.   To date, in 2013, Sunbeam manufactured 3,126,103

9  heaters, including 144 different models of heaters.  These totals and models include

10 all classes of heaters.  (See Affidavit of Richard J. Prins "Prins Decl." ¶ 6).  Each of

11 the different classes of heaters has different designs and varies in their operation and

12 characteristics.    Thus, this Court should deny Plaintiffs' discovery requests in its

13 entirety, because the Quartz class of heaters, and the subject HQH307, are unique in

14 Sunbeam's line of heater products and open ended discovery regarding hundreds of

15 different models and millions of different eaters is simply impermissibly overbroad.

### a.   The Quartz Heater Class and Subject HQH307 are Unlike Other Sunbeam Heaters

18 Plaintiffs attempt to argue that they are entitled to information regarding all of

19 Sunbeam's heaters because of a "generic" defect in all Sunbeam heaters.  Plaintiffs

20 provide absolutely no evidence or support for this allegation.  Sunbeam sells over 100

21 different model heaters each year which are designed to meet the specific needs of

22 Sunbeam's consumers.  (Prins Decl. ¶ 5).   The Quartz class heaters, and the subject

23 HQH307, are unlike Sunbeam's other heater classes and have distinct characteristics.

### b.   The Design of the Quartz Heaters and the Subject HQH307 is Unique

26 The subject product is believed to be a Holmes HQH307 Quartz Heater.

27 Quartz Heaters are equipped with a resistive element encased in a quartz tube.  (Prins

28 Decl. ¶ 7).  This design is exclusive to the Quartz Heater models.  (Prins Decl. ¶ 7).

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

Further, the design of current Quartz Heater models differs from the Quartz Heaters manufactured prior to 2010/2011 as they were equipped with a ceramic disc with a push button manual reset thermostat. (Prins Decl. ¶ 8). Whereas, the Quartz Heaters manufactured post 2010/2011 through the present are equipped with a manual rest thermostat and one-shot fuse. (Prins Decl. ¶ 8). No other heater classes utilize these devices. (Prins Decl. ¶ 9).

The construction of Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters are all quite different. For example, Fan Heaters incorporate an octopus heating element (resistive wire coiled into an octagon shape held with mica plates; Ceramic Heaters incorporate a ceramic heating element (ceramic chips glued together to metal heat sinks); Micathermic and Low-Profile Radiant Heaters incorporate a stitched wire element or micathermic plate; PRH/HRH Radiant Heaters incorporate wire elements with ceramic stand-offs; Halogen Heaters incorporate a halogen heating element; Utility Heaters incorporate a coiled element with ceramic standoffs; Oil-Water-filled Heaters incorporate stamped metal welded cavities for oil or water; and Quartz Heaters incorporate a resistive element encased in a quartz tube. (Prins Decl. ¶ 9).

Most significantly, each class of heater utilizes its own overheat technology. (Prins Decl. ¶ 10). The design of the subject HQH307 and Quartz Heaters is unique as they are the only products that incorporate a ceramic disc with push button manual reset thermostat. (Prins Decl. ¶ 10).

c. <u>**Underwriters Laboratories Issued A Report Addressing Only the Quartz Heaters Due to the Distinct Characteristics of the Products**</u>

Underwriters Laboratories ("UL") issued its listing report addressing Quartz Heaters Models HQH, BQH or PQH followed by 307, 308, 309, 309A, 319 or 319A and SQH followed by 310 or 315 due to the distinct characteristics of these products. (Prins Decl. ¶ 7). Sunbeam produced all documents, including claim and lawsuit

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

1   information, related to the above- referenced models contained in the UL listing file,

2   including the listing file itself.  (McNulty Decl. ¶25) A UL listing file is created

3   whenever a product manufacturer seeks an evaluation and independent testing by UL

4   that its product meets UL's standards for product safety.  The documents within the

5   UL file include:  testing documents which details the tests which a product must pass

6   prior to obtaining UL certification; results of testing conducted by both UL and the

7   manufacturer; all correspondence between a manufacturer and UL; product drawings;

8   product manuals; detailed information about product components; reports about UL

9   site visits to manufacturer's facilities and any other document generated that may

10  pertain to a products' make-up or performance with respect to safety.  UL groups

11  these documents into files which are separated by product classification ("similar

12  products" are all contained under the same product classification).

13          Underwriters Laboratories (UL) makes an independent evaluation of heater

14  models and groups of heater to determine whether there are enough similarities

15  between classes of heaters, as well as particular models within a class of heaters, to

16  require independent testing or whether they can be evaluated as a group.  (Prins Decl.

17  ¶ 7).  By grouping these particular model heaters together, UL independently decided

18  that there were enough similarities in design and operation to be tested and listed

19  together.  (Prins Decl. ¶ 7).  If other heaters were also similar they would have been

20  listed together.  (Prins Decl. ¶ 7).  Each class of heaters is individually tested by

21  Underwriters Laboratories and each class of heater has a unique UL listing file as UL

22  proscribes tests and specifications for each of these classes of heaters.  (Prins Decl. ¶

23  11).  As reports issued by UL only address heater models which are similar in design

24  and configuration, the Quartz Heaters are unlike Sunbeam's other heater models and

25  classes.  (Prins Decl. ¶ 11).

26          In total, Sunbeam has produced to Plaintiffs 3,336 pages of documents which

27  include Quartz heater related documents.   (McNulty Decl ¶26) The documents

28  produced by Sunbeam provide information regarding product design and

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

1   specifications, quality control procedures, work product instructions, the standards
2   under which the models were made, the tests completed on the models prior to sale
3   by Sunbeam and UL, the components that made up the finished products, as well as
4   the specifics about the components. (McNulty Decl ¶26) Sunbeam has produced all
5   of the documentation in its possession regarding heater models which are similar to
6   the subject HQH307. (McNulty Decl ¶27)  In addition, Sunbeam has produced all
7   documentation in its possession regarding incidents involving these similar products.
8   (McNulty Decl ¶28) For these reasons, this Court should deny Plaintiffs' discovery
9   requests in their entirety.

10

11   **Kenneth Shinedling's Special Interrogatory No. 13:**

12       IDENTIFY and describe all COMMUNICATIONS (including before and after
13   the INCIDENT) with anyone (including but not limited to the) U.S. Consumer
14   Product Safety Commission which relate in any way to any HOME HEATER due to
15   a fire hazard, which was designed, manufactured, or distributed by YOU, by setting
16   forth the full name, address and phone numbers of the PERSON(s) making the
17   communication or claim, the full name, address and phone numbers of the
18   PERSON(s) receiving the communication or claim, the date of the communication,
19   the method of communication (e.g. phone, email, letter, etc.), the model and year of
20   the HOME HEATER involved, the date of the incident, the location of the incident,
21   the titled and case number of the action, the complete name and address of the court
22   involved, and the full name, address and telephone number of the attorney for the
23   Plaintiff in each action.

24   **Defendant's Response:**

25       Objection. This interrogatory is vague, ambiguous and overly broad in time
26   and scope. Further objecting, this interrogatory seeks information which pertains to
27   other products which are not the same or similar to the subject product and,
28   consequently, will not lead to admissible evidence. Without waiving these objections,

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 91403
PHONE (323) 658-8O77 | FAX (323) 658-8477

1   communications concerning the subject heater and the CPSC will be produced

2   pursuant to protective order.

3   **Defendant's Amended Response:**

4   Sunbeam incorporates by reference herein its objections set forth above.

5   Without waiving these objections, see information contained in the previously

6   produced correspondence with the Consumer Product Safety Commission (CPSC)

7   Bates Stamped: SPI001213-SPI2563. The correspondence also includes information

8   regarding heaters similar in design to the HQH307. Further answering, see the

9   attached Complaints Bates Stamped: SPI003292-SPI003326.

10   **Plaintiff's Reasons Why Further Responses Should be Ordered:**

11   For the same reasons noted as to No. 3, Defendant should be ordered to provide

12   a further response to this interrogatory that involves all HOME HEATERS.

13   **Defendant's Reasons Why Further Responses Should Not be Ordered:**

14   Plaintiffs allege, without any support, that the specific model heater a

15   (HQH307 Tower Quartz heater) is defective because it failed to have a properly

16   installed sensor that would have turned the heater off and/or given a warning to users.

17   Plaintiffs further claim that this is a "generic defect" in all home heaters.  On these

18   specious bases, Plaintiffs seek evidence relating to <u>any single type of home heater</u>

19   made by Sunbeam. The requested discovery is not relevant to the subject matter

20   involved in a pending action if the inquiry is only based on the requesting party's

21   mere suspicion or speculation. *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d

22   1318, 1324 (Fed. Cir. 1990).

23   <u>First</u>, Plaintiffs' requests constitute an impermissible fishing expedition that is

24   not reasonably calculated to lead to the discovery of information relevant to

25   Plaintiffs' claims.  Fed. R. Civ. P. 26(b)(1). In fact, the requests place more burden on

26   Sunbeam than the value of the information warrants.  *Greyhound Corp. v. Superior*

27   *Court In & For Merced Cnty.*, 56 Cal. 2d 355, 384, 364 P.2d 266 (1961). "The

28   district court enjoys broad discretion when resolving discovery disputes, which

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 914O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 1 4O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

1   should be exercised by determining the relevance of discovery requests, assessing

2   oppressiveness, and weighing these factors in deciding whether discovery should be

3   compelled." *Id.* (internal citations and quotation marks omitted).

4   <u>Second</u>, while a party may request documents "in the responding party's

5   possession, custody, or control" pursuant to Fed. R. Civ. P. 26(b)(1), 34(b) requires

6   the requesting party to describe the items to be produced with "reasonable

7   particularity" and specify a reasonable time, place, and manner for the inspection.

8   Fed. R. Civ. P. 34(b)(1-2). A discovery request should be sufficiently definite and

9   limited in scope that it can be said 'to apprise a person of ordinary intelligence what

10  documents are required and [to enable] the court . . . to ascertain whether the

11  requested documents have been produced.'" *Regan-Touhy v. Walgreen Co.*, 526 F.3d

12  641, 649-50 (10th Cir. 2008)(quoting Wright & Miller, 8A Federal Practice and

13  Procedure § 2211, at 415). "'All-encompassing demands' that do not allow a

14  reasonable person to ascertain which documents are required do not meet the

15  particularity standard of Fed. R. Civ. P. 34(b)(1)(A)." *In re Asbestos Products Liab.*

16  *Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009). The requests for information

17  related to "all heaters" without limitation as to model or brand, time or scope, are not

18  reasonably particular, and they do not meet the particularity standard. On this basis

19  alone, the Court should deny Plaintiffs' discovery requests as overbroad.

20  <u>Third</u>, not only are the requests impermissibly overbroad and burdensome, but

21  evidence of other incidents, accidents or complaints are not admissible to prove a

22  defect unless Plaintiffs can show that the circumstances and details of the other

23  accidents and complaints are "substantially similar" to the facts of the accident in this

24  case.[10]   *See Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir.

25  _____

26  [10] While Sunbeam acknowledges that admissibility is not the test, discovery may only
    ordered if it is possible that information in a particular subject area could be relevant
27  or admissible at the time of trial. *Maldonado v. Superior Court*, 94 Cal. App. 4th
    1390, 1397, 115 Cal. Rptr. 2d 137 (2002). Surely, there is no possibility that the

28                                                                        (Continued...)

1991)(citations omitted) ("[a] showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect"); *See also Ault v. Int'l Harvester Co.*, 13 Cal. 3d 113, 121-122, 528 P.2d 1148 (1974); *Elsworth v. Beech Aircraft Corp.*, 37 Cal. 3d 540, 555, 691 P.2d 630 (1984)(holding that evidence of prior accidents is admissible only if they are similar and not too remote).  Substantial similarity must exist in the overall circumstances of the incidents – not merely component parts – that a party wishes to compare to the incident giving rise to the pending matter.  See e.g. *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434 (10th Cir. 1992).

To be "substantially similar", the other accidents, incidents, complaints and lawsuits must not only involve heaters with the same parts, but must also involve similar time, place or circumstance.  *See Brake v. Beech Aircraft Corp.*, 184 Cal. App. 3d 930, 937, 229 Cal. Rptr. 336 (Ct. App. 1986)(evidence of other accidents could not be admitted to show airplane defectively designed because plaintiff failed to lay foundation of similarity for flight altitude, trim settings, engine power, loading, weather conditions, altitudes, feathering, etc.); *see also Kopfinger v. Grand Cent. Pub. Mkt.*, 60 Cal. 2d 852, 860-861, 389 P.2d 529 (1964)(holding the circumstances of proffered accidents to be dissimilar to facts of case and that trial court was well within its discretion in excluding such evidence).  Likewise, Plaintiffs would also have to establish that the other accidents, incidents, complaints and lawsuits they seek to introduce involve a heater with the same equipment and maintenance condition as the heater involved in this accident, and that the other heaters had not been altered or misused.  It is important that Plaintiffs establish the similarity of all of these factors

_____

(...Continued)
broad scope of information sought by plaintiffs will be admissible at trial due to the authorities cited herein.

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

1  because each of them may have  contributed in some way to the occurrence of <u>this</u>

2  incident.

3      <u>Fourth</u>, evidence of other incidents is not relevant for purposes of notice. Even

4  if notice were an issue in this case, which Sunbeam contends it is not, for a prior

5  accident to be admissible under a "notice" theory, any prior accident must be such as

6  to alert the defendant to the alleged dangerous condition. *Elsworth*, 37 Cal. 3d at 555

7  (holding that evidence of other accidents is admissible on notice issue because the

8  other accidents were similar enough to the one involved to have alerted defendant to

9  the problem).   Certainly, accidents that happened to a heater that was not

10 substantially similar to the one involved in this accident, and which occurred under

11 circumstances that were substantially different than the incident in this case, do not

12 meet the test and should be excluded for all purposes.

13     <u>Fifth</u>, evidence of any changes in design or information related to later model

14 heaters could be construed as subsequent remedial measures. In the Ninth Circuit,

15 evidence of subsequent remedial measures is <u>not</u> admissible in a products liability

16 action. Fed. R. Evid. 407; *Fasanaro v. Mooney Aircraft Corp.*, 687 F. Supp. 482

17 (N.D. Cal. 1988); see also <u>Ault</u>, 13 Cal. 3d, 118; Cal. Evid. Code § 1151 (West).

18     **<u>Plaintiffs Have Offered No Evidence That The Information They Seek</u>**

19     **<u>Encompasses Heater Models Which Are In Any Way Similar To The</u>**

20     **<u>Quartz Class Of Heaters Or The Subject HQH307</u>**

21     The Plaintiffs in this case have requested information regarding each and every

22 heater ever manufactured by Sunbeam or its predecessor companies. As set forth

23 above, without a showing of product similarity, this information is not discoverable.

24 **(**See <u>Brake</u>, 184 Cal. App. 3d, 937.  Plaintiffs have not even attempted to establish

25 any recognizable similarity between the subject HQH307 and any other Sunbeam

26 heater.  More recently, Sunbeam has manufactured and sold seven different types of

27 heaters.   Specifically, Sunbeam sells:   Fan Heaters, Ceramic Heaters, Radiant

28 Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz

Heaters.  In 2011, Sunbeam manufactured 4,930,923 heaters, including 167 different models of heaters.  In 2012, Sunbeam manufactured 2,892,243 heaters, including 153 different models of heaters.   To date, in 2013, Sunbeam manufactured 3,126,103 heaters, including 144 different models of heaters.  These totals and models include all classes of heaters.  (See Affidavit of Richard J. Prins "Prins Decl." ¶ 6).  Each of the different classes of heaters has different designs and varies in their operation and characteristics.    Thus, this Court should deny Plaintiffs' discovery requests in its entirety, because the Quartz class of heaters, and the subject HQH307, are unique in Sunbeam's line of heater products and open ended discovery regarding hundreds of different models and millions of different eaters is simply impermissibly overbroad.

### a.      The Quartz Heater Class and Subject HQH307 are Unlike Other Sunbeam Heaters

Plaintiffs attempt to argue that they are entitled to information regarding all of Sunbeam's heaters because of a "generic" defect in all Sunbeam heaters.  Plaintiffs provide absolutely no evidence or support for this allegation.  Sunbeam sells over 100 different model heaters each year which are designed to meet the specific needs of Sunbeam's consumers.  (Prins Decl. ¶ 5).   The Quartz class heaters, and the subject HQH307, are unlike Sunbeam's other heater classes and have distinct characteristics.

### b.      The Design of the Quartz Heaters and the Subject HQH307 is Unique

The subject product is believed to be a Holmes HQH307 Quartz Heater. Quartz Heaters are equipped with a resistive element encased in a quartz tube.  (Prins Decl. ¶ 7).  This design is exclusive to the Quartz Heater models.  (Prins Decl. ¶ 7). Further, the design of current Quartz Heater models differs from the Quartz Heaters manufactured prior to 2010/2011 as they were equipped with a ceramic disc with a push button manual reset thermostat.  (Prins Decl. ¶ 8).  Whereas, the Quartz Heaters manufactured post 2010/2011 through the present are equipped with a manual rest thermostat and one-shot fuse.  (Prins Decl. ¶ 8).  No other heater classes utilize these

THE HOMAMPOUR LAW FIRM, PLC
1503 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

1   devices. (Prins Decl. ¶ 9).

2       The construction of Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen

3   Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters are all quite

4   different. For example, Fan Heaters incorporate an octopus heating element (resistive

5   wire coiled into an octagon shape held with mica plates; Ceramic Heaters incorporate

6   a ceramic heating element (ceramic chips glued together to metal heat sinks);

7   Micathermic and Low-Profile Radiant Heaters incorporate a stitched wire element or

8   micathermic plate; PRH/HRH Radiant Heaters incorporate wire elements with

9   ceramic stand-offs; Halogen Heaters incorporate a halogen heating element; Utility

10  Heaters incorporate a coiled element with ceramic standoffs; Oil-Water-filled Heaters

11  incorporate stamped metal welded cavities for oil or water; and Quartz Heaters

12  incorporate a resistive element encased in a quartz tube.  (Prins Decl. ¶ 9).

13      Most significantly, each class of heater utilizes its own overheat technology.

14  (Prins Decl. ¶ 10).  The design of the subject HQH307 and Quartz Heaters is unique

15  as they are the only products that incorporate a ceramic disc with push button manual

16  reset thermostat.  (Prins Decl. ¶ 10).

17          **c.    Underwriters Laboratories Issued A Report Addressing Only**

18          **the Quartz Heaters Due to the Distinct Characteristics of the**

19          **Products**

20      Underwriters Laboratories ("UL") issued its listing report addressing Quartz

21  Heaters Models HQH, BQH or PQH followed by 307, 308, 309, 309A, 319 or 319A

22  and SQH followed by 310 or 315 due to the distinct characteristics of these products.

23  (Prins Decl. ¶ 7).  Sunbeam produced all documents, including claim and lawsuit

24  information, related to the above- referenced models contained in the UL listing file,

25  including the listing file itself.  (McNulty Decl. ¶25) A UL listing file is created

26  whenever a product manufacturer seeks an evaluation and independent testing by UL

27  that its product meets UL's standards for product safety.  The documents within the

28  UL file include:  testing documents which details the tests which a product must pass

THE HOMAMPOUR LAW FIRM, PLC
1503 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

1   prior to obtaining UL certification; results of testing conducted by both UL and the

2   manufacturer; all correspondence between a manufacturer and UL; product drawings;

3   product manuals; detailed information about product components; reports about UL

4   site visits to manufacturer's facilities and any other document generated that may

5   pertain to a products' make-up or performance with respect to safety.  UL groups

6   these documents into files which are separated by product classification ("similar

7   products" are all contained under the same product classification).

8       Underwriters Laboratories (UL) makes an independent evaluation of heater

9   models and groups of heater to determine whether there are enough similarities

10  between classes of heaters, as well as particular models within a class of heaters, to

11  require independent testing or whether they can be evaluated as a group.  (Prins Decl.

12  ¶ 7).  By grouping these particular model heaters together, UL independently decided

13  that there were enough similarities in design and operation to be tested and listed

14  together.  (Prins Decl. ¶ 7).  If other heaters were also similar they would have been

15  listed together.  (Prins Decl. ¶ 7).  Each class of heaters is individually tested by

16  Underwriters Laboratories and each class of heater has a unique UL listing file as UL

17  proscribes tests and specifications for each of these classes of heaters.  (Prins Decl. ¶

18  11).  As reports issued by UL only address heater models which are similar in design

19  and configuration, the Quartz Heaters are unlike Sunbeam's other heater models and

20  classes.  (Prins Decl. ¶ 11).

21      In total, Sunbeam has produced to Plaintiffs 3,336 pages of documents which

22  include Quartz heater related documents.   (McNulty Decl ¶26) The documents

23  produced  by  Sunbeam  provide  information  regarding  product  design  and

24  specifications, quality control procedures, work product instructions, the standards

25  under which the models were made, the tests completed on the models prior to sale

26  by Sunbeam and UL, the components that made up the finished products, as well as

27  the specifics about the components. (McNulty Decl ¶26) Sunbeam has produced all

28  of the documentation in its possession regarding heater models which are similar to

1  the subject HQH307. (McNulty Decl ¶27)  In addition, Sunbeam has produced all

2  documentation in its possession regarding incidents involving these similar products.

3  (McNulty Decl ¶28) For these reasons, this Court should deny Plaintiffs' discovery

4  requests in their entirety.

5

6  **Kenneth Shinedling's Special Interrogatory No. 14:**

7  IDENTIFY and describe all actions YOU took in response to all

8  COMMUNICATIONS (including before and after the INCIDENT) with anyone

9  including but not limited to the consumers who filed reports with the U.S. Consumer

10  Product Safety Commission which relate in any way to any HOME HEATER due to

11  a fire hazard, which was designed, manufactured, or distributed by YOU by setting

12  forth the full name, address and phone numbers of the PERSON(s) making the

13  communication or claim, the full name, address and phone number of the PERSON(s)

14  receiving this communication or claim, the date of the communication, the method of

15  communication (e.g. phone, email, letter, etc.), the model and the year of the HOME

16  HEATER involved, the date of the incident, the location of the incident, the title and

17  the case number of the action, the complete name and address of the court involved,

18  he full name, address and telephone number of the attorney for the Plaintiff in each

19  action.

20  **Defendant's Response:**

21  Objection. This interrogatory is vague, ambiguous and overly broad in time

22  and scope. Further objecting, this interrogatory seeks information which pertains to

23  other products which are not the same or similar to the subject product and,

24  consequently, will not lead to admissible evidence. Without waiving these objections,

25  communications with the CPSC concerning the subject product will be produced

26  pursuant to protective order.

27  **Defendant's Amended Response:**

28  Sunbeam incorporates by reference herein its objections set forth above.

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD • SUITE 1OOO | SHERMAN OAKS, CA 91403
PHONE (323) 658-8O77 | FAX (323) 658-8477

Without waiving these objections, see information contained in the previously produced correspondence with the Consumer Product Safety Commission (CPSC) Bates Stamped: SPI001213-SPI2563. The correspondence also includes information regarding heaters similar in design to the HQH307.

**Plaintiff's Reasons Why Further Responses Should be Ordered:**

For the same reasons noted as to No. 3, Defendant should be ordered to provide a further response to this interrogatory that involves all HOME HEATERS.

**Defendant's Reasons Why Further Responses Should Not be Ordered:**

Plaintiffs allege, without any support, that the specific model heater a (HQH307 Tower Quartz heater) is defective because it failed to have a properly installed sensor that would have turned the heater off and/or given a warning to users. Plaintiffs further claim that this is a "generic defect" in all home heaters. On these specious bases, Plaintiffs seek evidence relating to <u>any single type of home heater</u> made by Sunbeam. The requested discovery is not relevant to the subject matter involved in a pending action if the inquiry is only based on the requesting party's mere suspicion or speculation. *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1324 (Fed. Cir. 1990).

<u>First</u>, Plaintiffs' requests constitute an impermissible fishing expedition that is not reasonably calculated to lead to the discovery of information relevant to Plaintiffs' claims. Fed. R. Civ. P. 26(b)(1). In fact, the requests place more burden on Sunbeam than the value of the information warrants. *Greyhound Corp. v. Superior Court In & For Merced Cnty.*, 56 Cal. 2d 355, 384, 364 P.2d 266 (1961). "The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." *Id.* (internal citations and quotation marks omitted).

<u>Second</u>, while a party may request documents "in the responding party's possession, custody, or control" pursuant to Fed. R. Civ. P. 26(b)(1), 34(b) requires

the requesting party to describe the items to be produced with "reasonable particularity" and specify a reasonable time, place, and manner for the inspection. Fed. R. Civ. P. 34(b)(1-2). A discovery request should be sufficiently definite and limited in scope that it can be said 'to apprise a person of ordinary intelligence what documents are required and [to enable] the court . . . to ascertain whether the requested documents have been produced.'" *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 (10th Cir. 2008)(quoting Wright & Miller, 8A Federal Practice and Procedure § 2211, at 415). "'All-encompassing demands' that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Fed. R. Civ. P. 34(b)(1)(A)." *In re Asbestos Products Liab. Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009).  The requests for information related to "all heaters" without limitation as to model or brand, time or scope, are not reasonably particular, and they do not meet the particularity standard.  On this basis alone, the Court should deny Plaintiffs' discovery requests as overbroad.

   Third, not only are the requests impermissibly overbroad and burdensome, but evidence of other incidents, accidents or complaints are not admissible to prove a defect unless Plaintiffs can show that the circumstances and details of the other accidents and complaints are "substantially similar" to the facts of the accident in this case.[11]  *See Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991)(citations omitted) ("[a] showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect"); *See also Ault v. Int'l Harvester Co.*, 13 Cal. 3d 113, 121-122, 528 P.2d 1148 (1974); *Elsworth v. Beech Aircraft*

---

[11] While Sunbeam acknowledges that admissibility is not the test, discovery may only ordered if it is possible that information in a particular subject area could be relevant or admissible at the time of trial.  *Maldonado v. Superior Court*, 94 Cal. App. 4th 1390, 1397, 115 Cal. Rptr. 2d 137 (2002).  Surely, there is no possibility that the broad scope of information sought by plaintiffs will be admissible at trial due to the authorities cited herein.

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

*Corp.*, 37 Cal. 3d 540, 555, 691 P.2d 630 (1984)(holding that evidence of prior accidents is admissible only if they are similar and not too remote).   Substantial similarity must exist in the overall circumstances of the incidents – not merely component parts – that a party wishes to compare to the incident giving rise to the pending matter.   See e.g. *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434 (10th Cir. 1992).

To be "substantially similar", the other accidents, incidents, complaints and lawsuits must not only involve heaters with the same parts, but must also involve similar time, place or circumstance.   *See Brake v. Beech Aircraft Corp.*, 184 Cal. App. 3d 930, 937, 229 Cal. Rptr. 336 (Ct. App. 1986)(evidence of other accidents could not be admitted to show airplane defectively designed because plaintiff failed to lay foundation of similarity for flight altitude, trim settings, engine power, loading, weather conditions, altitudes, feathering, etc.); *see also Kopfinger v. Grand Cent. Pub. Mkt.*, 60 Cal. 2d 852, 860-861, 389 P.2d 529 (1964)(holding the circumstances of proffered accidents to be dissimilar to facts of case and that trial court was well within its discretion in excluding such evidence).   Likewise, Plaintiffs would also have to establish that the other accidents, incidents, complaints and lawsuits they seek to introduce involve a heater with the same equipment and maintenance condition as the heater involved in this accident, and that the other heaters had not been altered or misused.   It is important that Plaintiffs establish the similarity of all of these factors because each of them may have  contributed in some way to the occurrence of <u>this</u> incident.

<u>Fourth</u>, evidence of other incidents is not relevant for purposes of notice. Even if notice were an issue in this case, which Sunbeam contends it is not, for a prior accident to be admissible under a "notice" theory, any prior accident must be such as to alert the defendant to the alleged dangerous condition.   *Elsworth*, 37 Cal. 3d at 555 (holding that evidence of other accidents is admissible on notice issue because the other accidents were similar enough to the one involved to have alerted defendant to

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

1   the problem).   Certainly, accidents that happened to a heater that was not
2   substantially similar to the one involved in this accident, and which occurred under
3   circumstances that were substantially different than the incident in this case, do not
4   meet the test and should be excluded for all purposes.

5     <u>Fifth</u>, evidence of any changes in design or information related to later model
6   heaters could be construed as subsequent remedial measures. In the Ninth Circuit,
7   evidence of subsequent remedial measures is <u>not</u> admissible in a products liability
8   action. Fed. R. Evid. 407; *Fasanaro v. Mooney Aircraft Corp.*, 687 F. Supp. 482
9   (N.D. Cal. 1988); see also <u>Ault</u>, 13 Cal. 3d, 118; Cal. Evid. Code § 1151 (West).

10   **<u>Plaintiffs Have Offered No Evidence That The Information They Seek</u>**
11   **<u>Encompasses Heater Models Which Are In Any Way Similar To The</u>**
12   **<u>Quartz Class Of Heaters Or The Subject HQH307</u>**

13     The Plaintiffs in this case have requested information regarding each and every
14   heater ever manufactured by Sunbeam or its predecessor companies. As set forth
15   above, without a showing of product similarity, this information is not discoverable.
16   **(**See <u>Brake</u>, 184 Cal. App. 3d, 937.  Plaintiffs have not even attempted to establish
17   any recognizable similarity between the subject HQH307 and any other Sunbeam
18   heater.  More recently, Sunbeam has manufactured and sold seven different types of
19   heaters.   Specifically, Sunbeam sells:   Fan Heaters, Ceramic Heaters, Radiant
20   Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz
21   Heaters.  In 2011, Sunbeam manufactured 4,930,923 heaters, including 167 different
22   models of heaters.  In 2012, Sunbeam manufactured 2,892,243 heaters, including 153
23   different models of heaters.   To date, in 2013, Sunbeam manufactured 3,126,103
24   heaters, including 144 different models of heaters.  These totals and models include
25   all classes of heaters.  (See Affidavit of Richard J. Prins "Prins Decl." ¶ 6).  Each of
26   the different classes of heaters has different designs and varies in their operation and
27   characteristics.   Thus, this Court should deny Plaintiffs' discovery requests in its
28   entirety, because the Quartz class of heaters, and the subject HQH307, are unique in

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

1 Sunbeam's line of heater products and open ended discovery regarding hundreds of

2 different models and millions of different eaters is simply impermissibly overbroad.

