THE HOMAMPOUR LAW FIRM, PC
ARASH HOMAMPOUR (State Bar No. 165407)
15303 Ventura Boulevard, Suite 1000
Sherman Oaks, California 91403
Phone:(323) 658-8077 | Fax:(323) 658-8477
Email: arash@homampour.com

Attorneys for Plaintiffs KENNETH AARON SHINEDLING and ADDISON LEILANI SHINEDLING, ALEXIA CELESTE SHINEDLING, and AVA AREN SHINEDLING by and through their guardian ad litem, KENNETH AARON SHINEDLING

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH AARON SHINEDLING and ADDISON LEILANI SHINEDLING, ALEXIA CELESTE SHINEDLING, and AVA AREN SHINEDLING by and through their guardian ad litem, KENNETH AARON SHINEDLING<br><br>Plaintiffs,<br><br>v.<br><br>SUNBEAM PRODUCTS, INC., a Delaware Corporation; COUNTY OF SAN BERNARDINO; PHELAN PINON HILLS COMMUNITY SERVICES DISTRICT; and DOES 1 through 90, inclusive<br><br>Defendants. | **CASE NO: EDCV 12-438 CJC (SPx)**<br><br>**PLAINTIFFS' MOTION IN LIMINE NO. 3 TO EXCLUDE EXPERT TESTIMONY FROM DR. KYLE BOONE**<br><br>PreTrial Conf: July 7, 2014<br>MIL Hearing: July 7, 2014<br>Trial Date: July 15, 2014<br><br>*Complaint Filed December 15, 2011*<br>*Assigned to Judge Cormac J. Carney* |

Plaintiffs hereby move for an order limiting or excluding the testimony of Defendant's purported rebuttal expert Dr. Boone for the following reasons:

1)    Dr. Boone should have been designated as an expert by Defendant in the first instance, but was not;

2)    Dr. Boone is expected to testify that Plaintiff Kenneth Shinedling's actions following the fire and his wife's death do not indicate someone who was

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

distressed (i.e. that his actions do not match his symptoms). This is neither a proper subject of expert opinion, nor is it "rebuttal" testimony;

3)    Dr. Boone has failed to demonstrate any scientific validity for her opinion that Plaintiff Kenneth Shinedling's test scores in psychological testing indicate that he "over reported" his psychiatric, cognitive, and physical symptoms in a non-credible manner.

4)    Defendant's experts should not be able to testify (directly or indirectly) as to a party's credibility as such issue is for the jury to determine.

This motion is made following the conferences of counsel pursuant to Local Rule 7-3 which took place from May 24, 2014 through June 4, 2014.

## I.   DR. BOONE'S "OPINIONS"

Dr. Boone did not examine Plaintiff Kenneth Shinedling. Rather, she reviewed the psychological testing performed by Plaintiffs' expert, Dr. Reading. Dr. Reading prepared a detailed report confirming that Mr. Shinedling's test scores show a valid profile and detailing that Mr. Shinedling suffers from Posttraumatic Stress Disorder and Major Depressive Episode [Ex. I.] Defense expert Dr. Boone's report [Ex. J] in this matter states essentially two opinions:

1)    Mr. Shinedling's October 2013 and March 2014 psychological test data shows that he was significantly over reporting psychiatric, cognitive, and physical symptoms in a non-credible manner, and that his symptom report does not match that found in patients with actual depression and PTSD. As a result, the test results signal that his report of symptoms cannot be accepted as valid, and that diagnoses based on his self report of symptoms are without merit.

2)    In light of his psychiatric history prior to 2011 and his behavior while hospitalized in 2012, appropriate diagnostic considerations would be chronic depression and a personality disorder (by definition, longstanding) involving

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

dependent features.

