1  THE HOMAMPOUR LAW FIRM, PC
   ARASH HOMAMPOUR (State Bar No. 165407)
2  15303 Ventura Boulevard, Suite 1000
   Sherman Oaks, California 91403
3  Phone:(323) 658-8077 | Fax:(323) 658-8477
   Email: arash@homampour.com
4

5  Attorneys for Plaintiffs KENNETH AARON SHINEDLING and ADDISON LEILANI
   SHINEDLING, ALEXIA CELESTE SHINEDLING, and AVA AREN SHINEDLING
6  by and through their guardian ad litem, KENNETH AARON SHINEDLING

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11  KENNETH AARON SHINEDLING and   **CASE NO: EDCV 12-438 CJC**
    ADDISON LEILANI SHINEDLING,)   **(SPx)**
12  ALEXIA CELESTE SHINEDLING, and)
    AVA AREN SHINEDLING by and)
13  through their guardian ad litem,)   **PLAINTIFFS' OPPOSITION TO**
    KENNETH AARON SHINEDLING)         **DEFENDANT'S MOTION IN**
14                                )   **LIMINE NO. 5 TO EXCLUDE THE**
    Plaintiffs,                   )   **USE OF THE CONSUMER**
15                                )   **EXPECTATIONS TEST OF**
    v.                            )   **DESIGN DEFECT AND LIMIT**
16                                )   **PLAINTIFFS TO THE**
    SUNBEAM PRODUCTS, INC., a)        **RISK-BENEFIT TEST OF DESIGN**
17  Delaware Corporation; COUNTY OF)  **DEFECT**
    SAN BERNARDINO; PHELAN)
18  PINON HILLS COMMUNITY)
    SERVICES DISTRICT; and DOES 1)    PreTrial Conf:    July 7, 2014
19  through 90, inclusive         )    MIL Hearing:      July 7, 2014
                                  )    Trial Date:       July 15, 2014
20                                )
    Defendants.                   )   _____
21  _____)   *Complaint Filed December 15, 2011*
                                       *Assigned to Judge Cormac J. Carney*
22

23

24      Plaintiffs hereby submit their Opposition to Defendant's Motion in Limine

25  No. 5 to exclude the use of the consumer expectations test of design defect and

26  limit plaintiffs to the risk-benefit test of design defect.

27  \ \ \

28  \ \ \

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE: (323) 658-8077 • FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

# I.  __INTRODUCTION__

The consumer expectation test is appropriate in this case because portable heaters are used by ordinary consumers who have the minimum safety expectation that their heater will not cause clothing to catch fire when the users is asleep. This test permits a plaintiff to prove a design defect by demonstrating that "the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Barker v. Lull Engineering* (1978) 20 Cal.3d 413, 426-427. The relevant inquiry under the consumer expectation test does not involve mechanical engineering or any complex questions of opinion. An ordinary consumer can reasonably expect that a space heater will shut off when you are sleep when faced with an overheat situation, ***especially when the owner's manual states as much***.

In fact, Defendant admits that the subject heater's manual (copied below) tells the user that the heater has an auto safety shut off such that when a potential overheat temperature is reached the system will (or should) automatically shut the heater off. [Vernaglia Depo 282:16 - 283:5, Ex. A[1]; Manual, Ex. M.]

**AUTO SAFETY SHUT-OFF WITH INSTANT TIP-OVER PROTECTION**

This heater is equipped with a patented, technologically-advanced safety system that requires the user to reset the heater if there is a potential overheat situation. When a potential overheat temperature is reached, the system will automatically shut the heater off. It can only resume operation when the user resets the unit.

Critically, Defendant Sunbeam admitted that "the consumer has an expectation that if a potential overheat temperature is reached, the system will automatically shut the heater off." [Vernaglia Depo 283:6-10, Ex. A.]

---

[1]    All exhibits are attached to the Index of Exhibits filed with Plaintiffs' Opposition to Defendant's Motion for Summary Adjudication and Motions in Limine.

*Plaintiffs' Opposition to Defendant's Motion in Limine No. 5- Page 2*

## II. <u>THE CONSUMER EXPECTATION TEST APPLIES</u>

"Products liability may be premised upon a theory of design defect, manufacturing defect, or failure to warn." Anderson v. Owens-Corning Fiberglas Corp. (1991) 53 Cal.3d 987, 995. Design defects may be established under two theories: consumer expectations test or risk/benefit test. *Barker, supra*, 20 Cal.3d at 435.) "The consumer expectations test is reserved for cases in which the everyday experience of the products' users permits a conclusion that the product's design violated minimum safety assumptions, and is 'defective regardless of expert opinion about the merits of the design.' " *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 567.

"The critical question... is not whether the product, when considered in isolation, is beyond the ordinary knowledge of the consumer, but whether the product, *in the context of the facts and circumstances of its failure*, is one about which the ordinary consumers can form minimum safety expectations." [Emphasis in original.] *Pannu v. Land Rover North America* (2011) 191 Cal.App.4th 1298, 1311-1312.

