UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| KENNETH AARON SHINEDLING and ADDISON LEILANI SHINEDLING, ALEXIA CELESTE SHINEDLING, and AVA AREN SHINEDLING by and through their guardian ad litem KENNETH AARON SHINEDLING,<br><br>    Plaintiffs,<br><br>    v.<br><br>SUNBEAM PRODUCTS, INC., COUNTY OF SAN BERNARDINO, and PHELAN PINON HILLS COMMUNITY SERVICES DISTRICT,<br><br>    Defendants. | Case No.: EDCV 12-00438-CJC(SPx)<br><br>ORDER GRANTING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

## I.   INTRODUCTION

This is a products liability action arising from the death of Amy Celeste Shinedling in a house fire on January 5, 2011.  Ms. Shinedling's surviving husband, Kenneth

Shinedling, brought this action on behalf of himself and as Guardian ad Litem for their surviving children (collectively, "Plaintiffs") on December 15, 2011.  Plaintiffs' remaining claims assert strict products liability and negligence against Defendant Sunbeam Products, Inc., ("Sunbeam"), the manufacturer of the portable space heater that allegedly caused the house fire.  (*See* Dkt. No. 1 ["Compl."].)  Plaintiffs allege that the heater caused the fire because it was defectively designed, contained a manufacturing defect, and failed to include adequate warnings.  Before the Court is Sunbeam's motion for partial summary judgment as to Plaintiffs' manufacturing defect and failure-to-warn bases for their strict products liability and negligence claims.  (Dkt. No. 105 ["Def.'s Mot. Partial Summ. J."].)  For the following reasons, Sunbeam's motion is GRANTED IN PART.[1]

## II.   BACKGROUND

The product at issue is the Holmes Quartz Heater, Model HQH307, manufactured in 2006 (the "Heater").  (SUF 2.)[2]  The Heater is a type of portable electric heater known as a radiant quartz heater.  (PSUF 22.)  As opposed to ceramic or convection-type heaters, which blow hot air to heat an entire space, radiant heaters radiate infrared heat that directly heats solid objects in its path.  (PSUF 22.)  The Heater is sold with an instructional leaflet with a number of warnings, including:  "When using electrical appliances, basic safety precautions should always be followed to reduce the risk of fire,

---

[1]  Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for December 15, 2014 at 1:30 p.m. is hereby vacated and off calendar.

[2]  "SUF" references encompass both Sunbeam's statement of uncontroverted facts in support of its motion for partial summary judgment, (Dkt. No. 105-1), and Plaintiffs' statement of genuine issues in response thereto, (Dkt. No. 167 at 1–4).  Citations to "PSUF" encompass both Plaintiffs' additional facts in support of their opposition, (Dkt. No. 167 at 4–28), and Sunbeam's response to Plaintiffs' additional facts, (Dkt. No. 203).  Unless otherwise indicated, references to the parties' statements of uncontroverted facts or to other evidence submitted by the parties refer to facts that are not substantively disputed.

electric shock, and injury to persons, including the following: . . . 3.  This heater is hot when in use.  To avoid burns, do not let bare skin touch hot surfaces.  If provided, use handles when moving this heater.  Keep combustible materials, such as furniture, pillows, bedding, paper, clothes, and curtains at least 3 feet (0.9 m) from the front of the heater and keep them away from the sides and rear." (SUF 7; Dkt. No. 105-2 ["Wolensky Decl."] Exh. D.)  A similar warning regarding keeping materials 3 feet away was displayed on the Heater's power cord and on the body of the Heater itself. (SUF 5–6.)  The instructional leaflet provided with the Heater also describes the Heater's "Auto Safety Shut-Off" feature.  The description states: "The heater is equipped with a patented, technologically-advanced safety system that requires the user to reset the heater if there is a potential overheat situation.  When a potential overheat temperature is reached, the system will automatically shut the heater off."  (Wolensky Decl. Exh. D.)

The night of January 4, 2011, Mr. and Mrs. Shinedling went to sleep with the Heater and another space heater in operation in the master bedroom of their home. (PSUF 9.)  At the time Mr. Shinedling went to sleep there were no clothes or combustible materials within 3 feet of the Heater.  (PSUF 11.)  In the early morning hours, Mr. Shinedling awoke to the sound of a smoke alarm.  (PSUF 13.)  He got up and saw clothes in front of the Heater which had caught fire, along with the Heater itself.  (PSUF 15–16.)  His wife told him to get the children out of the house, which he did, and then he called 911.  (PSUF 18–19.)  Mr. Shinedling attempted to reenter the home to locate his wife but the fire had grown too intense.  (PSUF 20.)  Mrs. Shinedling died in the fire.  (PSUF 21.)

## III.  LEGAL STANDARD

The Court may grant summary judgment on "each claim or defense — or the part of each claim or defense — on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  Summary judgment is proper where the pleadings, the discovery and disclosure

materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when its resolution might affect the outcome of the suit under the governing law, and is determined by looking to the substantive law. *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 249.