### a.   The Quartz Heater Class and Subject HQH307 are Unlike Other Sunbeam Heaters

5     Plaintiffs attempt to argue that they are entitled to information regarding all of

6 Sunbeam's heaters because of a "generic" defect in all Sunbeam heaters.  Plaintiffs

7 provide absolutely no evidence or support for this allegation.  Sunbeam sells over 100

8 different model heaters each year which are designed to meet the specific needs of

9 Sunbeam's consumers.  (Prins Decl. ¶ 5).   The Quartz class heaters, and the subject

10 HQH307, are unlike Sunbeam's other heater classes and have distinct characteristics.

### b.   The Design of the Quartz Heaters and the Subject HQH307 is Unique

13     The subject product is believed to be a Holmes HQH307 Quartz Heater.

14 Quartz Heaters are equipped with a resistive element encased in a quartz tube.  (Prins

15 Decl. ¶ 7).  This design is exclusive to the Quartz Heater models.  (Prins Decl. ¶ 7).

16 Further, the design of current Quartz Heater models differs from the Quartz Heaters

17 manufactured prior to 2010/2011 as they were equipped with a ceramic disc with a

18 push button manual reset thermostat.  (Prins Decl. ¶ 8).  Whereas, the Quartz Heaters

19 manufactured post 2010/2011 through the present are equipped with a manual rest

20 thermostat and one-shot fuse.  (Prins Decl. ¶ 8).  No other heater classes utilize these

21 devices. (Prins Decl. ¶ 9).

22     The construction of Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen

23 Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters are all quite

24 different. For example, Fan Heaters incorporate an octopus heating element (resistive

25 wire coiled into an octagon shape held with mica plates; Ceramic Heaters incorporate

26 a ceramic heating element (ceramic chips glued together to metal heat sinks);

27 Micathermic and Low-Profile Radiant Heaters incorporate a stitched wire element or

28 micathermic plate; PRH/HRH Radiant Heaters incorporate wire elements with

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

ceramic stand-offs; Halogen Heaters incorporate a halogen heating element; Utility Heaters incorporate a coiled element with ceramic standoffs; Oil-Water-filled Heaters incorporate stamped metal welded cavities for oil or water; and Quartz Heaters incorporate a resistive element encased in a quartz tube.  (Prins Decl. ¶ 9).

Most significantly, each class of heater utilizes its own overheat technology. (Prins Decl. ¶ 10).  The design of the subject HQH307 and Quartz Heaters is unique as they are the only products that incorporate a ceramic disc with push button manual reset thermostat.  (Prins Decl. ¶ 10).

> ### c. Underwriters Laboratories Issued A Report Addressing Only the Quartz Heaters Due to the Distinct Characteristics of the Products

Underwriters Laboratories ("UL") issued its listing report addressing Quartz Heaters Models HQH, BQH or PQH followed by 307, 308, 309, 309A, 319 or 319A and SQH followed by 310 or 315 due to the distinct characteristics of these products. (Prins Decl. ¶ 7).  Sunbeam produced all documents, including claim and lawsuit information, related to the above- referenced models contained in the UL listing file, including the listing file itself.  (McNulty Decl. ¶25) A UL listing file is created whenever a product manufacturer seeks an evaluation and independent testing by UL that its product meets UL's standards for product safety.  The documents within the UL file include:  testing documents which details the tests which a product must pass prior to obtaining UL certification; results of testing conducted by both UL and the manufacturer; all correspondence between a manufacturer and UL; product drawings; product manuals; detailed information about product components; reports about UL site visits to manufacturer's facilities and any other document generated that may pertain to a products' make-up or performance with respect to safety.  UL groups these documents into files which are separated by product classification ("similar products" are all contained under the same product classification).

Underwriters Laboratories (UL) makes an independent evaluation of heater

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 91403
PHONE (323) 658-8O77 | FAX (323) 658-8477

models and groups of heater to determine whether there are enough similarities between classes of heaters, as well as particular models within a class of heaters, to require independent testing or whether they can be evaluated as a group. (Prins Decl. ¶ 7). By grouping these particular model heaters together, UL independently decided that there were enough similarities in design and operation to be tested and listed together. (Prins Decl. ¶ 7). If other heaters were also similar they would have been listed together. (Prins Decl. ¶ 7). Each class of heaters is individually tested by Underwriters Laboratories and each class of heater has a unique UL listing file as UL proscribes tests and specifications for each of these classes of heaters. (Prins Decl. ¶ 11). As reports issued by UL only address heater models which are similar in design and configuration, the Quartz Heaters are unlike Sunbeam's other heater models and classes. (Prins Decl. ¶ 11).

In total, Sunbeam has produced to Plaintiffs 3,336 pages of documents which include Quartz heater related documents. (McNulty Decl ¶26) The documents produced by Sunbeam provide information regarding product design and specifications, quality control procedures, work product instructions, the standards under which the models were made, the tests completed on the models prior to sale by Sunbeam and UL, the components that made up the finished products, as well as the specifics about the components. (McNulty Decl ¶26) Sunbeam has produced all of the documentation in its possession regarding heater models which are similar to the subject HQH307. (McNulty Decl ¶27) In addition, Sunbeam has produced all documentation in its possession regarding incidents involving these similar products. (McNulty Decl ¶28) For these reasons, this Court should deny Plaintiffs' discovery requests in their entirety.

### Kenneth Shinedling's Special Interrogatory No. 15:

Please state all changes YOU made to any HOME HEATER after YOUR products were identified by the U.S. Consumer Product Safety Commission as a

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

1  possible fire hazard.

2  **Defendant's Response:**

3  Objection. This interrogatory is vague, ambiguous and overly broad in time

4  and scope. Further objecting, this interrogatory seeks information which pertains to

5  other products which are not the same or similar to the subject product and,

6  consequently, will not lead to admissible evidence. Without waiving these objections,

7  the CPSC has never made a determination that the subject product was a possible fire

8  hazard.

9  **Defendant's Amended Response:**

10  Objection. This interrogatory is vague, ambiguous and overly broad in time

11  and scope. Further objecting, this interrogatory seeks information which pertains to

12  other products which are not the same or similar to the subject product and,

13  consequently, will not lead to admissible evidence. Without waiving these objections,

14  the CPSC has never made a determination that the subject product was a possible fire

15  hazard.

16  **Plaintiff's Reasons Why Further Responses Should be Ordered:**

17  For the same reasons noted as to No. 3, Defendant should be ordered to provide

18  a further response to this interrogatory that involves all HOME HEATERS.

19  **Defendant's Reasons Why Further Responses Should Not be Ordered:**

20  Plaintiffs allege, without any support, that the specific model heater a

21  (HQH307 Tower Quartz heater) is defective because it failed to have a properly

22  installed sensor that would have turned the heater off and/or given a warning to users.

23  Plaintiffs further claim that this is a "generic defect" in all home heaters.  On these

24  specious bases, Plaintiffs seek evidence relating to <u>any single type of home heater</u>

25  made by Sunbeam. The requested discovery is not relevant to the subject matter

26  involved in a pending action if the inquiry is only based on the requesting party's

27  mere suspicion or speculation. *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d

28  1318, 1324 (Fed. Cir. 1990).

THE HOMAMPOUR LAW FIRM, PLC
1 5O3 VENTURA BOULEVARD · SUITE 1 OOO │ SHERMAN OAKS, CA 9 1 4O3
PHONE (323) 658-8O77 │ FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

1    First, Plaintiffs' requests constitute an impermissible fishing expedition that is
2    not reasonably calculated to lead to the discovery of information relevant to
3    Plaintiffs' claims. Fed. R. Civ. P. 26(b)(1). In fact, the requests place more burden on
4    Sunbeam than the value of the information warrants. *Greyhound Corp. v. Superior*
5    *Court In & For Merced Cnty.*, 56 Cal. 2d 355, 384, 364 P.2d 266 (1961). "The
6    district court enjoys broad discretion when resolving discovery disputes, which
7    should be exercised by determining the relevance of discovery requests, assessing
8    oppressiveness, and weighing these factors in deciding whether discovery should be
9    compelled." *Id.* (internal citations and quotation marks omitted).

10   Second, while a party may request documents "in the responding party's
11   possession, custody, or control" pursuant to Fed. R. Civ. P. 26(b)(1), 34(b) requires
12   the requesting party to describe the items to be produced with "reasonable
13   particularity" and specify a reasonable time, place, and manner for the inspection.
14   Fed. R. Civ. P. 34(b)(1-2). A discovery request should be sufficiently definite and
15   limited in scope that it can be said 'to apprise a person of ordinary intelligence what
16   documents are required and [to enable] the court . . . to ascertain whether the
17   requested documents have been produced.'" *Regan-Touhy v. Walgreen Co.*, 526 F.3d
18   641, 649-50 (10th Cir. 2008)(quoting Wright & Miller, 8A Federal Practice and
19   Procedure § 2211, at 415). "'All-encompassing demands' that do not allow a
20   reasonable person to ascertain which documents are required do not meet the
21   particularity standard of Fed. R. Civ. P. 34(b)(1)(A)." *In re Asbestos Products Liab.*
22   *Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009). The requests for information
23   related to "all heaters" without limitation as to model or brand, time or scope, are not
24   reasonably particular, and they do not meet the particularity standard. On this basis
25   alone, the Court should deny Plaintiffs' discovery requests as overbroad.

26   Third, not only are the requests impermissibly overbroad and burdensome, but
27   evidence of other incidents, accidents or complaints are not admissible to prove a
28   defect unless Plaintiffs can show that the circumstances and details of the other

accidents and complaints are "substantially similar" to the facts of the accident in this case.[12]   *See Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991)(citations omitted) ("[a] showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect"); *See also Ault v. Int'l Harvester Co.*, 13 Cal. 3d 113, 121-122, 528 P.2d 1148 (1974); *Elsworth v. Beech Aircraft Corp.*, 37 Cal. 3d 540, 555, 691 P.2d 630 (1984)(holding that evidence of prior accidents is admissible only if they are similar and not too remote).   Substantial similarity must exist in the overall circumstances of the incidents – not merely component parts – that a party wishes to compare to the incident giving rise to the pending matter.   See e.g. *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434 (10th Cir. 1992).

To be "substantially similar", the other accidents, incidents, complaints and lawsuits must not only involve heaters with the same parts, but must also involve similar time, place or circumstance.   *See Brake v. Beech Aircraft Corp.*, 184 Cal. App. 3d 930, 937, 229 Cal. Rptr. 336 (Ct. App. 1986)(evidence of other accidents could not be admitted to show airplane defectively designed because plaintiff failed to lay foundation of similarity for flight altitude, trim settings, engine power, loading, weather conditions, altitudes, feathering, etc.); *see also Kopfinger v. Grand Cent. Pub. Mkt.*, 60 Cal. 2d 852, 860-861, 389 P.2d 529 (1964)(holding the circumstances of proffered accidents to be dissimilar to facts of case and that trial court was well within its discretion in excluding such evidence).   Likewise, Plaintiffs would also have to establish that the other accidents, incidents, complaints and lawsuits they seek

---

[12] While Sunbeam acknowledges that admissibility is not the test, discovery may only ordered if it is possible that information in a particular subject area could be relevant or admissible at the time of trial.   *Maldonado v. Superior Court*, 94 Cal. App. 4th 1390, 1397, 115 Cal. Rptr. 2d 137 (2002).   Surely, there is no possibility that the broad scope of information sought by plaintiffs will be admissible at trial due to the authorities cited herein.

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

to introduce involve a heater with the same equipment and maintenance condition as the heater involved in this accident, and that the other heaters had not been altered or misused.  It is important that Plaintiffs establish the similarity of all of these factors because each of them may have  contributed in some way to the occurrence of <u>this</u> incident.

Fourth, evidence of other incidents is not relevant for purposes of notice. Even if notice were an issue in this case, which Sunbeam contends it is not, for a prior accident to be admissible under a "notice" theory, any prior accident must be such as to alert the defendant to the alleged dangerous condition.  *Elsworth*, 37 Cal. 3d at 555 (holding that evidence of other accidents is admissible on notice issue because the other accidents were similar enough to the one involved to have alerted defendant to the problem).    Certainly, accidents that happened to a heater that was not substantially similar to the one involved in this accident, and which occurred under circumstances that were substantially different than the incident in this case, do not meet the test and should be excluded for all purposes.

Fifth, evidence of any changes in design or information related to later model heaters could be construed as subsequent remedial measures. In the Ninth Circuit, evidence of subsequent remedial measures is <u>not</u> admissible in a products liability action. Fed. R. Evid. 407; *Fasanaro v. Mooney Aircraft Corp.*, 687 F. Supp. 482 (N.D. Cal. 1988); see also <u>Ault</u>, 13 Cal. 3d, 118; Cal. Evid. Code § 1151 (West).

**<u>Plaintiffs Have Offered No Evidence That The Information They Seek Encompasses Heater Models Which Are In Any Way Similar To The Quartz Class Of Heaters Or The Subject HQH307</u>**

The Plaintiffs in this case have requested information regarding each and every heater ever manufactured by Sunbeam or its predecessor companies. As set forth above, without a showing of product similarity, this information is not discoverable. **(**See <u>Brake</u>, 184 Cal. App. 3d, 937.  Plaintiffs have not even attempted to establish any recognizable similarity between the subject HQH307 and any other Sunbeam

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 │ SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 │ FAX (323) 658-8477

heater. More recently, Sunbeam has manufactured and sold seven different types of heaters. Specifically, Sunbeam sells: Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters. In 2011, Sunbeam manufactured 4,930,923 heaters, including 167 different models of heaters. In 2012, Sunbeam manufactured 2,892,243 heaters, including 153 different models of heaters. To date, in 2013, Sunbeam manufactured 3,126,103 heaters, including 144 different models of heaters. These totals and models include all classes of heaters. (See Affidavit of Richard J. Prins "Prins Decl." ¶ 6). Each of the different classes of heaters has different designs and varies in their operation and characteristics. Thus, this Court should deny Plaintiffs' discovery requests in its entirety, because the Quartz class of heaters, and the subject HQH307, are unique in Sunbeam's line of heater products and open ended discovery regarding hundreds of different models and millions of different eaters is simply impermissibly overbroad.

### a. The Quartz Heater Class and Subject HQH307 are Unlike Other Sunbeam Heaters

Plaintiffs attempt to argue that they are entitled to information regarding all of Sunbeam's heaters because of a "generic" defect in all Sunbeam heaters. Plaintiffs provide absolutely no evidence or support for this allegation. Sunbeam sells over 100 different model heaters each year which are designed to meet the specific needs of Sunbeam's consumers. (Prins Decl. ¶ 5). The Quartz class heaters, and the subject HQH307, are unlike Sunbeam's other heater classes and have distinct characteristics.

### b. The Design of the Quartz Heaters and the Subject HQH307 is Unique

The subject product is believed to be a Holmes HQH307 Quartz Heater. Quartz Heaters are equipped with a resistive element encased in a quartz tube. (Prins Decl. ¶ 7). This design is exclusive to the Quartz Heater models. (Prins Decl. ¶ 7). Further, the design of current Quartz Heater models differs from the Quartz Heaters manufactured prior to 2010/2011 as they were equipped with a ceramic disc with a

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

1   push button manual reset thermostat.  (Prins Decl. ¶ 8).  Whereas, the Quartz Heaters

2   manufactured post 2010/2011 through the present are equipped with a manual rest

3   thermostat and one-shot fuse.  (Prins Decl. ¶ 8).  No other heater classes utilize these

4   devices. (Prins Decl. ¶ 9).

5       The construction of Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen

6   Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters are all quite

7   different. For example, Fan Heaters incorporate an octopus heating element (resistive

8   wire coiled into an octagon shape held with mica plates; Ceramic Heaters incorporate

9   a ceramic heating element (ceramic chips glued together to metal heat sinks);

10  Micathermic and Low-Profile Radiant Heaters incorporate a stitched wire element or

11  micathermic plate; PRH/HRH Radiant Heaters incorporate wire elements with

12  ceramic stand-offs; Halogen Heaters incorporate a halogen heating element; Utility

13  Heaters incorporate a coiled element with ceramic standoffs; Oil-Water-filled Heaters

14  incorporate stamped metal welded cavities for oil or water; and Quartz Heaters

15  incorporate a resistive element encased in a quartz tube.  (Prins Decl. ¶ 9).

16      Most significantly, each class of heater utilizes its own overheat technology.

17  (Prins Decl. ¶ 10).  The design of the subject HQH307 and Quartz Heaters is unique

18  as they are the only products that incorporate a ceramic disc with push button manual

19  reset thermostat.  (Prins Decl. ¶ 10).

20      **c.**    **Underwriters Laboratories Issued A Report Addressing Only**

21          **the Quartz Heaters Due to the Distinct Characteristics of the**

22          **Products**

23      Underwriters Laboratories ("UL") issued its listing report addressing Quartz

24  Heaters Models HQH, BQH or PQH followed by 307, 308, 309, 309A, 319 or 319A

25  and SQH followed by 310 or 315 due to the distinct characteristics of these products.

26  (Prins Decl. ¶ 7).  Sunbeam produced all documents, including claim and lawsuit

27  information, related to the above- referenced models contained in the UL listing file,

28  including the listing file itself.  (McNulty Decl. ¶25) A UL listing file is created

THE HOMAMPOUR LAW FIRM, PLC
1503 VENTURA BOULEVARD · SUITE 1000 │ SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 │ FAX (323) 658-8477

1   whenever a product manufacturer seeks an evaluation and independent testing by UL
2   that its product meets UL's standards for product safety.  The documents within the
3   UL file include:  testing documents which details the tests which a product must pass
4   prior to obtaining UL certification; results of testing conducted by both UL and the
5   manufacturer; all correspondence between a manufacturer and UL; product drawings;
6   product manuals; detailed information about product components; reports about UL
7   site visits to manufacturer's facilities and any other document generated that may
8   pertain to a products' make-up or performance with respect to safety.  UL groups
9   these documents into files which are separated by product classification ("similar
10   products" are all contained under the same product classification).

11       Underwriters Laboratories (UL) makes an independent evaluation of heater
12   models and groups of heater to determine whether there are enough similarities
13   between classes of heaters, as well as particular models within a class of heaters, to
14   require independent testing or whether they can be evaluated as a group.  (Prins Decl.
15   ¶ 7).  By grouping these particular model heaters together, UL independently decided
16   that there were enough similarities in design and operation to be tested and listed
17   together.  (Prins Decl. ¶ 7).  If other heaters were also similar they would have been
18   listed together.  (Prins Decl. ¶ 7).  Each class of heaters is individually tested by
19   Underwriters Laboratories and each class of heater has a unique UL listing file as UL
20   proscribes tests and specifications for each of these classes of heaters.  (Prins Decl. ¶
21   11).  As reports issued by UL only address heater models which are similar in design
22   and configuration, the Quartz Heaters are unlike Sunbeam's other heater models and
23   classes.  (Prins Decl. ¶ 11).

24       In total, Sunbeam has produced to Plaintiffs 3,336 pages of documents which
25   include Quartz heater related documents.  (McNulty Decl ¶26) The documents
26   produced by Sunbeam provide information regarding product design and
27   specifications, quality control procedures, work product instructions, the standards
28   under which the models were made, the tests completed on the models prior to sale

by Sunbeam and UL, the components that made up the finished products, as well as the specifics about the components. (McNulty Decl ¶26) Sunbeam has produced all of the documentation in its possession regarding heater models which are similar to the subject HQH307. (McNulty Decl ¶27)  In addition, Sunbeam has produced all documentation in its possession regarding incidents involving these similar products. (McNulty Decl ¶28) For these reasons, this Court should deny Plaintiffs' discovery requests in their entirety.

### Kenneth Shinedling's Special Interrogatory No. 21:

Please state all subsequent changes YOU made to YOUR HOLMES QUARTZ TOWER HEATER after release of the SUBJECT HEATER, including improvements to safety, to ensure that the SUBJECT HEATER would turn off to prevent the foreseeable dangers of overheating, posing a fire hazard to consumers, or would alarm and warn consumers of a fire hazard or potential fire hazard including improvements to warnings.

### Defendant's Response:

Information concerning changes to the subject unit will be produced pursuant to protective order.

### Defendant's Amended Response:

All change notices for the subject heater and similar heaters have been produced. See documents Bates Stamped: SPI000263-SPI001212.

### Plaintiff's Reasons Why Further Responses Should be Ordered:

First, Defendant appears to be relying on Fed. R. Civ. P. 33(d) but failed to object on that basis or refer to it as basis to produce documents instead of providing an answer. Thus, the objection was waived under Fed. R. Civ. P. 33(b)(4). Second, Defendant produced documents marked SPI000263-SPI001212, the majority of which are written in CHINESE without an English translation or without an English equivalent and covered by a marking which obscures the contents in violation of the

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 91403
PHONE (323) 658-8O77 | FAX (323) 658-8477

Stipulated Protective. Thus, Defendant's production is improper under Fed. R. Civ. P. 33(d) as the answer to the interrogatory cannot be determined by the documents and the burden is not substantially the same as Plaintiffs and their attorneys cannot read highly technical engineering documents in CHINESE

Fed. R. Civ. P. 37(a)(4), states that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Here, Defendant Sunbeam's response to this interrogatory by producing CHINESE documents is evasive, incomplete and tantamount to a failure to respond.

Plaintiff's discovery is aimed at obtaining evidence as to whether Defendant exercised all possible care in the manufacture and sale of its product.  *See, e.g.,* Jones, 163 F.R.D., 16("[a] request for discovery should be considered relevant if there is ***any possibility*** that the information sought may be relevant to the subject matter of this action.  Discovery should ordinarily be allowed under the concept of relevancy ***unless it is clear that the information sought can have no possible bearing upon the subject matter of this action***.") (citations omitted & emphasis added).  The requested information is directly relevant to the issues of product defect (design or manufacture), negligent design/testing, negligent manufacture and notice and should be provided.

Further, under California law, evidence that a party manufacturer has made repairs, improvements or design changes to a later model of the product is admissible in a strict liability action to prove the product was "defective" prior to the change. *Ault v. Int'l Harvester Co.*, 13 Cal. 3d 113, 117-118, 528 P.2d 1148 (1974),

For these reasons set forth herein, Defendant should be ordered to provide a written response that details all subsequent changes made to the HOLMES QUARTZ TOWER HEATER as requested.

**Defendant's Reasons Why Further Responses Should Not be Ordered:**

First, Plaintiffs argue that Sunbeam did not reference Fed. R. Civ. P. 33(d) in its responses when it referred to documents in response to Interrogatories Nos. 14 and

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 91 4O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

21.  In response to Kenneth Shinedling's Interrogatories No. 21, Sunbeam referenced documents bates stamped "SPI000263-SPI001212", and in response to Addison Shinedling's Interrogatories No. 14, Sunbeam referenced documents bates stamped Allstate documents "AS001381-AS001424" (which are equally available to all parties by subpoena) and Sunbeam documents bates stamped "SPI000263-SPI001212".  Plaintiffs do not provide any authority for the proposition that Sunbeam was required to recite Fed. R. Civ. P. 33(d) in its response. Rather, the Rule provides that where the information sought may be obtained by examining the responding party's business records, the responding party may answer by specifying the records from which the answer may be obtained, and make them available for inspection. See Fed. R. Civ. P. 33(d); *Daiflon, Inc. v. Allied Chem. Corp.*, 534 F.2d 221, 225 (10th Cir. 1976)[13].  Pursuant to the rule, Sunbeam provided the responsive documents in a manner that permitted the same direct and economical access that is available to the Sunbeam.  See *Puerto Rico Aqueduct & Sewer Auth. v. Clow Corp.*, 108 F.R.D. 304, 306 (D.P.R. 1985).  Additionally, by bates numbering the records, Sunbeam also adequately "specified the records" from which the answer could be derived. *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 323 (C.D. Cal. 2004). In sum, Sunbeam's identification of documents by Bates number is sufficient pursuant to Fed. R. Civ. P. 33(d).

Second, in response to Addison Shinedling's Interrogatory No. 14, Sunbeam also objected that the interrogatory was overbroad and unduly burdensome pursuant to *IBP, Inc. v. Mercantile Bank of Topeka*, 179 F.R.D. 316, 321 (D. Kan. 1998). In *IBP, Inc.*, 179 F.R.D. 316, as in Plaintiffs' Interrogatory, the request was for "every fact" to support Sunbeam's contentions.  In *IBP, Inc.*, 179 F.R.D. 316, the Court held that providing "every fact" could require laborious, time consuming analysis, search

---

[13] See also Adv. Comm. Notes to 1970 Amendment and 2006 Amendments to Fed. R. Civ. P. 33

and description of incidental, secondary, and perhaps irrelevant and trivial details.

<u>Third</u>, Plaintiffs also argue that the documents produced by Sunbeam were obscured by a watermark.  In the three months that Plaintiffs have had possession of these documents, Plaintiffs never addressed this alleged concern until September 11, 2013. (McNulty Decl ¶29) They then proceeded with this Joint Stipulation on September 13, 2013. Thus, Plaintiffs never gave Sunbeam an opportunity to cure the alleged defect. (McNulty Decl ¶22) While Sunbeam contends that the documents are completely legible when viewed electronically, and when printed on a "copier printer", in the spirit of cooperation, Sunbeam offered to re-produce the  documents with a lightened watermark no later than September 20, 2013. (McNulty Decl ¶30) Thus, this issue is moot.

<u>Fourth</u>, with respect to the production of documents in Chinese, Plaintiffs should bear the cost of translating the documents.  Plaintiffs have never articulated which documents they believe need to be translated, nor have they proposed a cost sharing approach.  (McNulty Decl ¶29) Instead, it seems that Plaintiffs want Sunbeam to do their work for them.  The requesting party must normally bear the cost of translating documents written in a foreign language.   A production request demanding translation would be unduly burdensome, especially if it comes at a time when the significance of the documents is not known.  *See In re Puerto Rico Elec. Power Auth.*, 687 F.2d, 509; *see also In re Fialuridine (FIAU) Products Liab. Litig.*, 163 F.R.D. 386, 388 (D.D.C. 1995)

Further, "[i]t is generally assumed that each party is to bear the "ordinary burden of financing his own suit." *Id.* citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974).  Without articulating which documents Plaintiffs seek to have translated and without any basis for the translation costs, forcing Sunbeam to incur the cost of translation is unduly burdensome and runs counter to the basic rules of discovery.

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 914O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

1   **Addison Shinedling's Special Interrogatories to Defendant Sunbeam**

2      **Addison Shinedling's Special Interrogatory No. 5:**

3      IDENTIFY what YOU did to prevent and/or reduce a fire hazard or potential

4   fire hazard from occurring in the future in YOUR new HOME HEATER(S) and

5   HOME HEATER(S) already previously sold, including but not limited to HOLMES

6   QUARTZ TOWER HEATERS. (The term "HOLMES QUARTZ TOWER

7   HEATER" refers to model No. HQH307).

8      **Defendant's Response:**

9      Objection. This interrogatory is vague, ambiguous and overly broad in time

10  and scope. Further objecting, this interrogatory seeks information which is related to

11  other products which are not the same as or similar to the subject product. Without

12  waiving these objections, the subject product was designed, tested and manufactured

13  to meet or exceed UL 1278. Further responding, warnings and instructions were

14  provided with the subject product.

15     **Defendant's Amended Response:**

16     Sunbeam incorporates by reference herein its objections set forth above.

17  Without waiving these objections, the subject product was designed, tested and

18  manufactured to meet or exceed UL 1278. Further responding, warnings and

19  instructions were provided with the subject product. See previously produced UL

20  1278 Bates Stamped: SPI000047-SP000236 and warnings and instructions Bates

21  Stamped: SPI000001-SPI000039. Further answering, see attached additional

22  warnings and instructions Bates Stamped: SPI003329-SPI003336.

23     **Plaintiff's Reasons Why Further Responses Should be Ordered:**

24     For the same reasons noted as to Kenneth Shinedling's Special Interrogatory

25  No. 3, Defendant should be ordered to provide a further response to this interrogatory

26  that involves all HOME HEATERS.

27     **Defendant's Reasons Why Further Responses Should Not be Ordered:**

28     Plaintiffs allege, without any support, that the specific model heater a

(HQH307 Tower Quartz heater) is defective because it failed to have a properly installed sensor that would have turned the heater off and/or given a warning to users. Plaintiffs further claim that this is a "generic defect" in all home heaters.  On these specious bases, Plaintiffs seek evidence relating to <u>any single type of home heater</u> made by Sunbeam. The requested discovery is not relevant to the subject matter involved in a pending action if the inquiry is only based on the requesting party's mere suspicion or speculation. *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1324 (Fed. Cir. 1990).

<u>First</u>, Plaintiffs' requests constitute an impermissible fishing expedition that is not reasonably calculated to lead to the discovery of information relevant to Plaintiffs' claims.  Fed. R. Civ. P. 26(b)(1). In fact, the requests place more burden on Sunbeam than the value of the information warrants.  *Greyhound Corp. v. Superior Court In & For Merced Cnty.*, 56 Cal. 2d 355, 384, 364 P.2d 266 (1961). "The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." *Id.* (internal citations and quotation marks omitted).