Dr. Boone was deposed in this matter on May 16, 2014 and May 27, 2014. <u>Homampour Decl.</u> ¶ 2.   In these deposition sessions, Dr. Boone offered the following bases for those opinions:

1)      (Mr. Shinedling's) Facebook entries in the days, weeks, months after [the fire] do not portray someone who is in distress. [Boone Depo 52:14-16, Ex. K];

2)      Anyone leafing through the Facebook pages can come to their own conclusion but will not be struck by sadness grief, someone being bereft. [<u>Id.</u>, 53:14-21];

3)      It appears that from the time that his wife died, another adult woman was in his house helping him manage the household. His records indicate that as an adult he never lived alone. [<u>Id.</u>, 56:15-57:12];

4)      The total number of symptoms Mr. Shinedling endorsed on the testing is not believable. [<u>Id.</u>, 66:24-67:1; 67:3-5];

5)      Mr. Shinedling is parenting. No one is concerned about having to remove the children from the home because he is so dysfunctional. [<u>Id.</u>, 74:24-75:3. 75:5-13];

6)      Dr. Boone does not get a sense of loss of interest or joy in Mr. Shinedling's Facebook posts, that he is avoiding situations, or that he is depressed. He went to his kids' soccer games, engaged in social activities and went to Las Vegas. [<u>Id.</u>, 82:25-84:3]

Also during the deposition, Dr. Boone admitted the following:

7)      She has not done any formal study as to how people respond to the death of a spouse [<u>Id.</u>, 59:8-13];

8)      She cannot think of any studies or research that she is relying on that indicate how someone should respond to the death of their spouse. [<u>Id.</u>, 59:14-59:21];

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
1530 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

9)    The last time she treated anyone who suffered the death of a spouse was in the early to mid-1980's [Id., 61:5-7];

10)   As a psychologist, she has not treated anyone since the early 1980's. [Id., 60:25-61:4];

11)   She is unable to tell if any of Mr. Shinedling's particular responses on psychological testing were not credible. [Id., 65:20-22].

12)   When someone is thinking about killing themselves to the point that they're hospitalized on multiple occasions, that would qualify as genuine severe psychopathy. [Id., 75:15-22] (Mr. Shinedling has been hospitalized at least five times for suicide ideation/attempts, See, Dr. Reading's report, Ex. I);

13)   Psychological testing is only a part of the clinical data used in evaluating whether someone has a psychiatric condition.  When you do not do an interview, you are potentially missing part of the critical clinical data used to come to a reasonable conclusion or opinion. [Id., 76:5-76:15];

14)   It is probable that if someone posted on Facebook "I am alone, my wife is dead, I can't handle this, I want to kill myself," that they are not going to attract a mate. However, Dr. Boone did not evaluate whether Mr. Shinedling may have been trying to be positive to attract potential female suitors. [Id., 77:10-14; 77:16-78:10, 13];

15)   She is unaware whether Mr. Shinedling communicated thoughts about how special his wife was, or his distress or being bereft to anyone other than what he posted on Facebook. [Id., 80:24-81:17].

16)   She does not know if anyone asked Mr. Shinedling if he has lost interest in activities. [Id., 84:5-84:7];

17)   One way of coping with grief for some people is to drink excessively. She has no way of knowing whether Mr. Shinedling's report of excessive drinking following the fire and the loss of his wife is accurate or not. It is true that drinking excessively would case a person to not deal with their emotions,

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

1  because as a coping mechanism it takes whatever feelings and emotions a person

2  has and pushes them down. [Id., 87:4-12; 87:14-88:6].

3      18)    Treating doctors consistently diagnosed Mr. Shinedling with having

4  depression and PTSD. [Id., 92:13-17];

5      19)    She does not know whether 2012 medical records stating "(Mr.

6  Shinedling's) past medical history is significant for depression" relates to pre-fire

7  2011 or after the fire, and she has not contacted the historian to find out. [Id.,

8  96:10-97:4].

9

10

## II.  <u>DR. BOONE WAS NOT DESIGNATED AS AN EXPERT INITIALLY</u>

12      Defendant has known all along that Plaintiff Kenneth Shinedling was making

13  a claim for "severe, substantial, and enduring emotional distress" as stated in the

14  Plaintiffs' complaint (p. 4, paragraph 16) and claims for psychiatric injury.

15  [Dckt. No. 1] Specifically, in Defendant's *February 28, 2014* ex-parte to compel

16  Plaintiff Kenneth to submit to a defense mental examination before Dr. Boone,

17  Defendant cited to the complaint, discovery responses and medical records and

18  argued that:

19          "In the Complaint, Plaintiffs allege mental, emotional and

20          physical pain and suffering, including "severe, substantial

21          and enduring emotional distress". According to information

22          obtained by the parties during the course of discovery,

23          Kenneth Shinedling has attempted to commit suicide on

24          multiple occasions and is claiming depression, PTSD,

25          inability to sleep and lack of motivation. . ." [Dckt. No. 89,

26          p. 1 of ex-parte]

27  Defendant also attached a declaration from its retained expert, Dr. Boone.

28  [Dckt. No. 89.18]

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

*Plaintiffs' Motion in Limine No. 3 to Exclude Opinions of Dr. Boone - Page 5*

<u>In other words, Defendant knew it had to designate a psychological expert with its initial disclosures</u>. However, on March 31, 2014, Defendant served its Disclosure of Expert Testimony. Defendant did not name Dr. Boone as an expert or any other psychological expert as to Plaintiff Kenneth. <u>Homampour Decl.</u> ¶3.