Defendant ignores this principle in arguing the alleged complexity of the product. "[T]he inherent complexity of the product is not controlling on the issue of whether the consumer expectations test applies; a complex product 'may perform so unsafely that the defect is apparent to the common reason, experience, and understanding of its ordinary consumers." *Saller v. Crown Cork & Seal Co., Inc.* (2010) 187 Cal.App.4th 1220, 1232.

Further, "[t]he fact that expert testimony was required to establish legal causation for plaintiffs' injuries does not mean that an ordinary user of the product would be unable to form assumptions about the safety of the products.... In *Soule*, the court expressly rejected the contention that the consumer expectations test is improper whenever '["crashworthiness," a complex product, or] technical questions of causation are at issue,' stating that 'ordinary consumer

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

expectations are not irrelevant simply because expert testimony is required to prove ... that a condition of the product as marketed was a "substantial," and therefore "legal," cause of injury.' ([*Soule, supra*, 8 Cal.4th] at pp. 568–569 & fn. 6 . . .)" *Jones v. John Crane, Inc.* (2005) 132 Cal.App.4th 990, 1003; *Romine v. Johnson Controls, Inc.*, 224 Cal. App. 4th 990, 1001.

The facts here fall squarely within those scenarios understandable to a jury and about which they would have expectations. The Consumer Expectation Instruction was found appropriate in numerous seemingly complex claims: *Romine, supra*, [Nissan truck's seat broke backward upon rear impact and sent plaintiff's head into the back seat]; *Bresnahan v. Chrysler Corp. (1995) 32 Cal.App.4th 1559, 1569* [deployment of an air bag a minor rear-end collision]; *Campbell v. General Motors* (1982) 32 Cal.3d 112, 126 [absence of a grab bar on a bus]; *Gordon v. Nissan Motor Co., Ltd.* (2009) 170 Cal.App.4th 1103, 1117 [prejudicial error found in refusal to give proffered consumer expectation instruction for alleged roof defect (holding stated, but explanation in the unpublished portion of opinion)]; and *McCabe v. American Honda Motor Co.* (2002) 100 Cal.App.4th 1111, 1122 [air bag nondeployment].

The *Campbell* Court noted that the quantum of proof necessary to establish a design defect under the consumer expectations test could not be reduced to an "easy formula," but "if the product is one within the common experience of ordinary consumers, it is generally sufficient if the plaintiff provides evidence concerning (1) his or her use of the product; (2) the circumstances surrounding the injury; and (3) the objective features of the product which are relevant to an evaluation of its safety.' " *Campbell, supra*, 32 Cal.3rd at 127.

Defendant makes essentially two arguments in support of the proposition that the "consumer expectation" test cannot apply to this case as a matter of law. First, Defendant suggests that "the jury cannot properly evaluate the presence of design defects in this case without expert testimony, the risk-benefit test of

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE: (323) 658-8077 • FAX (323) 658-8477

1   design defect is the only appropriate test for this case." [See, Doc 112, 5:26-28].

2   <u>Second</u>, Defendant argues, "Here, each side has designated three (3) liability

3   experts, for a total of six (6) liability experts who will opine on the design of

4   the heater and issues related to causation.  This is one factor that eviscerates the

5   possibility of using the consumer expectations test in this case. " [*Id.* 4:24-27].

6       Defendant fails to take into account Plaintiffs' Motion in limine No. 7 which,

7   if granted, will limit the parties to simply one expert each on each topic and

8   exclude the duplicative testimony.

9       California Courts have expressly approved application of the "consumer

10  expectation" test in all manners of cases involving expert witnesses and complex

11  issues.  In *Akers v. Kelly Co.* (1985) 173 Cal.App.3d 633 (disapproved on other

12  grounds by *People v. Nesler* (1997) 16 Cal.4th 561), the Court of Appeal

13  rejected the notion that the "consumer expectation" test is reserved for cases

14  involving "simple" products.  There, a "dockboard", a spring-loaded plate that

15  attaches to a loading dock to form a bridge with a truck bed, flew apart, injuring

16  a nearby worker.   Over defendant's objection and despite its request for a

17  "risk-benefit" instruction, the trial court instructed the jury on a "consumer

18  expectation" theory only.  *Id.* at 648. The Court of Appeal affirmed.  In doing

19  so, it reasoned:

20          In our view the "consumer expectation" test is entirely
            appropriate in a case such as this one.  There are certain
21          kinds of accidents - even where fairly complex machinery is
            involved - which are so bizarre that the average juror, upon
22          hearing the particulars, might reasonably think: "Whatever
            the user may have expected from that contraption, it
23          certainly wasn't that."   Here, a dockboard flew apart and
            injured [Plaintiff].   A reasonable juror with no previous
24          experience of dockboards could conclude that the dockboard
            in question failed to meet "consumer expectations" as to its
25          safety. *Id.* at p. 651.