Where the movant will bear the burden of proof on an issue at trial, the movant "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In contrast, where the nonmovant will have the burden of proof on an issue at trial, the moving party may discharge its burden of production by either (1) negating an essential element of the opposing party's claim or defense, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970), or (2) showing that there is an absence of evidence to support the nonmoving party's case, *Celotex*, 477 U.S. at 325. Once this burden is met, the party resisting the motion must set forth, by affidavit or as otherwise provided under Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. A party opposing summary judgment must support its assertion that a material fact is genuinely disputed by (1) citing to materials in the record, (2) showing the moving party's materials are inadequate to establish an absence of genuine dispute, or (3) showing that the moving party lacks admissible evidence to support its factual position. Fed. R. Civ. P. 56(c)(1)(A)–(B). The opposing party may also object to the material cited by the movant on the basis that it "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). But the opposing party cannot rely on

the "mere existence of a scintilla of evidence"; rather, "there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Id.*; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). But conclusory and speculative testimony in affidavits and moving papers is insufficient to raise triable issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c).

## IV. ANALYSIS

Under California law, " '[a] manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being.' " *Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 994 (1991) (quoting *Greenman v. Yuba Power Prods., Inc.*, 59 Cal. 2d 57, 62 (1963)). Three categories of product defects may give rise to a strict products liability claim: design defects, manufacturing defects, and warning defects. *Id.* at 995. Although Plaintiffs' opposition papers argue vigorously that the Heater suffered from a defective design, that issue is not before the Court. Sunbeam's motion for partial summary judgment is limited to Plaintiffs' manufacturing defect and warning defect theories only. The Court will address these theories in turn.

//
//

**a. Manufacturing Defect**

A manufacturing defect exists when a product "differs from the manufacturer's intended result or from other ostensibly identical units of the same product line." *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 429 (1978). A manufacturing defect may be shown, for example, where the specific product that injured the plaintiff "[came] off the assembly line in a substandard condition." *Id.*; *see also Garrett v. Howmedica Osteonics Corp.*, 214 Cal. App. 4th 173, 190 (2013) ("[A] product has a manufacturing defect if the product as manufactured does not conform to the manufacturer's design."). "[T]o establish liability, it is not enough that the action happened, nor may liability inferences favorable to plaintiff be drawn from that fact. The plaintiff must prove by competent evidence that the product was [defective in manufacture]." *Barrett v. Atlas Powder Co.*, 86 Cal. App. 3d 560, 564 (1978).

Plaintiffs have not introduced sufficient evidence to create a genuine dispute that the Heater in question contained a manufacturing defect. Plaintiffs concede that they have no direct evidence of any manufacturing defect. (*See* Dkt. No. 153 [Pls.' Opp'n] at 20.) Instead, Plaintiffs rely on *Vandermark v. Ford Motor Co.*, 61 Cal. 2d 256, 260 (1964), and *Elmore v. American Motors Corp.*, 70 Cal. 2d 578 (1969), to argue that circumstantial evidence may suffice to prove the existence of a manufacturing defect where the product was destroyed in the incident at issue. (*See* Pls.' Opp'n at 17–19.) The circumstantial evidence that, according to Plaintiffs, creates a genuine dispute that the Heater had a manufacturing defect includes: there is no evidence that the Heater was modified after it left Sunbeam's possession; "there are historical reports of the bottom of this type of heater burning and melting and starting fires, as verified by Sunbeam"; Mr. Shinedling testified that he saw the Heater itself on fire in addition to the clothes surrounding the Heater; a failure of an internal connection could potentially start a fire; such a failure could have produced a fire burning at the same temperature as the fire at

issue; the carpet underneath the Heater was burned; and the point of origin of the fire was determined to be at or near the Heater's location. (Pls.' Opp'n at 18).

Plaintiffs' circumstantial evidence it too speculative to proceed before a jury on the issue of whether the Heater contained a manufacturing defect. The cases Plaintiffs rely on for the proposition that the existence of a defect can be established by circumstantial evidence all involved at least *some* evidence from which an inference of a defect could be drawn. *Elmore*, for instance, was a products liability action arising from a car accident that occurred because a part detached from the bottom of the plaintiff's car and dragged on the cement, causing her to lose control and crash. *Elmore*, 70 Cal. 2d at 578– 83. The plaintiff's evidence included expert testimony that the vehicle's drive shaft detached prior to the accident, the cause of the drive shaft detaching was loose fastenings or metal failure, and a drive shaft would not detach because of normal wear and tear, the forces of the subsequent accident, or "anything the driver did." *Id.* at 582–85. The expert testified that it was his opinion that the drive shaft connection was defective. *Id.* In contrast, Plaintiffs' own expert on the issue of manufacturing defect cannot conclude that the Heater contained a manufacturing defect. Plaintiffs' expert merely states that he *could not rule out the possibility* of a manufacturing defect. (*See, e.g.*, PSUF 59 ("[T]he possibility that extreme heat was generated at that connection leading to ignition of the heater from the inside could be neither confirmed nor refuted.").) Further, Plaintiffs concede that their "origin and cause" expert, as well as Sunbeam's experts, all agree that "it is more likely than not that the cause of the fire was the ignition of the clothing by the heater." (Pls.' Opp'n at 23.) Sunbeam is entitled to partial summary judgment as to the manufacturing defect basis for Plaintiffs' strict liability claim.[3]