<u>Second</u>, while a party may request documents "in the responding party's possession, custody, or control" pursuant to Fed. R. Civ. P. 26(b)(1), 34(b) requires the requesting party to describe the items to be produced with "reasonable particularity" and specify a reasonable time, place, and manner for the inspection. Fed. R. Civ. P. 34(b)(1-2). A discovery request should be sufficiently definite and limited in scope that it can be said 'to apprise a person of ordinary intelligence what documents are required and [to enable] the court . . . to ascertain whether the requested documents have been produced.'" *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 (10th Cir. 2008)(quoting Wright & Miller, 8A Federal Practice and Procedure § 2211, at 415). "'All-encompassing demands' that do not allow a reasonable person to ascertain which documents are required do not meet the

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

particularity standard of Fed. R. Civ. P. 34(b)(1)(A)." *In re Asbestos Products Liab. Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009).  The requests for information related to "all heaters" without limitation as to model or brand, time or scope, are not reasonably particular, and they do not meet the particularity standard.  On this basis alone, the Court should deny Plaintiffs' discovery requests as overbroad.

Third, not only are the requests impermissibly overbroad and burdensome, but evidence of other incidents, accidents or complaints are not admissible to prove a defect unless Plaintiffs can show that the circumstances and details of the other accidents and complaints are "substantially similar" to the facts of the accident in this case.[14]  *See Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991)(citations omitted) ("[a] showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect"); *See also Ault v. Int'l Harvester Co.*, 13 Cal. 3d 113, 121-122, 528 P.2d 1148 (1974); *Elsworth v. Beech Aircraft Corp.*, 37 Cal. 3d 540, 555, 691 P.2d 630 (1984)(holding that evidence of prior accidents is admissible only if they are similar and not too remote).  Substantial similarity must exist in the overall circumstances of the incidents – not merely component parts – that a party wishes to compare to the incident giving rise to the pending matter.  See e.g. *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434 (10th Cir. 1992).

To be "substantially similar", the other accidents, incidents, complaints and lawsuits must not only involve heaters with the same parts, but must also involve similar time, place or circumstance.  *See Brake v. Beech Aircraft Corp.*, 184 Cal.

---

[14] While Sunbeam acknowledges that admissibility is not the test, discovery may only ordered if it is possible that information in a particular subject area could be relevant or admissible at the time of trial.  *Maldonado v. Superior Court*, 94 Cal. App. 4th 1390, 1397, 115 Cal. Rptr. 2d 137 (2002).  Surely, there is no possibility that the broad scope of information sought by plaintiffs will be admissible at trial due to the authorities cited herein.

App. 3d 930, 937, 229 Cal. Rptr. 336 (Ct. App. 1986)(evidence of other accidents could not be admitted to show airplane defectively designed because plaintiff failed to lay foundation of similarity for flight altitude, trim settings, engine power, loading, weather conditions, altitudes, feathering, etc.); *see also Kopfinger v. Grand Cent. Pub. Mkt.*, 60 Cal. 2d 852, 860-861, 389 P.2d 529 (1964)(holding the circumstances of proffered accidents to be dissimilar to facts of case and that trial court was well within its discretion in excluding such evidence).   Likewise, Plaintiffs would also have to establish that the other accidents, incidents, complaints and lawsuits they seek to introduce involve a heater with the same equipment and maintenance condition as the heater involved in this accident, and that the other heaters had not been altered or misused.   It is important that Plaintiffs establish the similarity of all of these factors because each of them may have  contributed in some way to the occurrence of <u>this</u> incident.

 <u>Fourth</u>, evidence of other incidents is not relevant for purposes of notice. Even if notice were an issue in this case, which Sunbeam contends it is not, for a prior accident to be admissible under a "notice" theory, any prior accident must be such as to alert the defendant to the alleged dangerous condition.  *Elsworth*, 37 Cal. 3d at 555 (holding that evidence of other accidents is admissible on notice issue because the other accidents were similar enough to the one involved to have alerted defendant to the problem).   Certainly, accidents that happened to a heater that was not substantially similar to the one involved in this accident, and which occurred under circumstances that were substantially different than the incident in this case, do not meet the test and should be excluded for all purposes.

 <u>Fifth</u>, evidence of any changes in design or information related to later model heaters could be construed as subsequent remedial measures. In the Ninth Circuit, evidence of subsequent remedial measures is <u>not</u> admissible in a products liability action. Fed. R. Evid. 407; *Fasanaro v. Mooney Aircraft Corp.*, 687 F. Supp. 482 (N.D. Cal. 1988); see also <u>Ault</u>, 13 Cal. 3d, 118; Cal. Evid. Code § 1151 (West).

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

**<u>Plaintiffs Have Offered No Evidence That The Information They Seek Encompasses Heater Models Which Are In Any Way Similar To The Quartz Class Of Heaters Or The Subject HQH307</u>**

The Plaintiffs in this case have requested information regarding each and every heater ever manufactured by Sunbeam or its predecessor companies. As set forth above, without a showing of product similarity, this information is not discoverable. **(**See <u>Brake</u>, 184 Cal. App. 3d, 937. Plaintiffs have not even attempted to establish any recognizable similarity between the subject HQH307 and any other Sunbeam heater. More recently, Sunbeam has manufactured and sold seven different types of heaters. Specifically, Sunbeam sells: Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters. In 2011, Sunbeam manufactured 4,930,923 heaters, including 167 different models of heaters. In 2012, Sunbeam manufactured 2,892,243 heaters, including 153 different models of heaters. To date, in 2013, Sunbeam manufactured 3,126,103 heaters, including 144 different models of heaters. These totals and models include all classes of heaters. (See Affidavit of Richard J. Prins "Prins Decl." ¶ 6). Each of the different classes of heaters has different designs and varies in their operation and characteristics. Thus, this Court should deny Plaintiffs' discovery requests in its entirety, because the Quartz class of heaters, and the subject HQH307, are unique in Sunbeam's line of heater products and open ended discovery regarding hundreds of different models and millions of different eaters is simply impermissibly overbroad.

### a.   <u>The Quartz Heater Class and Subject HQH307 are Unlike Other Sunbeam Heaters</u>

Plaintiffs attempt to argue that they are entitled to information regarding all of Sunbeam's heaters because of a "generic" defect in all Sunbeam heaters. Plaintiffs provide absolutely no evidence or support for this allegation. Sunbeam sells over 100 different model heaters each year which are designed to meet the specific needs of Sunbeam's consumers. (Prins Decl. ¶ 5). The Quartz class heaters, and the subject

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 91403
PHONE (323) 658-8O77 | FAX (323) 658-8477

1   HQH307, are unlike Sunbeam's other heater classes and have distinct characteristics.

2          **b.      The Design of the Quartz Heaters and the Subject HQH307 is**

3          **Unique**

4          The subject product is believed to be a Holmes HQH307 Quartz Heater.

5   Quartz Heaters are equipped with a resistive element encased in a quartz tube. (Prins

6   Decl. ¶ 7). This design is exclusive to the Quartz Heater models. (Prins Decl. ¶ 7).

7   Further, the design of current Quartz Heater models differs from the Quartz Heaters

8   manufactured prior to 2010/2011 as they were equipped with a ceramic disc with a

9   push button manual reset thermostat. (Prins Decl. ¶ 8). Whereas, the Quartz Heaters

10  manufactured post 2010/2011 through the present are equipped with a manual rest

11  thermostat and one-shot fuse. (Prins Decl. ¶ 8). No other heater classes utilize these

12  devices. (Prins Decl. ¶ 9).

13         The construction of Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen

14  Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters are all quite

15  different. For example, Fan Heaters incorporate an octopus heating element (resistive

16  wire coiled into an octagon shape held with mica plates; Ceramic Heaters incorporate

17  a ceramic heating element (ceramic chips glued together to metal heat sinks);

18  Micathermic and Low-Profile Radiant Heaters incorporate a stitched wire element or

19  micathermic plate; PRH/HRH Radiant Heaters incorporate wire elements with

20  ceramic stand-offs; Halogen Heaters incorporate a halogen heating element; Utility

21  Heaters incorporate a coiled element with ceramic standoffs; Oil-Water-filled Heaters

22  incorporate stamped metal welded cavities for oil or water; and Quartz Heaters

23  incorporate a resistive element encased in a quartz tube. (Prins Decl. ¶ 9).

24         Most significantly, each class of heater utilizes its own overheat technology.

25  (Prins Decl. ¶ 10). The design of the subject HQH307 and Quartz Heaters is unique

26  as they are the only products that incorporate a ceramic disc with push button manual

27  reset thermostat. (Prins Decl. ¶ 10).

28

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

### c.   Underwriters Laboratories Issued A Report Addressing Only the Quartz Heaters Due to the Distinct Characteristics of the Products

Underwriters Laboratories ("UL") issued its listing report addressing Quartz Heaters Models HQH, BQH or PQH followed by 307, 308, 309, 309A, 319 or 319A and SQH followed by 310 or 315 due to the distinct characteristics of these products. (Prins Decl. ¶ 7).  Sunbeam produced all documents, including claim and lawsuit information, related to the above- referenced models contained in the UL listing file, including the listing file itself.  (McNulty Decl. ¶25) A UL listing file is created whenever a product manufacturer seeks an evaluation and independent testing by UL that its product meets UL's standards for product safety.  The documents within the UL file include:  testing documents which details the tests which a product must pass prior to obtaining UL certification; results of testing conducted by both UL and the manufacturer; all correspondence between a manufacturer and UL; product drawings; product manuals; detailed information about product components; reports about UL site visits to manufacturer's facilities and any other document generated that may pertain to a products' make-up or performance with respect to safety.  UL groups these documents into files which are separated by product classification ("similar products" are all contained under the same product classification).

Underwriters Laboratories (UL) makes an independent evaluation of heater models and groups of heater to determine whether there are enough similarities between classes of heaters, as well as particular models within a class of heaters, to require independent testing or whether they can be evaluated as a group.  (Prins Decl. ¶ 7).  By grouping these particular model heaters together, UL independently decided that there were enough similarities in design and operation to be tested and listed together.  (Prins Decl. ¶ 7).  If other heaters were also similar they would have been listed together.  (Prins Decl. ¶ 7).  Each class of heaters is individually tested by Underwriters Laboratories and each class of heater has a unique UL listing file as UL

THE HOMAMPOUR LAW FIRM, PLC
1503 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

1  proscribes tests and specifications for each of these classes of heaters.  (Prins Decl. ¶

2  11).  As reports issued by UL only address heater models which are similar in design

3  and configuration, the Quartz Heaters are unlike Sunbeam's other heater models and

4  classes.  (Prins Decl. ¶ 11).

5  In total, Sunbeam has produced to Plaintiffs 3,336 pages of documents which

6  include Quartz heater related documents.   (McNulty Decl ¶26) The documents

7  produced by Sunbeam provide information regarding product design and

8  specifications, quality control procedures, work product instructions, the standards

9  under which the models were made, the tests completed on the models prior to sale

10  by Sunbeam and UL, the components that made up the finished products, as well as

11  the specifics about the components. (McNulty Decl ¶26) Sunbeam has produced all

12  of the documentation in its possession regarding heater models which are similar to

13  the subject HQH307. (McNulty Decl ¶27)  In addition, Sunbeam has produced all

14  documentation in its possession regarding incidents involving these similar products.

15  (McNulty Decl ¶28) For these reasons, this Court should deny Plaintiffs' discovery

16  requests in their entirety.

17

18  **Addison Shinedling's Special Interrogatory No. 9:**

19  IDENTIFY what You did in response to any each and every PERSON who

20  reported, made a complaint to YOU, or who claims (including warranty claims and

21  notice of defect) to have been injured to their person or property by any HOME

22  HEATER due to a fire hazard, which was designed, manufactured, or distributed by

23  YOU including the full name, address and phone numbers of the PERSON(s) making

24  the COMMUNICATION or claim, the full name, address and phone numbers of the

25  PERSON(s) receiving the COMMUNICATION or claim, the date of the

26  COMMUNICATION, the method of COMMUNICATION (e.g. phone, email, letter,

27  etc.), the model and year of the HOME HEATER involved, the date of the incident,

28  the location of the incident, the title and case number of the action, the complete

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 I 4O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

1  name and address of the court involved, and the full name, address and telephone

2  number of the attorney for the plaintiff of each action.

3  **Defendant's Response:**

4  Objection. This interrogatory is vague, ambiguous and overly broad in time

5  and scope. Further objecting, this interrogatory seeks information which is related to

6  other products which are not the same as or similar to the subject product and,

7  consequently, will not lead to admissible evidence.

8  **Defendant's Amended Response:**

9  Sunbeam incorporates by reference herein its objections set forth above.

10  Without waiving these objections, see information contained in the previously

11  produced correspondence with the Consumer Product Safety Commission (CPSC)

12  Bates Stamped: SPI001213-SPI2563. The correspondence also includes information

13  regarding heaters similar in design to the HQH307.

14  **Plaintiff's Reasons Why Further Responses Should be Ordered:**

15  For the same reasons noted as to Kenneth Shinedling's Special Interrogatory

16  No. 3, Defendant should be ordered to provide a further response to this interrogatory

17  that involves all HOME HEATERS.

18  **Defendant's Reasons Why Further Responses Should Not be Ordered:**

19  Plaintiffs allege, without any support, that the specific model heater a

20  (HQH307 Tower Quartz heater) is defective because it failed to have a properly

21  installed sensor that would have turned the heater off and/or given a warning to users.

22  Plaintiffs further claim that this is a "generic defect" in all home heaters.  On these

23  specious bases, Plaintiffs seek evidence relating to <u>any single type of home heater</u>

24  made by Sunbeam. The requested discovery is not relevant to the subject matter

25  involved in a pending action if the inquiry is only based on the requesting party's

26  mere suspicion or speculation. *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d

27  1318, 1324 (Fed. Cir. 1990).

28  <u>First</u>, Plaintiffs' requests constitute an impermissible fishing expedition that is

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 1 4O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

1    not reasonably calculated to lead to the discovery of information relevant to

2    Plaintiffs' claims. Fed. R. Civ. P. 26(b)(1). In fact, the requests place more burden on

3    Sunbeam than the value of the information warrants. *Greyhound Corp. v. Superior*

4    *Court In & For Merced Cnty.*, 56 Cal. 2d 355, 384, 364 P.2d 266 (1961). "The

5    district court enjoys broad discretion when resolving discovery disputes, which

6    should be exercised by determining the relevance of discovery requests, assessing

7    oppressiveness, and weighing these factors in deciding whether discovery should be

8    compelled." *Id.* (internal citations and quotation marks omitted).

9        <u>Second</u>, while a party may request documents "in the responding party's

10   possession, custody, or control" pursuant to Fed. R. Civ. P. 26(b)(1), 34(b) requires

11   the requesting party to describe the items to be produced with "reasonable

12   particularity" and specify a reasonable time, place, and manner for the inspection.

13   Fed. R. Civ. P. 34(b)(1-2). A discovery request should be sufficiently definite and

14   limited in scope that it can be said 'to apprise a person of ordinary intelligence what

15   documents are required and [to enable] the court . . . to ascertain whether the

16   requested documents have been produced.'" *Regan-Touhy v. Walgreen Co.*, 526 F.3d

17   641, 649-50 (10th Cir. 2008)(quoting Wright & Miller, 8A Federal Practice and

18   Procedure § 2211, at 415). "'All-encompassing demands' that do not allow a

19   reasonable person to ascertain which documents are required do not meet the

20   particularity standard of Fed. R. Civ. P. 34(b)(1)(A)." *In re Asbestos Products Liab.*

21   *Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009). The requests for information

22   related to "all heaters" without limitation as to model or brand, time or scope, are not

23   reasonably particular, and they do not meet the particularity standard. On this basis

24   alone, the Court should deny Plaintiffs' discovery requests as overbroad.

25        <u>Third</u>, not only are the requests impermissibly overbroad and burdensome, but

26   evidence of other incidents, accidents or complaints are not admissible to prove a

27   defect unless Plaintiffs can show that the circumstances and details of the other

28   accidents and complaints are "substantially similar" to the facts of the accident in this

THE HOMAMPOUR LAW FIRM, PLC
1530 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

1  case.[15]  *See Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir.
2  1991)(citations omitted) ("[a] showing of substantial similarity is required when a
3  plaintiff attempts to introduce evidence of other accidents as direct proof of
4  negligence, a design defect, or notice of the defect"); *See also Ault v. Int'l Harvester*
5  *Co.*, 13 Cal. 3d 113, 121-122, 528 P.2d 1148 (1974); *Elsworth v. Beech Aircraft*
6  *Corp.*, 37 Cal. 3d 540, 555, 691 P.2d 630 (1984)(holding that evidence of prior
7  accidents is admissible only if they are similar and not too remote).   Substantial
8  similarity must exist in the overall circumstances of the incidents – not merely
9  component parts – that a party wishes to compare to the incident giving rise to the
10  pending matter.   See e.g. *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979
11  F.2d 1434 (10th Cir. 1992).

12      To be "substantially similar", the other accidents, incidents, complaints and
13  lawsuits must not only involve heaters with the same parts, but must also involve
14  similar time, place or circumstance.   *See Brake v. Beech Aircraft Corp.*, 184 Cal.
15  App. 3d 930, 937, 229 Cal. Rptr. 336 (Ct. App. 1986)(evidence of other accidents
16  could not be admitted to show airplane defectively designed because plaintiff failed
17  to lay foundation of similarity for flight altitude, trim settings, engine power, loading,
18  weather conditions, altitudes, feathering, etc.); *see also Kopfinger v. Grand Cent.*
19  *Pub. Mkt.*, 60 Cal. 2d 852, 860-861, 389 P.2d 529 (1964)(holding the circumstances
20  of proffered accidents to be dissimilar to facts of case and that trial court was well
21  within its discretion in excluding such evidence).   Likewise, Plaintiffs would also
22  have to establish that the other accidents, incidents, complaints and lawsuits they seek
23  to introduce involve a heater with the same equipment and maintenance condition as

24  _____

25  [15] While Sunbeam acknowledges that admissibility is not the test, discovery may only
26  ordered if it is possible that information in a particular subject area could be relevant
   or admissible at the time of trial.   *Maldonado v. Superior Court*, 94 Cal. App. 4th
   1390, 1397, 115 Cal. Rptr. 2d 137 (2002).   Surely, there is no possibility that the
27  broad scope of information sought by plaintiffs will be admissible at trial due to the
   authorities cited herein.
28

the heater involved in this accident, and that the other heaters had not been altered or misused.  It is important that Plaintiffs establish the similarity of all of these factors because each of them may have  contributed in some way to the occurrence of <u>this</u> incident.

<u>Fourth</u>, evidence of other incidents is not relevant for purposes of notice. Even if notice were an issue in this case, which Sunbeam contends it is not, for a prior accident to be admissible under a "notice" theory, any prior accident must be such as to alert the defendant to the alleged dangerous condition. *Elsworth*, 37 Cal. 3d at 555 (holding that evidence of other accidents is admissible on notice issue because the other accidents were similar enough to the one involved to have alerted defendant to the problem).   Certainly, accidents that happened to a heater that was not substantially similar to the one involved in this accident, and which occurred under circumstances that were substantially different than the incident in this case, do not meet the test and should be excluded for all purposes.

<u>Fifth</u>, evidence of any changes in design or information related to later model heaters could be construed as subsequent remedial measures. In the Ninth Circuit, evidence of subsequent remedial measures is <u>not</u> admissible in a products liability action. Fed. R. Evid. 407; *Fasanaro v. Mooney Aircraft Corp.*, 687 F. Supp. 482 (N.D. Cal. 1988); see also <u>Ault</u>, 13 Cal. 3d, 118; Cal. Evid. Code § 1151 (West).

### **Plaintiffs Have Offered No Evidence That The Information They Seek Encompasses Heater Models Which Are In Any Way Similar To The Quartz Class Of Heaters Or The Subject HQH307**

The Plaintiffs in this case have requested information regarding each and every heater ever manufactured by Sunbeam or its predecessor companies. As set forth above, without a showing of product similarity, this information is not discoverable. (*See* <u>Brake</u>, 184 Cal. App. 3d, 937.  Plaintiffs have not even attempted to establish any recognizable similarity between the subject HQH307 and any other Sunbeam heater.  More recently, Sunbeam has manufactured and sold seven different types of

THE HOMAMPOUR LAW FIRM, PLC
1503 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

heaters.   Specifically, Sunbeam sells:   Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters.  In 2011, Sunbeam manufactured 4,930,923 heaters, including 167 different models of heaters.  In 2012, Sunbeam manufactured 2,892,243 heaters, including 153 different models of heaters.   To date, in 2013, Sunbeam manufactured 3,126,103 heaters, including 144 different models of heaters.  These totals and models include all classes of heaters.  (See Affidavit of Richard J. Prins "Prins Decl." ¶ 6).  Each of the different classes of heaters has different designs and varies in their operation and characteristics.   Thus, this Court should deny Plaintiffs' discovery requests in its entirety, because the Quartz class of heaters, and the subject HQH307, are unique in Sunbeam's line of heater products and open ended discovery regarding hundreds of different models and millions of different eaters is simply impermissibly overbroad.

### a.   The Quartz Heater Class and Subject HQH307 are Unlike Other Sunbeam Heaters

Plaintiffs attempt to argue that they are entitled to information regarding all of Sunbeam's heaters because of a "generic" defect in all Sunbeam heaters.  Plaintiffs provide absolutely no evidence or support for this allegation.  Sunbeam sells over 100 different model heaters each year which are designed to meet the specific needs of Sunbeam's consumers.  (Prins Decl. ¶ 5).   The Quartz class heaters, and the subject HQH307, are unlike Sunbeam's other heater classes and have distinct characteristics.

### b.   The Design of the Quartz Heaters and the Subject HQH307 is Unique

The subject product is believed to be a Holmes HQH307 Quartz Heater.  Quartz Heaters are equipped with a resistive element encased in a quartz tube.  (Prins Decl. ¶ 7).  This design is exclusive to the Quartz Heater models.  (Prins Decl. ¶ 7).  Further, the design of current Quartz Heater models differs from the Quartz Heaters manufactured prior to 2010/2011 as they were equipped with a ceramic disc with a push button manual reset thermostat.  (Prins Decl. ¶ 8).  Whereas, the Quartz Heaters

THE HOMAMPOUR LAW FIRM, PLC
1503 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
1503 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

1   manufactured post 2010/2011 through the present are equipped with a manual rest

2   thermostat and one-shot fuse.  (Prins Decl. ¶ 8).  No other heater classes utilize these

3   devices. (Prins Decl. ¶ 9).

4         The construction of Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen

5   Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters are all quite

6   different. For example, Fan Heaters incorporate an octopus heating element (resistive

7   wire coiled into an octagon shape held with mica plates; Ceramic Heaters incorporate

8   a ceramic heating element (ceramic chips glued together to metal heat sinks);

9   Micathermic and Low-Profile Radiant Heaters incorporate a stitched wire element or

10  micathermic plate;  PRH/HRH Radiant Heaters incorporate wire elements with

11  ceramic stand-offs; Halogen Heaters incorporate a halogen heating element; Utility

12  Heaters incorporate a coiled element with ceramic standoffs; Oil-Water-filled Heaters

13  incorporate stamped metal welded cavities for oil or water; and Quartz Heaters

14  incorporate a resistive element encased in a quartz tube.  (Prins Decl. ¶ 9).

15        Most significantly, each class of heater utilizes its own overheat technology.

16  (Prins Decl. ¶ 10).  The design of the subject HQH307 and Quartz Heaters is unique

17  as they are the only products that incorporate a ceramic disc with push button manual

18  reset thermostat.  (Prins Decl. ¶ 10).

19        c.   **Underwriters Laboratories Issued A Report Addressing Only**

20             **the Quartz Heaters Due to the Distinct Characteristics of the**

21             **Products**

22        Underwriters Laboratories ("UL") issued its listing report addressing Quartz

23  Heaters Models HQH, BQH or PQH followed by 307, 308, 309, 309A, 319 or 319A

24  and SQH followed by 310 or 315 due to the distinct characteristics of these products.

25  (Prins Decl. ¶ 7).  Sunbeam produced all documents, including claim and lawsuit

26  information, related to the above- referenced models contained in the UL listing file,

27  including the listing file itself.  (McNulty Decl. ¶25) A UL listing file is created

28  whenever a product manufacturer seeks an evaluation and independent testing by UL

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 91403
PHONE (323) 658-8O77 | FAX (323) 658-8477

that its product meets UL's standards for product safety.  The documents within the UL file include:  testing documents which details the tests which a product must pass prior to obtaining UL certification; results of testing conducted by both UL and the manufacturer; all correspondence between a manufacturer and UL; product drawings; product manuals; detailed information about product components; reports about UL site visits to manufacturer's facilities and any other document generated that may pertain to a products' make-up or performance with respect to safety.  UL groups these documents into files which are separated by product classification ("similar products" are all contained under the same product classification).

Underwriters Laboratories (UL) makes an independent evaluation of heater models and groups of heater to determine whether there are enough similarities between classes of heaters, as well as particular models within a class of heaters, to require independent testing or whether they can be evaluated as a group.  (Prins Decl. ¶ 7).  By grouping these particular model heaters together, UL independently decided that there were enough similarities in design and operation to be tested and listed together.  (Prins Decl. ¶ 7).  If other heaters were also similar they would have been listed together.  (Prins Decl. ¶ 7).  Each class of heaters is individually tested by Underwriters Laboratories and each class of heater has a unique UL listing file as UL proscribes tests and specifications for each of these classes of heaters.  (Prins Decl. ¶ 11).  As reports issued by UL only address heater models which are similar in design and configuration, the Quartz Heaters are unlike Sunbeam's other heater models and classes.  (Prins Decl. ¶ 11).

In total, Sunbeam has produced to Plaintiffs 3,336 pages of documents which include Quartz heater related documents.  (McNulty Decl ¶26) The documents produced by Sunbeam provide information regarding product design and specifications, quality control procedures, work product instructions, the standards under which the models were made, the tests completed on the models prior to sale by Sunbeam and UL, the components that made up the finished products, as well as

the specifics about the components. (McNulty Decl ¶26) Sunbeam has produced all of the documentation in its possession regarding heater models which are similar to the subject HQH307. (McNulty Decl ¶27)  In addition, Sunbeam has produced all documentation in its possession regarding incidents involving these similar products. (McNulty Decl ¶28) For these reasons, this Court should deny Plaintiffs' discovery requests in their entirety.

**Addison Shinedling's Special Interrogatory No. 12:**

IDENTIFY each and every patent which YOU have applied for, have been issued to YOU, have been assigned to YOU, for any HOME HEATER, for any OVERHEAT feature, or other safety feature (including but not limited to) Tip-over, Manual user reset, Cool-touch plastic housing, and Auto shut-off. (The term "OVERHEAT" refers to the design feature of YOUR HOME HEATERS whereby the heater is to shut off if it is overheated.).

**Defendant's Response:**

Objection. This interrogatory is vague, ambiguous and overly broad in time and scope. Further objecting, this interrogatory seeks information which is related to other products which are not the same as or similar to the subject product and, consequently, will not lead to admissible evidence.

**Defendant's Amended Response:**

Sunbeam incorporates by reference herein its objections set forth above. Without waiving these objections, the patent applicable to the subject heater has been produced. See documents Bates Stamped: SPI003143-SPI003194.

**Plaintiff's Reasons Why Further Responses Should be Ordered:**

For the same reasons noted as to Kenneth Shinedling's Special Interrogatory No. 3, Defendant should be ordered to provide a further response to this interrogatory that involves all HOME HEATERS.

**<u>Defendant's Reasons Why Further Responses Should Not be Ordered:</u>**

Plaintiffs allege, without any support, that the specific model heater a (HQH307 Tower Quartz heater) is defective because it failed to have a properly installed sensor that would have turned the heater off and/or given a warning to users. Plaintiffs further claim that this is a "generic defect" in all home heaters. On these specious bases, Plaintiffs seek evidence relating to <u>any single type of home heater</u> made by Sunbeam. The requested discovery is not relevant to the subject matter involved in a pending action if the inquiry is only based on the requesting party's mere suspicion or speculation. *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1324 (Fed. Cir. 1990).

<u>First</u>, Plaintiffs' requests constitute an impermissible fishing expedition that is not reasonably calculated to lead to the discovery of information relevant to Plaintiffs' claims. Fed. R. Civ. P. 26(b)(1). In fact, the requests place more burden on Sunbeam than the value of the information warrants. *Greyhound Corp. v. Superior Court In & For Merced Cnty.*, 56 Cal. 2d 355, 384, 364 P.2d 266 (1961). "The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." *Id.* (internal citations and quotation marks omitted).

<u>Second</u>, while a party may request documents "in the responding party's possession, custody, or control" pursuant to Fed. R. Civ. P. 26(b)(1), 34(b) requires the requesting party to describe the items to be produced with "reasonable particularity" and specify a reasonable time, place, and manner for the inspection. Fed. R. Civ. P. 34(b)(1-2). A discovery request should be sufficiently definite and limited in scope that it can be said 'to apprise a person of ordinary intelligence what documents are required and [to enable] the court . . . to ascertain whether the requested documents have been produced.'" *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 (10th Cir. 2008)(quoting Wright & Miller, 8A Federal Practice and

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 914O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

Procedure § 2211, at 415). "'All-encompassing demands' that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Fed. R. Civ. P. 34(b)(1)(A)." *In re Asbestos Products Liab. Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009).  The requests for information related to "all heaters" without limitation as to model or brand, time or scope, are not reasonably particular, and they do not meet the particularity standard.  On this basis alone, the Court should deny Plaintiffs' discovery requests as overbroad.

    <u>Third</u>, not only are the requests impermissibly overbroad and burdensome, but evidence of other incidents, accidents or complaints are not admissible to prove a defect unless Plaintiffs can show that the circumstances and details of the other accidents and complaints are "substantially similar" to the facts of the accident in this case.[16]  *See Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991)(citations omitted) ("[a] showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect"); *See also Ault v. Int'l Harvester Co.*, 13 Cal. 3d 113, 121-122, 528 P.2d 1148 (1974); *Elsworth v. Beech Aircraft Corp.*, 37 Cal. 3d 540, 555, 691 P.2d 630 (1984)(holding that evidence of prior accidents is admissible only if they are similar and not too remote).  Substantial similarity must exist in the overall circumstances of the incidents – not merely component parts – that a party wishes to compare to the incident giving rise to the pending matter.  See e.g. *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434 (10th Cir. 1992).

    To be "substantially similar", the other accidents, incidents, complaints and

---

[16] While Sunbeam acknowledges that admissibility is not the test, discovery may only ordered if it is possible that information in a particular subject area could be relevant or admissible at the time of trial.  *Maldonado v. Superior Court*, 94 Cal. App. 4th 1390, 1397, 115 Cal. Rptr. 2d 137 (2002).  Surely, there is no possibility that the broad scope of information sought by plaintiffs will be admissible at trial due to the authorities cited herein.

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

1   lawsuits must not only involve heaters with the same parts, but must also involve

2   similar time, place or circumstance.  *See Brake v. Beech Aircraft Corp.*, 184 Cal.

3   App. 3d 930, 937, 229 Cal. Rptr. 336 (Ct. App. 1986)(evidence of other accidents

4   could not be admitted to show airplane defectively designed because plaintiff failed

5   to lay foundation of similarity for flight altitude, trim settings, engine power, loading,

6   weather conditions, altitudes, feathering, etc.); *see also Kopfinger v. Grand Cent.*

7   *Pub. Mkt.*, 60 Cal. 2d 852, 860-861, 389 P.2d 529 (1964)(holding the circumstances

8   of proffered accidents to be dissimilar to facts of case and that trial court was well

9   within its discretion in excluding such evidence).  Likewise, Plaintiffs would also

10  have to establish that the other accidents, incidents, complaints and lawsuits they seek

11  to introduce involve a heater with the same equipment and maintenance condition as

12  the heater involved in this accident, and that the other heaters had not been altered or

13  misused.  It is important that Plaintiffs establish the similarity of all of these factors

14  because each of them may have  contributed in some way to the occurrence of <u>this</u>

15  incident.

16      Fourth, evidence of other incidents is not relevant for purposes of notice. Even

17  if notice were an issue in this case, which Sunbeam contends it is not, for a prior

18  accident to be admissible under a "notice" theory, any prior accident must be such as

19  to alert the defendant to the alleged dangerous condition.  *Elsworth*, 37 Cal. 3d at 555

20  (holding that evidence of other accidents is admissible on notice issue because the

21  other accidents were similar enough to the one involved to have alerted defendant to

22  the problem).   Certainly, accidents that happened to a heater that was not

23  substantially similar to the one involved in this accident, and which occurred under

24  circumstances that were substantially different than the incident in this case, do not

25  meet the test and should be excluded for all purposes.

26      Fifth, evidence of any changes in design or information related to later model

27  heaters could be construed as subsequent remedial measures. In the Ninth Circuit,

28  evidence of subsequent remedial measures is <u>not</u> admissible in a products liability

1  action. Fed. R. Evid. 407; *Fasanaro v. Mooney Aircraft Corp.*, 687 F. Supp. 482
2  (N.D. Cal. 1988); see also <u>Ault</u>, 13 Cal. 3d, 118; Cal. Evid. Code § 1151 (West).

3  **Plaintiffs Have Offered No Evidence That The Information They Seek**
4  **Encompasses Heater Models Which Are In Any Way Similar To The**
5  **Quartz Class Of Heaters Or The Subject HQH307**

6  The Plaintiffs in this case have requested information regarding each and every
7  heater ever manufactured by Sunbeam or its predecessor companies. As set forth
8  above, without a showing of product similarity, this information is not discoverable.
9  (*See* <u>Brake</u>, 184 Cal. App. 3d, 937. Plaintiffs have not even attempted to establish
10 any recognizable similarity between the subject HQH307 and any other Sunbeam
11 heater. More recently, Sunbeam has manufactured and sold seven different types of
12 heaters. Specifically, Sunbeam sells: Fan Heaters, Ceramic Heaters, Radiant
13 Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz
14 Heaters. In 2011, Sunbeam manufactured 4,930,923 heaters, including 167 different
15 models of heaters. In 2012, Sunbeam manufactured 2,892,243 heaters, including 153
16 different models of heaters. To date, in 2013, Sunbeam manufactured 3,126,103
17 heaters, including 144 different models of heaters. These totals and models include
18 all classes of heaters. (See Affidavit of Richard J. Prins "Prins Decl." ¶ 6). Each of
19 the different classes of heaters has different designs and varies in their operation and
20 characteristics. Thus, this Court should deny Plaintiffs' discovery requests in its
21 entirety, because the Quartz class of heaters, and the subject HQH307, are unique in
22 Sunbeam's line of heater products and open ended discovery regarding hundreds of
23 different models and millions of different eaters is simply impermissibly overbroad.

24  **a.   The Quartz Heater Class and Subject HQH307 are Unlike**
25  **Other Sunbeam Heaters**

26  Plaintiffs attempt to argue that they are entitled to information regarding all of
27  Sunbeam's heaters because of a "generic" defect in all Sunbeam heaters. Plaintiffs
28  provide absolutely no evidence or support for this allegation. Sunbeam sells over 100

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 91 4O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

1   different model heaters each year which are designed to meet the specific needs of

2   Sunbeam's consumers.  (Prins Decl. ¶ 5).   The Quartz class heaters, and the subject

3   HQH307, are unlike Sunbeam's other heater classes and have distinct characteristics.

4           **b.**    **The Design of the Quartz Heaters and the Subject HQH307 is**

5               **Unique**

6         The subject product is believed to be a Holmes HQH307 Quartz Heater.

7   Quartz Heaters are equipped with a resistive element encased in a quartz tube.  (Prins

8   Decl. ¶ 7).  This design is exclusive to the Quartz Heater models.  (Prins Decl. ¶ 7).

9   Further, the design of current Quartz Heater models differs from the Quartz Heaters

10  manufactured prior to 2010/2011 as they were equipped with a ceramic disc with a

11  push button manual reset thermostat.  (Prins Decl. ¶ 8).  Whereas, the Quartz Heaters

12  manufactured post 2010/2011 through the present are equipped with a manual rest

13  thermostat and one-shot fuse.  (Prins Decl. ¶ 8).  No other heater classes utilize these

14  devices. (Prins Decl. ¶ 9).

15        The construction of Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen

16  Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters are all quite

17  different. For example, Fan Heaters incorporate an octopus heating element (resistive

18  wire coiled into an octagon shape held with mica plates; Ceramic Heaters incorporate

19  a ceramic heating element (ceramic chips glued together to metal heat sinks);

20  Micathermic and Low-Profile Radiant Heaters incorporate a stitched wire element or

21  micathermic plate; PRH/HRH Radiant Heaters incorporate wire elements with

22  ceramic stand-offs; Halogen Heaters incorporate a halogen heating element; Utility

23  Heaters incorporate a coiled element with ceramic standoffs; Oil-Water-filled Heaters

24  incorporate stamped metal welded cavities for oil or water; and Quartz Heaters

25  incorporate a resistive element encased in a quartz tube.  (Prins Decl. ¶ 9).

26        Most significantly, each class of heater utilizes its own overheat technology.

27  (Prins Decl. ¶ 10).  The design of the subject HQH307 and Quartz Heaters is unique

28  as they are the only products that incorporate a ceramic disc with push button manual

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

1   reset thermostat.  (Prins Decl. ¶ 10).

2   **c.**   **Underwriters Laboratories Issued A Report Addressing Only**

3   **the Quartz Heaters Due to the Distinct Characteristics of the**

4   **Products**

5   Underwriters Laboratories ("UL") issued its listing report addressing Quartz

6   Heaters Models HQH, BQH or PQH followed by 307, 308, 309, 309A, 319 or 319A

7   and SQH followed by 310 or 315 due to the distinct characteristics of these products.

8   (Prins Decl. ¶ 7).  Sunbeam produced all documents, including claim and lawsuit

9   information, related to the above- referenced models contained in the UL listing file,

10  including the listing file itself.  (McNulty Decl. ¶25) A UL listing file is created

11  whenever a product manufacturer seeks an evaluation and independent testing by UL

12  that its product meets UL's standards for product safety.  The documents within the

13  UL file include:  testing documents which details the tests which a product must pass

14  prior to obtaining UL certification; results of testing conducted by both UL and the

15  manufacturer; all correspondence between a manufacturer and UL; product drawings;

16  product manuals; detailed information about product components; reports about UL

17  site visits to manufacturer's facilities and any other document generated that may

18  pertain to a products' make-up or performance with respect to safety.  UL groups

19  these documents into files which are separated by product classification ("similar

20  products" are all contained under the same product classification).

21  Underwriters Laboratories (UL) makes an independent evaluation of heater

22  models and groups of heater to determine whether there are enough similarities

23  between classes of heaters, as well as particular models within a class of heaters, to

24  require independent testing or whether they can be evaluated as a group.  (Prins Decl.

25  ¶ 7).  By grouping these particular model heaters together, UL independently decided

26  that there were enough similarities in design and operation to be tested and listed

27  together.  (Prins Decl. ¶ 7).  If other heaters were also similar they would have been

28  listed together.  (Prins Decl. ¶ 7).  Each class of heaters is individually tested by

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

1  Underwriters Laboratories and each class of heater has a unique UL listing file as UL
2  proscribes tests and specifications for each of these classes of heaters.  (Prins Decl. ¶
3  11).  As reports issued by UL only address heater models which are similar in design
4  and configuration, the Quartz Heaters are unlike Sunbeam's other heater models and
5  classes.  (Prins Decl. ¶ 11).

6      In total, Sunbeam has produced to Plaintiffs 3,336 pages of documents which
7  include Quartz heater related documents.   (McNulty Decl ¶26) The documents
8  produced   by   Sunbeam   provide   information   regarding   product   design   and
9  specifications, quality control procedures, work product instructions, the standards
10 under which the models were made, the tests completed on the models prior to sale
11 by Sunbeam and UL, the components that made up the finished products, as well as
12 the specifics about the components. (McNulty Decl ¶26) Sunbeam has produced all
13 of the documentation in its possession regarding heater models which are similar to
14 the subject HQH307. (McNulty Decl ¶27)  In addition, Sunbeam has produced all
15 documentation in its possession regarding incidents involving these similar products.
16 (McNulty Decl ¶28) For these reasons, this Court should deny Plaintiffs' discovery
17 requests in their entirety.

19 **Addison Shinedling's Special Interrogatory No. 14:**

20      IDENTIFY each and every fact which supports YOUR contention, if so that
21 DECEDENT or PLAINTIFFS unreasonably misused the SUBJECT HEATER at the
22 time of the subject INCIDENT.

23      **Defendant's Response:**

24      See investigative reports produced by the San Bernardino County Sheriff
25 Department and records produced by Allstate Insurance Company; investigation
26 continues.

27      **Defendant's Amended Response:**

28      Sunbeam incorporates by reference herein its response and objections above.

This interrogatory is overly broad and calls for expert witness testimony. It is also overly broad and unduly burdensome pursuant to *IBP, Inc.*, 179 F.R.D., 321 holding that (providing "every fact" could require "laborious, time-consuming analysis, search and description of incidental, secondary, and perhaps irrelevant and trivial details.) Subject to the objections, Sunbeam responds that there is evidence that Aaron Shinedling stated that the cause of the fire were combustible materials too close to the space heater, and Aaron claims that as he ran out of the home, he saw a basket of clothing up against the space heater. These statements and conclusions are found in the Allstate file AS001381-AS001424 and in Aaron Shinedling's deposition. Sunbeam also refers Plaintiffs to the following documents which contain additional supportive information that they may deem responsive to this Interrogatory: Sheriffs Department, County of San Bernardino California Report and photographs and Supplemental Report, San  Bernardino County Sheriffs Department Coroner Division Report, County of San Diego Office of the Medical Examiner Toxicology Report, San Bernardino County Sheriff- Coroner Division Coroner Investigation Report, San Bernardino County Fire Department Incident Report, CPSC Epidemiologic Investigation Report, Internet News articles concerning incident, Facebook/internet postings from decedent and Plaintiffs, photographs taken at the scene by defendant and consultants, evidence transmittal sheets, design and manufacturing drawings for subject product, UL listing file for subject product, UL Standard 1278, the subject heater, exemplar product, confidential and non confidential documents that have been and will be produced by Sunbeam in discovery, including those documents bates numbered SPI000001-003194, all documents that have been and will be produced by Plaintiff, all documents produced in response to subpoenas and those documents that continue to be subpoenaed, all medical records for decedent and Plaintiffs, any and all documents and photographs disclosed, produced or referenced by Plaintiffs and Sunbeam during this case or by disclosure, all depositions taken to date and that will be taken in this case at any later date, written discovery contemplated but not yet

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

completed, independent investigation, documents prepared by and relied upon by experts and consultants that will be disclosed in accordance with Fed. R. Civ. P. 26(a)(2) and the Court's scheduling order.

### Plaintiff's Reasons Why Further Responses Should be Ordered:

Again, Defendant appears to be relying on Fed. R. Civ. P. 33(d) but failed to object on that basis or refer to it as basis to produce documents instead of providing an answer. Thus, the objection was waived under Fed. R. Civ. P. 33(b)(4). Second, Defendant's response is completely nonsensical. If the Defendant is relying again on Fed. R. Civ. P. 33(d) by referencing documents which contain additional supportive information that they **_may_** deem responsive to this Interrogatory, then the response is again abusive and non-responsive. Defendant essentially suggests that every document produced or subpoenaed **_may_** contain responsive. The interrogatory specifically asks for facts supporting Defendant's claim that Decedent or Plaintiffs misused the heater. Defendant has even noted in its responses that it would produce documents but its amended responses failed to provide documents responsive to this interrogatory.

### Defendant's Reasons Why Further Responses Should Not be Ordered:

First, Plaintiffs argue that Sunbeam did not reference Fed. R. Civ. P. 33(d) in its responses when it referred to documents in response to Interrogatories Nos. 14 and 21.  In response to Kenneth Shinedling's Interrogatories No. 21, Sunbeam referenced documents bates stamped "SPI000263-SPI001212", and in response to Addison Shinedling's Interrogatories No. 14, Sunbeam referenced documents bates stamped Allstate documents "AS001381-AS001424" (which are equally available to all parties by subpoena) and Sunbeam documents bates stamped "SPI000263-SPI001212".  Plaintiffs do not provide any authority for the proposition that Sunbeam was required to recite Fed. R. Civ. P. 33(d) in its response. Rather, the Rule provides that where the information sought may be obtained by examining the responding party's business records, the responding party may answer by specifying the records

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO │ SHERMAN OAKS, CA 914O3
PHONE (323) 658-8O77 │ FAX (323) 658-8477

1   from which the answer may be obtained, and make them available for inspection.

2   See Fed. R. Civ. P. 33(d); *Daiflon, Inc. v. Allied Chem. Corp.*, 534 F.2d 221, 225

3   (10th Cir. 1976)[17].  Pursuant to the rule, Sunbeam provided the responsive documents

4   in a manner that permitted the same direct and economical access that is available to

5   the Sunbeam.  See *Puerto Rico Aqueduct & Sewer Auth. v. Clow Corp.*, 108 F.R.D.

6   304, 306 (D.P.R. 1985).  Additionally, by bates numbering the records, Sunbeam also

7   adequately "specified the records" from which the answer could be derived.

8   *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 323 (C.D.

9   Cal. 2004). In sum, Sunbeam's identification of documents by Bates number is

10  sufficient pursuant to Fed. R. Civ. P. 33(d).

11      Second, in response to Addison Shinedling's Interrogatory No. 14, Sunbeam

12  also objected that the interrogatory was overbroad and unduly burdensome pursuant

13  to *IBP, Inc. v. Mercantile Bank of Topeka*, 179 F.R.D. 316, 321 (D. Kan. 1998). In

14  *IBP, Inc.*, 179 F.R.D. 316, as in Plaintiffs' Interrogatory, the request was for "every

15  fact" to support Sunbeam's contentions.  In *IBP, Inc.*, 179 F.R.D. 316, the Court held

16  that providing "every fact" could require laborious, time consuming analysis, search

17  and description of incidental, secondary, and perhaps irrelevant and trivial details.

18      Third, Plaintiffs also argue that the documents produced by Sunbeam were

19  obscured by a watermark.  In the three months that Plaintiffs have had possession of

20  these documents, Plaintiffs never addressed this alleged concern until September 11,

21  2013. (McNulty Decl ¶29) They then proceeded with this Joint Stipulation on

22  September 13, 2013. Thus, Plaintiffs never gave Sunbeam an opportunity to cure the

23  alleged defect. (McNulty Decl ¶22) While Sunbeam contends that the documents are

24  completely legible when viewed electronically, and when printed on a "copier

25  printer", in the spirit of cooperation, Sunbeam offered to re-produce the  documents

26  _____

27  [17] See also Adv. Comm. Notes to 1970 Amendment and 2006 Amendments to Fed. R.
    Civ. P. 33

28

with a lightened watermark no later than September 20, 2013. (McNulty Decl ¶30) Thus, this issue is moot.

Fourth, with respect to the production of documents in Chinese, Plaintiffs should bear the cost of translating the documents.  Plaintiffs have never articulated which documents they believe need to be translated, nor have they proposed a cost sharing approach.  (McNulty Decl ¶29) Instead, it seems that Plaintiffs want Sunbeam to do their work for them.  The requesting party must normally bear the cost of translating documents written in a foreign language.  A production request demanding translation would be unduly burdensome, especially if it comes at a time when the significance of the documents is not known.  *See In re Puerto Rico Elec. Power Auth.*, 687 F.2d, 509; *see also In re Fialuridine (FIAU) Products Liab. Litig.*, 163 F.R.D. 386, 388 (D.D.C. 1995)

Further, "[i]t is generally assumed that each party is to bear the "ordinary burden of financing his own suit." *Id.* citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974).  Without articulating which documents Plaintiffs seek to have translated and without any basis for the translation costs, forcing Sunbeam to incur the cost of translation is unduly burdensome and runs counter to the basic rules of discovery.

**Kenneth Shinedling's Production Requests to Defendant Sunbeam**

**Kenneth Shinedling's Request for Production No. 16:**

Any and all DOCUMENT/S/ELECTRONICALLY STORED INFORMATION that reflect what YOU did in response to each and every PERSON who has reported, made a complaint to YOU, or who claims (including warranty claims and notice of defect) to have been injured to their protect their person or property to any HOME HEATER designed, made, marketed or sold by YOU.

**Defendant's Response:**

Objection. This request is overly broad and unduly burdensome in that it seeks

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

1  information concerning products which are not the same or similar to the subject

2  product.

3  **Defendant's Amended Response:**

4  Sunbeam incorporates by reference herein its objections set forth above.

5  Without waiving these objections, see information contained in the previously

6  produced correspondence with the Consumer Product Safety Commission (CPSC)

7  Bates Stamped: SPI001213-SPI2563. The correspondence also includes information

8  regarding heaters similar in design to the HQH307.

9  **Plaintiff's Reasons Why Further Responses Should be Ordered:**

10  The request is neither vague nor ambiguous. Nor is the request so broad as to

11  cause Defendant to be unable to determine what information is being requested.

12  Further, the request does not limit the heater models to Holmes Quartz heaters.

13  Defendant improperly limits Plaintiffs' discovery requests to only the Holmes Quartz

14  heater, when Plaintiffs are seeking discovery that relates to any of Defendant's home

15  heaters.

16  **Defendant's Reasons Why Further Responses Should Not be Ordered:**

17  Plaintiffs allege, without any support, that the specific model heater a

18  (HQH307 Tower Quartz heater) is defective because it failed to have a properly

19  installed sensor that would have turned the heater off and/or given a warning to users.

20  Plaintiffs further claim that this is a "generic defect" in all home heaters.  On these

21  specious bases, Plaintiffs seek evidence relating to <u>any single type of home heater</u>

22  made by Sunbeam. The requested discovery is not relevant to the subject matter

23  involved in a pending action if the inquiry is only based on the requesting party's

24  mere suspicion or speculation. *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d

25  1318, 1324 (Fed. Cir. 1990).

26  <u>First</u>, Plaintiffs' requests constitute an impermissible fishing expedition that is

27  not reasonably calculated to lead to the discovery of information relevant to

28  Plaintiffs' claims.  Fed. R. Civ. P. 26(b)(1). In fact, the requests place more burden on

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

Sunbeam than the value of the information warrants. *Greyhound Corp. v. Superior Court In & For Merced Cnty.*, 56 Cal. 2d 355, 384, 364 P.2d 266 (1961). "The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." *Id.* (internal citations and quotation marks omitted).

Second, while a party may request documents "in the responding party's possession, custody, or control" pursuant to Fed. R. Civ. P. 26(b)(1), 34(b) requires the requesting party to describe the items to be produced with "reasonable particularity" and specify a reasonable time, place, and manner for the inspection. Fed. R. Civ. P. 34(b)(1-2). A discovery request should be sufficiently definite and limited in scope that it can be said 'to apprise a person of ordinary intelligence what documents are required and [to enable] the court . . . to ascertain whether the requested documents have been produced.'" *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 (10th Cir. 2008)(quoting Wright & Miller, 8A Federal Practice and Procedure § 2211, at 415). "'All-encompassing demands' that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Fed. R. Civ. P. 34(b)(1)(A)." *In re Asbestos Products Liab. Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009).  The requests for information related to "all heaters" without limitation as to model or brand, time or scope, are not reasonably particular, and they do not meet the particularity standard.  On this basis alone, the Court should deny Plaintiffs' discovery requests as overbroad.

Third, not only are the requests impermissibly overbroad and burdensome, but evidence of other incidents, accidents or complaints are not admissible to prove a defect unless Plaintiffs can show that the circumstances and details of the other accidents and complaints are "substantially similar" to the facts of the accident in this

THE HOMAMPOUR LAW FIRM, PLC
1503 VENTURA BOULEVARD - SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

1   case.[18]   *See Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir.

2   1991)(citations omitted) ("[a] showing of substantial similarity is required when a

3   plaintiff attempts to introduce evidence of other accidents as direct proof of

4   negligence, a design defect, or notice of the defect"); *See also Ault v. Int'l Harvester*

5   *Co.*, 13 Cal. 3d 113, 121-122, 528 P.2d 1148 (1974); *Elsworth v. Beech Aircraft*

6   *Corp.*, 37 Cal. 3d 540, 555, 691 P.2d 630 (1984)(holding that evidence of prior

7   accidents is admissible only if they are similar and not too remote).   Substantial

8   similarity must exist in the overall circumstances of the incidents – not merely

9   component parts – that a party wishes to compare to the incident giving rise to the

10  pending matter.   See e.g. *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979

11  F.2d 1434 (10th Cir. 1992).

12       To be "substantially similar", the other accidents, incidents, complaints and

13  lawsuits must not only involve heaters with the same parts, but must also involve

14  similar time, place or circumstance.   *See Brake v. Beech Aircraft Corp.*, 184 Cal.

15  App. 3d 930, 937, 229 Cal. Rptr. 336 (Ct. App. 1986)(evidence of other accidents

16  could not be admitted to show airplane defectively designed because plaintiff failed

17  to lay foundation of similarity for flight altitude, trim settings, engine power, loading,

18  weather conditions, altitudes, feathering, etc.); *see also Kopfinger v. Grand Cent.*

19  *Pub. Mkt.*, 60 Cal. 2d 852, 860-861, 389 P.2d 529 (1964)(holding the circumstances

20  of proffered accidents to be dissimilar to facts of case and that trial court was well

21  within its discretion in excluding such evidence).   Likewise, Plaintiffs would also

22  have to establish that the other accidents, incidents, complaints and lawsuits they seek

23  to introduce involve a heater with the same equipment and maintenance condition as

24  _____

25  [18] While Sunbeam acknowledges that admissibility is not the test, discovery may only
    ordered if it is possible that information in a particular subject area could be relevant

26  or admissible at the time of trial.   *Maldonado v. Superior Court*, 94 Cal. App. 4th
    1390, 1397, 115 Cal. Rptr. 2d 137 (2002).   Surely, there is no possibility that the

27  broad scope of information sought by plaintiffs will be admissible at trial due to the
    authorities cited herein.

28

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

the heater involved in this accident, and that the other heaters had not been altered or misused.  It is important that Plaintiffs establish the similarity of all of these factors because each of them may have  contributed in some way to the occurrence of <u>this</u> incident.

Fourth, evidence of other incidents is not relevant for purposes of notice. Even if notice were an issue in this case, which Sunbeam contends it is not, for a prior accident to be admissible under a "notice" theory, any prior accident must be such as to alert the defendant to the alleged dangerous condition.  *Elsworth*, 37 Cal. 3d at 555 (holding that evidence of other accidents is admissible on notice issue because the other accidents were similar enough to the one involved to have alerted defendant to the problem).   Certainly, accidents that happened to a heater that was not substantially similar to the one involved in this accident, and which occurred under circumstances that were substantially different than the incident in this case, do not meet the test and should be excluded for all purposes.

Fifth, evidence of any changes in design or information related to later model heaters could be construed as subsequent remedial measures. In the Ninth Circuit, evidence of subsequent remedial measures is <u>not</u> admissible in a products liability action. Fed. R. Evid. 407; *Fasanaro v. Mooney Aircraft Corp.*, 687 F. Supp. 482 (N.D. Cal. 1988); see also <u>Ault</u>, 13 Cal. 3d, 118; Cal. Evid. Code § 1151 (West).

**<u>Plaintiffs Have Offered No Evidence That The Information They Seek Encompasses Heater Models Which Are In Any Way Similar To The Quartz Class Of Heaters Or The Subject HQH307</u>**

The Plaintiffs in this case have requested information regarding each and every heater ever manufactured by Sunbeam or its predecessor companies. As set forth above, without a showing of product similarity, this information is not discoverable. (*See* <u>Brake</u>, 184 Cal. App. 3d, 937.  Plaintiffs have not even attempted to establish any recognizable similarity between the subject HQH307 and any other Sunbeam heater.  More recently, Sunbeam has manufactured and sold seven different types of

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD - SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

heaters.   Specifically, Sunbeam sells:   Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters.  In 2011, Sunbeam manufactured 4,930,923 heaters, including 167 different models of heaters.  In 2012, Sunbeam manufactured 2,892,243 heaters, including 153 different models of heaters.   To date, in 2013, Sunbeam manufactured 3,126,103 heaters, including 144 different models of heaters.  These totals and models include all classes of heaters.  (See Affidavit of Richard J. Prins "Prins Decl." ¶ 6).  Each of the different classes of heaters has different designs and varies in their operation and characteristics.    Thus, this Court should deny Plaintiffs' discovery requests in its entirety, because the Quartz class of heaters, and the subject HQH307, are unique in Sunbeam's line of heater products and open ended discovery regarding hundreds of different models and millions of different eaters is simply impermissibly overbroad.

### a.    The Quartz Heater Class and Subject HQH307 are Unlike Other Sunbeam Heaters

Plaintiffs attempt to argue that they are entitled to information regarding all of Sunbeam's heaters because of a "generic" defect in all Sunbeam heaters.  Plaintiffs provide absolutely no evidence or support for this allegation.  Sunbeam sells over 100 different model heaters each year which are designed to meet the specific needs of Sunbeam's consumers.  (Prins Decl. ¶ 5).   The Quartz class heaters, and the subject HQH307, are unlike Sunbeam's other heater classes and have distinct characteristics.

### b.    The Design of the Quartz Heaters and the Subject HQH307 is Unique

The subject product is believed to be a Holmes HQH307 Quartz Heater.  Quartz Heaters are equipped with a resistive element encased in a quartz tube.  (Prins Decl. ¶ 7).  This design is exclusive to the Quartz Heater models.  (Prins Decl. ¶ 7).  Further, the design of current Quartz Heater models differs from the Quartz Heaters manufactured prior to 2010/2011 as they were equipped with a ceramic disc with a push button manual reset thermostat.  (Prins Decl. ¶ 8).  Whereas, the Quartz Heaters

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 I 4O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

1   manufactured post 2010/2011 through the present are equipped with a manual rest

2   thermostat and one-shot fuse.  (Prins Decl. ¶ 8).  No other heater classes utilize these

3   devices. (Prins Decl. ¶ 9).

4          The construction of Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen

5   Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters are all quite

6   different. For example, Fan Heaters incorporate an octopus heating element (resistive

7   wire coiled into an octagon shape held with mica plates; Ceramic Heaters incorporate

8   a ceramic heating element (ceramic chips glued together to metal heat sinks);

9   Micathermic and Low-Profile Radiant Heaters incorporate a stitched wire element or

10  micathermic plate; PRH/HRH Radiant Heaters incorporate wire elements with

11  ceramic stand-offs; Halogen Heaters incorporate a halogen heating element; Utility

12  Heaters incorporate a coiled element with ceramic standoffs; Oil-Water-filled Heaters

13  incorporate stamped metal welded cavities for oil or water; and Quartz Heaters

14  incorporate a resistive element encased in a quartz tube.  (Prins Decl. ¶ 9).

15         Most significantly, each class of heater utilizes its own overheat technology.

16  (Prins Decl. ¶ 10).  The design of the subject HQH307 and Quartz Heaters is unique

17  as they are the only products that incorporate a ceramic disc with push button manual

18  reset thermostat.  (Prins Decl. ¶ 10).

19         **c.   <u>Underwriters Laboratories Issued A Report Addressing Only</u>**

20              **<u>the Quartz Heaters Due to the Distinct Characteristics of the</u>**

21              **<u>Products</u>**

22         Underwriters Laboratories ("UL") issued its listing report addressing Quartz

23  Heaters Models HQH, BQH or PQH followed by 307, 308, 309, 309A, 319 or 319A

24  and SQH followed by 310 or 315 due to the distinct characteristics of these products.

25  (Prins Decl. ¶ 7).  Sunbeam produced all documents, including claim and lawsuit

26  information, related to the above- referenced models contained in the UL listing file,

27  including the listing file itself.  (McNulty Decl. ¶25) A UL listing file is created

28  whenever a product manufacturer seeks an evaluation and independent testing by UL

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO │ SHERMAN OAKS, CA 9 I 4O3
PHONE (323) 658-8O77 │ FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 91403
PHONE (323) 658-8O77 | FAX (323) 658-8477

that its product meets UL's standards for product safety.  The documents within the UL file include:  testing documents which details the tests which a product must pass prior to obtaining UL certification; results of testing conducted by both UL and the manufacturer; all correspondence between a manufacturer and UL; product drawings; product manuals; detailed information about product components; reports about UL site visits to manufacturer's facilities and any other document generated that may pertain to a products' make-up or performance with respect to safety.  UL groups these documents into files which are separated by product classification ("similar products" are all contained under the same product classification).

Underwriters Laboratories (UL) makes an independent evaluation of heater models and groups of heater to determine whether there are enough similarities between classes of heaters, as well as particular models within a class of heaters, to require independent testing or whether they can be evaluated as a group.  (Prins Decl. ¶ 7).  By grouping these particular model heaters together, UL independently decided that there were enough similarities in design and operation to be tested and listed together.  (Prins Decl. ¶ 7).  If other heaters were also similar they would have been listed together.  (Prins Decl. ¶ 7).  Each class of heaters is individually tested by Underwriters Laboratories and each class of heater has a unique UL listing file as UL proscribes tests and specifications for each of these classes of heaters.  (Prins Decl. ¶ 11).  As reports issued by UL only address heater models which are similar in design and configuration, the Quartz Heaters are unlike Sunbeam's other heater models and classes.  (Prins Decl. ¶ 11).

In total, Sunbeam has produced to Plaintiffs 3,336 pages of documents which include Quartz heater related documents.   (McNulty Decl ¶26) The documents produced by Sunbeam provide information regarding product design and specifications, quality control procedures, work product instructions, the standards under which the models were made, the tests completed on the models prior to sale by Sunbeam and UL, the components that made up the finished products, as well as

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

the specifics about the components. (McNulty Decl ¶26) Sunbeam has produced all of the documentation in its possession regarding heater models which are similar to the subject HQH307. (McNulty Decl ¶27)  In addition, Sunbeam has produced all documentation in its possession regarding incidents involving these similar products. (McNulty Decl ¶28) For these reasons, this Court should deny Plaintiffs' discovery requests in their entirety.

**Kenneth Shinedling's Request for Production No. 28:**

Any and all DOCUMENTS/ELECTRONICALLY STORED INFORMATION that reflect all recalls (including both announced and silent recalls) that related in any way to any HOME HEATER.

**Defendant's Response:**

Objection. This request is vague, ambiguous and overly broad in time and scope in that is seeks information concerning products which are not the same or similar to the subject product. Without waiving these objections, the subject heater was not subject to a recall.

**Defendant's Amended Response:**

Sunbeam incorporates by reference herein its objections set forth above. Without waiving these objections, none of the Holmes Quartz heaters have been recalled.

**Plaintiff's Reasons Why Further Responses Should be Ordered:**

The request is neither vague nor ambiguous. Nor is the request so broad as to cause Defendant to be unable to determine what information is being requested. Further, the request does not limit the heater models to Holmes Quartz heaters. Defendant improperly limits Plaintiffs' discovery requests to only the Holmes Quartz heater, when Plaintiffs are seeking discovery that relates to any of Defendant's home heaters. Again, Plaintiffs allege that the subject home heater is defective because it overheated and started the fire. It failed to have a properly installed sensor that would

have turned the heater off and/or given warning to users. While the specific model heater is a HQH307 Tower Quartz heater, the defect is not unique to this model but is one that exists in home heaters in general. In other words, instances where Defendant's other home heaters overheated or started a fire is relevant to the generic defect in all home heaters. Devices, methods or warnings contained in Defendant's home heaters may be relevant to show the subject heater was defective or could have been designed to prevent the subject fire and incident.

### **Defendant's Reasons Why Further Responses Should Not be Ordered:**

Plaintiffs allege, without any support, that the specific model heater a (HQH307 Tower Quartz heater) is defective because it failed to have a properly installed sensor that would have turned the heater off and/or given a warning to users. Plaintiffs further claim that this is a "generic defect" in all home heaters.  On these specious bases, Plaintiffs seek evidence relating to <u>any single type of home heater</u> made by Sunbeam. The requested discovery is not relevant to the subject matter involved in a pending action if the inquiry is only based on the requesting party's mere suspicion or speculation. *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1324 (Fed. Cir. 1990).

<u>First</u>, Plaintiffs' requests constitute an impermissible fishing expedition that is not reasonably calculated to lead to the discovery of information relevant to Plaintiffs' claims.  Fed. R. Civ. P. 26(b)(1). In fact, the requests place more burden on Sunbeam than the value of the information warrants.  *Greyhound Corp. v. Superior Court In & For Merced Cnty.*, 56 Cal. 2d 355, 384, 364 P.2d 266 (1961). "The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." *Id.* (internal citations and quotation marks omitted).

<u>Second</u>, while a party may request documents "in the responding party's possession, custody, or control" pursuant to Fed. R. Civ. P. 26(b)(1), 34(b) requires

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

the requesting party to describe the items to be produced with "reasonable particularity" and specify a reasonable time, place, and manner for the inspection. Fed. R. Civ. P. 34(b)(1-2). A discovery request should be sufficiently definite and limited in scope that it can be said 'to apprise a person of ordinary intelligence what documents are required and [to enable] the court . . . to ascertain whether the requested documents have been produced.'" *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 (10th Cir. 2008)(quoting Wright & Miller, 8A Federal Practice and Procedure § 2211, at 415). "'All-encompassing demands' that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Fed. R. Civ. P. 34(b)(1)(A)." *In re Asbestos Products Liab. Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009).  The requests for information related to "all heaters" without limitation as to model or brand, time or scope, are not reasonably particular, and they do not meet the particularity standard.  On this basis alone, the Court should deny Plaintiffs' discovery requests as overbroad.

Third, not only are the requests impermissibly overbroad and burdensome, but evidence of other incidents, accidents or complaints are not admissible to prove a defect unless Plaintiffs can show that the circumstances and details of the other accidents and complaints are "substantially similar" to the facts of the accident in this case.[19]  *See Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991)(citations omitted) ("[a] showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect"); *See also Ault v. Int'l Harvester Co.*, 13 Cal. 3d 113, 121-122, 528 P.2d 1148 (1974); *Elsworth v. Beech Aircraft*

---

[19] While Sunbeam acknowledges that admissibility is not the test, discovery may only ordered if it is possible that information in a particular subject area could be relevant or admissible at the time of trial.  *Maldonado v. Superior Court*, 94 Cal. App. 4th 1390, 1397, 115 Cal. Rptr. 2d 137 (2002).  Surely, there is no possibility that the broad scope of information sought by plaintiffs will be admissible at trial due to the authorities cited herein.

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

*Corp.*, 37 Cal. 3d 540, 555, 691 P.2d 630 (1984)(holding that evidence of prior accidents is admissible only if they are similar and not too remote).  Substantial similarity must exist in the overall circumstances of the incidents – not merely component parts – that a party wishes to compare to the incident giving rise to the pending matter.  See e.g. *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434 (10th Cir. 1992).

To be "substantially similar", the other accidents, incidents, complaints and lawsuits must not only involve heaters with the same parts, but must also involve similar time, place or circumstance.  *See Brake v. Beech Aircraft Corp.*, 184 Cal. App. 3d 930, 937, 229 Cal. Rptr. 336 (Ct. App. 1986)(evidence of other accidents could not be admitted to show airplane defectively designed because plaintiff failed to lay foundation of similarity for flight altitude, trim settings, engine power, loading, weather conditions, altitudes, feathering, etc.); *see also Kopfinger v. Grand Cent. Pub. Mkt.*, 60 Cal. 2d 852, 860-861, 389 P.2d 529 (1964)(holding the circumstances of proffered accidents to be dissimilar to facts of case and that trial court was well within its discretion in excluding such evidence).  Likewise, Plaintiffs would also have to establish that the other accidents, incidents, complaints and lawsuits they seek to introduce involve a heater with the same equipment and maintenance condition as the heater involved in this accident, and that the other heaters had not been altered or misused.  It is important that Plaintiffs establish the similarity of all of these factors because each of them may have  contributed in some way to the occurrence of <u>this</u> incident.

<u>Fourth</u>, evidence of other incidents is not relevant for purposes of notice. Even if notice were an issue in this case, which Sunbeam contends it is not, for a prior accident to be admissible under a "notice" theory, any prior accident must be such as to alert the defendant to the alleged dangerous condition.  *Elsworth*, 37 Cal. 3d at 555 (holding that evidence of other accidents is admissible on notice issue because the other accidents were similar enough to the one involved to have alerted defendant to

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

1   the problem).   Certainly, accidents that happened to a heater that was not

2   substantially similar to the one involved in this accident, and which occurred under

3   circumstances that were substantially different than the incident in this case, do not

4   meet the test and should be excluded for all purposes.

5   <u>Fifth</u>, evidence of any changes in design or information related to later model

6   heaters could be construed as subsequent remedial measures. In the Ninth Circuit,

7   evidence of subsequent remedial measures is <u>not</u> admissible in a products liability

8   action. Fed. R. Evid. 407; *Fasanaro v. Mooney Aircraft Corp.*, 687 F. Supp. 482

9   (N.D. Cal. 1988); see also <u>Ault</u>, 13 Cal. 3d, 118; Cal. Evid. Code § 1151 (West).

10   **Plaintiffs Have Offered No Evidence That The Information They Seek**

11   **Encompasses Heater Models Which Are In Any Way Similar To The**

12   **Quartz Class Of Heaters Or The Subject HQH307**

13   The Plaintiffs in this case have requested information regarding each and every

14   heater ever manufactured by Sunbeam or its predecessor companies. As set forth

15   above, without a showing of product similarity, this information is not discoverable.

16   (*See* <u>Brake</u>, 184 Cal. App. 3d, 937.  Plaintiffs have not even attempted to establish

17   any recognizable similarity between the subject HQH307 and any other Sunbeam

18   heater.  More recently, Sunbeam has manufactured and sold seven different types of

19   heaters.   Specifically, Sunbeam sells:   Fan Heaters, Ceramic Heaters, Radiant

20   Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz

21   Heaters.  In 2011, Sunbeam manufactured 4,930,923 heaters, including 167 different

22   models of heaters.  In 2012, Sunbeam manufactured 2,892,243 heaters, including 153

23   different models of heaters.  To date, in 2013, Sunbeam manufactured 3,126,103

24   heaters, including 144 different models of heaters.  These totals and models include

25   all classes of heaters.  (See Affidavit of Richard J. Prins "Prins Decl." ¶ 6).  Each of

26   the different classes of heaters has different designs and varies in their operation and

27   characteristics.   Thus, this Court should deny Plaintiffs' discovery requests in its

28   entirety, because the Quartz class of heaters, and the subject HQH307, are unique in

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO │ SHERMAN OAKS, CA 9 l 4O3
PHONE (323) 658-8O77 │ FAX (323) 658-8477

1  Sunbeam's line of heater products and open ended discovery regarding hundreds of

2  different models and millions of different eaters is simply impermissibly overbroad.

3      **a.**    **The Quartz Heater Class and Subject HQH307 are Unlike**

4             **Other Sunbeam Heaters**

5       Plaintiffs attempt to argue that they are entitled to information regarding all of

6  Sunbeam's heaters because of a "generic" defect in all Sunbeam heaters.  Plaintiffs

7  provide absolutely no evidence or support for this allegation.  Sunbeam sells over 100

8  different model heaters each year which are designed to meet the specific needs of

9  Sunbeam's consumers.  (Prins Decl. ¶ 5).   The Quartz class heaters, and the subject

10  HQH307, are unlike Sunbeam's other heater classes and have distinct characteristics.

11      **b.**    **The Design of the Quartz Heaters and the Subject HQH307 is**

12             **Unique**

13       The subject product is believed to be a Holmes HQH307 Quartz Heater.

14  Quartz Heaters are equipped with a resistive element encased in a quartz tube.  (Prins

15  Decl. ¶ 7).  This design is exclusive to the Quartz Heater models.  (Prins Decl. ¶ 7).

16  Further, the design of current Quartz Heater models differs from the Quartz Heaters

17  manufactured prior to 2010/2011 as they were equipped with a ceramic disc with a

18  push button manual reset thermostat.  (Prins Decl. ¶ 8).  Whereas, the Quartz Heaters

19  manufactured post 2010/2011 through the present are equipped with a manual rest

20  thermostat and one-shot fuse.  (Prins Decl. ¶ 8).  No other heater classes utilize these

21  devices. (Prins Decl. ¶ 9).

22       The construction of Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen

23  Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters are all quite

24  different. For example, Fan Heaters incorporate an octopus heating element (resistive

25  wire coiled into an octagon shape held with mica plates; Ceramic Heaters incorporate

26  a ceramic heating element (ceramic chips glued together to metal heat sinks);

27  Micathermic and Low-Profile Radiant Heaters incorporate a stitched wire element or

28  micathermic plate; PRH/HRH Radiant Heaters incorporate wire elements with

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD - SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

ceramic stand-offs; Halogen Heaters incorporate a halogen heating element; Utility Heaters incorporate a coiled element with ceramic standoffs; Oil-Water-filled Heaters incorporate stamped metal welded cavities for oil or water; and Quartz Heaters incorporate a resistive element encased in a quartz tube.  (Prins Decl. ¶ 9).

Most significantly, each class of heater utilizes its own overheat technology. (Prins Decl. ¶ 10).  The design of the subject HQH307 and Quartz Heaters is unique as they are the only products that incorporate a ceramic disc with push button manual reset thermostat.  (Prins Decl. ¶ 10).

### c. Underwriters Laboratories Issued A Report Addressing Only the Quartz Heaters Due to the Distinct Characteristics of the Products

Underwriters Laboratories ("UL") issued its listing report addressing Quartz Heaters Models HQH, BQH or PQH followed by 307, 308, 309, 309A, 319 or 319A and SQH followed by 310 or 315 due to the distinct characteristics of these products. (Prins Decl. ¶ 7).  Sunbeam produced all documents, including claim and lawsuit information, related to the above- referenced models contained in the UL listing file, including the listing file itself.  (McNulty Decl. ¶25) A UL listing file is created whenever a product manufacturer seeks an evaluation and independent testing by UL that its product meets UL's standards for product safety.  The documents within the UL file include:  testing documents which details the tests which a product must pass prior to obtaining UL certification; results of testing conducted by both UL and the manufacturer; all correspondence between a manufacturer and UL; product drawings; product manuals; detailed information about product components; reports about UL site visits to manufacturer's facilities and any other document generated that may pertain to a products' make-up or performance with respect to safety.  UL groups these documents into files which are separated by product classification ("similar products" are all contained under the same product classification).

Underwriters Laboratories (UL) makes an independent evaluation of heater

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

models and groups of heater to determine whether there are enough similarities between classes of heaters, as well as particular models within a class of heaters, to require independent testing or whether they can be evaluated as a group. (Prins Decl. ¶ 7). By grouping these particular model heaters together, UL independently decided that there were enough similarities in design and operation to be tested and listed together. (Prins Decl. ¶ 7). If other heaters were also similar they would have been listed together. (Prins Decl. ¶ 7). Each class of heaters is individually tested by Underwriters Laboratories and each class of heater has a unique UL listing file as UL proscribes tests and specifications for each of these classes of heaters. (Prins Decl. ¶ 11). As reports issued by UL only address heater models which are similar in design and configuration, the Quartz Heaters are unlike Sunbeam's other heater models and classes. (Prins Decl. ¶ 11).

In total, Sunbeam has produced to Plaintiffs 3,336 pages of documents which include Quartz heater related documents. (McNulty Decl ¶26) The documents produced by Sunbeam provide information regarding product design and specifications, quality control procedures, work product instructions, the standards under which the models were made, the tests completed on the models prior to sale by Sunbeam and UL, the components that made up the finished products, as well as the specifics about the components. (McNulty Decl ¶26) Sunbeam has produced all of the documentation in its possession regarding heater models which are similar to the subject HQH307. (McNulty Decl ¶27) In addition, Sunbeam has produced all documentation in its possession regarding incidents involving these similar products. (McNulty Decl ¶28) For these reasons, this Court should deny Plaintiffs' discovery requests in their entirety.

### Kenneth Shinedling's Request for Production No. 30:

Any and all DOCUMENTS/ELECTRONICALLY STORED INFORMATION that reflects each and every claim a PERSON whether reported to YOU, filed a

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

lawsuit against YOU, made a complaint to YOU, or who claims (including warranty claims and notice of defects) to have been injured to their person or property by a HOME HEATER due to a fire hazard.

**Defendant's Response:**

Objection. This request is vague, ambiguous and overly broad in time and scope in that is seeks information concerning products which are not the same or similar to the subject product. Without waiving these objections, see information contained in the attached correspondence to the Consumer Product Safety Commission (CPSC); investigation continues.

**Defendant's Amended Response:**

Sunbeam incorporates by reference herein its objections set forth above. Without waiving these objections, see information contained in the previously produced correspondence with the Consumer Product Safety Commission (CPSC) Bates Stamped: SPI001213-SPI2563. The correspondence also includes information regarding heaters similar in design to the HQH307. Further answering, see the attached Complaints Bates Stamped: SPI003292- SPI003326.

**Plaintiff's Reasons Why Further Responses Should be Ordered:**

The request is neither vague nor ambiguous. Nor is the request so broad as to cause Defendant to be unable to determine what information is being requested. Further, the request does not limit the heater models to Holmes Quartz heaters. Defendant improperly limits Plaintiffs' discovery requests to only the Holmes Quartz heater, when Plaintiffs are seeking discovery that relates to any of Defendant's home heaters. Again, Plaintiffs allege that the subject home heater is defective because it overheated and started the fire. It failed to have a properly installed sensor that would have turned the heater off and/or given warning to users. While the specific model heater is a HQH307 Tower Quartz heater, the defect is not unique to this model but is one that exists in home heaters in general. In other words, instances where Defendant's other home heaters overheated or started a fire is relevant to the generic

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

defect in all home heaters. Devices, methods or warnings contained in Defendant's home heaters may be relevant to show the subject heater was defective or could have been designed to prevent the subject fire and incident.

### **Defendant's Reasons Why Further Responses Should Not be Ordered:**

Plaintiffs allege, without any support, that the specific model heater a (HQH307 Tower Quartz heater) is defective because it failed to have a properly installed sensor that would have turned the heater off and/or given a warning to users. Plaintiffs further claim that this is a "generic defect" in all home heaters.  On these specious bases, Plaintiffs seek evidence relating to <u>any single type of home heater</u> made by Sunbeam. The requested discovery is not relevant to the subject matter involved in a pending action if the inquiry is only based on the requesting party's mere suspicion or speculation. *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1324 (Fed. Cir. 1990).

<u>First</u>, Plaintiffs' requests constitute an impermissible fishing expedition that is not reasonably calculated to lead to the discovery of information relevant to Plaintiffs' claims.  Fed. R. Civ. P. 26(b)(1). In fact, the requests place more burden on Sunbeam than the value of the information warrants.  *Greyhound Corp. v. Superior Court In & For Merced Cnty.*, 56 Cal. 2d 355, 384, 364 P.2d 266 (1961). "The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." *Id.* (internal citations and quotation marks omitted).

<u>Second</u>, while a party may request documents "in the responding party's possession, custody, or control" pursuant to Fed. R. Civ. P. 26(b)(1), 34(b) requires the requesting party to describe the items to be produced with "reasonable particularity" and specify a reasonable time, place, and manner for the inspection. Fed. R. Civ. P. 34(b)(1-2). A discovery request should be sufficiently definite and limited in scope that it can be said 'to apprise a person of ordinary intelligence what

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 91403
PHONE (323) 658-8O77 | FAX (323) 658-8477

documents are required and [to enable] the court . . . to ascertain whether the requested documents have been produced.'" *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 (10th Cir. 2008)(quoting Wright & Miller, 8A Federal Practice and Procedure § 2211, at 415). "'All-encompassing demands' that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Fed. R. Civ. P. 34(b)(1)(A)." *In re Asbestos Products Liab. Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009).  The requests for information related to "all heaters" without limitation as to model or brand, time or scope, are not reasonably particular, and they do not meet the particularity standard.  On this basis alone, the Court should deny Plaintiffs' discovery requests as overbroad.

        <u>Third</u>, not only are the requests impermissibly overbroad and burdensome, but evidence of other incidents, accidents or complaints are not admissible to prove a defect unless Plaintiffs can show that the circumstances and details of the other accidents and complaints are "substantially similar" to the facts of the accident in this case.[20]  *See Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991)(citations omitted) ("[a] showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect"); *See also Ault v. Int'l Harvester Co.*, 13 Cal. 3d 113, 121-122, 528 P.2d 1148 (1974); *Elsworth v. Beech Aircraft Corp.*, 37 Cal. 3d 540, 555, 691 P.2d 630 (1984)(holding that evidence of prior accidents is admissible only if they are similar and not too remote).  Substantial similarity must exist in the overall circumstances of the incidents – not merely component parts – that a party wishes to compare to the incident giving rise to the

---

[20] While Sunbeam acknowledges that admissibility is not the test, discovery may only ordered if it is possible that information in a particular subject area could be relevant or admissible at the time of trial.  *Maldonado v. Superior Court*, 94 Cal. App. 4th 1390, 1397, 115 Cal. Rptr. 2d 137 (2002).  Surely, there is no possibility that the broad scope of information sought by plaintiffs will be admissible at trial due to the authorities cited herein.

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

1    pending matter.  See e.g. *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979

2    F.2d 1434 (10th Cir. 1992).

3           To be "substantially similar", the other accidents, incidents, complaints and

4    lawsuits must not only involve heaters with the same parts, but must also involve

5    similar time, place or circumstance.  *See Brake v. Beech Aircraft Corp.*, 184 Cal.

6    App. 3d 930, 937, 229 Cal. Rptr. 336 (Ct. App. 1986)(evidence of other accidents

7    could not be admitted to show airplane defectively designed because plaintiff failed

8    to lay foundation of similarity for flight altitude, trim settings, engine power, loading,

9    weather conditions, altitudes, feathering, etc.); *see also Kopfinger v. Grand Cent.*

10   *Pub. Mkt.*, 60 Cal. 2d 852, 860-861, 389 P.2d 529 (1964)(holding the circumstances

11   of proffered accidents to be dissimilar to facts of case and that trial court was well

12   within its discretion in excluding such evidence).  Likewise, Plaintiffs would also

13   have to establish that the other accidents, incidents, complaints and lawsuits they seek

14   to introduce involve a heater with the same equipment and maintenance condition as

15   the heater involved in this accident, and that the other heaters had not been altered or

16   misused.  It is important that Plaintiffs establish the similarity of all of these factors

17   because each of them may have  contributed in some way to the occurrence of <u>this</u>

18   incident.

19          <u>Fourth</u>, evidence of other incidents is not relevant for purposes of notice. Even

20   if notice were an issue in this case, which Sunbeam contends it is not, for a prior

21   accident to be admissible under a "notice" theory, any prior accident must be such as

22   to alert the defendant to the alleged dangerous condition.  *Elsworth*, 37 Cal. 3d at 555

23   (holding that evidence of other accidents is admissible on notice issue because the

24   other accidents were similar enough to the one involved to have alerted defendant to

25   the problem).   Certainly,  accidents  that  happened  to  a  heater  that  was  not

26   substantially similar to the one involved in this accident, and which occurred under

27   circumstances that were substantially different than the incident in this case, do not

28   meet the test and should be excluded for all purposes.

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 914O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

<u>Fifth</u>, evidence of any changes in design or information related to later model heaters could be construed as subsequent remedial measures. In the Ninth Circuit, evidence of subsequent remedial measures is <u>not</u> admissible in a products liability action. Fed. R. Evid. 407; *Fasanaro v. Mooney Aircraft Corp.*, 687 F. Supp. 482 (N.D. Cal. 1988); see also <u>Ault</u>, 13 Cal. 3d, 118; Cal. Evid. Code § 1151 (West).

**<u>Plaintiffs Have Offered No Evidence That The Information They Seek Encompasses Heater Models Which Are In Any Way Similar To The Quartz Class Of Heaters Or The Subject HQH307</u>**

The Plaintiffs in this case have requested information regarding each and every heater ever manufactured by Sunbeam or its predecessor companies. As set forth above, without a showing of product similarity, this information is not discoverable. **(**See <u>Brake</u>, 184 Cal. App. 3d, 937. Plaintiffs have not even attempted to establish any recognizable similarity between the subject HQH307 and any other Sunbeam heater. More recently, Sunbeam has manufactured and sold seven different types of heaters. Specifically, Sunbeam sells: Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters. In 2011, Sunbeam manufactured 4,930,923 heaters, including 167 different models of heaters. In 2012, Sunbeam manufactured 2,892,243 heaters, including 153 different models of heaters. To date, in 2013, Sunbeam manufactured 3,126,103 heaters, including 144 different models of heaters. These totals and models include all classes of heaters. (See Affidavit of Richard J. Prins "Prins Decl." ¶ 6). Each of the different classes of heaters has different designs and varies in their operation and characteristics. Thus, this Court should deny Plaintiffs' discovery requests in its entirety, because the Quartz class of heaters, and the subject HQH307, are unique in Sunbeam's line of heater products and open ended discovery regarding hundreds of different models and millions of different eaters is simply impermissibly overbroad.

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 914O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

a.      **The Quartz Heater Class and Subject HQH307 are Unlike Other Sunbeam Heaters**

Plaintiffs attempt to argue that they are entitled to information regarding all of Sunbeam's heaters because of a "generic" defect in all Sunbeam heaters.  Plaintiffs provide absolutely no evidence or support for this allegation.  Sunbeam sells over 100 different model heaters each year which are designed to meet the specific needs of Sunbeam's consumers.  (Prins Decl. ¶ 5).   The Quartz class heaters, and the subject HQH307, are unlike Sunbeam's other heater classes and have distinct characteristics.

b.      **The Design of the Quartz Heaters and the Subject HQH307 is Unique**

The subject product is believed to be a Holmes HQH307 Quartz Heater. Quartz Heaters are equipped with a resistive element encased in a quartz tube.  (Prins Decl. ¶ 7).  This design is exclusive to the Quartz Heater models.  (Prins Decl. ¶ 7). Further, the design of current Quartz Heater models differs from the Quartz Heaters manufactured prior to 2010/2011 as they were equipped with a ceramic disc with a push button manual reset thermostat.  (Prins Decl. ¶ 8).  Whereas, the Quartz Heaters manufactured post 2010/2011 through the present are equipped with a manual rest thermostat and one-shot fuse.  (Prins Decl. ¶ 8).  No other heater classes utilize these devices. (Prins Decl. ¶ 9).

The construction of Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters are all quite different. For example, Fan Heaters incorporate an octopus heating element (resistive wire coiled into an octagon shape held with mica plates; Ceramic Heaters incorporate a ceramic heating element (ceramic chips glued together to metal heat sinks); Micathermic and Low-Profile Radiant Heaters incorporate a stitched wire element or micathermic plate; PRH/HRH Radiant Heaters incorporate wire elements with ceramic stand-offs; Halogen Heaters incorporate a halogen heating element; Utility Heaters incorporate a coiled element with ceramic standoffs; Oil-Water-filled Heaters

1   incorporate stamped metal welded cavities for oil or water; and Quartz Heaters
2   incorporate a resistive element encased in a quartz tube.  (Prins Decl. ¶ 9).

3       Most significantly, each class of heater utilizes its own overheat technology.
4   (Prins Decl. ¶ 10).  The design of the subject HQH307 and Quartz Heaters is unique
5   as they are the only products that incorporate a ceramic disc with push button manual
6   reset thermostat.  (Prins Decl. ¶ 10).

7   **c.**   **<u>Underwriters Laboratories Issued A Report Addressing Only</u>**
8       **<u>the Quartz Heaters Due to the Distinct Characteristics of the</u>**
9       **<u>Products</u>**

10      Underwriters Laboratories ("UL") issued its listing report addressing Quartz
11  Heaters Models HQH, BQH or PQH followed by 307, 308, 309, 309A, 319 or 319A
12  and SQH followed by 310 or 315 due to the distinct characteristics of these products.
13  (Prins Decl. ¶ 7).  Sunbeam produced all documents, including claim and lawsuit
14  information, related to the above- referenced models contained in the UL listing file,
15  including the listing file itself.  (McNulty Decl. ¶25) A UL listing file is created
16  whenever a product manufacturer seeks an evaluation and independent testing by UL
17  that its product meets UL's standards for product safety.  The documents within the
18  UL file include:  testing documents which details the tests which a product must pass
19  prior to obtaining UL certification; results of testing conducted by both UL and the
20  manufacturer; all correspondence between a manufacturer and UL; product drawings;
21  product manuals; detailed information about product components; reports about UL
22  site visits to manufacturer's facilities and any other document generated that may
23  pertain to a products' make-up or performance with respect to safety.  UL groups
24  these documents into files which are separated by product classification ("similar
25  products" are all contained under the same product classification).

26      Underwriters Laboratories (UL) makes an independent evaluation of heater
27  models and groups of heater to determine whether there are enough similarities
28  between classes of heaters, as well as particular models within a class of heaters, to

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 │ SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 │ FAX (323) 658-8477

1   require independent testing or whether they can be evaluated as a group.  (Prins Decl.

2   ¶ 7).  By grouping these particular model heaters together, UL independently decided

3   that there were enough similarities in design and operation to be tested and listed

4   together.  (Prins Decl. ¶ 7).  If other heaters were also similar they would have been

5   listed together.  (Prins Decl. ¶ 7).  Each class of heaters is individually tested by

6   Underwriters Laboratories and each class of heater has a unique UL listing file as UL

7   proscribes tests and specifications for each of these classes of heaters.  (Prins Decl. ¶

8   11).  As reports issued by UL only address heater models which are similar in design

9   and configuration, the Quartz Heaters are unlike Sunbeam's other heater models and

10  classes.  (Prins Decl. ¶ 11).

11       In total, Sunbeam has produced to Plaintiffs 3,336 pages of documents which

12  include Quartz heater related documents.   (McNulty Decl ¶26) The documents

13  produced by Sunbeam provide information regarding product design and

14  specifications, quality control procedures, work product instructions, the standards

15  under which the models were made, the tests completed on the models prior to sale

16  by Sunbeam and UL, the components that made up the finished products, as well as

17  the specifics about the components. (McNulty Decl ¶26) Sunbeam has produced all

18  of the documentation in its possession regarding heater models which are similar to

19  the subject HQH307. (McNulty Decl ¶27)  In addition, Sunbeam has produced all

20  documentation in its possession regarding incidents involving these similar products.

21  (McNulty Decl ¶28) For these reasons, this Court should deny Plaintiffs' discovery

22  requests in their entirety.

23

24       **Kenneth Shinedling's Request for Production No. 31:**

25       Any   and   all   DOCUMENT/S/ELECTRONICALLY   STORED

26  INFORMATION that reflect the name, address and telephone number of the Plaintiff;

27  the name, address and telephone number of the Plaintiffs attorneys; the name, address

28  of the lawsuit; the caption of the lawsuit; the date of the lawsuit; and the year, model,

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 I 4O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

1 and type of the appliance involved) any and all lawsuits filed against YOU wherein it

2 was alleged that YOUR breach of warranty (including both expressed or implied)

3 caused someone injury to their person or property by a HOME HEATER due to a fire

4 hazard.

5 **Defendant's Response:**

6 Objection. This request is vague, ambiguous and overly broad in time and

7 scope in that is seeks information concerning products which are not the same or

8 similar to the subject product. Without waiving these objections, see information

9 contained in the attached correspondence to the Consumer Product Safety

10 Commission (CPSC); investigation continues.

11 **Defendant's Amended Response:**

12 Sunbeam incorporates by reference herein its objections set forth above.

13 Without waiving these objections, see information contained in the previously

14 produced correspondence with the Consumer Product Safety Commission (CPSC)

15 Bates Stamped: SPI001213-SPI2563. The correspondence also includes information

16 regarding heaters similar in design to the HQH307. Further answering, see the

17 attached Complaints Bates Stamped: SPI003292-SPI003326.

18 **Plaintiff's Reasons Why Further Responses Should be Ordered:**

19 The request is neither vague nor ambiguous. Nor is the request so broad as to

20 cause Defendant to be unable to determine what information is being requested.

21 Further, the request does not limit the heater models to Holmes Quartz heaters.

22 Defendant improperly limits Plaintiffs' discovery requests to only the Holmes Quartz

23 heater, when Plaintiffs are seeking discovery that relates to any of Defendant's home

24 heaters. Again, Plaintiffs allege that the subject home heater is defective because it

25 overheated and started the fire. It failed to have a properly installed sensor that would

26 have turned the heater off and/or given warning to users. While the specific model

27 heater is a HQH307 Tower Quartz heater, the defect is not unique to this model but is

28 one that exists in home heaters in general. In other words, instances where

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

1   Defendant's other home heaters overheated or started a fire is relevant to the generic

2   defect in all home heaters. Devices, methods or warnings contained in Defendant's

3   home heaters may be relevant to show the subject heater was defective or could have

4   been designed to prevent the subject fire and incident.

5   **Defendant's Reasons Why Further Responses Should Not be Ordered:**

6   Plaintiffs allege, without any support, that the specific model heater a

7   (HQH307 Tower Quartz heater) is defective because it failed to have a properly

8   installed sensor that would have turned the heater off and/or given a warning to users.

9   Plaintiffs further claim that this is a "generic defect" in all home heaters.  On these

10  specious bases, Plaintiffs seek evidence relating to any single type of home heater

11  made by Sunbeam. The requested discovery is not relevant to the subject matter

12  involved in a pending action if the inquiry is only based on the requesting party's

13  mere suspicion or speculation. *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d

14  1318, 1324 (Fed. Cir. 1990).

15  First, Plaintiffs' requests constitute an impermissible fishing expedition that is

16  not reasonably calculated to lead to the discovery of information relevant to

17  Plaintiffs' claims.  Fed. R. Civ. P. 26(b)(1). In fact, the requests place more burden on

18  Sunbeam than the value of the information warrants.  *Greyhound Corp. v. Superior*

19  *Court In & For Merced Cnty.*, 56 Cal. 2d 355, 384, 364 P.2d 266 (1961). "The

20  district court enjoys broad discretion when resolving discovery disputes, which

21  should be exercised by determining the relevance of discovery requests, assessing

22  oppressiveness, and weighing these factors in deciding whether discovery should be

23  compelled." *Id.* (internal citations and quotation marks omitted).

24  Second, while a party may request documents "in the responding party's

25  possession, custody, or control" pursuant to Fed. R. Civ. P. 26(b)(1), 34(b) requires

26  the requesting party to describe the items to be produced with "reasonable

27  particularity" and specify a reasonable time, place, and manner for the inspection.

28  Fed. R. Civ. P. 34(b)(1-2). A discovery request should be sufficiently definite and

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 914O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

limited in scope that it can be said 'to apprise a person of ordinary intelligence what documents are required and [to enable] the court . . . to ascertain whether the requested documents have been produced.'" *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 (10th Cir. 2008)(quoting Wright & Miller, 8A Federal Practice and Procedure § 2211, at 415). "'All-encompassing demands' that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Fed. R. Civ. P. 34(b)(1)(A)." *In re Asbestos Products Liab. Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009). The requests for information related to "all heaters" without limitation as to model or brand, time or scope, are not reasonably particular, and they do not meet the particularity standard. On this basis alone, the Court should deny Plaintiffs' discovery requests as overbroad.

Third, not only are the requests impermissibly overbroad and burdensome, but evidence of other incidents, accidents or complaints are not admissible to prove a defect unless Plaintiffs can show that the circumstances and details of the other accidents and complaints are "substantially similar" to the facts of the accident in this case.[21] *See Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991)(citations omitted) ("[a] showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect"); *See also Ault v. Int'l Harvester Co.*, 13 Cal. 3d 113, 121-122, 528 P.2d 1148 (1974); *Elsworth v. Beech Aircraft Corp.*, 37 Cal. 3d 540, 555, 691 P.2d 630 (1984)(holding that evidence of prior accidents is admissible only if they are similar and not too remote). Substantial similarity must exist in the overall circumstances of the incidents – not merely

---

[21] While Sunbeam acknowledges that admissibility is not the test, discovery may only ordered if it is possible that information in a particular subject area could be relevant or admissible at the time of trial. *Maldonado v. Superior Court*, 94 Cal. App. 4th 1390, 1397, 115 Cal. Rptr. 2d 137 (2002). Surely, there is no possibility that the broad scope of information sought by plaintiffs will be admissible at trial due to the authorities cited herein.

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

1  component parts – that a party wishes to compare to the incident giving rise to the

2  pending matter.  See e.g. *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979

3  F.2d 1434 (10th Cir. 1992).

4          To be "substantially similar", the other accidents, incidents, complaints and

5  lawsuits must not only involve heaters with the same parts, but must also involve

6  similar time, place or circumstance.  *See Brake v. Beech Aircraft Corp.*, 184 Cal.

7  App. 3d 930, 937, 229 Cal. Rptr. 336 (Ct. App. 1986)(evidence of other accidents

8  could not be admitted to show airplane defectively designed because plaintiff failed

9  to lay foundation of similarity for flight altitude, trim settings, engine power, loading,

10  weather conditions, altitudes, feathering, etc.); *see also Kopfinger v. Grand Cent.*

11  *Pub. Mkt.*, 60 Cal. 2d 852, 860-861, 389 P.2d 529 (1964)(holding the circumstances

12  of proffered accidents to be dissimilar to facts of case and that trial court was well

13  within its discretion in excluding such evidence).  Likewise, Plaintiffs would also

14  have to establish that the other accidents, incidents, complaints and lawsuits they seek

15  to introduce involve a heater with the same equipment and maintenance condition as

16  the heater involved in this accident, and that the other heaters had not been altered or

17  misused.  It is important that Plaintiffs establish the similarity of all of these factors

18  because each of them may have  contributed in some way to the occurrence of <u>this</u>

19  incident.

20          <u>Fourth</u>, evidence of other incidents is not relevant for purposes of notice. Even

21  if notice were an issue in this case, which Sunbeam contends it is not, for a prior

22  accident to be admissible under a "notice" theory, any prior accident must be such as

23  to alert the defendant to the alleged dangerous condition.  *Elsworth*, 37 Cal. 3d at 555

24  (holding that evidence of other accidents is admissible on notice issue because the

25  other accidents were similar enough to the one involved to have alerted defendant to

26  the problem).   Certainly,  accidents  that  happened  to  a  heater  that  was  not

27  substantially similar to the one involved in this accident, and which occurred under

28  circumstances that were substantially different than the incident in this case, do not

meet the test and should be excluded for all purposes.

Fifth, evidence of any changes in design or information related to later model heaters could be construed as subsequent remedial measures. In the Ninth Circuit, evidence of subsequent remedial measures is not admissible in a products liability action. Fed. R. Evid. 407; *Fasanaro v. Mooney Aircraft Corp.*, 687 F. Supp. 482 (N.D. Cal. 1988); see also Ault, 13 Cal. 3d, 118; Cal. Evid. Code § 1151 (West).

**Plaintiffs Have Offered No Evidence That The Information They Seek Encompasses Heater Models Which Are In Any Way Similar To The Quartz Class Of Heaters Or The Subject HQH307**

The Plaintiffs in this case have requested information regarding each and every heater ever manufactured by Sunbeam or its predecessor companies. As set forth above, without a showing of product similarity, this information is not discoverable. (*See* Brake, 184 Cal. App. 3d, 937.  Plaintiffs have not even attempted to establish any recognizable similarity between the subject HQH307 and any other Sunbeam heater.  More recently, Sunbeam has manufactured and sold seven different types of heaters.   Specifically, Sunbeam sells:   Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters.  In 2011, Sunbeam manufactured 4,930,923 heaters, including 167 different models of heaters.  In 2012, Sunbeam manufactured 2,892,243 heaters, including 153 different models of heaters.   To date, in 2013, Sunbeam manufactured 3,126,103 heaters, including 144 different models of heaters.  These totals and models include all classes of heaters.  (See Affidavit of Richard J. Prins "Prins Decl." ¶ 6).  Each of the different classes of heaters has different designs and varies in their operation and characteristics.    Thus, this Court should deny Plaintiffs' discovery requests in its entirety, because the Quartz class of heaters, and the subject HQH307, are unique in Sunbeam's line of heater products and open ended discovery regarding hundreds of different models and millions of different eaters is simply impermissibly overbroad.

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 1 4O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 91403
PHONE (323) 658-8O77 | FAX (323) 658-8477

a.    **The Quartz Heater Class and Subject HQH307 are Unlike Other Sunbeam Heaters**

Plaintiffs attempt to argue that they are entitled to information regarding all of Sunbeam's heaters because of a "generic" defect in all Sunbeam heaters.  Plaintiffs provide absolutely no evidence or support for this allegation.  Sunbeam sells over 100 different model heaters each year which are designed to meet the specific needs of Sunbeam's consumers.  (Prins Decl. ¶ 5).   The Quartz class heaters, and the subject HQH307, are unlike Sunbeam's other heater classes and have distinct characteristics.

b.    **The Design of the Quartz Heaters and the Subject HQH307 is Unique**

The subject product is believed to be a Holmes HQH307 Quartz Heater.  Quartz Heaters are equipped with a resistive element encased in a quartz tube.  (Prins Decl. ¶ 7).  This design is exclusive to the Quartz Heater models.  (Prins Decl. ¶ 7).  Further, the design of current Quartz Heater models differs from the Quartz Heaters manufactured prior to 2010/2011 as they were equipped with a ceramic disc with a push button manual reset thermostat.  (Prins Decl. ¶ 8).  Whereas, the Quartz Heaters manufactured post 2010/2011 through the present are equipped with a manual rest thermostat and one-shot fuse.  (Prins Decl. ¶ 8).  No other heater classes utilize these devices. (Prins Decl. ¶ 9).

The construction of Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters are all quite different. For example, Fan Heaters incorporate an octopus heating element (resistive wire coiled into an octagon shape held with mica plates; Ceramic Heaters incorporate a ceramic heating element (ceramic chips glued together to metal heat sinks); Micathermic and Low-Profile Radiant Heaters incorporate a stitched wire element or micathermic plate; PRH/HRH Radiant Heaters incorporate wire elements with ceramic stand-offs; Halogen Heaters incorporate a halogen heating element; Utility Heaters incorporate a coiled element with ceramic standoffs; Oil-Water-filled Heaters

incorporate stamped metal welded cavities for oil or water; and Quartz Heaters incorporate a resistive element encased in a quartz tube.  (Prins Decl. ¶ 9).

Most significantly, each class of heater utilizes its own overheat technology. (Prins Decl. ¶ 10).  The design of the subject HQH307 and Quartz Heaters is unique as they are the only products that incorporate a ceramic disc with push button manual reset thermostat.  (Prins Decl. ¶ 10).

c. **Underwriters Laboratories Issued A Report Addressing Only the Quartz Heaters Due to the Distinct Characteristics of the Products**

Underwriters Laboratories ("UL") issued its listing report addressing Quartz Heaters Models HQH, BQH or PQH followed by 307, 308, 309, 309A, 319 or 319A and SQH followed by 310 or 315 due to the distinct characteristics of these products. (Prins Decl. ¶ 7).  Sunbeam produced all documents, including claim and lawsuit information, related to the above- referenced models contained in the UL listing file, including the listing file itself.  (McNulty Decl. ¶25) A UL listing file is created whenever a product manufacturer seeks an evaluation and independent testing by UL that its product meets UL's standards for product safety.  The documents within the UL file include:  testing documents which details the tests which a product must pass prior to obtaining UL certification; results of testing conducted by both UL and the manufacturer; all correspondence between a manufacturer and UL; product drawings; product manuals; detailed information about product components; reports about UL site visits to manufacturer's facilities and any other document generated that may pertain to a products' make-up or performance with respect to safety.  UL groups these documents into files which are separated by product classification ("similar products" are all contained under the same product classification).

Underwriters Laboratories (UL) makes an independent evaluation of heater models and groups of heater to determine whether there are enough similarities between classes of heaters, as well as particular models within a class of heaters, to

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

require independent testing or whether they can be evaluated as a group.  (Prins Decl. ¶ 7).  By grouping these particular model heaters together, UL independently decided that there were enough similarities in design and operation to be tested and listed together.  (Prins Decl. ¶ 7).  If other heaters were also similar they would have been listed together.  (Prins Decl. ¶ 7).  Each class of heaters is individually tested by Underwriters Laboratories and each class of heater has a unique UL listing file as UL proscribes tests and specifications for each of these classes of heaters.  (Prins Decl. ¶ 11).  As reports issued by UL only address heater models which are similar in design and configuration, the Quartz Heaters are unlike Sunbeam's other heater models and classes.  (Prins Decl. ¶ 11).

In total, Sunbeam has produced to Plaintiffs 3,336 pages of documents which include Quartz heater related documents.   (McNulty Decl ¶26) The documents produced by Sunbeam provide information regarding product design and specifications, quality control procedures, work product instructions, the standards under which the models were made, the tests completed on the models prior to sale by Sunbeam and UL, the components that made up the finished products, as well as the specifics about the components. (McNulty Decl ¶26) Sunbeam has produced all of the documentation in its possession regarding heater models which are similar to the subject HQH307. (McNulty Decl ¶27)  In addition, Sunbeam has produced all documentation in its possession regarding incidents involving these similar products. (McNulty Decl ¶28) For these reasons, this Court should deny Plaintiffs' discovery requests in their entirety.

**Kenneth Shinedling's Request for Production No. 32:**

Any and all DOCUMENT/S/ELECTRONICALLY STORED INFORMATION that reflect the name, address and telephone number of the Plaintiff; the name, address and telephone number of the Plaintiffs attorneys; the name, address and telephone number of the Courthouse where the lawsuit was filed; the case

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

number of the lawsuit; the caption of the lawsuit; the date of the lawsuit; the year, model, and type of the appliance involved, any and all lawsuits filed against YOU are liable for wrongful death relating to a HOME HEATER due to a fire hazard.

**Defendant's Response:**

Objection. This request is vague, ambiguous and overly broad in time and scope in that is seeks information concerning products which are not the same or similar to the subject product. Without waiving these objections, see information contained in the attached correspondence to the Consumer Product Safety Commission (CPSC); investigation continues.

**Defendant's Amended Response:**

Sunbeam incorporates by reference herein its objections set forth above. Without waiving these objections, see information contained in the previously produced correspondence with the Consumer Product Safety Commission (CPSC) Bates Stamped: SPI001213-SPI2563. The correspondence also includes information regarding heaters similar in design to the HQH307. Further answering, see the attached Complaints Bates Stamped: SPI003295-SPI003326.

**Plaintiff's Reasons Why Further Responses Should be Ordered:**

The request is neither vague nor ambiguous. Nor is the request so broad as to cause Defendant to be unable to determine what information is being requested. Further, the request does not limit the heater models to Holmes Quartz heaters. Defendant improperly limits Plaintiffs' discovery requests to only the Holmes Quartz heater, when Plaintiffs are seeking discovery that relates to any of Defendant's home heaters. Again, Plaintiffs allege that the subject home heater is defective because it overheated and started the fire. It failed to have a properly installed sensor that would have turned the heater off and/or given warning to users. While the specific model heater is a HQH307 Tower Quartz heater, the defect is not unique to this model but is one that exists in home heaters in general. In other words, instances where Defendant's other home heaters overheated or started a fire is relevant to the generic

1 defect in all home heaters. Devices, methods or warnings contained in Defendant's
2 home heaters may be relevant to show the subject heater was defective or could have
3 been designed to prevent the subject fire and incident.

4    **Defendant's Reasons Why Further Responses Should Not be Ordered:**

5    Plaintiffs allege, without any support, that the specific model heater a
6 (HQH307 Tower Quartz heater) is defective because it failed to have a properly
7 installed sensor that would have turned the heater off and/or given a warning to users.
8 Plaintiffs further claim that this is a "generic defect" in all home heaters.  On these
9 specious bases, Plaintiffs seek evidence relating to <u>any single type of home heater</u>
10 made by Sunbeam. The requested discovery is not relevant to the subject matter
11 involved in a pending action if the inquiry is only based on the requesting party's
12 mere suspicion or speculation. *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d
13 1318, 1324 (Fed. Cir. 1990).

14    <u>First</u>, Plaintiffs' requests constitute an impermissible fishing expedition that is
15 not reasonably calculated to lead to the discovery of information relevant to
16 Plaintiffs' claims.  Fed. R. Civ. P. 26(b)(1). In fact, the requests place more burden on
17 Sunbeam than the value of the information warrants.  *Greyhound Corp. v. Superior*
18 *Court In & For Merced Cnty.*, 56 Cal. 2d 355, 384, 364 P.2d 266 (1961). "The
19 district court enjoys broad discretion when resolving discovery disputes, which
20 should be exercised by determining the relevance of discovery requests, assessing
21 oppressiveness, and weighing these factors in deciding whether discovery should be
22 compelled." *Id.* (internal citations and quotation marks omitted).

23    <u>Second</u>, while a party may request documents "in the responding party's
24 possession, custody, or control" pursuant to Fed. R. Civ. P. 26(b)(1), 34(b) requires
25 the requesting party to describe the items to be produced with "reasonable
26 particularity" and specify a reasonable time, place, and manner for the inspection.
27 Fed. R. Civ. P. 34(b)(1-2). A discovery request should be sufficiently definite and
28 limited in scope that it can be said 'to apprise a person of ordinary intelligence what

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

documents are required and [to enable] the court . . . to ascertain whether the requested documents have been produced.'" *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 (10th Cir. 2008)(quoting Wright & Miller, 8A Federal Practice and Procedure § 2211, at 415). "'All-encompassing demands' that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Fed. R. Civ. P. 34(b)(1)(A)." *In re Asbestos Products Liab. Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009).  The requests for information related to "all heaters" without limitation as to model or brand, time or scope, are not reasonably particular, and they do not meet the particularity standard.  On this basis alone, the Court should deny Plaintiffs' discovery requests as overbroad.

Third, not only are the requests impermissibly overbroad and burdensome, but evidence of other incidents, accidents or complaints are not admissible to prove a defect unless Plaintiffs can show that the circumstances and details of the other accidents and complaints are "substantially similar" to the facts of the accident in this case.[22]  *See Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991)(citations omitted) ("[a] showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect"); *See also Ault v. Int'l Harvester Co.*, 13 Cal. 3d 113, 121-122, 528 P.2d 1148 (1974); *Elsworth v. Beech Aircraft Corp.*, 37 Cal. 3d 540, 555, 691 P.2d 630 (1984)(holding that evidence of prior accidents is admissible only if they are similar and not too remote).  Substantial similarity must exist in the overall circumstances of the incidents – not merely component parts – that a party wishes to compare to the incident giving rise to the

---

[22] While Sunbeam acknowledges that admissibility is not the test, discovery may only ordered if it is possible that information in a particular subject area could be relevant or admissible at the time of trial.  *Maldonado v. Superior Court*, 94 Cal. App. 4th 1390, 1397, 115 Cal. Rptr. 2d 137 (2002).  Surely, there is no possibility that the broad scope of information sought by plaintiffs will be admissible at trial due to the authorities cited herein.

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 91403
PHONE (323) 658-8O77 | FAX (323) 658-8477

1   pending matter.  See e.g. *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979
2   F.2d 1434 (10th Cir. 1992).

3         To be "substantially similar", the other accidents, incidents, complaints and
4   lawsuits must not only involve heaters with the same parts, but must also involve
5   similar time, place or circumstance.  *See Brake v. Beech Aircraft Corp.*, 184 Cal.
6   App. 3d 930, 937, 229 Cal. Rptr. 336 (Ct. App. 1986)(evidence of other accidents
7   could not be admitted to show airplane defectively designed because plaintiff failed
8   to lay foundation of similarity for flight altitude, trim settings, engine power, loading,
9   weather conditions, altitudes, feathering, etc.); *see also Kopfinger v. Grand Cent.*
10  *Pub. Mkt.*, 60 Cal. 2d 852, 860-861, 389 P.2d 529 (1964)(holding the circumstances
11  of proffered accidents to be dissimilar to facts of case and that trial court was well
12  within its discretion in excluding such evidence).  Likewise, Plaintiffs would also
13  have to establish that the other accidents, incidents, complaints and lawsuits they seek
14  to introduce involve a heater with the same equipment and maintenance condition as
15  the heater involved in this accident, and that the other heaters had not been altered or
16  misused.  It is important that Plaintiffs establish the similarity of all of these factors
17  because each of them may have  contributed in some way to the occurrence of this
18  incident.

19        Fourth, evidence of other incidents is not relevant for purposes of notice. Even
20  if notice were an issue in this case, which Sunbeam contends it is not, for a prior
21  accident to be admissible under a "notice" theory, any prior accident must be such as
22  to alert the defendant to the alleged dangerous condition.  *Elsworth*, 37 Cal. 3d at 555
23  (holding that evidence of other accidents is admissible on notice issue because the
24  other accidents were similar enough to the one involved to have alerted defendant to
25  the problem).   Certainly, accidents that happened to a heater that was not
26  substantially similar to the one involved in this accident, and which occurred under
27  circumstances that were substantially different than the incident in this case, do not
28  meet the test and should be excluded for all purposes.

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

Fifth, evidence of any changes in design or information related to later model heaters could be construed as subsequent remedial measures. In the Ninth Circuit, evidence of subsequent remedial measures is not admissible in a products liability action. Fed. R. Evid. 407; *Fasanaro v. Mooney Aircraft Corp.*, 687 F. Supp. 482 (N.D. Cal. 1988); see also Ault, 13 Cal. 3d, 118; Cal. Evid. Code § 1151 (West).

**Plaintiffs Have Offered No Evidence That The Information They Seek Encompasses Heater Models Which Are In Any Way Similar To The Quartz Class Of Heaters Or The Subject HQH307**

The Plaintiffs in this case have requested information regarding each and every heater ever manufactured by Sunbeam or its predecessor companies. As set forth above, without a showing of product similarity, this information is not discoverable. **(**See Brake, 184 Cal. App. 3d, 937. Plaintiffs have not even attempted to establish any recognizable similarity between the subject HQH307 and any other Sunbeam heater. More recently, Sunbeam has manufactured and sold seven different types of heaters. Specifically, Sunbeam sells: Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters. In 2011, Sunbeam manufactured 4,930,923 heaters, including 167 different models of heaters. In 2012, Sunbeam manufactured 2,892,243 heaters, including 153 different models of heaters. To date, in 2013, Sunbeam manufactured 3,126,103 heaters, including 144 different models of heaters. These totals and models include all classes of heaters. (See Affidavit of Richard J. Prins "Prins Decl." ¶ 6). Each of the different classes of heaters has different designs and varies in their operation and characteristics. Thus, this Court should deny Plaintiffs' discovery requests in its entirety, because the Quartz class of heaters, and the subject HQH307, are unique in Sunbeam's line of heater products and open ended discovery regarding hundreds of different models and millions of different eaters is simply impermissibly overbroad.

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD - SUITE 1OOO | SHERMAN OAKS, CA 91403
PHONE (323) 658-8O77 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 1 4O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

### a. The Quartz Heater Class and Subject HQH307 are Unlike Other Sunbeam Heaters

Plaintiffs attempt to argue that they are entitled to information regarding all of Sunbeam's heaters because of a "generic" defect in all Sunbeam heaters.  Plaintiffs provide absolutely no evidence or support for this allegation.  Sunbeam sells over 100 different model heaters each year which are designed to meet the specific needs of Sunbeam's consumers.  (Prins Decl. ¶ 5).   The Quartz class heaters, and the subject HQH307, are unlike Sunbeam's other heater classes and have distinct characteristics.

### b. The Design of the Quartz Heaters and the Subject HQH307 is Unique

The subject product is believed to be a Holmes HQH307 Quartz Heater. Quartz Heaters are equipped with a resistive element encased in a quartz tube.  (Prins Decl. ¶ 7).  This design is exclusive to the Quartz Heater models.  (Prins Decl. ¶ 7). Further, the design of current Quartz Heater models differs from the Quartz Heaters manufactured prior to 2010/2011 as they were equipped with a ceramic disc with a push button manual reset thermostat.  (Prins Decl. ¶ 8).  Whereas, the Quartz Heaters manufactured post 2010/2011 through the present are equipped with a manual rest thermostat and one-shot fuse.  (Prins Decl. ¶ 8).  No other heater classes utilize these devices. (Prins Decl. ¶ 9).

The construction of Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters are all quite different. For example, Fan Heaters incorporate an octopus heating element (resistive wire coiled into an octagon shape held with mica plates; Ceramic Heaters incorporate a ceramic heating element (ceramic chips glued together to metal heat sinks); Micathermic and Low-Profile Radiant Heaters incorporate a stitched wire element or micathermic plate; PRH/HRH Radiant Heaters incorporate wire elements with ceramic stand-offs; Halogen Heaters incorporate a halogen heating element; Utility Heaters incorporate a coiled element with ceramic standoffs; Oil-Water-filled Heaters

1   incorporate stamped metal welded cavities for oil or water; and Quartz Heaters

2   incorporate a resistive element encased in a quartz tube.  (Prins Decl. ¶ 9).

3   Most significantly, each class of heater utilizes its own overheat technology.

4   (Prins Decl. ¶ 10).  The design of the subject HQH307 and Quartz Heaters is unique

5   as they are the only products that incorporate a ceramic disc with push button manual

6   reset thermostat.  (Prins Decl. ¶ 10).

7   **c.  <u>Underwriters Laboratories Issued A Report Addressing Only</u>**

8   **<u>the Quartz Heaters Due to the Distinct Characteristics of the</u>**

9   **<u>Products</u>**

10  Underwriters Laboratories ("UL") issued its listing report addressing Quartz

11  Heaters Models HQH, BQH or PQH followed by 307, 308, 309, 309A, 319 or 319A

12  and SQH followed by 310 or 315 due to the distinct characteristics of these products.

13  (Prins Decl. ¶ 7).  Sunbeam produced all documents, including claim and lawsuit

14  information, related to the above- referenced models contained in the UL listing file,

15  including the listing file itself.  (McNulty Decl. ¶25) A UL listing file is created

16  whenever a product manufacturer seeks an evaluation and independent testing by UL

17  that its product meets UL's standards for product safety.  The documents within the

18  UL file include:  testing documents which details the tests which a product must pass

19  prior to obtaining UL certification; results of testing conducted by both UL and the

20  manufacturer; all correspondence between a manufacturer and UL; product drawings;

21  product manuals; detailed information about product components; reports about UL

22  site visits to manufacturer's facilities and any other document generated that may

23  pertain to a products' make-up or performance with respect to safety.  UL groups

24  these documents into files which are separated by product classification ("similar

25  products" are all contained under the same product classification).

26  Underwriters Laboratories (UL) makes an independent evaluation of heater

27  models and groups of heater to determine whether there are enough similarities

28  between classes of heaters, as well as particular models within a class of heaters, to

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO │ SHERMAN OAKS, CA 9 l 4O3
PHONE (323) 658-8O77 │ FAX (323) 658-8477

require independent testing or whether they can be evaluated as a group.  (Prins Decl. ¶ 7).  By grouping these particular model heaters together, UL independently decided that there were enough similarities in design and operation to be tested and listed together.  (Prins Decl. ¶ 7).  If other heaters were also similar they would have been listed together.  (Prins Decl. ¶ 7).  Each class of heaters is individually tested by Underwriters Laboratories and each class of heater has a unique UL listing file as UL proscribes tests and specifications for each of these classes of heaters.  (Prins Decl. ¶ 11).  As reports issued by UL only address heater models which are similar in design and configuration, the Quartz Heaters are unlike Sunbeam's other heater models and classes.  (Prins Decl. ¶ 11).

In total, Sunbeam has produced to Plaintiffs 3,336 pages of documents which include Quartz heater related documents.  (McNulty Decl ¶26)  The documents produced by Sunbeam provide information regarding product design and specifications, quality control procedures, work product instructions, the standards under which the models were made, the tests completed on the models prior to sale by Sunbeam and UL, the components that made up the finished products, as well as the specifics about the components. (McNulty Decl ¶26) Sunbeam has produced all of the documentation in its possession regarding heater models which are similar to the subject HQH307. (McNulty Decl ¶27)  In addition, Sunbeam has produced all documentation in its possession regarding incidents involving these similar products. (McNulty Decl ¶28) For these reasons, this Court should deny Plaintiffs' discovery requests in their entirety.

### Kenneth Shinedling's Request for Production No. 33:

Any and all DOCUMENT/S/ELECTRONICALLY STORED INFORMATION that reflect the name, address and telephone number of the Plaintiff; the name, address and telephone number of the Plaintiffs attorneys; the name, address and telephone number of the Courthouse where the lawsuit was filed; the case

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

number of the lawsuit; the caption of the lawsuit; the date of the lawsuit; and the year, model, and type of the appliance involved) any and all lawsuits filed against YOU wherein it was alleged that HOME HEATER failed and caused injury to their person or property due to a fire hazard.

**Defendant's Response:**

Objection. This request is vague, ambiguous and overly broad in time and scope in that is seeks information concerning products which are not the same or similar to the subject product. Without waiving these objections, see information contained in the attached correspondence to the Consumer Product Safety Commission (CPSC); investigation continues.

**Defendant's Amended Response:**

Sunbeam incorporates by reference herein its objections set forth above. Without waiving these objections, see information contained in the previously produced correspondence with the Consumer Product Safety Commission (CPSC) Bates Stamped: SPI001213-SPI2563. The correspondence also includes information regarding heaters similar in design to the HQH307. Further answering, see the attached Complaints Bates Stamped: SPI003292-SPI003326.

**Plaintiff's Reasons Why Further Responses Should be Ordered:**

The request is neither vague nor ambiguous. Nor is the request so broad as to cause Defendant to be unable to determine what information is being requested. Further, the request does not limit the heater models to Holmes Quartz heaters. Defendant improperly limits Plaintiffs' discovery requests to only the Holmes Quartz heater, when Plaintiffs are seeking discovery that relates to any of Defendant's home heaters. Again, Plaintiffs allege that the subject home heater is defective because it overheated and started the fire. It failed to have a properly installed sensor that would have turned the heater off and/or given warning to users. While the specific model heater is a HQH307 Tower Quartz heater, the defect is not unique to this model but is one that exists in home heaters in general. In other words, instances where

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD - SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

Defendant's other home heaters overheated or started a fire is relevant to the generic defect in all home heaters. Devices, methods or warnings contained in Defendant's home heaters may be relevant to show the subject heater was defective or could have been designed to prevent the subject fire and incident.

### Defendant's Reasons Why Further Responses Should Not be Ordered:

Plaintiffs allege, without any support, that the specific model heater a (HQH307 Tower Quartz heater) is defective because it failed to have a properly installed sensor that would have turned the heater off and/or given a warning to users. Plaintiffs further claim that this is a "generic defect" in all home heaters.  On these specious bases, Plaintiffs seek evidence relating to <u>any single type of home heater</u> made by Sunbeam. The requested discovery is not relevant to the subject matter involved in a pending action if the inquiry is only based on the requesting party's mere suspicion or speculation. *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1324 (Fed. Cir. 1990).

<u>First</u>, Plaintiffs' requests constitute an impermissible fishing expedition that is not reasonably calculated to lead to the discovery of information relevant to Plaintiffs' claims.  Fed. R. Civ. P. 26(b)(1). In fact, the requests place more burden on Sunbeam than the value of the information warrants.  *Greyhound Corp. v. Superior Court In & For Merced Cnty.*, 56 Cal. 2d 355, 384, 364 P.2d 266 (1961). "The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." *Id.* (internal citations and quotation marks omitted).

<u>Second</u>, while a party may request documents "in the responding party's possession, custody, or control" pursuant to Fed. R. Civ. P. 26(b)(1), 34(b) requires the requesting party to describe the items to be produced with "reasonable particularity" and specify a reasonable time, place, and manner for the inspection. Fed. R. Civ. P. 34(b)(1-2). A discovery request should be sufficiently definite and

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 1 4O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

limited in scope that it can be said 'to apprise a person of ordinary intelligence what documents are required and [to enable] the court . . . to ascertain whether the requested documents have been produced.'" *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 (10th Cir. 2008)(quoting Wright & Miller, 8A Federal Practice and Procedure § 2211, at 415). "'All-encompassing demands' that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Fed. R. Civ. P. 34(b)(1)(A)." *In re Asbestos Products Liab. Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009).  The requests for information related to "all heaters" without limitation as to model or brand, time or scope, are not reasonably particular, and they do not meet the particularity standard.  On this basis alone, the Court should deny Plaintiffs' discovery requests as overbroad.

Third, not only are the requests impermissibly overbroad and burdensome, but evidence of other incidents, accidents or complaints are not admissible to prove a defect unless Plaintiffs can show that the circumstances and details of the other accidents and complaints are "substantially similar" to the facts of the accident in this case.[23]  *See Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991)(citations omitted) ("[a] showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect"); *See also Ault v. Int'l Harvester Co.*, 13 Cal. 3d 113, 121-122, 528 P.2d 1148 (1974); *Elsworth v. Beech Aircraft Corp.*, 37 Cal. 3d 540, 555, 691 P.2d 630 (1984)(holding that evidence of prior accidents is admissible only if they are similar and not too remote).  Substantial similarity must exist in the overall circumstances of the incidents – not merely

_____

[23] While Sunbeam acknowledges that admissibility is not the test, discovery may only ordered if it is possible that information in a particular subject area could be relevant or admissible at the time of trial.  *Maldonado v. Superior Court*, 94 Cal. App. 4th 1390, 1397, 115 Cal. Rptr. 2d 137 (2002).  Surely, there is no possibility that the broad scope of information sought by plaintiffs will be admissible at trial due to the authorities cited herein.

component parts – that a party wishes to compare to the incident giving rise to the pending matter.  See e.g. *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434 (10th Cir. 1992).

To be "substantially similar", the other accidents, incidents, complaints and lawsuits must not only involve heaters with the same parts, but must also involve similar time, place or circumstance.  *See Brake v. Beech Aircraft Corp.*, 184 Cal. App. 3d 930, 937, 229 Cal. Rptr. 336 (Ct. App. 1986)(evidence of other accidents could not be admitted to show airplane defectively designed because plaintiff failed to lay foundation of similarity for flight altitude, trim settings, engine power, loading, weather conditions, altitudes, feathering, etc.); *see also Kopfinger v. Grand Cent. Pub. Mkt.*, 60 Cal. 2d 852, 860-861, 389 P.2d 529 (1964)(holding the circumstances of proffered accidents to be dissimilar to facts of case and that trial court was well within its discretion in excluding such evidence).  Likewise, Plaintiffs would also have to establish that the other accidents, incidents, complaints and lawsuits they seek to introduce involve a heater with the same equipment and maintenance condition as the heater involved in this accident, and that the other heaters had not been altered or misused.  It is important that Plaintiffs establish the similarity of all of these factors because each of them may have  contributed in some way to the occurrence of <u>this</u> incident.

<u>Fourth</u>, evidence of other incidents is not relevant for purposes of notice. Even if notice were an issue in this case, which Sunbeam contends it is not, for a prior accident to be admissible under a "notice" theory, any prior accident must be such as to alert the defendant to the alleged dangerous condition.  *Elsworth*, 37 Cal. 3d at 555 (holding that evidence of other accidents is admissible on notice issue because the other accidents were similar enough to the one involved to have alerted defendant to the problem).  Certainly, accidents that happened to a heater that was not substantially similar to the one involved in this accident, and which occurred under circumstances that were substantially different than the incident in this case, do not

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 1 4O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

meet the test and should be excluded for all purposes.

Fifth, evidence of any changes in design or information related to later model heaters could be construed as subsequent remedial measures. In the Ninth Circuit, evidence of subsequent remedial measures is not admissible in a products liability action. Fed. R. Evid. 407; *Fasanaro v. Mooney Aircraft Corp.*, 687 F. Supp. 482 (N.D. Cal. 1988); see also Ault, 13 Cal. 3d, 118; Cal. Evid. Code § 1151 (West).

**Plaintiffs Have Offered No Evidence That The Information They Seek Encompasses Heater Models Which Are In Any Way Similar To The Quartz Class Of Heaters Or The Subject HQH307**

The Plaintiffs in this case have requested information regarding each and every heater ever manufactured by Sunbeam or its predecessor companies. As set forth above, without a showing of product similarity, this information is not discoverable. (*See* Brake, 184 Cal. App. 3d, 937. Plaintiffs have not even attempted to establish any recognizable similarity between the subject HQH307 and any other Sunbeam heater. More recently, Sunbeam has manufactured and sold seven different types of heaters. Specifically, Sunbeam sells: Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters. In 2011, Sunbeam manufactured 4,930,923 heaters, including 167 different models of heaters. In 2012, Sunbeam manufactured 2,892,243 heaters, including 153 different models of heaters. To date, in 2013, Sunbeam manufactured 3,126,103 heaters, including 144 different models of heaters. These totals and models include all classes of heaters. (See Affidavit of Richard J. Prins "Prins Decl." ¶ 6). Each of the different classes of heaters has different designs and varies in their operation and characteristics. Thus, this Court should deny Plaintiffs' discovery requests in its entirety, because the Quartz class of heaters, and the subject HQH307, are unique in Sunbeam's line of heater products and open ended discovery regarding hundreds of different models and millions of different eaters is simply impermissibly overbroad.

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 1 4O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9140З
PHONE (323) 658-8O77 | FAX (323) 658-8477

a. **The Quartz Heater Class and Subject HQH307 are Unlike Other Sunbeam Heaters**

Plaintiffs attempt to argue that they are entitled to information regarding all of Sunbeam's heaters because of a "generic" defect in all Sunbeam heaters.  Plaintiffs provide absolutely no evidence or support for this allegation.  Sunbeam sells over 100 different model heaters each year which are designed to meet the specific needs of Sunbeam's consumers.  (Prins Decl. ¶ 5).   The Quartz class heaters, and the subject HQH307, are unlike Sunbeam's other heater classes and have distinct characteristics.

b. **The Design of the Quartz Heaters and the Subject HQH307 is Unique**

The subject product is believed to be a Holmes HQH307 Quartz Heater. Quartz Heaters are equipped with a resistive element encased in a quartz tube.  (Prins Decl. ¶ 7).  This design is exclusive to the Quartz Heater models.  (Prins Decl. ¶ 7). Further, the design of current Quartz Heater models differs from the Quartz Heaters manufactured prior to 2010/2011 as they were equipped with a ceramic disc with a push button manual reset thermostat.  (Prins Decl. ¶ 8).  Whereas, the Quartz Heaters manufactured post 2010/2011 through the present are equipped with a manual rest thermostat and one-shot fuse.  (Prins Decl. ¶ 8).  No other heater classes utilize these devices. (Prins Decl. ¶ 9).

The construction of Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters are all quite different. For example, Fan Heaters incorporate an octopus heating element (resistive wire coiled into an octagon shape held with mica plates; Ceramic Heaters incorporate a ceramic heating element (ceramic chips glued together to metal heat sinks); Micathermic and Low-Profile Radiant Heaters incorporate a stitched wire element or micathermic plate; PRH/HRH Radiant Heaters incorporate wire elements with ceramic stand-offs; Halogen Heaters incorporate a halogen heating element; Utility Heaters incorporate a coiled element with ceramic standoffs; Oil-Water-filled Heaters

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO │ SHERMAN OAKS, CA 9 1 4O3
PHONE (323) 658-8O77 │ FAX (323) 658-8477

1  incorporate stamped metal welded cavities for oil or water; and Quartz Heaters
2  incorporate a resistive element encased in a quartz tube.  (Prins Decl. ¶ 9).

3       Most significantly, each class of heater utilizes its own overheat technology.
4  (Prins Decl. ¶ 10).  The design of the subject HQH307 and Quartz Heaters is unique
5  as they are the only products that incorporate a ceramic disc with push button manual
6  reset thermostat.  (Prins Decl. ¶ 10).

7       **c.**   **Underwriters Laboratories Issued A Report Addressing Only**
8            **the Quartz Heaters Due to the Distinct Characteristics of the**
9            **Products**

10      Underwriters Laboratories ("UL") issued its listing report addressing Quartz
11  Heaters Models HQH, BQH or PQH followed by 307, 308, 309, 309A, 319 or 319A
12  and SQH followed by 310 or 315 due to the distinct characteristics of these products.
13  (Prins Decl. ¶ 7).  Sunbeam produced all documents, including claim and lawsuit
14  information, related to the above- referenced models contained in the UL listing file,
15  including the listing file itself.  (McNulty Decl. ¶25) A UL listing file is created
16  whenever a product manufacturer seeks an evaluation and independent testing by UL
17  that its product meets UL's standards for product safety.  The documents within the
18  UL file include:  testing documents which details the tests which a product must pass
19  prior to obtaining UL certification; results of testing conducted by both UL and the
20  manufacturer; all correspondence between a manufacturer and UL; product drawings;
21  product manuals; detailed information about product components; reports about UL
22  site visits to manufacturer's facilities and any other document generated that may
23  pertain to a products' make-up or performance with respect to safety.  UL groups
24  these documents into files which are separated by product classification ("similar
25  products" are all contained under the same product classification).

26      Underwriters Laboratories (UL) makes an independent evaluation of heater
27  models and groups of heater to determine whether there are enough similarities
28  between classes of heaters, as well as particular models within a class of heaters, to

require independent testing or whether they can be evaluated as a group.  (Prins Decl. ¶ 7).  By grouping these particular model heaters together, UL independently decided that there were enough similarities in design and operation to be tested and listed together.  (Prins Decl. ¶ 7).  If other heaters were also similar they would have been listed together.  (Prins Decl. ¶ 7).  Each class of heaters is individually tested by Underwriters Laboratories and each class of heater has a unique UL listing file as UL proscribes tests and specifications for each of these classes of heaters.  (Prins Decl. ¶ 11).  As reports issued by UL only address heater models which are similar in design and configuration, the Quartz Heaters are unlike Sunbeam's other heater models and classes.  (Prins Decl. ¶ 11).

In total, Sunbeam has produced to Plaintiffs 3,336 pages of documents which include Quartz heater related documents.   (McNulty Decl ¶26) The documents produced by Sunbeam provide information regarding product design and specifications, quality control procedures, work product instructions, the standards under which the models were made, the tests completed on the models prior to sale by Sunbeam and UL, the components that made up the finished products, as well as the specifics about the components. (McNulty Decl ¶26) Sunbeam has produced all of the documentation in its possession regarding heater models which are similar to the subject HQH307. (McNulty Decl ¶27)  In addition, Sunbeam has produced all documentation in its possession regarding incidents involving these similar products. (McNulty Decl ¶28) For these reasons, this Court should deny Plaintiffs' discovery requests in their entirety.


**Kenneth Shinedling's Request for Production No. 39:**

Any and all DOCUMENTS/ELECTRONICALLY STORED INFORMATION that reflect all actions YOU took in response to all COMMUNICATIONS (including before and after the INCIDENT) with anyone (including but not limited to the) consumers who filed reports with the U.S. Consumer Product Safety Commission

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

which relate in any way to any HOME HEATER due to a fire hazard, which was designed, manufactured, or distributed by YOU including the full name, address and phone numbers of the PERSON(s) making the COMMUNICATION or claim, the full name, address and phone numbers of the PERSON(s) receiving the COMMUNICATION or claim, the date of the COMMUNICATION, the method of COMMUNICATION (e.g. phone, email, letter, etc.), the model and year of the HOME HEATER involved, the date of the incident, the location of the incident, the title and case number of the action, the complete name and address of the court involved, and the full name, address and telephone number of the attorney for the Plaintiff in each action.

**Defendant's Response:**

Objection. This request is vague, ambiguous and overly broad in time and scope. Further objecting, this request seeks information concerning products which are not the same or similar to the subject product and, consequently, will not lead to admissible evidence.

**Defendant's Amended Response:**

Sunbeam incorporates by reference herein its objections set forth above. Without waiving these objections, the CPSC has never made a determination that the subject product was a possible fire hazard. See previously produced documents Bates Stamped: SPI001224-SPI001225.

**Plaintiff's Reasons Why Further Responses Should be Ordered:**

The request is neither vague nor ambiguous. Nor is the request so broad as to cause Defendant to be unable to determine what information is being requested. Further, the request does not limit the heater models to Holmes Quartz heaters. Defendant improperly limits Plaintiffs' discovery requests to only the Holmes Quartz heater, when Plaintiffs are seeking discovery that relates to any of Defendant's home heaters. Again, Plaintiffs allege that the subject home heater is defective because it overheated and started the fire. It failed to have a properly installed sensor that would

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

have turned the heater off and/or given warning to users. While the specific model heater is a HQH307 Tower Quartz heater, the defect is not unique to this model but is one that exists in home heaters in general. In other words, instances where Defendant's other home heaters overheated or started a fire is relevant to the generic defect in all home heaters. Devices, methods or warnings contained in Defendant's home heaters may be relevant to show the subject heater was defective or could have been designed to prevent the subject fire and incident.

**Defendant's Reasons Why Further Responses Should Not be Ordered:**

Plaintiffs allege, without any support, that the specific model heater a (HQH307 Tower Quartz heater) is defective because it failed to have a properly installed sensor that would have turned the heater off and/or given a warning to users. Plaintiffs further claim that this is a "generic defect" in all home heaters. On these specious bases, Plaintiffs seek evidence relating to any single type of home heater made by Sunbeam. The requested discovery is not relevant to the subject matter involved in a pending action if the inquiry is only based on the requesting party's mere suspicion or speculation. *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1324 (Fed. Cir. 1990).

First, Plaintiffs' requests constitute an impermissible fishing expedition that is not reasonably calculated to lead to the discovery of information relevant to Plaintiffs' claims. Fed. R. Civ. P. 26(b)(1). In fact, the requests place more burden on Sunbeam than the value of the information warrants. *Greyhound Corp. v. Superior Court In & For Merced Cnty.*, 56 Cal. 2d 355, 384, 364 P.2d 266 (1961). "The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." *Id.* (internal citations and quotation marks omitted).

Second, while a party may request documents "in the responding party's possession, custody, or control" pursuant to Fed. R. Civ. P. 26(b)(1), 34(b) requires

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

the requesting party to describe the items to be produced with "reasonable particularity" and specify a reasonable time, place, and manner for the inspection. Fed. R. Civ. P. 34(b)(1-2). A discovery request should be sufficiently definite and limited in scope that it can be said 'to apprise a person of ordinary intelligence what documents are required and [to enable] the court . . . to ascertain whether the requested documents have been produced.'" *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 (10th Cir. 2008)(quoting Wright & Miller, 8A Federal Practice and Procedure § 2211, at 415). "'All-encompassing demands' that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Fed. R. Civ. P. 34(b)(1)(A)." *In re Asbestos Products Liab. Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009). The requests for information related to "all heaters" without limitation as to model or brand, time or scope, are not reasonably particular, and they do not meet the particularity standard. On this basis alone, the Court should deny Plaintiffs' discovery requests as overbroad.

Third, not only are the requests impermissibly overbroad and burdensome, but evidence of other incidents, accidents or complaints are not admissible to prove a defect unless Plaintiffs can show that the circumstances and details of the other accidents and complaints are "substantially similar" to the facts of the accident in this case.[24] *See Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991)(citations omitted) ("[a] showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect"); *See also Ault v. Int'l Harvester Co.*, 13 Cal. 3d 113, 121-122, 528 P.2d 1148 (1974); *Elsworth v. Beech Aircraft*

---

[24] While Sunbeam acknowledges that admissibility is not the test, discovery may only ordered if it is possible that information in a particular subject area could be relevant or admissible at the time of trial. *Maldonado v. Superior Court*, 94 Cal. App. 4th 1390, 1397, 115 Cal. Rptr. 2d 137 (2002). Surely, there is no possibility that the broad scope of information sought by plaintiffs will be admissible at trial due to the authorities cited herein.

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

*Corp.*, 37 Cal. 3d 540, 555, 691 P.2d 630 (1984)(holding that evidence of prior accidents is admissible only if they are similar and not too remote).   Substantial similarity must exist in the overall circumstances of the incidents – not merely component parts – that a party wishes to compare to the incident giving rise to the pending matter.   See e.g. *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434 (10th Cir. 1992).

To be "substantially similar", the other accidents, incidents, complaints and lawsuits must not only involve heaters with the same parts, but must also involve similar time, place or circumstance.   *See Brake v. Beech Aircraft Corp.*, 184 Cal. App. 3d 930, 937, 229 Cal. Rptr. 336 (Ct. App. 1986)(evidence of other accidents could not be admitted to show airplane defectively designed because plaintiff failed to lay foundation of similarity for flight altitude, trim settings, engine power, loading, weather conditions, altitudes, feathering, etc.); *see also Kopfinger v. Grand Cent. Pub. Mkt.*, 60 Cal. 2d 852, 860-861, 389 P.2d 529 (1964)(holding the circumstances of proffered accidents to be dissimilar to facts of case and that trial court was well within its discretion in excluding such evidence).   Likewise, Plaintiffs would also have to establish that the other accidents, incidents, complaints and lawsuits they seek to introduce involve a heater with the same equipment and maintenance condition as the heater involved in this accident, and that the other heaters had not been altered or misused.   It is important that Plaintiffs establish the similarity of all of these factors because each of them may have  contributed in some way to the occurrence of <u>this</u> incident.

<u>Fourth</u>, evidence of other incidents is not relevant for purposes of notice. Even if notice were an issue in this case, which Sunbeam contends it is not, for a prior accident to be admissible under a "notice" theory, any prior accident must be such as to alert the defendant to the alleged dangerous condition.   *Elsworth*, 37 Cal. 3d at 555 (holding that evidence of other accidents is admissible on notice issue because the other accidents were similar enough to the one involved to have alerted defendant to

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 91403
PHONE (323) 658-8O77 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

1   the problem).   Certainly, accidents that happened to a heater that was not

2   substantially similar to the one involved in this accident, and which occurred under

3   circumstances that were substantially different than the incident in this case, do not

4   meet the test and should be excluded for all purposes.

5   Fifth, evidence of any changes in design or information related to later model

6   heaters could be construed as subsequent remedial measures. In the Ninth Circuit,

7   evidence of subsequent remedial measures is not admissible in a products liability

8   action. Fed. R. Evid. 407; *Fasanaro v. Mooney Aircraft Corp.*, 687 F. Supp. 482

9   (N.D. Cal. 1988); see also Ault, 13 Cal. 3d, 118; Cal. Evid. Code § 1151 (West).

10   **Plaintiffs Have Offered No Evidence That The Information They Seek**

11   **Encompasses Heater Models Which Are In Any Way Similar To The**

12   **Quartz Class Of Heaters Or The Subject HQH307**

13   The Plaintiffs in this case have requested information regarding each and every

14   heater ever manufactured by Sunbeam or its predecessor companies. As set forth

15   above, without a showing of product similarity, this information is not discoverable.

16   (*See* Brake, 184 Cal. App. 3d, 937.  Plaintiffs have not even attempted to establish

17   any recognizable similarity between the subject HQH307 and any other Sunbeam

18   heater.  More recently, Sunbeam has manufactured and sold seven different types of

19   heaters.   Specifically, Sunbeam sells:   Fan Heaters, Ceramic Heaters, Radiant

20   Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz

21   Heaters.  In 2011, Sunbeam manufactured 4,930,923 heaters, including 167 different

22   models of heaters.  In 2012, Sunbeam manufactured 2,892,243 heaters, including 153

23   different models of heaters.   To date, in 2013, Sunbeam manufactured 3,126,103

24   heaters, including 144 different models of heaters.  These totals and models include

25   all classes of heaters.  (See Affidavit of Richard J. Prins "Prins Decl." ¶ 6).  Each of

26   the different classes of heaters has different designs and varies in their operation and

27   characteristics.   Thus, this Court should deny Plaintiffs' discovery requests in its

28   entirety, because the Quartz class of heaters, and the subject HQH307, are unique in

Sunbeam's line of heater products and open ended discovery regarding hundreds of different models and millions of different eaters is simply impermissibly overbroad.

### a.    The Quartz Heater Class and Subject HQH307 are Unlike Other Sunbeam Heaters

Plaintiffs attempt to argue that they are entitled to information regarding all of Sunbeam's heaters because of a "generic" defect in all Sunbeam heaters.  Plaintiffs provide absolutely no evidence or support for this allegation.  Sunbeam sells over 100 different model heaters each year which are designed to meet the specific needs of Sunbeam's consumers.  (Prins Decl. ¶ 5).   The Quartz class heaters, and the subject HQH307, are unlike Sunbeam's other heater classes and have distinct characteristics.

### b.    The Design of the Quartz Heaters and the Subject HQH307 is Unique

The subject product is believed to be a Holmes HQH307 Quartz Heater. Quartz Heaters are equipped with a resistive element encased in a quartz tube.  (Prins Decl. ¶ 7).  This design is exclusive to the Quartz Heater models.  (Prins Decl. ¶ 7). Further, the design of current Quartz Heater models differs from the Quartz Heaters manufactured prior to 2010/2011 as they were equipped with a ceramic disc with a push button manual reset thermostat.  (Prins Decl. ¶ 8).  Whereas, the Quartz Heaters manufactured post 2010/2011 through the present are equipped with a manual rest thermostat and one-shot fuse.  (Prins Decl. ¶ 8).  No other heater classes utilize these devices. (Prins Decl. ¶ 9).

The construction of Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters are all quite different. For example, Fan Heaters incorporate an octopus heating element (resistive wire coiled into an octagon shape held with mica plates; Ceramic Heaters incorporate a ceramic heating element (ceramic chips glued together to metal heat sinks); Micathermic and Low-Profile Radiant Heaters incorporate a stitched wire element or micathermic plate; PRH/HRH Radiant Heaters incorporate wire elements with

THE HOMAMPOUR LAW FIRM, PLC.
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

ceramic stand-offs; Halogen Heaters incorporate a halogen heating element; Utility Heaters incorporate a coiled element with ceramic standoffs; Oil-Water-filled Heaters incorporate stamped metal welded cavities for oil or water; and Quartz Heaters incorporate a resistive element encased in a quartz tube.  (Prins Decl. ¶ 9).

Most significantly, each class of heater utilizes its own overheat technology. (Prins Decl. ¶ 10).  The design of the subject HQH307 and Quartz Heaters is unique as they are the only products that incorporate a ceramic disc with push button manual reset thermostat.  (Prins Decl. ¶ 10).

      **c.**    **Underwriters Laboratories Issued A Report Addressing Only the Quartz Heaters Due to the Distinct Characteristics of the Products**

Underwriters Laboratories ("UL") issued its listing report addressing Quartz Heaters Models HQH, BQH or PQH followed by 307, 308, 309, 309A, 319 or 319A and SQH followed by 310 or 315 due to the distinct characteristics of these products. (Prins Decl. ¶ 7).  Sunbeam produced all documents, including claim and lawsuit information, related to the above- referenced models contained in the UL listing file, including the listing file itself.  (McNulty Decl. ¶25) A UL listing file is created whenever a product manufacturer seeks an evaluation and independent testing by UL that its product meets UL's standards for product safety.  The documents within the UL file include:  testing documents which details the tests which a product must pass prior to obtaining UL certification; results of testing conducted by both UL and the manufacturer; all correspondence between a manufacturer and UL; product drawings; product manuals; detailed information about product components; reports about UL site visits to manufacturer's facilities and any other document generated that may pertain to a products' make-up or performance with respect to safety.  UL groups these documents into files which are separated by product classification ("similar products" are all contained under the same product classification).

Underwriters Laboratories (UL) makes an independent evaluation of heater

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 1403
PHONE (323) 658-8O77 | FAX (323) 658-8477

models and groups of heater to determine whether there are enough similarities between classes of heaters, as well as particular models within a class of heaters, to require independent testing or whether they can be evaluated as a group.  (Prins Decl. ¶ 7).  By grouping these particular model heaters together, UL independently decided that there were enough similarities in design and operation to be tested and listed together.  (Prins Decl. ¶ 7).  If other heaters were also similar they would have been listed together.  (Prins Decl. ¶ 7).  Each class of heaters is individually tested by Underwriters Laboratories and each class of heater has a unique UL listing file as UL proscribes tests and specifications for each of these classes of heaters.  (Prins Decl. ¶ 11).  As reports issued by UL only address heater models which are similar in design and configuration, the Quartz Heaters are unlike Sunbeam's other heater models and classes.  (Prins Decl. ¶ 11).

In total, Sunbeam has produced to Plaintiffs 3,336 pages of documents which include Quartz heater related documents.   (McNulty Decl ¶26) The documents produced by Sunbeam provide information regarding product design and specifications, quality control procedures, work product instructions, the standards under which the models were made, the tests completed on the models prior to sale by Sunbeam and UL, the components that made up the finished products, as well as the specifics about the components. (McNulty Decl ¶26) Sunbeam has produced all of the documentation in its possession regarding heater models which are similar to the subject HQH307. (McNulty Decl ¶27)  In addition, Sunbeam has produced all documentation in its possession regarding incidents involving these similar products. (McNulty Decl ¶28) For these reasons, this Court should deny Plaintiffs' discovery requests in their entirety.

### **Kenneth Shinedling's Request for Production No. 40:**

Any and all DOCUMENTS/ELECTRONICALLY STORED INFORMATION that reflects changes YOU made to any HOME HEATER after YOUR products were

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 I 4O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

1  identified by the U.S. Consumer Product Safety Commission as a possible fire
2  hazard.

3  **Defendant's Response:**

4  Objection. This request is vague, ambiguous and overly broad in time and
5  scope. Further objecting, this request seeks information concerning products which
6  are not the same or similar to the subject product and, consequently, will not lead to
7  admissible evidence. Without waiving these objections, the CPSC never identified the
8  subject heater as a possible fire hazard.

9  **Defendant's Amended Response:**

10  Sunbeam incorporates by reference herein its objections set forth above.
11  Without waiving these objections, the CPSC never identified the subject heater as a
12  possible fire hazard. See previously produced documents Bates Stamped: SPI001224-
13  SPI001225.

14  **Plaintiff's Reasons Why Further Responses Should be Ordered:**

15  The request is neither vague nor ambiguous. Nor is the request so broad as to
16  cause Defendant to be unable to determine what information is being requested.
17  Further, the request does not limit the heater models to Holmes Quartz heaters.
18  Defendant improperly limits Plaintiffs' discovery requests to only the Holmes Quartz
19  heater, when Plaintiffs are seeking discovery that relates to any of Defendant's home
20  heaters. Again, Plaintiffs allege that the subject home heater is defective because it
21  overheated and started the fire. It failed to have a properly installed sensor that would
22  have turned the heater off and/or given warning to users. While the specific model
23  heater is a HQH307 Tower Quartz heater, the defect is not unique to this model but is
24  one that exists in home heaters in general. In other words, instances where
25  Defendant's other home heaters overheated or started a fire is relevant to the generic
26  defect in all home heaters. Devices, methods or warnings contained in Defendant's
27  home heaters may be relevant to show the subject heater was defective or could have
28  been designed to prevent the subject fire and incident.

THE HOMAMPOUR LAW FIRM, PLC
1503 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

**Defendant's Reasons Why Further Responses Should Not be Ordered:**

Plaintiffs allege, without any support, that the specific model heater a (HQH307 Tower Quartz heater) is defective because it failed to have a properly installed sensor that would have turned the heater off and/or given a warning to users. Plaintiffs further claim that this is a "generic defect" in all home heaters. On these specious bases, Plaintiffs seek evidence relating to <u>any single type of home heater</u> made by Sunbeam. The requested discovery is not relevant to the subject matter involved in a pending action if the inquiry is only based on the requesting party's mere suspicion or speculation. *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1324 (Fed. Cir. 1990).

<u>First</u>, Plaintiffs' requests constitute an impermissible fishing expedition that is not reasonably calculated to lead to the discovery of information relevant to Plaintiffs' claims. Fed. R. Civ. P. 26(b)(1). In fact, the requests place more burden on Sunbeam than the value of the information warrants. *Greyhound Corp. v. Superior Court In & For Merced Cnty.*, 56 Cal. 2d 355, 384, 364 P.2d 266 (1961). "The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." *Id.* (internal citations and quotation marks omitted).

<u>Second</u>, while a party may request documents "in the responding party's possession, custody, or control" pursuant to Fed. R. Civ. P. 26(b)(1), 34(b) requires the requesting party to describe the items to be produced with "reasonable particularity" and specify a reasonable time, place, and manner for the inspection. Fed. R. Civ. P. 34(b)(1-2). A discovery request should be sufficiently definite and limited in scope that it can be said 'to apprise a person of ordinary intelligence what documents are required and [to enable] the court . . . to ascertain whether the requested documents have been produced.'" *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 (10th Cir. 2008)(quoting Wright & Miller, 8A Federal Practice and

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 914O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

Procedure § 2211, at 415). "'All-encompassing demands' that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Fed. R. Civ. P. 34(b)(1)(A)." *In re Asbestos Products Liab. Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009). The requests for information related to "all heaters" without limitation as to model or brand, time or scope, are not reasonably particular, and they do not meet the particularity standard. On this basis alone, the Court should deny Plaintiffs' discovery requests as overbroad.

<u>Third</u>, not only are the requests impermissibly overbroad and burdensome, but evidence of other incidents, accidents or complaints are not admissible to prove a defect unless Plaintiffs can show that the circumstances and details of the other accidents and complaints are "substantially similar" to the facts of the accident in this case.[25] *See Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991)(citations omitted) ("[a] showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect"); *See also Ault v. Int'l Harvester Co.*, 13 Cal. 3d 113, 121-122, 528 P.2d 1148 (1974); *Elsworth v. Beech Aircraft Corp.*, 37 Cal. 3d 540, 555, 691 P.2d 630 (1984)(holding that evidence of prior accidents is admissible only if they are similar and not too remote). Substantial similarity must exist in the overall circumstances of the incidents – not merely component parts – that a party wishes to compare to the incident giving rise to the pending matter. See e.g. *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434 (10th Cir. 1992).

To be "substantially similar", the other accidents, incidents, complaints and

---

[25] While Sunbeam acknowledges that admissibility is not the test, discovery may only ordered if it is possible that information in a particular subject area could be relevant or admissible at the time of trial. *Maldonado v. Superior Court*, 94 Cal. App. 4th 1390, 1397, 115 Cal. Rptr. 2d 137 (2002). Surely, there is no possibility that the broad scope of information sought by plaintiffs will be admissible at trial due to the authorities cited herein.

lawsuits must not only involve heaters with the same parts, but must also involve similar time, place or circumstance. *See Brake v. Beech Aircraft Corp.*, 184 Cal. App. 3d 930, 937, 229 Cal. Rptr. 336 (Ct. App. 1986)(evidence of other accidents could not be admitted to show airplane defectively designed because plaintiff failed to lay foundation of similarity for flight altitude, trim settings, engine power, loading, weather conditions, altitudes, feathering, etc.); *see also Kopfinger v. Grand Cent. Pub. Mkt.*, 60 Cal. 2d 852, 860-861, 389 P.2d 529 (1964)(holding the circumstances of proffered accidents to be dissimilar to facts of case and that trial court was well within its discretion in excluding such evidence).  Likewise, Plaintiffs would also have to establish that the other accidents, incidents, complaints and lawsuits they seek to introduce involve a heater with the same equipment and maintenance condition as the heater involved in this accident, and that the other heaters had not been altered or misused.  It is important that Plaintiffs establish the similarity of all of these factors because each of them may have  contributed in some way to the occurrence of <u>this</u> incident.

Fourth, evidence of other incidents is not relevant for purposes of notice. Even if notice were an issue in this case, which Sunbeam contends it is not, for a prior accident to be admissible under a "notice" theory, any prior accident must be such as to alert the defendant to the alleged dangerous condition. *Elsworth*, 37 Cal. 3d at 555 (holding that evidence of other accidents is admissible on notice issue because the other accidents were similar enough to the one involved to have alerted defendant to the problem).  Certainly, accidents that happened to a heater that was not substantially similar to the one involved in this accident, and which occurred under circumstances that were substantially different than the incident in this case, do not meet the test and should be excluded for all purposes.

Fifth, evidence of any changes in design or information related to later model heaters could be construed as subsequent remedial measures. In the Ninth Circuit, evidence of subsequent remedial measures is <u>not</u> admissible in a products liability

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

action. Fed. R. Evid. 407; *Fasanaro v. Mooney Aircraft Corp.*, 687 F. Supp. 482 (N.D. Cal. 1988); see also <u>Ault</u>, 13 Cal. 3d, 118; Cal. Evid. Code § 1151 (West).

**<u>Plaintiffs Have Offered No Evidence That The Information They Seek Encompasses Heater Models Which Are In Any Way Similar To The Quartz Class Of Heaters Or The Subject HQH307</u>**

The Plaintiffs in this case have requested information regarding each and every heater ever manufactured by Sunbeam or its predecessor companies. As set forth above, without a showing of product similarity, this information is not discoverable. **(**See <u>Brake</u>, 184 Cal. App. 3d, 937. Plaintiffs have not even attempted to establish any recognizable similarity between the subject HQH307 and any other Sunbeam heater. More recently, Sunbeam has manufactured and sold seven different types of heaters. Specifically, Sunbeam sells: Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters. In 2011, Sunbeam manufactured 4,930,923 heaters, including 167 different models of heaters. In 2012, Sunbeam manufactured 2,892,243 heaters, including 153 different models of heaters. To date, in 2013, Sunbeam manufactured 3,126,103 heaters, including 144 different models of heaters. These totals and models include all classes of heaters. (See Affidavit of Richard J. Prins "Prins Decl." ¶ 6). Each of the different classes of heaters has different designs and varies in their operation and characteristics. Thus, this Court should deny Plaintiffs' discovery requests in its entirety, because the Quartz class of heaters, and the subject HQH307, are unique in Sunbeam's line of heater products and open ended discovery regarding hundreds of different models and millions of different eaters is simply impermissibly overbroad.

    **a.**    **<u>The Quartz Heater Class and Subject HQH307 are Unlike Other Sunbeam Heaters</u>**

Plaintiffs attempt to argue that they are entitled to information regarding all of Sunbeam's heaters because of a "generic" defect in all Sunbeam heaters. Plaintiffs provide absolutely no evidence or support for this allegation. Sunbeam sells over 100

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 1 4O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

1  different model heaters each year which are designed to meet the specific needs of

2  Sunbeam's consumers.  (Prins Decl. ¶ 5).   The Quartz class heaters, and the subject

3  HQH307, are unlike Sunbeam's other heater classes and have distinct characteristics.

**b.**  **The Design of the Quartz Heaters and the Subject HQH307 is Unique**

6      The subject product is believed to be a Holmes HQH307 Quartz Heater.

7  Quartz Heaters are equipped with a resistive element encased in a quartz tube.  (Prins

8  Decl. ¶ 7).  This design is exclusive to the Quartz Heater models.  (Prins Decl. ¶ 7).

9  Further, the design of current Quartz Heater models differs from the Quartz Heaters

10  manufactured prior to 2010/2011 as they were equipped with a ceramic disc with a

11  push button manual reset thermostat.  (Prins Decl. ¶ 8).  Whereas, the Quartz Heaters

12  manufactured post 2010/2011 through the present are equipped with a manual rest

13  thermostat and one-shot fuse.  (Prins Decl. ¶ 8).  No other heater classes utilize these

14  devices. (Prins Decl. ¶ 9).

15      The construction of Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen

16  Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters are all quite

17  different. For example, Fan Heaters incorporate an octopus heating element (resistive

18  wire coiled into an octagon shape held with mica plates; Ceramic Heaters incorporate

19  a ceramic heating element (ceramic chips glued together to metal heat sinks);

20  Micathermic and Low-Profile Radiant Heaters incorporate a stitched wire element or

21  micathermic plate; PRH/HRH Radiant Heaters incorporate wire elements with

22  ceramic stand-offs; Halogen Heaters incorporate a halogen heating element; Utility

23  Heaters incorporate a coiled element with ceramic standoffs; Oil-Water-filled Heaters

24  incorporate stamped metal welded cavities for oil or water; and Quartz Heaters

25  incorporate a resistive element encased in a quartz tube.  (Prins Decl. ¶ 9).

26      Most significantly, each class of heater utilizes its own overheat technology.

27  (Prins Decl. ¶ 10).  The design of the subject HQH307 and Quartz Heaters is unique

28  as they are the only products that incorporate a ceramic disc with push button manual

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO │ SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 │ FAX (323) 658-8477

reset thermostat.  (Prins Decl. ¶ 10).

      c.    **Underwriters Laboratories Issued A Report Addressing Only the Quartz Heaters Due to the Distinct Characteristics of the Products**

      Underwriters Laboratories ("UL") issued its listing report addressing Quartz Heaters Models HQH, BQH or PQH followed by 307, 308, 309, 309A, 319 or 319A and SQH followed by 310 or 315 due to the distinct characteristics of these products. (Prins Decl. ¶ 7).  Sunbeam produced all documents, including claim and lawsuit information, related to the above- referenced models contained in the UL listing file, including the listing file itself.  (McNulty Decl. ¶25) A UL listing file is created whenever a product manufacturer seeks an evaluation and independent testing by UL that its product meets UL's standards for product safety.  The documents within the UL file include:  testing documents which details the tests which a product must pass prior to obtaining UL certification; results of testing conducted by both UL and the manufacturer; all correspondence between a manufacturer and UL; product drawings; product manuals; detailed information about product components; reports about UL site visits to manufacturer's facilities and any other document generated that may pertain to a products' make-up or performance with respect to safety.  UL groups these documents into files which are separated by product classification ("similar products" are all contained under the same product classification).

      Underwriters Laboratories (UL) makes an independent evaluation of heater models and groups of heater to determine whether there are enough similarities between classes of heaters, as well as particular models within a class of heaters, to require independent testing or whether they can be evaluated as a group.  (Prins Decl. ¶ 7).  By grouping these particular model heaters together, UL independently decided that there were enough similarities in design and operation to be tested and listed together.  (Prins Decl. ¶ 7).  If other heaters were also similar they would have been listed together.  (Prins Decl. ¶ 7).  Each class of heaters is individually tested by

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
1503 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

1   Underwriters Laboratories and each class of heater has a unique UL listing file as UL

2   proscribes tests and specifications for each of these classes of heaters.  (Prins Decl. ¶

3   11).  As reports issued by UL only address heater models which are similar in design

4   and configuration, the Quartz Heaters are unlike Sunbeam's other heater models and

5   classes.  (Prins Decl. ¶ 11).

6        In total, Sunbeam has produced to Plaintiffs 3,336 pages of documents which

7   include Quartz heater related documents.   (McNulty Decl ¶26) The documents

8   produced  by  Sunbeam  provide  information  regarding  product  design  and

9   specifications, quality control procedures, work product instructions, the standards

10  under which the models were made, the tests completed on the models prior to sale

11  by Sunbeam and UL, the components that made up the finished products, as well as

12  the specifics about the components. (McNulty Decl ¶26) Sunbeam has produced all

13  of the documentation in its possession regarding heater models which are similar to

14  the subject HQH307. (McNulty Decl ¶27)  In addition, Sunbeam has produced all

15  documentation in its possession regarding incidents involving these similar products.

16  (McNulty Decl ¶28) For these reasons, this Court should deny Plaintiffs' discovery

17  requests in their entirety.

18

19       **Kenneth Shinedling's Request for Production No. 41:**

20       Any and all DOCUMENTS/ELECTRONICALLY STORED INFORMATION

21  that reflect substantially similar COMPONENT(S) including the part name and part

22  number, number contained in the SUBJECT HEATER with any of YOUR products

23  identified by the U.S. Consumer Product Safety Commission as a possible fire

24  hazard.

25       **Defendant's Response:**

26       Objection. This request is vague, ambiguous and overly broad in time and

27  scope. Further objecting, this request seeks information concerning products which

28  are not the same or similar to the subject product and, consequently, will not lead to

1  admissible evidence. Without waiving these objections, the CPSC never identified the
2  subject heater as a possible fire hazard.

3       **Defendant's Amended Response:**

4       Sunbeam incorporates by reference herein its objections set forth above.
5  Without waiving these objections, the CPSC never identified the subject heater as a
6  possible fire hazard. See previously produced documents Bates Stamped: SPI001224-
7  SPI001225.

8       **Plaintiff's Reasons Why Further Responses Should be Ordered:**

9       The request is neither vague nor ambiguous. Nor is the request so broad as to
10  cause Defendant to be unable to determine what information is being requested.
11  Further, the request does not limit the heater models to Holmes Quartz heaters.
12  Defendant improperly limits Plaintiffs' discovery requests to only the Holmes Quartz
13  heater, when Plaintiffs are seeking discovery that relates to any of Defendant's home
14  heaters. Again, Plaintiffs allege that the subject home heater is defective because it
15  overheated and started the fire. It failed to have a properly installed sensor that would
16  have turned the heater off and/or given warning to users. While the specific model
17  heater is a HQH307 Tower Quartz heater, the defect is not unique to this model but is
18  one that exists in home heaters in general. In other words, instances where
19  Defendant's other home heaters overheated or started a fire is relevant to the generic
20  defect in all home heaters. Devices, methods or warnings contained in Defendant's
21  home heaters may be relevant to show the subject heater was defective or could have
22  been designed to prevent the subject fire and incident.

23       **Defendant's Reasons Why Further Responses Should Not be Ordered:**

24       Plaintiffs allege, without any support, that the specific model heater a
25  (HQH307 Tower Quartz heater) is defective because it failed to have a properly
26  installed sensor that would have turned the heater off and/or given a warning to users.
27  Plaintiffs further claim that this is a "generic defect" in all home heaters.  On these
28  specious bases, Plaintiffs seek evidence relating to <u>any single type of home heater</u>

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 91403
PHONE (323) 658-8O77 | FAX (323) 658-8477

made by Sunbeam. The requested discovery is not relevant to the subject matter involved in a pending action if the inquiry is only based on the requesting party's mere suspicion or speculation. *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1324 (Fed. Cir. 1990).

First, Plaintiffs' requests constitute an impermissible fishing expedition that is not reasonably calculated to lead to the discovery of information relevant to Plaintiffs' claims. Fed. R. Civ. P. 26(b)(1). In fact, the requests place more burden on Sunbeam than the value of the information warrants. *Greyhound Corp. v. Superior Court In & For Merced Cnty.*, 56 Cal. 2d 355, 384, 364 P.2d 266 (1961). "The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." *Id.* (internal citations and quotation marks omitted).

Second, while a party may request documents "in the responding party's possession, custody, or control" pursuant to Fed. R. Civ. P. 26(b)(1), 34(b) requires the requesting party to describe the items to be produced with "reasonable particularity" and specify a reasonable time, place, and manner for the inspection. Fed. R. Civ. P. 34(b)(1-2). A discovery request should be sufficiently definite and limited in scope that it can be said 'to apprise a person of ordinary intelligence what documents are required and [to enable] the court . . . to ascertain whether the requested documents have been produced.'" *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 (10th Cir. 2008)(quoting Wright & Miller, 8A Federal Practice and Procedure § 2211, at 415). "'All-encompassing demands' that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Fed. R. Civ. P. 34(b)(1)(A)." *In re Asbestos Products Liab. Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009). The requests for information related to "all heaters" without limitation as to model or brand, time or scope, are not reasonably particular, and they do not meet the particularity standard. On this basis

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD - SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

alone, the Court should deny Plaintiffs' discovery requests as overbroad.

Third, not only are the requests impermissibly overbroad and burdensome, but evidence of other incidents, accidents or complaints are not admissible to prove a defect unless Plaintiffs can show that the circumstances and details of the other accidents and complaints are "substantially similar" to the facts of the accident in this case.[26]  *See Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991)(citations omitted) ("[a] showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect"); *See also Ault v. Int'l Harvester Co.*, 13 Cal. 3d 113, 121-122, 528 P.2d 1148 (1974); *Elsworth v. Beech Aircraft Corp.*, 37 Cal. 3d 540, 555, 691 P.2d 630 (1984)(holding that evidence of prior accidents is admissible only if they are similar and not too remote).  Substantial similarity must exist in the overall circumstances of the incidents – not merely component parts – that a party wishes to compare to the incident giving rise to the pending matter.  See e.g. *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434 (10th Cir. 1992).

To be "substantially similar", the other accidents, incidents, complaints and lawsuits must not only involve heaters with the same parts, but must also involve similar time, place or circumstance.  *See Brake v. Beech Aircraft Corp.*, 184 Cal. App. 3d 930, 937, 229 Cal. Rptr. 336 (Ct. App. 1986)(evidence of other accidents could not be admitted to show airplane defectively designed because plaintiff failed to lay foundation of similarity for flight altitude, trim settings, engine power, loading, weather conditions, altitudes, feathering, etc.); *see also Kopfinger v. Grand Cent.*

---

[26] While Sunbeam acknowledges that admissibility is not the test, discovery may only ordered if it is possible that information in a particular subject area could be relevant or admissible at the time of trial.  *Maldonado v. Superior Court*, 94 Cal. App. 4th 1390, 1397, 115 Cal. Rptr. 2d 137 (2002).  Surely, there is no possibility that the broad scope of information sought by plaintiffs will be admissible at trial due to the authorities cited herein.

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO | SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 | FAX (323) 658-8477

1   *Pub. Mkt.*, 60 Cal. 2d 852, 860-861, 389 P.2d 529 (1964)(holding the circumstances

2   of proffered accidents to be dissimilar to facts of case and that trial court was well

3   within its discretion in excluding such evidence).   Likewise, Plaintiffs would also

4   have to establish that the other accidents, incidents, complaints and lawsuits they seek

5   to introduce involve a heater with the same equipment and maintenance condition as

6   the heater involved in this accident, and that the other heaters had not been altered or

7   misused.   It is important that Plaintiffs establish the similarity of all of these factors

8   because each of them may have  contributed in some way to the occurrence of <u>this</u>

9   incident.

10       <u>Fourth</u>, evidence of other incidents is not relevant for purposes of notice. Even

11   if notice were an issue in this case, which Sunbeam contends it is not, for a prior

12   accident to be admissible under a "notice" theory, any prior accident must be such as

13   to alert the defendant to the alleged dangerous condition.  *Elsworth*, 37 Cal. 3d at 555

14   (holding that evidence of other accidents is admissible on notice issue because the

15   other accidents were similar enough to the one involved to have alerted defendant to

16   the problem).   Certainly, accidents that happened to a heater that was not

17   substantially similar to the one involved in this accident, and which occurred under

18   circumstances that were substantially different than the incident in this case, do not

19   meet the test and should be excluded for all purposes.

20       <u>Fifth</u>, evidence of any changes in design or information related to later model

21   heaters could be construed as subsequent remedial measures. In the Ninth Circuit,

22   evidence of subsequent remedial measures is <u>not</u> admissible in a products liability

23   action. Fed. R. Evid. 407; *Fasanaro v. Mooney Aircraft Corp.*, 687 F. Supp. 482

24   (N.D. Cal. 1988); see also <u>Ault</u>, 13 Cal. 3d, 118; Cal. Evid. Code § 1151 (West).

25       **<u>Plaintiffs Have Offered No Evidence That The Information They Seek</u>**

26   **<u>Encompasses Heater Models Which Are In Any Way Similar To The</u>**

27   **<u>Quartz Class Of Heaters Or The Subject HQH307</u>**

28       The Plaintiffs in this case have requested information regarding each and every

heater ever manufactured by Sunbeam or its predecessor companies. As set forth above, without a showing of product similarity, this information is not discoverable. (*See* <u>Brake</u>, 184 Cal. App. 3d, 937. Plaintiffs have not even attempted to establish any recognizable similarity between the subject HQH307 and any other Sunbeam heater. More recently, Sunbeam has manufactured and sold seven different types of heaters. Specifically, Sunbeam sells: Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters. In 2011, Sunbeam manufactured 4,930,923 heaters, including 167 different models of heaters. In 2012, Sunbeam manufactured 2,892,243 heaters, including 153 different models of heaters. To date, in 2013, Sunbeam manufactured 3,126,103 heaters, including 144 different models of heaters. These totals and models include all classes of heaters. (See Affidavit of Richard J. Prins "Prins Decl." ¶ 6). Each of the different classes of heaters has different designs and varies in their operation and characteristics. Thus, this Court should deny Plaintiffs' discovery requests in its entirety, because the Quartz class of heaters, and the subject HQH307, are unique in Sunbeam's line of heater products and open ended discovery regarding hundreds of different models and millions of different eaters is simply impermissibly overbroad.

## a. The Quartz Heater Class and Subject HQH307 are Unlike Other Sunbeam Heaters

Plaintiffs attempt to argue that they are entitled to information regarding all of Sunbeam's heaters because of a "generic" defect in all Sunbeam heaters. Plaintiffs provide absolutely no evidence or support for this allegation. Sunbeam sells over 100 different model heaters each year which are designed to meet the specific needs of Sunbeam's consumers. (Prins Decl. ¶ 5). The Quartz class heaters, and the subject HQH307, are unlike Sunbeam's other heater classes and have distinct characteristics.

## b. The Design of the Quartz Heaters and the Subject HQH307 is Unique

The subject product is believed to be a Holmes HQH307 Quartz Heater.

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

Quartz Heaters are equipped with a resistive element encased in a quartz tube.  (Prins Decl. ¶ 7).  This design is exclusive to the Quartz Heater models.  (Prins Decl. ¶ 7). Further, the design of current Quartz Heater models differs from the Quartz Heaters manufactured prior to 2010/2011 as they were equipped with a ceramic disc with a push button manual reset thermostat.  (Prins Decl. ¶ 8).  Whereas, the Quartz Heaters manufactured post 2010/2011 through the present are equipped with a manual rest thermostat and one-shot fuse.  (Prins Decl. ¶ 8).  No other heater classes utilize these devices. (Prins Decl. ¶ 9).

The construction of Fan Heaters, Ceramic Heaters, Radiant Heaters, Halogen Heaters, Utility Heaters, Oil/Water-filled Heaters and Quartz Heaters are all quite different. For example, Fan Heaters incorporate an octopus heating element (resistive wire coiled into an octagon shape held with mica plates; Ceramic Heaters incorporate a ceramic heating element (ceramic chips glued together to metal heat sinks); Micathermic and Low-Profile Radiant Heaters incorporate a stitched wire element or micathermic plate; PRH/HRH Radiant Heaters incorporate wire elements with ceramic stand-offs; Halogen Heaters incorporate a halogen heating element; Utility Heaters incorporate a coiled element with ceramic standoffs; Oil-Water-filled Heaters incorporate stamped metal welded cavities for oil or water; and Quartz Heaters incorporate a resistive element encased in a quartz tube.  (Prins Decl. ¶ 9).

Most significantly, each class of heater utilizes its own overheat technology. (Prins Decl. ¶ 10).  The design of the subject HQH307 and Quartz Heaters is unique as they are the only products that incorporate a ceramic disc with push button manual reset thermostat.  (Prins Decl. ¶ 10).

        c.    **Underwriters Laboratories Issued A Report Addressing Only the Quartz Heaters Due to the Distinct Characteristics of the Products**

Underwriters Laboratories ("UL") issued its listing report addressing Quartz Heaters Models HQH, BQH or PQH followed by 307, 308, 309, 309A, 319 or 319A

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

1    and SQH followed by 310 or 315 due to the distinct characteristics of these products.

2    (Prins Decl. ¶ 7).   Sunbeam produced all documents, including claim and lawsuit

3    information, related to the above- referenced models contained in the UL listing file,

4    including the listing file itself.   (McNulty Decl. ¶25) A UL listing file is created

5    whenever a product manufacturer seeks an evaluation and independent testing by UL

6    that its product meets UL's standards for product safety.   The documents within the

7    UL file include:   testing documents which details the tests which a product must pass

8    prior to obtaining UL certification; results of testing conducted by both UL and the

9    manufacturer; all correspondence between a manufacturer and UL; product drawings;

10   product manuals; detailed information about product components; reports about UL

11   site visits to manufacturer's facilities and any other document generated that may

12   pertain to a products' make-up or performance with respect to safety.   UL groups

13   these documents into files which are separated by product classification ("similar

14   products" are all contained under the same product classification).

15          Underwriters Laboratories (UL) makes an independent evaluation of heater

16   models and groups of heater to determine whether there are enough similarities

17   between classes of heaters, as well as particular models within a class of heaters, to

18   require independent testing or whether they can be evaluated as a group.   (Prins Decl.

19   ¶ 7).   By grouping these particular model heaters together, UL independently decided

20   that there were enough similarities in design and operation to be tested and listed

21   together.   (Prins Decl. ¶ 7).   If other heaters were also similar they would have been

22   listed together.   (Prins Decl. ¶ 7).   Each class of heaters is individually tested by

23   Underwriters Laboratories and each class of heater has a unique UL listing file as UL

24   proscribes tests and specifications for each of these classes of heaters.   (Prins Decl. ¶

25   11).   As reports issued by UL only address heater models which are similar in design

26   and configuration, the Quartz Heaters are unlike Sunbeam's other heater models and

27   classes.   (Prins Decl. ¶ 11).

28          In total, Sunbeam has produced to Plaintiffs 3,336 pages of documents which

THE HOMAMPOUR LAW FIRM, PLC
15O3 VENTURA BOULEVARD · SUITE 1OOO │ SHERMAN OAKS, CA 9 14O3
PHONE (323) 658-8O77 │ FAX (323) 658-8477

include Quartz heater related documents.   (McNulty Decl ¶26) The documents produced by Sunbeam provide information regarding product design and specifications, quality control procedures, work product instructions, the standards under which the models were made, the tests completed on the models prior to sale by Sunbeam and UL, the components that made up the finished products, as well as the specifics about the components. (McNulty Decl ¶26) Sunbeam has produced all of the documentation in its possession regarding heater models which are similar to the subject HQH307. (McNulty Decl ¶27)  In addition, Sunbeam has produced all documentation in its possession regarding incidents involving these similar products. (McNulty Decl ¶28) For these reasons, this Court should deny Plaintiffs' discovery requests in their entirety.

\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD · SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477

1   III.  **CONCLUSION**

2         **A.  Plaintiffs' Conclusion**

3         Based on the foregoing, Plaintiffs request that this Court order Defendant

4   Sunbeam to provide further verified responses to Plaintiffs' Special Interrogatories

5   and Requests for Production of Documents, as well as all responsive documents or

6   materials within 10 days of the court's ruling.

7         **B.  Defendant's Conclusion**

8         Premised upon the foregoing, Plaintiffs request that this Court deny Plaintiffs'

9   Motion in its entirety.

10

11  DATED:  September 23, 2013          Respectfully submitted,

12                                       THE HOMAMPOUR LAW FIRM,

13                                       A Professional Law Corporation

14

15                              By:_____

16                                       Arash Homampour,
                                         Corey Arzoumanian,

17                                       Attorneys for Plaintiffs

18  DATED:  September 23, 2013          Respectfully submitted,

19

20                                       Hewitt Wolensky McNulty & Hickson, LLP,

21                                       A Professional Law Corporation

22

23                              By:_____/s/ Elizabeth V. McNulty_____.

24                                       Gary A. Wolensky

25                                       Elizabeth V. McNulty

26                                       Anne Marie Ellis

27                                       Attorneys for Defendant

28

THE HOMAMPOUR LAW FIRM, PLC
15303 VENTURA BOULEVARD - SUITE 1000 | SHERMAN OAKS, CA 91403
PHONE (323) 658-8077 | FAX (323) 658-8477