On April 30, 2014, Defendant served its Disclosure of Rebuttal Expert Testimony and then named Dr. Boone. <u>Homampour Decl.</u> ¶4; Ex. L. Pursuant to this disclosure, Defendant claims that Dr. Boone is "expected to testify regarding any claimed psychiatric disorder in Plaintiff Kenneth Shinedling, and will testify in response to the opinions expressed by Plaintiffs' medical expert, Anthony Reading, Ph.D."

By its designation, Defendant is not seeking simply to "contradict or rebut evidence on the same subject matter" offered by Dr. Reading, but is seeking to have Dr. Boone testify as to "any claimed psychiatric disorder in Plaintiff Kenneth Shinedling" *and* "testify in response to the opinions expressed by" Dr. Reading. Dr. Boone should be prohibited from expressing opinion testimony that is not rebuttal in nature, such as that Mr. Shinedling suffers from long term pre-existing depression, personality disorder, dependence, etc.

## A.    Plaintiff's Emotional Damage Was an "Expected and Anticipated  Portion of Plaintiff's Case" and, Thus, Not a Proper Subject of "Rebuttal" Testimony

"[A] defense witness whose purpose is to contradict an expected and anticipated portion of the plaintiff's case in chief can never be considered a 'rebuttal witness,' or anything analogous to one." *Newman v. A.E. Staley Mfg. Co.* (5th Cir. 1981) 648 F.2d 330, 333 fn. 2. Here, Defendant had every reason to know Plaintiff was seeking emotional distress damages in this case long before Plaintiffs served their initial expert witness disclosure.

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD • SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

Given that Defendant learned in the complaint and discovery that Plaintiff Kenneth Shinedling had suffered emotional distress/psychological issues as a result of the fire and death of his wife, Plaintiff's injury is considered "an expected and anticipated portion of the plaintiff's case in chief" so that Defendant's purported "rebuttal" expert on this topic cannot legitimately "be considered a 'rebuttal witness,' or anything analogous to one." *Newman,* 648 F.2d at 333 fn. 2.

## B. Plaintiff Has Suffered Prejudice (Inability to Designate a Rebuttal Expert of His Own) and Defendant Cannot Show "Substantial Justification"

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness ... at a trial, unless the failure was substantially justified or is harmless." FRCP 37(c)(1). "Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001); *Wilson v. Bradlees of New England, Inc.,* 250 F.3d 10, 21 (1st Cir.2001) ("[I]t is the obligation of the party facing sanctions for belated disclosure to show that its failure to comply with [Rule 26] was either justified or harmless...."). *Wong v. Regents of Univ. of Calif.* (9th Cir. 2004) 410 F.3d 1052, 1062.  Here, Defendant cannot show that its failure to disclose Dr. Boone initially was substantially justified. Indeed, it was improper for the reasons as spelled-out above. Nor was the violation harmless. Because Defendant did not disclose in the initial disclosure, Plaintiff was precluded from obtaining rebuttal expert testimony to counter Boone's testimony regarding her complex "interpretation" of psychological testing and, with trial now imminent, no remedy other than exclusion could fairly cure the prejudice. Homampour Decl. ¶5.

## III. **DR. BOONE CANNOT TESTIFY AS TO CREDIBILITY AND SUCH TESTIMONY IS WITHIN THE ABILITY OF THE JURY TO UNDERSTAND WITHOUT EXPERT OPINION**

The admissibility of expert testimony that draws on the expert's "specialized knowledge" is governed by FRE Rule 702, which provides that a qualified expert may testify on any subject that "will assist the trier of fact to understand the evidence or to determine a fact in issue" if the testimony is sufficiently reliable. *Id*. Testimony is reliable if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id*. This Court's role is to act as a "gatekeep[er]," excluding any expert testimony that is not sufficiently reliable or helpful to the jury. *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

The Supreme Court has suggested several considerations for determining whether proposed expert testimony is admissible under Rule 702: whether a theory or technique could be and has been tested, whether it has been subject to peer review and publication, what the known or potential error rate of the technique is, and whether the technique is "generally accepted." *Daubert*, 509 U.S. at 594, 113 S.Ct. 2786; see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 149–51, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (noting that inquiry is flexible and may be tailored to apply to cases based on specialized, rather than scientific, knowledge).

Even if proposed expert testimony comports with Rule 702, it may nonetheless be excluded under Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *United States v. Gatling*, 96 F.3d

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

1511, 1523 (D.C.Cir.1996). Moreover, because "[e]xpert evidence can be both powerful and quite misleading," a court has greater leeway in excluding expert testimony under Rule 403 than it does lay witness testimony. *Daubert*, 509 U.S. at 595, 113 S.Ct. 2786 (internal quotation marks and citation omitted).

It is expected that Defendant will attempt to elicit testimony from Dr. Boone that Plaintiff Kenneth Shinedling's claims are not believable, not credible or that he is lying/malingering. This type of testimony or evidence is improper as a matter of law as a "doctor ... cannot pass judgment on the alleged victim's truthfulness in the guise of a medical opinion, because it is the jury's function to decide credibility. . ." *United States v. Whitted* (8th Cir. 1993) 11 F.3d 782, 785-86. Here, the jury will be asked to determine if Plaintiff is believable and what his injuries are.

An expert witness is not permitted to testify specifically to a witness' credibility or to testify in such a manner as to improperly buttress a witness' credibility. *United States v. Binder* (9th Cir. 1985) 769 F.2d 595, 602. Expert witness testimony may not opine on the credibility of a witness. *Goodman v. Harris County* (5th Cir. 2009) 571 F3d 388, 399–400.

Dr. Boone expects to testify that Plaintiff's actions are not the actions of someone who is depressed, suffering from PTSD, grieving, sad, etc. This is not a proper basis for an expert opinion. As testified to by Dr. Boone: "Anyone leafing through the Facebook pages can come to their own conclusion but will not be struck by sadness grief, someone being bereft." [Boone Depo 53:14-21, Ex. K]. Arriving at a conclusion does not take specialized knowledge, does not aid the jury in understanding the evidence or determining a fact in issue, and therefore is not proper expert testimony. FRE 702; *Nichols v. American Nat'l Ins. Co.* (8th Cir. 1998) 154 F.3d 875, 883; *Andrews v. Metro North Commuter R.R. Co.* (2nd Cir. 1989) 882 F.2d 705, 708; *United States v. Gonzalez–Maldonado* (1st Cir. 1997) 115 F.3d 9, 15. Further, there is no basis

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

for this conclusion, as Dr. Boone did not speak with Plaintiff to determine: 1) whether he actually made the alleged statements; 2) the circumstances surrounding the making of the alleged statements; 3) what Plaintiff meant by the statements, etc.

Such testimony risks unfair prejudice to Plaintiff, may confuse the issues and/or mislead the jury. "By appearing to put the expert's stamp of approval on (a) theory, such testimony might unduly influence the jury's own assessment of the inference that is being urged." *United States v. Gonzalez–Maldonado*, *supra*, 115 F3d at 17–18 (parentheses added).

## IV. <u>DR. BOONE HAS FAILED TO ESTABLISH SCIENTIFIC VALIDITY FOR HER OPINIONS</u>

First, Dr. Boone did not examine Plaintiff Kenneth Shinedling. She admits that psychological testing (MMPI-2-RF) is only a part of the clinical data used in evaluating whether someone has a psychiatric condition. She concedes when an examiner does not do an interview, he/she is potentially missing part of the critical clinical data used to come to a reasonable conclusion or opinion. [Boone Depo 76:5-76:15, Ex. K.] Although, she claims that this is not true in this case, without explanation. Dr. Boone is a member of the American Psychological Association and is subject to its ethical principles and rules of conduct.  Section 9.01, Assessment states:

> Except as noted in 9.01-C in subpart B, psychologists provide opinions of the psychological characteristics of the individuals only after they have conducted an examination of the individuals adequate to support their statements or conclusions.
> . . .
> When, despite reasonable efforts, such an examination is not practical, psychologists document the efforts they made and the results of those efforts, clarify the probable impact of their limited information on the reliability and the validity of their opinions and appropriately limit the nature and extent of their conclusions or recommendations.

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

Dr. Boone has failed to do either the examination or explain the probable impact. Instead, Dr. Boone relied exclusively on computer generated reports of the raw test data administered to Plaintiff, which she considers to be "objective interpretive results." [Boone 154:12-155:1, Ex. K]. Dr. Boone admits that she does not know if the normative population sample is broken down to identify which of the sample (if any) have PTSD or have experiences in any way close to those of Plaintiff. [Boone Depo 162:1-7, Ex. K]

Second, Dr. Boone's opinion as to Plaintiff's past medical status is without basis. She does not have any pre-existing medical records. [Boone Depo 342:25-343:6, Ex. K]. Dr. Boone does not know whether 2012 medical records stating "(Mr. Shinedling's) past medical history is significant for depression" relates to pre-fire 2011 or after the fire, and she has not contacted the historian to find out. [Boone Depo 96:10-97:4, Ex. K]. Nor has she obtained any of Plaintiff's past medical records, which Defendant could have done by way of a subpoena. Similarly, Dr. Boone *speculates* that his suicide attempt was brought on by his sister's leaving his household because he suffered from a dependant personality and did not want to be alone. This is pure speculation, without having spoken to Plaintiff in this regard. Further, it is factually inaccurate in that his mother was still living with him, and he would not have actually been alone. Accordingly, on this record, Dr. Boone's opinion is inadmissible speculation. "Expert testimony should be excluded if it is speculative or conjectural." *Boucher v. U.S. Suzuki Motor Corp.* (1996) 73 F.3d 18, 21.

Lastly, Dr. Boone's analysis does not meet *Daubert v. Merrell Dow Pharm., Inc.,* (1993) 509 U.S. 579. In order to admit the evidence, the Court must be satisfied that the proffered testimony represents what Rule 702 refers to as "scientific ... knowledge." As *Daubert* explains: "The adjective 'scientific' implies a grounding in the methods and procedures of science. Similarly, the word 'knowledge' connotes more than subjective belief or unsupported

speculation." *Id.* at 590. In other words, in order for scientific testimony to be sufficiently reliable it "must be derived by the scientific method" and "must be supported by appropriate validation—i.e., 'good grounds,' based on what is known." *Id*. Dr. Boone's methodology fails.

Dr. Boone's argument is circular.  In its simplest terms, her argument is that Plaintiff shows over-reporting of symptoms and therefore his self-reporting of symptoms cannot be relied upon.  She acknowledges that the tests administered may show what appears to be over-reporting as a result of *either* actual over-reporting <u>or</u> a history of psychopathology, such as suicide ideation or  attempt. Dr. Boone disregards Plaintiff's history of five hospitalizations for suicide ideation/attempt, stating that because the scores on the validity scales for the MMPI-2-RF  are slightly elevated his reporting of suicide ideation/attempt must have been over-reported.

Dr. Boone's support for her position goes back to her belief that Plaintiff's suicide attempt was as a result of his sister stating that she was moving out of the house.  In taking this position, Dr. Boone ignores that Plaintiff related that his suicide attempt was brought on by an accumulation of losing his wife, his friends, the end of a relationship, holding in feelings, not being able to express himself, feelings of "not being here", etc. Instead, she focuses on those slightly elevated validity tests.

When questioned about the tests she admits that the MMPI-2-RF manual states that a score of 79, Plaintiff's score, is a *possible* over-reporting *if* there is no history of psychopathology.  Dr. Boone conveniently disregards the MMPI-2-RF  and Plaintiff's extensive medical records which diagnose suicide attempt, depression and PTSD and decides that because the report states that there is a possibility of over-reporting, his hospitalizations cannot be considered in the equation.  She provides no scientific support for this position.

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD - SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

Instead, Dr. Boone compared Plaintiff to PTSD suffers who were veterans studied in the Goodwin study. The Goodwin study consisted of only 54 unknown individuals with PTSD. [Boone Depo 280:22-25, Ex. K]. Dr. Boone attempts to use this study to show that person with a score above 93.8 on the RBS scale is not credible for PTSD. However, she admits that was not the point of the study and that it does not say that a score of above 93.8 equates to non-credibility. [Id., 275:14-17; 276:7-13]. The literature simply does not state that one score is "credible" and another "not-credible." The goal of the study was to examine the utility of the MMPI-2-RF over-reporting scales in detecting feigned PTSD in an ecological valid sample of compensation seeking veterans. [Id., 276:14-19]. Dr. Boone has not established that a study on unknown veterans has any correlation to civilians or should be used to measure responses in civilians. When questioned about this, she simply stated "Well, what I was doing in the graph is reproducing their data, so they wouldn't say in their article that you can't reproduce their data in a graph." [Id., 281:1-4, 6-9]. Dr. Boone admits that she knows nothing about the 54 individuals other than that they were exposed to combat at some unknown time. [Id., 283:8-14].

Plaintiff would be within approximately one standard deviation of the 54 individuals in the *Goodwin* study on all other scales (FR, FP-r, FS, FBS-r), which would place him with two-thirds of credible PTSD patients getting a score at or lower than Plaintiff. [Id., 285:3-286:16]. However, instead of using this scale, which would benefit Plaintiff's case, Dr. Boone used a different study. [Id., 284:14-17].

The article by *Marion* on which she also relies, is based on a sample of only 106 unknown patients. These patients took the MMPI-2, not the MMPI-2-RF. [Boone Depo 296:10-12, Ex. K]. The cause of the PTSD in these individuals was not identified. [Id., 297:22-24]. Dr. Boone admits that Plaintiff had multiple threats under the PTSD criteria, including the threat of imminent harm to

himself, the threat of imminent harm to his baby, the threat of imminent harm to his other two daughters, and the threat and ultimate death of his wife. [Id., 298:10-21]. She also admits that she does not know if the individuals in either the *Marion* or *Goodwin* studies that she is using for comparison suffered as many threats to themselves or loved ones. [Id., 298:22-299:1].

Further, there is no scientific evidence establishing the *Marion* or *Goodwin* studies can be used in the way Dr. Boone is using them - to testify before a civil jury that Plaintiff (who she never examined) is not credible or that he is exaggerating anything.

In addition to the fact that Dr. Boone is attempting to use a study related to a different test then that administered to Plaintiff to compare Plaintiff's results, Dr. Boone's use of the test as stated in her report is misleading. Dr. Boone did not report the standard deviation on page 8 of her report where she makes the comparison. In the report, she states that Plaintiff's FS scale score of 91 is far in excess of the Marion "credible" PTSD pool, who obtained FS scale scores of 75 (without the standard deviation). However, when the deviation is taken into account, it becomes clear that two-thirds of the 106 would score at or lower than 97.8. [Boone Depo 301:11-13, Ex. K]. Dr. Boone is using a study which has a very limited population, a problem in and of itself, and is using it incorrectly to suggest that Plaintiff's score of 91 means that he is not credible. But the Marion report does not in any way say that a person with a score of 91 is does not have credible PTSD. [Id., 301:16-19]. The same is true for the FBS-r, FP-r, and FR numbers on the Marion study. Dr. Boone admits that there are "credible" PTSD patients who potentially scored higher than Plaintiff. [Id., 303:23-304:1].

With respect to the anticipated reaction to the death of a spouse, Dr. Boone did not rely on any study for her report. Instead, she relied on her grief counseling that she did back in the 1980s. At the second deposition session, she

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

---

*Plaintiffs' Motion in Limine No. 3 to Exclude Opinions of Dr. Boone - Page 14*

identified a study from 1977 that found in the first two pages of her search on Google Scholar. She does not know if there has been any updated research in this area. [Boone Depo 317:7-318:14., Ex. K].

Dr. Boone did not interview any family members with respect to Plaintiff's grief reaction or behaviors. The extent of the source of her information is the deposition of his sister-in-law (who lives out of state and was not in the household) and Plaintiff's Facebook pages. [Id., 332:9-13]. She had the deposition of Plaintiff's mother (who lived in the household), but discounted it because she did not believe that she was giving accurate testimony. [Id., 330:8-331:1, 3-4].

## V.  CONCLUSION

For the reasons stated above, Dr. Boone's testimony and report should be excluded.

DATED: June 9, 2014

THE HOMAMPOUR LAW FIRM,
A Professional Law Corporation

By: _____
Arash Homampour,
Corey Arzoumanian
Attorneys for Plaintiffs

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477