26      Likewise, in *West v. Johnson & Johnson Products, Inc.* (1985) 174 Cal. App.

27  3d 831, Plaintiff West sued a tampon manufacturer after the tampon caused her

28  to suffer toxic shock syndrome.   Over defendant's objection, the trial court

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD - SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

1   instructed the jury on a "consumer expectation" theory only.  Again, the Court

2   of Appeal affirmed, reasoning: "Any user of an o.b. tampon, including West,

3   could reasonably expect, and had every right to expect, that use of the product

4   would not lead to a serious (or perhaps fatal) illness."  *Id.*, at pp. 866-67.

5       Finally, in *Arena v. Owens-Corning Fiberglass Corp.* (1998) 63 Cal. App.4th

6   1178, Plaintiff Arena brought suit against asbestos suppliers for injuries he

7   sustained from occupational exposure to the asbestos. The matter proceeded to

8   a court trial where Plaintiff pursued a consumer expectation theory of product

9   defect. The trial court found in favor of Plaintiff and Defendants appealed

10  arguing that the consumer expectation test did not apply.  *Arena* upheld the

11  judgment in favor of Plaintiff and found "that raw asbestos is a product that may

12  have a design defect when it fails to meet the ordinary consumers "commonly

13  accepted minimum safety assumptions" *Id.*, at p. 1190.

14      *Akers, West and Arena* each involved complex products and issues of

15  causation.  The parties in each of those cases also presented expert testimony.

16  Therefore, Defendant's first premise is just plain wrong.

17      Defendant's second argument - that the "consumer expectation" test cannot

18  apply where complex design issues are not within the common knowledge of lay

19  jurors"- has been addressed above and was rejected by the Supreme Court in

20  *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548. There, the Supreme Court

21  expressly rejected GM's argument that the test is improper in any case where

22  crashworthiness or technical questions of causation are at issue:

23          GM suggests that the consumer expectations test is improper
            whenever 'crashworthiness,' a complex product, or technical
24          questions of causation are at issue.  Because the variety of
            potential product injuries is infinite, the line cannot be
25          drawn as clearly as GM proposes.  But the fundamental
            distinction is not impossible to define.  The crucial question
26          in each individual case is whether the circumstances of the
            product's failure permit an inference that the product's design
27          performed below the legitimate, commonly accepted
            minimum safety assumptions of its ordinary consumers. *Id.*
28          at pp. 568-69.

---

*Grimshaw v. Ford Motor Co.* (1981) 119 Cal. App.3d 757 involved the fuel system of the infamous Ford Pinto.  During trial, the parties presented extensive expert testimony regarding the design of the fuel system, alternative designs, and technical and complex evidence regarding causation.  Nonetheless, and over Defendant Ford's objection, the trial court instructed the jury on a "consumer expectation theory only." *Id.*, at p. 802.  The Court of Appeal affirmed and reasoned that because "the risk-benefit test was formulated primarily to aid injured persons," Defendant Ford could not complain that it was not given in the case. *Id*.

The product in issue in this case is designed for use by and is marketed to the consuming public. It is exactly the type of product about which a lay consumer could and would have reasonable performance expectations. The first prong of the consumer expectation test rests on the premise that "[i]mplicit in the machine's presence on the market, however, was a representation that it would safely do the jobs for which it was built.." *Greenman, supra*, 59 Cal.2d at p. 64. A consumer can reasonably expect that a heater will provide safe heat during the cold winter nights without causing a fire when one goes to sleep.       The critical question is whether the "circumstances of the product's failure permit an inference that the product's design performed below the legitimate, commonly accepted minimum safety assumptions of its ordinary consumers." *Soule supra* at 568-569. A defendant may not rebut such a claim with evidence of the design's relative risks and benefits because the risk-benefit test is only applicable when a defect goes beyond the common experience of the product's users. *Arena, supra* at 1185. In fact, expert or other evidence of the relative risks and benefits of the design is irrelevant and inadmissible. *Sparks v. Owens-Illinois* (1995) 32 Cal.App.4th 461, 473.

Moreover, the plaintiff need not show that there was a safer alternative design. A product may be defective under the test regardless of expert opinion

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

1    about the merits of the design.

2        "The critical question, in assessing the applicability of the consumer expectation

3    test, **is not** whether the product, when considered **in isolation**, is beyond the ordinary

4    knowledge of the consumer, but whether the product, in the context of the facts and

5    circumstances of its failure, is one about which the ordinary consumers can form

6    minimum safety expectations." *McCabe v. American Honda Motor Co.* (2002) 100

7    Cal.App.4th 1111, 1122 (emphasis added).

8        A heater is a common product. Ordinary consumers may reasonably expect a

9    heater to shut off in an overheat situation and to not cause a fire when the user goes to

10   sleep.

11

12   **III.   CONCLUSION**

13       For the reasons stated above, the consumer expectation test should be given

14   and Defendant's Motion should be denied.

15

16   DATED: June 16, 2014                    THE HOMAMPOUR LAW FIRM,
                                             A Professional Law Corporation
17

18                                     By: _____
                                             Arash Homampour,
19                                           Corey Arzoumanian
                                             Attorneys for Plaintiffs
20

21

22

23

24

25

26

27

28

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477