---

[3] The relevant evidence Plaintiffs submit in support of their assertion that "there are historical reports of the bottom of this type of heater burning and melting and starting fires" consists of two customer complaints involving the same or similar heaters in the time period from 2004 to 2014 which reported failure of internal wiring that burned through the bottom of the heater. (PSUF 52; Dkt. No. 153-2 ["Palmer Decl."] ¶¶ 15–21.) Internal wire failures that result in fires, according to Plaintiffs' expert, are "typically the result of a poor electrical contact due to improper assembly of the connection." (Palmer Decl. ¶ 30.) Notably, Plaintiffs' expert found that the customer complaints contained "insufficient

### b. Failure to Warn

To prevail on a failure-to-warn theory, the plaintiff must show that the defendant "did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution." *Anderson*, 53 Cal. 3d at 1002.; *see also id.* at 995–96 ("[A] product, although faultlessly made, may nevertheless be deemed 'defective' under the rule and subject the supplier thereof to strict liability if it is unreasonably dangerous to place the product in the hands of a user without a suitable warning and the product is supplied and no warning is given.") (citation and internal quotation marks omitted). California courts have identified several factors pertinent to determining the adequacy of warnings, including the risk of harm and magnitude of potential harm the product presents, the normal expectations of the consumer as to how the product will perform, how complicated it is to use the product, and the feasibility and beneficial effect of a warning. *See Wright v. Stang Mfg. Co.*, 54 Cal. App. 4th 1218, 1230–31 (1997). The adequacy of the warnings provided with a product is generally a question of fact for the jury. *Jackson v. Deft, Inc.*, 223 Cal. App. 3d 1305, 1320 (1990).

Genuine disputed issues regarding the adequacy of the Heater's warnings preclude partial summary judgment on Plaintiffs' failure-to-warn theory. These issues include, among others, whether the warnings were inadequate because they failed to advise the user that the Heater should never be left on while sleeping. A bulletin published by the U.S. Consumer Products Safety Commission regarding portable electric heater fires

---

information . . . to perform an independent analysis, so the comments within the summary are not intended to reflect conclusions," and based on the information available to him, "it is impractical to make an independent determination of cause with specificity for any of the reported incidents." (Palmer Decl. ¶¶ 16–17, 19.) Even taking the evidence in the light most favorable to Plaintiffs, it would be too speculative to say that these isolated reports of fire-causing internal wire failure in other heaters over a 10-year period create a triable issue that the Shinedlings' heater contained an internal wiring defect that existed because of a manufacturing error, and that failure of this defective internal wiring substantially caused the fire at issue.

between 2008 and 2010 included safety warnings which, in addition to warning consumers to keep materials at least 3 feet away from heaters, also warned consumers "[n]ever leave the heater operating while unattended, or while you are sleeping." (Dkt. No. 218 Exh. D, Attach. G-3.) A triable issue also exists as to Plaintiffs' contention that additional warnings should have been given regarding the Heater's Auto Safety Shut-Off feature. Sunbeam argues that this feature was intended to address potential overheat temperatures occurring inside the Heater only. A reasonable jury, however, could find that, in light of the representation in the Heater leaflet that "[w]hen a potential overheat temperature is reached, the system will automatically shut the heater off" and the risk of danger and magnitude of harm a space heater could cause, the lack of additional warnings made the Heater defective. Nor does the fact that Mr. Shinedling testified at deposition that he read and understand the warning to keep materials 3 feet away from the Heater preclude a jury determination as to whether additional warnings were necessary under these circumstances.

### c. Negligence

Sunbeam also moves for partial summary judgment on Plaintiffs' negligence claim to the extent it relies on manufacturing defect or warning defect theories. Negligent products liability, like strict liability, requires proof that a defect in the product caused the plaintiff's injury. *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 479 (2001). A negligence claim requires the additional element that the defect in the product was due to the defendant's negligence. *Id.* Sunbeam is entitled to partial summary judgment on Plaintiffs' negligence claim to the extent that it is premised on a manufacturing defect in the Heater, for the same reasons discussed in connection with strict liability above. Sunbeam has not shown that summary judgment is warranted as to Plaintiffs' negligent warning defect theory.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Sunbeam's motion for partial summary judgment.

DATED: December 10, 2014

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE