THE HOMAMPOUR LAW FIRM, PC
ARASH HOMAMPOUR (State Bar No. 165407)
WENDI O. WAGNER (State Bar No. 176110)
COREY ARZOUMANIAN (State Bar No. 278035)
15303 Ventura Boulevard, Suite 1000
Sherman Oaks, California 91403
Phone:(323) 658-8077 | Fax:(323) 658-8477
Email: arash@homampour.com

Attorneys for Plaintiffs KENNETH AARON SHINEDLING and ADDISON LEILANI SHINEDLING, ALEXIA CELESTE SHINEDLING, and AVA AREN SHINEDLING by and through their guardian ad litem, KENNETH AARON SHINEDLING

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH AARON SHINEDLING and ADDISON LEILANI SHINEDLING, ALEXIA CELESTE SHINEDLING, and AVA AREN SHINEDLING by and through their guardian ad litem, KENNETH AARON SHINEDLING<br><br>Plaintiffs,<br><br>v.<br><br>SUNBEAM PRODUCTS, INC., a Delaware Corporation; COUNTY OF SAN BERNARDINO; PHELAN PINON HILLS COMMUNITY SERVICES DISTRICT; and DOES 1 through 90, inclusive<br><br>Defendants. | **CASE NO: EDCV 12-438 CJC (SPx)**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL; POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      November 9, 2015<br>Time:      1:30 p.m.<br>Dept.:      9B<br><br>*Complaint Filed December 15, 2011*<br>*Assigned to Judge Cormac J. Carney* |

TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

Plaintiffs hereby oppose Defendant's Motion for New Trial or in the alternative for a remittitur. Defendant has not established any grounds for a new trial or a remittitur and its motion must be denied.

//

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

1    Plaintiffs' Opposition shall be based on the attached Memorandum of Points

2  and Authorities, the attached Declaration of Arash Homampour, the evidence and

3  case law, the pleadings, documents, records, and files in this action, and such

4  oral and documentary evidence and argument which may be presented at the

5  hearing on this motion.

6

7  DATED: September 14, 2015          THE HOMAMPOUR LAW FIRM,
                                      A Professional Law Corporation
8

9                            By: _____
                                      Arash Homampour,
10                                    Wendi O. Wagner,
                                      Corey Arzoumanian,
11                                    Attorneys for Plaintiffs

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

*Plaintiffs' Opposition to Defendant's Motion for New Trial- Page ii*

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

I. SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    DEFENDANTS' MOTION FAILS TO ARGUE OR ESTABLISH
       THE VERDICT IS AGAINST THE "CLEAR WEIGHT OF
       THE EVIDENCE" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.   COUNSEL DID NOT ENGAGE IN MISCONDUCT . . . . . . . . . . . 2

       A.    The "Insurance" Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       B.    Prior Fire Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       C.    Arson Investigation Testimony . . . . . . . . . . . . . . . . . . . . . . 3

       D.    Decedent's Conduct and Mr. Shinedling's
             "Mantel of Innocence" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       E.    Plaintiffs' Counsel Did Not Raise Discovery Disputes . . . . . . 5

       F.    Defendant's Questioning of Dr. Reading Required
             Plaintiffs to Mention Dr. Boone, and the Court Correctly
             Found this Proper . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       G.    There Were No Improper Golden Rule Arguments
             and Had There Been, Defendant Waived
             by Failing to Object . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.    Counsel Did Not Mischaracterize the Record . . . . . . . . . . . . . . . . 10

V.     EVIDENCE OF "OTHER INCIDENTS" AND
       RECALLS WERE PROPER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

VI.    DR. PALMER WAS QUALIFIED TO RENDER HIS
       OPINIONS AND HIS OPINIONS WERE RELIABLE . . . . . . . . 14

       A.    That Dr. Palmer is Not Designer of Heaters is Irrelevant . . . 15

       B.    Dr. Palmer Was Qualified to Render His Opinion on
             Warning . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

       C.    Dr. Palmer Testified as To Sunbeam's Responsibilities
             From an Engineering Standpoint, Which Was
             Perfectly Proper . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

VII.   THE JURY INSTRUCTIONS WERE PROPER . . . . . . . . . . . . . . 18

       A.    The Jury Was Properly Instructed on Negligent
             Recall, and Defendant Waived Any Objection to
             the Instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

1

**TABLE OF CONTENTS** (Cont.)

2       1.    Sufficient Facts Were Developed for the
3             Instruction, and Defendant Has Failed
          to Demonstrate Prejudice . . . . . . . . . . . . . . . . . . . . . . . . 19

4       2.    Defendant Stipulated to Negligent Recall Not
          Being on the Verdict Form . . . . . . . . . . . . . . . . . . . . . . . 21

5   B. The Jury Was Properly Instructed on Life Expectancies . . . . . . . . 21

6   VIII.  DEFENDANT HAS WAIVED ANY ARGUMENT
7         THAT THE VERDICT IS INCONSISTENT . . . . . . . . . . . . . . . . . . . 22

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

# TABLE OF AUTHORITIES

## FEDERAL CASE LAW

*Bingham v. Zolt*
    823 F. Supp. 1126 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Butts v. Curtis Pub. Co.,*
    225 F.Supp 916 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Cabrera v. Cordis* Corp.
    134 F.3d 1418 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Cassim v. Allstate Ins. Co.,*
    33 Cal.4th 780 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Computer Systems Engineering, Inc. v. Qantel Corp.*
    740 F2d 59 (1st Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Dean v. Trans World Airlines, Inc.,*
    924 F.2d 805 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Dreyer v. Ryder Auto. Carrier Grp., Inc.,*
    367 F.Supp.2d 413 (W.D.N.Y.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Dunbrock v. Interstate Motor Freight Systems,*
    143 F.2d 304 (3d Cir. 1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*FMC Corp. v. Vendo Co.,*
    196 F. Supp. 2d 1023 (E.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Four Corners Helicopters, Inc. v. Turbomeca, S.A.*
    979 F.2d 1434 (10th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Gallick v. Baltimore & Ohio R. Co.,*
    372 U.S. 108 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Gantt v. City of Los Angeles,*
    717 F.3d 702 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Gasperini v. Center for Humanities, Inc.,*
    518 U.S. 415 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Hemmings v. Tidyman's Inc.*
    285 F3d 1174 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Hernandez v. Badger Const. Equip. Co.*
    28 CA4th 1791 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Home Indem. Co. v. Lane Powell Moss & Miller,*
    43 F.3d 1322 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Jones Truck Lines, Inc. v. Full Service Leasing Corp.*
    83 F3d 253 (8th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE: (323) 658-8077 • FAX (323) 658-8477

*Kaiser Steel Corp. v. Frank Coluccio Const. Co.*
   785 F2d 656 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lehan v. Ambassador Programs, Inc.,*
   190 F.R.D. 670 (E.D. Wash. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.,*
   372 F.Supp.2d 1104 (N.D.Ill.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Mason v. E.L. Murphy Trucking Co.,*
   769 F.Supp. 341 (D.Kan.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*McClesky v. Kemp,*
   481 U.S. 279 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Medtronic, Inc. v. White*
   526 F3d 487 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Merrick v. Paul Revere Life Ins. Co.*
   500 F3d 1007 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Monongahela R. Co. v. Black,*
   235 F.2d 406 (4th Cir. 1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*O'Neill v. Krzeminski,*
   839 F.2d 9 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Oxford v. Foster Wheeler LLC,*
   177 CA4th 700 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Passantino v. Johnson & Johnson Consumer Prods.,*
   212 F.3d 493 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Peterson v. Willie,*
   81 F.3d 1033 (11th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Pooshs v. Philip Morris USA, Inc.*
   904 F. Supp.2d 1009 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Rosa v. Taser Int'l, Inc.,*
   684 F3d, 941 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Settlegoode v. Portland Pub. Schools*
   371 F3d 503 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Smith v. Ford Motor Co.,*
   882 F.Supp. 770 (N.D.Ind.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Smith v. Ford Motor Company*
   215 F.3 713 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Smith v. Ingersoll–Rand Co.,*
   214 F.3d 1235 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Sutkiewicz v. Monroe County Sheriff*
   110 F3d 352 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

*Tesser v. Board of Ed. of City School Dist. of City of New York*
    370 F3d 314 (2nd Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Toner v. Lederle Laboratories,*
    828 F.2d 510 (9th Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Travelers Insurance Company v. Bell*,
    188 F.2d 725 (5 Cir. 1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Uhl v. Echols Transfer Company*,
    238 F.2d 760 (5 Cir. 1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Casamento*
    887 F.2d 1141 (2d Cir.1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Garcia,*
    7 F.3d 885 (9th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Westbrook v. Gen. Tire & Rubber Co.*,
    754 F.2d 1233 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*White v. Ford Motor Co.*
    312 F.3d 998 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Zarek v. Fredricks*
    138 F.2d 689  (3rd Cir. 1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## <u>STATE CASE LAW</u>

*Allen v. Toledo*
    109 Cal.App.3d 415 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Bertero v. National General Corp.,*
    13 Cal. 3d 43 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 30

*Conte v. Wyeth, Inc.,*
    168 Cal.App.4th 89 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Daggett v. Atchison, T. & S. F. Ry. Co.*
    48 Cal.2d 655 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Hasson v. Ford Motor Co.*
    19 Cal.3d 530 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Hernandez v. Badger Construction Equipment Co.*
    28 Cal.App.4th 1791 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Holliday v. Jones,*
    215 Cal. App. 3d 102 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

*Krouse v. Graham*
    19 Cal. 3d 59 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Leming v. Oilfields Trucking Co.,*
    44 Cal. 2d 343 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE: (323) 658-8077 • FAX (323) 658-8477

*Miller v. Pacific Constructors, Inc.*
    68 Cal. App. 2d 529 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Newman v. Campell*
    23 Cal.App.2d 639 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*People v Monterroso,*
    34 Cal. 4th 743 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People v. Kennedy,*
    36 Cal.4th 595 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People v. Williams,*
    49 Cal.4th 405 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Phillips v. Lyon*
    109 Cal. App. 264 (1930) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Rodriguez v. McDonnell Douglas Corp.*
    87 Cal. App. 3d 626 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Rufo v. Simpson,*
    86 Cal. App. 4th 573 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Seffert v. Los Angeles Transit Lines*
    56 Cal.2d 498 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Veronese v. Lucasfilm Ltd.,*
    212 Cal. App. 4th 1 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Wheeler v. John Deere Co.,*
    862 F.2d 1404 (10th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## **OTHER**

*Asam v. Ortiz,*
    No. PC051705, 2014 WL 585350 (Cal. Super. Ct. Feb. 3, 2014) . . . . 28, 29

*Massok v. Rellek, Inc.,*
    147 Fed. Appx. 651 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Reetz v. Kinsman Marine Transit Co.,*
    416 Mich. 97 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Swift & Co. v. Rennard,*
    128 Ill. App. 181, 186 (1906) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## **STATUTES**

Fed. R. Civ. P. 51(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE: (323) 658-8077 • FAX (323) 658-8477

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   SUMMARY OF ARGUMENT

Violating the requirement that motions be supported by evidence (especially one that asks the Court to evaluate the weight of evidence), Defendants file a motion that simply rehashes arguments already rejected or adequately reflected in the jury's verdict.

As will be demonstrated, Plaintiffs' counsel in no way engaged in misconduct.  The evidence complained of by Defendant was either introduced by Defendant itself, required due to Defendant's improper arguments, or was properly kept out because it was irrelevant to Defendant's case.  Further, Defendant cannot raise issues where it failed to object at trial.

Evidence of other recalls was proper, when the introduction of same was necessary to correct mis-statements made by Defendant in its opening argument.  No recalls of Sunbeam products were mentioned.  No motion in limine or agreement was violated.

Dr. Palmer was qualified to render his opinions, and his opinions were proper, supported by scientific analysis, and repeatable.  Defendant's argument goes to Dr. Palmer's conclusions, not his method.  This is improper.

The jury was properly instructed on both negligent recall and life expectancies. Defendant *stipulated* to negligent recall not being on the verdict form, and cannot object on that basis.

The verdict form was not inconsistent, as the claim were separate and distinct, each requiring a different showing of proof.  The verdict as to each claim can be reconciled.

As to damages, there was no double recovery, there was sufficient evidence for the awards, and the awards were not excessive.  There is simply no reason to grant a new trial.

### II.   DEFENDANTS' MOTION FAILS TO ARGUE OR ESTABLISH THE VERDICT IS AGAINST THE "CLEAR WEIGHT OF THE EVIDENCE"

The Ninth Circuit has held that "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence,

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 1403
PHONE (323) 658-8077 • FAX (323) 658-8477

1  or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods*.,

2  212 F.3d 493, 510 n.15 (9th Cir. 2000).

3      Although Defendant claims to be bringing this motion on the basis that the verdict is

4  against the clear weight of the evidence, Defendant never actually makes such an argument.

5  Defendant's motion is only based on excessive damages, the giving of jury instructions, and

6  alleged improper arguments and errors in admission and rejection of evidence.

7

8  **III. <u>COUNSEL DID NOT ENGAGE IN MISCONDUCT</u>**

9      A new trial may be ordered where the opposing counsel committed misconduct that

10  made it "reasonably probable that the verdict was influenced by prejudicial statements."

11  *Tesser v. Board of Ed. of City School Dist. of City of New York* 370 F3d 314, 321 (2nd Cir.

12  2004). The party seeking a new trial "must make a concrete showing that the misconduct

13  of counsel consistently permeated the entire trial from beginning to end." *Sutkiewicz v.*

14  *Monroe County Sheriff* 110 F3d 352, 361 (6th Cir. 1997). To determine the prejudicial

15  effect of attorney misconduct, courts look to the "totality of the circumstances" and weigh

16  such factors as the "nature of the comments, their frequency, their possible relevancy to the

17  real issue before the jury, the manner in which the parties and the court treated the

18  comments, the strength of the case, and the verdict itself." *Hemmings v. Tidyman's Inc*. 285

19  F3d 1174, 1193 (9th Cir. 2002) (internal quotes omitted).

20      Defendant has failed to meet this burden, and no misconduct occurred.

21  **A.      <u>The "Insurance" Testimony</u>**

22      This argument is convoluted and unpersuasive.  Defendant blamed Plaintiff for not

23  saving his wife. (34:5-10; 35:3-10 [Ex. A]. Defendant did not allege that Plaintiff started the

24  fire intentionally. (17:3-18:10 [Ex. B]) . Plaintiff's counsel had to counteract the suggestion

25  that Plaintiff did not inform first responders that his wife was in the house.  As Defendant

26  did not allege that Plaintiff intentionally set the fire, this evidence was irrelevant.  As to

27  using the application for impeachment purposes, Defendant failed to argue this in hearing.

28  \\

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

---

*Plaintiffs' Opposition to Defendant's Motion for New Trial- Page 2*

**B.**     <u>Prior Fire Testimony</u>

Defendant, not Plaintiffs, raised the issue of prior fires with Dr. Reading, to which Plaintiffs' counsel objected. (92:25-93:1; 132:4-9; 134:25-136:8 [Ex. C]). Defendant was allowed to explore with Dr. Reading what Mr. Shinedling related to him about the fires and whether Dr. Reading took those fires into consideration when evaluating Mr. Shinedling, over Plaintiffs' objection. (132:19-133:11 [Ex. C]). What Defendant hoped to get from Mr. Shinedling that it was not able to get from a neutral expert is not stated by Defendant. The jury heard about the fires and could have determined that those fires contributed to Mr. Shinedling's current emotional distress, as suggested by Defendant, but obviously didn't.

The testimony from investigators regarding the other fires was only relevant if Defendant alleged that Plaintiff started the fire intentionally, which Defendant did not. Defendant does not address what information it was prevented from presenting, why this was an error, or what relevance it had to the case.

As to the claim that Defendant could have argued increased risk awareness, Defendant has not established that the prior fire started in a way that would have raised an increased risk awareness, nor did he argue in pre-trial that this was a consideration. (15:10-18:15; 22:2-9 [Ex. B]).  Once the issue of previous fires had been raised, there was nothing stopping Defendant from arguing this in closing.

**C.**     <u>Arson Investigation Testimony</u>

The testimony that Defendant complains it could not elicit had to do with red flags, including: Plaintiff's history; that he left his wife with the fire; and that he asked for donations after the fire. (Motion fn. 14).  These go to whether the fire was intentionally set, which the court determined was irrelevant because Sunbeam was not claiming that it was intentionally set. As to charitable donations, Defendant agreed not to mention same. (Defendant's Ex. G 321:10-12). Defendant was asked in pretrial how it intended to use this information and if it went to character evidence, but Defendant did not argue that it should be used for impeachment. (13:6-19; 14:17-19 [Ex. B]).

Plaintiff did not bring up any testimony in these areas, but instead sought to elicit

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

testimony as to whether it would be reasonable to have left his daughter in the snow to save his wife, or to have gone back into the burning house himself. (Defendant's fn. 21). This testimony was necessitated by Defendant's suggestion that Plaintiff could have just exited the bedroom through the door (and presumably left his daughter in the snow to save his wife). (34:5-10 [Ex. A]).

With respect to Mr. Shinedling's statement that he blamed Sunbeam for putting in his head that people were questioning him (Defendant's Ex. A 126:17-127:7, in response to Defendant's question, not Plaintiffs'), the fact that investigators questioned his motives is irrelevant where Defendant was not contending that he started the fire intentionally. Plaintiffs did not elicit any testimony which had been excluded, nor was Defendant precluded from using any evidence which was relevant.

### D.   Decedent's Conduct and Mr. Shinedling's "Mantel of Innocence"

Defendant was not prohibited from introducing evidence of decedent's injuries or position. (20:15-21:19 [Ex. A]; 74:25-75:4 [Ex. D]). Defendant could not elicit testimony that these were "odd". That ruling was proper as Defendant did not allege the fire was intentionally set. (17:3-18:10 [Ex. B]).

If Defendant wanted to show Mr. Shinedling caused the injuries and same prevented decedent from escaping the fire, Defendant never admitted this or made an offer of proof when the motion in limine was being heard.   Further, Defendant did not have any medical expert to testify as such.   (71:1-75:4 [Ex. D]).

Shinedling did not testify that "only" Sunbeam brought his actions into question.  Nor did he testify that he was "above suspicion". He testified that his feelings that Sunbeam said he did something wrong came from the allegations that he could have saved his wife. (Defendant's Ex. A 128:5-17). There was no testimony to rebut, and again, testimony about "red flags" was only relevant if Sunbeam claimed that Shinedling started the fire, which it didn't.

Counsel didn't elicit expert testimony suggesting that there was no basis to blame Mr. Shinedling for the fire.   There was testimony that from an engineering perspective

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
1 5 3 0 3 VENTURA BOULEVARD · SUITE 1 0 0 0
SHERMAN OAKS, CALIFORNIA 9 1 4 0 3
PHONE (3 2 3) 6 5 8 - 8 0 7 7 · FAX (3 2 3) 6 5 8 - 8 4 7 7

foreseeable use should be examined and the user should not be blamed (Defendant's Ex. A 81:3-17); that his actions were reasonable in trying to save his kids (*Id.* 85:4-18, 87:7-89:20); that survivor's guilt can be used against the person feeling it, and that this was done by people in his community, and if a defense attorney were to do it it would be like putting salt in a wound (*Id.*146:11-19); and Mr. Homampour's closing that it was offensive for Defendant's case to be based on blaming Mr. Shinedling for his wife's death. (*Id.* 253:17-19). None of this was expert testimony suggesting that there is no basis for blaming Mr. Shinedling for the fire, nor the "proclamation of Mr. Shinedling's innocence" that Sunbeam claims.

The case of *Dean v. Trans World Airlines, Inc.*, 924 F.2d 805 (9th Cir. 1991) is inapplicable. In that case, there was a conviction for failure to file an accurate tax return and plaintiff was professing innocence. Defendant was prevented from using the conviction. On appeal it was held that the exclusion of evidence was prejudicial because it would have rebutted plaintiff's claim of innocence. Applying that case to those facts demonstrates its inapplicability. Here, not only was Mr. Shinedling not convicted of any wrongdoing for setting the fire, Defendant does not even claim that he set the fire. Defendant cannot argue that it was prevented from showing that Mr. Shinedling was "guilty" of not saving his wife, as it wasn't. The only thing that Defendant was prohibited from doing was arguing that he started the fire intentionally, which it wasn't claiming on the first place. Defendant's argument simply  makes no sense.

The fact of the matter is that the Court warned Sunbeam that blaming Mr. Shinedling for the fire could back fire, and that it would let Plaintiffs fight back. (39:21-40:3 [Ex. B]). It did, and they did.  That Sunbeam is dissatisfied with the result of its decision to blame a widower it created is not a basis for a new trial.

**E.    Plaintiffs' Counsel Did Not Raise Discovery Disputes**

First, the stipulation re narrowing the issues on motions in limine says, as to motion in limine no. 2, the subject of discovery disputes, that Defendant will withdraw the motion. Unlike the remainder of the motions mentioned, it does not state that Plaintiffs agrees to the

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

1    motion or any portion thereof.  (Dkt. 228).

2        Second, the testimony in Defendant's fn. 35 had to do with Sunbeam's own employees testifying that they did not have documents concerning how to make products safer, including that there were no documents to demonstrate that Prins, the head of product safety, was aware that the automatic safety shut-off might not work.  (30:4-32:1 [Ex. E]). This was not testimony about discovery disputes.  Counsel's comment were about the fact that Sunbeam didn't keep records, not that Sunbeam didn't disclose records during discovery.

8        Defendant had the opportunity to rebut the testimony, as Defendant was allowed redirect testimony with Mr. Prins.  That there were no facts available to rebut the truth that Sunbeam does not maintain documents does not equate to a lack of opportunity to rebut.

11       It should also be noted that Defendant did not object to the line of questioning complained of. "It is an elementary principle of federal law that a new trial will not be granted where a party seeks to raise for the first time, on a motion for a new trial, that opposing counsel was guilty of misconduct in his argument to the jury, where such conduct was not excepted to during the trial." *Butts v. Curtis Pub. Co.,* 225 F.Supp 916, 922 (1964). See also *Travelers Insurance Company v. Bell*, 188 F.2d 725 (5 Cir. 1951); *Uhl v. Echols Transfer Company*, 238 F.2d 760 (5 Cir. 1956).

18       Defendant has failed to demonstrate that 1) Mr. Shinedling "wore a mantle of innocence"; 2) that Sunbeam was prevented from bringing in any evidence other than that which would support a theory that Mr. Shinedling started the fire, *which Sunbeam was not claiming*; and 3) that the jury was prejudiced as a result. Sunbeam got a fair trial.

## F.    Defendant's Questioning of Dr. Reading Required Plaintiffs to Mention Dr. Boone, and the Court Correctly Found this Proper

24       Defendant questioned whether Dr. Reading had charged "north of $40,000" in this matter.  As a result, counsel had to elicit testimony as to what that $40,000 covered, and that most of it covered having to rebut a report of Dr. Boone, who was not being called in the case. (89:8-12; 120:19-121:3 [Ex. C]).  On Defendant's objection, the Court noted that Defendant had asked several questions regarding the fees charged by Dr. Reading, which

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

opened the door for Dr. Reading to talk about all of the work he did to earn those fees and to analyze and opine about an expert that Defendant decided not to call. (138:12-22 [Ex. C]). This was proper.

The cases cited by Defendant are inapplicable. *Lehan v. Ambassador Programs, Inc.*, 190 F.R.D. 670 (E.D. Wash. 2000) and *FMC Corp. v. Vendo Co.*, 196 F. Supp. 2d 1023 (E.D. Cal. 2002) both deal with a party's ability to call the other party's expert to testify. Plaintiffs were not seeking to call Dr. Boone to testify. *Peterson v. Willie*, 81 F.3d 1033 (11th Cir. 1996) dealt with a situation where the defendant used at trial an expert who had originally been retained by plaintiff. Defendant elicited testimony from the expert regarding this retention, which the Court found improper. Plaintiffs did not call Dr. Boone, they merely elicited testimony to explain why Dr. Reading's bill was so high.

Contrary to Defendant's assertions, Plaintiffs' counsel did not argue that Sunbeam's decision not to call Dr. Boone was a "deception tactic." Counsel's comment was to Sunbeam's distortion of the reporting scales in its cross examination of Dr. Reading. (102:5-116:1; 122:9-129:22 [Ex. C]). This too, was proper.

Mention of Dr. Boone was entirely appropriate under the circumstances. Defendant has not provided any authority to the contrary, nor has Defendant demonstrated prejudice.

## G. There Were No Improper Golden Rule Arguments and Had There Been, Defendant Waived by Failing to Object

Defendant demonstrates a fundamental misunderstanding of the Golden Rule. A violation of the rule does not occur anytime counsel says the word "you." A violation of the rule requires that counsel ask jurors to "put themselves in the plaintiff's shoes and ask what compensation they would personally expect." *Cassim v. Allstate Ins. Co.*, 33 Cal.4th 780, 797 (2004). This is not what happened.

Counsel's statement that he felt like he had been a voice for decedent and that now the jury gets to be her voice does not violate the rule. Neither counsel nor decedent were plaintiffs. Counsel did not ask the jurors to put themselves in Plaintiffs' shoes and ask what compensation they would expect. Counsel did not ask them to put themselves in Plaintiffs'

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

---

*Plaintiffs' Opposition to Defendant's Motion for New Trial- Page 7*

shoes, at all.  Nor did counsel ask them to become an advocate for Plaintiffs.

The jury was not asked to imagine personally buying a deadly product.  In the context of pointing out to the jury that Sunbeam was blaming Mr. Shinedling for the incident, counsel stated:

> Can you imagine you buy a product that you don't know is unsafe and that can cause your wife to die and they know it can cause your wife to die and they know it can cause a fire, and then they have the nerve to blame you?

This is not asking each juror to imagine that they have bought a deadly product, and it is certainly not asking each juror to think of their spouse being killed by a deadly product and asking what amount of money they would want as damages.   Nor is saying "Waking up from a sleep, there's a fire from a heater that you didn't know was defective, the defendant knew was defective. You have to run and save your baby. You have to run and save your girls, and your wife dies. And you will have that with you as the girls and as a husband for the rest of your life." This statement was to get across the type of confusion that *Mr. Shinedling* was faced with upon waking, when Defendant argued that he should have saved his wife.  Further, this statement was followed by "That loss is always with them. They are always walking wounded. They will never be full, whole, and complete. They will never feel safe again." Counsel never asked jurors to consider how they would feel if they were in the fire, lost their wife/mother and to  award such damages as they would charge to undergo equivalent pain and suffering.

Counsel's statement that he would never use a radiant heater in his house where people are sleeping certainly doesn't ask jurors to put themselves in the shoes of Plaintiffs.

With respect to the statement that Defendant didn't have a heart, such argument was perfectly proper in the context of commenting that in Defendant's opening its counsel said ". . . our hearts go out to the Shinedling family for the loss of a mother and of a wife. Nevertheless, it is our view that Sunbeam is not liable for the accident." (27:24-28:5 [Ex. A]).  In context, Plaintiffs' counsel stated "Well, the expression 'It's a little too late' applies. Who cares now about your hearts now that she's gone? Where were your hearts and minds

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

before you put that product on your shelves and Mr. Shinedling mistakenly bought it not knowing it could kill his wife, not knowing it could have hurt his three daughters? Who cares about your heart? We're not here -- Sunbeam doesn't have a heart. Sunbeam is made up of thousands of employees making all sorts of whacky products from coffee makers . . . ". Defendant has not provided any authority for the proposition that such a statement was improper, save for a non-binding 1906 Illinois state court case in which counsel suggested that a corporation didn't have a soul and therefore didn't have to worry about its soul in Heaven, suggesting that it would have fired its employee for telling the truth. *Swift & Co. v. Rennard*, 128 Ill. App. 181, 186 (1906).

Similarly inapplicable is *Westbrook v. Gen. Tire & Rubber Co.*, 754 F.2d 1233, 1238 (5th Cir. 1985), in which plaintiff's counsel repeatedly referred to a community expectation which would be disappointed unless the jury returned a large verdict in plaintiff's favor. The Court's objection to the argument was that it was a "community conscience" argument "intended to evoke a sense of community loyalty, duty and expectation" which carried the potential of substantial injustice when invoked against outsiders. *Id.* at 1239. Counsel made no such argument.

In *Reetz v. Kinsman Marine Transit Co.*, 416 Mich. 97, 110 (1982), again a non-binding state case from Michigan, plaintiff's counsel throughout the trial constantly stressed the corporate nature, wealth, power an insensitivity of the corporate defendant. The court found that the behavior was so constantly repeated that it became indelibly impressed on the juror's consciousness. *Id.* at 111. Defendant did not, and cannot, make such an argument here. Plaintiffs' counsel's sole comment was that the legal system is a great equalizer, as jurors were able to hold any corporation accountable. (D. Ex. A 245:3-6.) Defendant states, without demonstrating, that this one comment "fed the jury's emotional fears and prejudices." It is unclear how a comment that a jury can hold a corporate defendant accountable fed on the jury's emotional fears and prejudices (or even that the jury had emotional fears and prejudices).

Even if there had been an improper argument, <u>Defendant waived the right to complain</u>

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

1  about it because there was no contemporaneous objection. An objection to improper

2  argument must be made before the judge submits the case to the jury to deliberate—i.e.,

3  during argument or immediately following. Otherwise, the objection is waived. *Computer*

4  *Systems Engineering, Inc. v. Qantel Corp.* 740 F2d 59, 69 (1st Cir. 1984); *Kaiser Steel*

5  *Corp. v. Frank Coluccio Const. Co.* 785 F2d 656, 658, fn. 2 (9th Cir. 1986). When counsel

6  fails to object to alleged misconduct during closing argument, there is a higher standard for

7  granting a new trial on that ground. *Settlegoode v. Portland Pub. Schools* 371 F3d 503, 517

8  (9th Cir. 2004). There is good reason that the law requires a party to object. Defendant's

9  failure to object deprives Plaintiffs the opportunity to stop any alleged misconduct if

10  sustained by the Court and deprives the Court of the opportunity to issue curative

11  instructions. Defendant cannot be rewarded for its dilatory conduct in not objecting.

12  Ultimately, Defendant has failed to demonstrate either that a Golden Rule argument was

13  made, that it sufficiently permeated the entire proceeding, or that there was plain error which

14  resulted in prejudice.

## IV.  COUNSEL DID NOT MISCHARACTERIZE THE RECORD

16      Defendant opened by telling the jury that Mr. Shinedling did not tell first responders

17  that decedent was in the house, suggesting that he kept this information from them. (35:3-10

18  [Ex. A]). Counsel elicited testimony that 911 was informed as to decedent's location and

19  this information was communicated to the fire department. (17:9-18:6 [Ex. F]). Sunbeam

20  did falsely tell the jury that Mr. Shinedling did not tell first responders that his wife was in

21  the house.

22      Witness Whedon was paid by Defendant. (62:9-10 [Ex. F]). He testified to things

23  which were not true and/or which were unsupported: that Mr. Shinedling said he waited a

24  few minutes to respond to the alarm, (66:11-16 [Ex. F]) when the truth was that Mr.

25  Shinedling said a moment or two (76:22-77:11; 78:8-25 [Ex. F]) and that Mr. Shinedling

26  told him that clothes were scattered all over and in between the heater and the bed

27  (80:22-81:15 [Ex. F]). Mr. Whedon met with defense counsel prior to his testimony and

28  they discussed the topic of piles of clothing. (82:3-12 [Ex. F]). All of these facts lend

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD - SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

1  themselves to the inference that the witness was distorting the truth for financial gain and/or

2  that Defendant was distorting the truth or attempting to confuse the jury.[1]

3      Regarding the CPSC, Plaintiffs correctly summarized the testimony.  Prins, the head of

4  product safety at Sunbeam, was aware that the automatic safety shut-off might not work.

5  (30:4-31:25 [Ex. E]).  When the CPSC asked Sunbeam to evaluate its product, Prins did not

6  disclose this information.  (56:21-57:14; 58:15-25 [Ex. E]).  There was nothing that was

7  untrue about counsel's statements or which mischaracterized the evidence.

8      Nor did counsel mischaracterize the evidence regarding the hamper.  Mr. Shinedling

9  testified that he had slept with the hampers where there they were before, and had previously

10  made sure that they were far enough away.  When he went to sleep that night everything had

11  been normal and where it should have been. (D. Ex. A 107:3-15; 108:18-20). Plaintiffs' fire

12  expert Romig testified that the time of the fire shows that the clothes were not at the location

13  that they were in at the time of the fire based on Dr. Palmer's testing that the clothes would

14  get to smoldering within 25-30 minutes, the fire would have started at 1:00 in the morning

15  had the clothing been there at the time that the Shindelings went to sleep.  Defense witness

16  Stuart also admitted that the hamper could have contained  the  bag of clothing and that it

17  was possible that the bag fell or was knocked out of the hamper. (53:21-54:5 [Ex. F]).  This

18  was not a mischaracterization of the evidence. In fact, Defendant mischaracterize's Plaintiffs'

19  counsel's assertion.  Contrary to Defendant's claim, counsel did not state that anything was

20  proven.  Counsel stated "What happened was what we believe happened, what the evidence

21  shows you is that the hamper had clothes in it, the hamper fell over, the clothes got in front

22  of the heater, and they started a fire." (D. Ex. A 266:18-21). It is a rational inference that the

23

24

25      [1]An attorney is entitled to argue that the opposing party's expert witness is
26  distorting the truth for financial gain or is a professional witness if the evidence
   supports this argument *(People v Monterroso* 34 Cal. 4th 743, 783-784 (2004).) There
27  is no law prohibiting the argument that Defendants are distorting the truth, and "it is
   not misconduct for [an attorney] to argue that the defense is attempting to confuse the
28  jury." *People v. Kennedy*, 36 Cal.4th 595, 626-27 (2005) disapproved on other
   grounds by *People v. Williams*, 49 Cal.4th 405 (2010).

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

*Plaintiffs' Opposition to Defendant's Motion for New Trial- Page 11*

1  hamper was tipped over in the night, which counsel was allowed to relate to the jury.[2]

2  Defendant has failed to show that counsel mischaracterized any evidence or that

3  Defendant was prejudiced by any mischaracterization.

4

## V.   EVIDENCE OF "OTHER INCIDENTS" AND RECALLS WERE PROPER

6  Defendant misrepresents the evidence.  Defendant brought a motion in limine no. 7 to

7  exclude evidence of other types of heaters. Dkt. 114.  Plaintiffs stipulated to bullet points

8  1, 2, and 5 on page 1 of that motion, having to do with court cases involving all Sunbeam

9  heaters and products; recalls involving all Sunbeam heaters and products; and testing and/or

10  investigation related to all Sunbeam heaters and products.  The comment relied on by

11  Defendant in its moving papers that counsel agreed not to submit evidence as to these items

12  related to motion in limine no. 7.  It did not relate to motion in limine no. 8, which had to

13  do with the evidence of other incidents, which is the evidence of which Defendant is

14  complaining.  See Dkt. 115.

15  Defendant correctly states that evidence of prior incidents is inadmissible to prove a

16  defect.  But, the evidence was not presented or relied upon to prove a defect.  The evidence

17  was relied on to prove notice.  The requirement of "substantial similarity" is relaxed when

18  the evidence of other incidents is intended to demonstrate notice or awareness of the

19  potential defect on the part of its manufacturer. *Four Corners Helicopters, Inc. v.*

20  *Turbomeca, S.A.* 979 F.2d 1434, 1440 (10th Cir.1992); *Wheeler v. John Deere Co.*, 862

21  F.2d 1404, 1407-08 (10th Cir. 1988). "Any differences in the accidents not affecting a

22  finding of substantial similarity go to the weight of the evidence" rather than its

23  admissibility when it is offered for notice purposes only. *Four Corners Helicopters, Inc.,*

24  *supra,* 979 F.2d at 1440.

25  As explained by the *Wheeler* court:

26  _____

27  [2]In making an argument, counsel may urge any possible theory suggested by the evidence and may even make illogical arguments as long as the arguments or

28  theories do not misstate the law or the evidence. *Miller v. Pacific Constructors, Inc.* 68 Cal. App. 2d 529, 550-551 (1945).

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

Whether accidents are substantially similar depends largely upon the theory of the case: "Differences in the nature of the defect alleged may affect a determination whether the accidents are substantially similar.... How substantial the similarity must be is in part a function of the proponent's theory of proof." (Citation). Evidence proffered to illustrate the existence of a dangerous condition necessitates a high degree of similarity because it weighs directly on the ultimate issue to be decided by the jury. The requirement  is relaxed, however, when the evidence of other accidents is submitted to prove notice or awareness of the potential defect. (Citation). Any differences in the accidents not affecting a finding of substantial similarity go to the weight of the evidence. *Id.*, at pp. 1407-08.

Here, the prior incidents all relate to notice or awareness of hazards in Defendant's home heaters. Dr. Palmer made the relevance of the information clear that even before the subject product was manufactured, Sunbeam had notice that there was a serious hazard relating to heaters. (16:19-17:1 [Ex. G]).  The evidence was probative of the notice issue.

Defendant's claim that it only was allowed 15 minutes to cross-examine Palmer is disingenuous, at best.  Defendant argued in the pre-trial conference that he would be required to dispute the prior claims and that they were not pertinent to the design defect theory alleged by Plaintiffs.  The Court responded that Defendant would be allowed to pick apart and attack the other incident but that it did not need days to do so.  The Court commented that if counsel was precise and focused, it could get the point across in 15 minutes.  (73:11-75:20 [Ex. H]).  It did not limit Defendant to 15 minutes, and at no point during the cross examination was Defendant told that it had to move off the subject.  Even if Defendant was limited to 15 minutes (it wasn't) Defendant did not even use those 15 minutes.  Defendant asked very few questions regarding the incident data and was able to elicit testimony for Palmer that he was not implying to the jury that the other incidents were as a result of combustibles sitting if front of the subject heater and that many times heaters are listed as to the potential cause of a fire by the fire department but are later ruled out as the cause. (92:19-95:24 [Ex. G]).  Defendant cannot now be heard to complain that it wasn't given sufficient time.

With respect to recalls, Plaintiffs agreed that they would not reference Sunbeam recalls of other Sunbeam products.  In opening, Defendant made the claim that the Consumer

*Plaintiffs' Opposition to Defendant's Motion for New Trial- Page 13*

Product Safety Commission had never recalled a quartz heater because it was too hot. (35:11-19 [Ex. A]). This turned about to be an untrue statement and Palmer was correctly questioned about it so that the jury had accurate information. (6:20-7:12 [Ex. G]). Plaintiffs did not tie the recalls to the subject heater because Plaintiffs did not allege that the recalls were recalls of Sunbeam products. Plaintiffs were only correcting a misperception that Defendant had planted in the juror's minds - that no other quartz heaters had ever been recalled. Defendant fails to demonstrate that the jury was forced to speculate that the recalls were related to this case.

Defendant submitted a list of commercially available radiant heaters (trial exhibit 355). The purpose of this list was to show that radiant heaters were on the market and that they all reach the same temperature and pose the same risks of igniting too close combustibles. (8:25-9:15 [Ex. I]). It was perfectly proper for Plaintiffs to point out that one of these heaters had been recalled (28:9-29:1 [Ex. G]).

Defendant fails to explain how the mention of two *non-Sunbeam* products that were recalled prejudiced the jury so that the jury was left with the impression that the subject heater was subject to recall. Trial exhibit 355 listed numerous radiant heaters, and the jury was certainly not left with the impression that any of them, save one, was subject to recall. To suggest that evidence of one recall made the jury think that all radiant heaters were subject to recall simply has no basis. Defendant attempted to tell the jury that all radiant heaters were safe, that no radiant heater had ever been recalled. That Plaintiffs were able to demonstrate instances where this was not true hardly equates to Plaintiffs causing undue prejudice.

## VI. DR. PALMER WAS QUALIFIED TO RENDER HIS OPINIONS AND HIS OPINIONS WERE RELIABLE

Defendant does not challenge Dr. Palmer's educational background or his competence to express opinions generally on matters of electrical engineering. It should also be noted that Defendant does not dispute that the testing done by Dr. Palmer was reliable and based

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

on the scientific method.

The only attacks that Defendant has made as to Dr. Palmer are that 1) he is not a designer of heaters; 2) that no other person holds his opinion; 3) that his opinion is *ipse dixit;* and 4) he is not a warnings expert.

### A.     That Dr. Palmer is Not Designer of Heaters is Irrelevant

Defendant makes much of the fact that Dr. Palmer never designed a heater. However, their own expert never designed a heater. (43:13-15 [Ex. I]). That neither expert was an expert in the very narrow field of heater design is completely irrelevant. Dr. Palmer did not have to have prior experience with a space heater in order to opine about a space heater. *Smith v. Ingersoll–Rand Co.*, 214 F.3d 1235, 1244 (10th Cir. 2000) (safety expert and human factors expert qualified even though neither had experience with particular machine). "An expert need not necessarily have specific experience with a particular facet of his or her expertise in order to be competent to testify as to that facet," and "[a] lack of specialization generally does not affect the admissibility of the opinion, only its weight." *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 372 F.Supp.2d 1104, 1113 (N.D.Ill.2005) (internal quotation marks and citations omitted); *see also Dreyer v. Ryder Auto. Carrier Grp., Inc.*, 367 F.Supp.2d 413, 417 (W.D.N.Y.2005) (finding an expert qualified to opine on a design defect of autohaulers based on his general experience loading, unloading, and operating autohaulers); *Smith v. Ford Motor Co.*, 882 F.Supp. 770, 772–73 (N.D.Ind.1995) (permitting an expert to testify as to the cause of a truck fire based on his experience in the auto collision repair industry); *Mason v. E.L. Murphy Trucking Co.*, 769 F.Supp. 341, 344 (D.Kan.1991) (finding an expert qualified to opine on unique markings of a transportation trailer based on nineteen years of "practical experience" operating and maintaining transportation trailers).

The case of *Smith v. Ford Motor Company* 215 F.3 713 (7th Cir. 2000) is instructive. In that case, plaintiffs sought to use a metallurgical expert and a mechanical expert, but the district court concluded that neither expert was an expert in the field of automotive design or manufacturing and excluded their testimony. In reversing, the Court of Appeal held that

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

*Plaintiffs' Opposition to Defendant's Motion for New Trial- Page 15*

proffered experts did not qualify as automotive engineers did not preclude finding that they were qualified to testify as experts on matters at issue.  Like the experts in *Smith,* Dr. Palmer has substantial experience with engineering design of products and equipment. (Dkt. 153.2).

The cases relied on by Defendant stating that one must be an expert in a particular field are not persuasive. *Massok v. Rellek, Inc*., 147 Fed. Appx. 651 (9th Cir. 2005) is not citeable under Circuit Rule 36-3. However, it should be pointed out that the expert in question in that case performed inadequate testing and had failed the Georgia state mechanical engineering examination five times.  However, the Court noted that it was not an abuse of discretion to permit expert testimony, even when the specialist lacks "particularized expertise", citing *United States v. Garcia*, 7 F.3d 885, 889-90 (9th Cir.1993).  In case *Pooshs v. Philip Morris USA, Inc*. 904 F. Supp.2d 1009, one doctor was not allowed to testify about how to design cigarettes because he did not have any background, education or experience that would translate to a knowledge of how cigarettes were designed. The second doctor was not allowed to testify as to design because his untested theories had been refuted by research and his alternative design was not supported by scientific proof. *Id.* at 1019, 1023. In *Cabrera v. Cordis* Corp. 134 F.3d 1418 (1998), plaintiff offered expert testimony from an M.D. that a shunt placed in her skull had caused an autoimmune disorder.  However, the M.D. had not tested any blood or urine samples of Plaintiff and could not point to any research connecting plaintiff's symptoms to the shunt.   In contrast, Dr. Palmer's background, education and experience translate to a direct understanding of thermodynamics principles, heat transfer mechanisms, electrical power conversion, and the engineering hierarchy with respect to hazards.  His analysis is not based on any subtlety or hidden aspect of product design that requires years of space heater design experience, but is based on a solid foundation of basic engineering and scientific principles, including the effect of heat on combustible materials, which is easily measured and observed.  Dr. Palmer's opinion was supported by testing and is not *ipse dixit*.

Defendant does not challenge Dr. Palmer's experiments or his methodology.  It challenges his opinion. As the Ninth Circuit explained, the Supreme Court in Daubert:

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

*Plaintiffs' Opposition to Defendant's Motion for New Trial- Page 16*

. . . had in mind a flexible inquiry focused solely on principles and methodology, not on the conclusions that they generate. As long as the process is generally reliable, any potential error can be brought to the attention of the jury through cross-examination and the testimony of other experts. *United States v. Prime*, 431 F.3d 1147, 1153 (9th Cir. 2005) (quotations omitted).

Defendant's complaint is that Dr. Palmer opined that radiant heaters are unreasonably dangerous for use in a residential setting because all radiant heaters reach very high temperature and can heat outside objects to ignition. (61:14-63:8 [Ex. A]). Defendant finds fault with the opinion because it claims no other expert in the field holds this opinion. That is not the test. The test is whether the opinion is based on solid principles and methodology. The basis for the opinion was agreed to by Defendant's employee Prins. (26:10-15 [Ex. E]). Ignition temperatures are a fact, and no "inventory" of other radiant heaters on the market was necessary, as suggested by Defendant. Defendant does not attack the principle or the methodology Dr. Palmer used to demonstrate the principle, it only attacks the opinion that these heaters should not be used in a residential setting. This is improper.

## B. **Dr. Palmer Was Qualified to Render His Opinion on Warnings**

Dr. Palmer was not asked to render opinions requiring the skills of a human factors expert. He was asked to address the warnings from the perspective of an engineer, i.e., whether the warnings addressed the issues raised in an engineering analysis of the safety hierarchy (design out, guard against, warn about). (53:15-21 [Ex. G]; 88:4-24 [Ex. J]). Dr. Palmer was certainly qualified to render same.

Dr. Palmer gave many opinions as to warnings, yet Defendant only cites to one. This tactic results in misrepresentation by omission. Dr. Palmer did not state that no additional warnings would have been useful. Dr. Palmer testified that there was no warning by Sunbeam that the auto safety shutoff may not work and that there should have been, as the hazard had not been mitigated. (69:10-14; 90:3-11 [Ex. A]). He also testified that it was an oversight by Sunbeam not to incorporate the CPSC's warning not to sleep with a space heater on and to keep children and pets away. (101:25-10; 103:16-104:3 [Ex. A]). Read in context with the opinion that Defendant does cite, it makes Dr. Palmer's statement "other than persuading someone not to use it" relates to his opinion that Sunbeam should have

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

warned not to use the heater while sleeping, particularly because the auto safety shutoff may not work.   As the hazard had not been designed out or mitigated, Dr. Palmer's opinions that the warnings did not address the issues raised by the engineering hierarchy were proper.

### C.   Dr. Palmer Testified as To Sunbeam's Responsibilities From an Engineering Standpoint, Which Was Perfectly Proper

There was nothing speculative about Dr. Palmer's testimony with respect to the record keeping of Sunbeam from an engineering standpoint.   He explained that the data is necessary so that engineering principles can be applied to evaluate the hazard and mitigate it.   If data is not collected and analyzed, this cannot be done.   His opinion was perfectly proper, and as an engineer, he was qualified to give it.   One does not need to be a corporate ethicist or a regulatory specialist to provide an opinion as to what is necessary to have to engage in an engineering safety hierarchy analysis.   The engineering hierarchy was absolutely part of his Rule 26 Report, as were the underlying documents upon which his opinion was based. The engineering hierarchy and the need to be aware of the hazards for analysis was also part of the *Daubert* hearing. (13:15-14:24; 17:10-20; 21:25-22:3 [Ex. K])

### VII.   THE JURY INSTRUCTIONS WERE PROPER

### A.   The Jury Was Properly Instructed on Negligent Recall, and Defendant Waived Any Objection to the Instructions

"For an objection to a jury instruction to be valid, the objection must be made 'on the record, stating distinctly the matter objected to and the grounds for the objection.'" Fed. R. Civ. P. 51(c)(1); *Medtronic, Inc. v. White* 526 F3d 487, 495 (9th Cir. 2008). Further, the objection must be sufficiently specific to "bring into focus the precise nature of the alleged error." *Jones Truck Lines, Inc. v. Full Service Leasing Corp.* 83 F3d 253, 256–257 (8th Cir. 1996); *Merrick v. Paul Revere Life Ins. Co.* 500 F3d 1007, 1015 (9th Cir. 2007).  "Whether there is sufficient evidence to support an instruction is reviewed for abuse of discretion." (citations omitted) *Gantt v. City of Los Angeles*, 717 F.3d 702, 707 (9th Cir. 2013).

This court did not abuse its discretion and was very familiar with the facts of this case,

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

such that by the time of trial, it correctly ruled the Negligence Recall-Retrofit instruction was appropriate. Even back on December 10, 2014, the Court was aware and ruled "Genuine disputed issues regarding the adequacy of the Heater's warnings preclude partial summary judgment on Plaintiffs' failure-to-warn theory. These issues include, among others, whether the warnings were inadequate because they failed to advise the user that the Heater should never be left on while sleeping. A bulletin published by the U.S. Consumer Products Safety Commission regarding portable electric heater fires Defendant Sunbeam was aware of the CPSC safety bulletin between 2008 and 2010 included safety warnings which, in addition to warning consumers to keep materials at least 3 feet away from heaters, also warned consumers "[n]ever leave the heater operating while unattended, or while you are sleeping." (Dkt. No. 218 Exh. D, Attach. G-3.)" (Dkt. 223; page 8:19-9:4).

## 1. Sufficient Facts Were Developed for the Instruction, and Defendant Has Failed to Demonstrate Prejudice

The subject heater was designed around 1999. (Vernaglia Depo 20:24-25:2 [Ex. L]; 90:18-20 [Ex. J]). The subject heater was manufactured by Sunbeam on October 10, 2006. (Dkt. 237-1; page 3:7-8, ¶ 20.) These facts were read to the jury by Plaintiffs' counsel and were stipulated to Defendant's counsel on the record. (4:5-14 [Ex. A]).

Plaintiffs offered evidence that Sunbeam became aware that the heater was defective (the CPSC 2004 warning "Never sleep with the space heater on") after its sale. Thus, all that was required of Plaintiffs was to offer evidence that Sunbeam became aware of the defect after October 10, 2006 which Plaintiffs did, when Defendant's own "Senior Director of Product Safety Engineer," Mr. Prins, admitted that after Sunbeam acquired Holmes in 2006 is when he became aware that if combustible materials are put it right up against the heater at the bottom of the heater, the automatic safety shutoff may not work. (29:13-31:1 [Ex. E]).

Sunbeam performed "audits" of over a hundred of their new products they had purchased when Sunbeam merged with Holmes in 2006, yet neither Sunbeam nor Mr. Prins documented their "audit" of the subject heater, nor was an actual engineering firm hired to analyze their new products acquired to do a hazard analysis or look for ways to make them

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

safer. [*Id.* 65:9-68:13]

A Defendant may be liable for negligent failure to warn of a risk that was subsequently discovered. *Rosa v. Taser Int'l, Inc.,* 684 F3d, 941, 949 (2012); *Oxford v. Foster Wheeler LLC*, 177 CA4th 700, 719 (2009); *Hernandez v. Badger Const. Equip. Co.* 28 CA4th 1791, 1827-1828 (1994).

Mr. Prins admitted that *sometime after his 2006 analysis* he became aware of the 2004 CPSC warning, and he never even raised the issue that maybe Sunbeam should warn their users 'never leave a space heater on when you go to sleep.' (70:25-72:13 [Ex. E]).

Prins also confirmed that Sunbeam (after purchasing Holmes) began to sell a new heater with an additional safety protection, the HQH 369 with the Safety Max Feature which had beams placed in front of the heater to detect objects that touch the face of the heater (or interfered with the beams) so that it would shut down the unit. (41:11-41:17 [Ex. E]).

Thus, it was reasonable for the jury to find that after Sunbeam and sold the subject heater, Defendant had come up with a solution for the problem (the defective auto safety shut off switch) but discarded it - *not because it didn't work*, but because it wasn't PROFITABLE and "It didn't sell"). (125:16 - 125:23 [Ex. E]). Lastly, the copyright date 2007 and print date of the HQH 369 is May 16, 2007, which is long after the sale of the subject heater. (Trial Exhibit 103 page 1 [Ex. M]).  Thus, Plaintiffs did offer additional post-sale evidence that a reasonable jury could conclude (and this jury did) that the Defendant was negligent for failing to recall the subject heater after it was sold.

*Veronese v. Lucasfilm Ltd.*, 212 Cal. App. 4th 1, 25 (2012), cited by Defendant, does not stand for the proposition that an instruction may not be given if the issue which is the subject of the instruction had not been raised before trial.  It merely states that an instruction may not be given if the issues it deals with are not developed during trial.  Plaintiffs demonstrated that Defendant knew that the consumer would think that the heater would turn off in an overheat situation, that Defendant later became aware that it would in fact not turn off in all situations, that Defendant later became aware that it was dangerous to sleep with

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

1  the heater on, and yet Defendant failed to recall the heater.  Facts dealing with the issue of

2  recall were sufficiently developed during trial to warrant the instruction.

3  Additionally, the parties reserved the right to ask that certain instructions be removed

4  if evidence relating to the instruction was not ultimately introduced. (Dkt. 230; page 2 fn

5  1). Sunbeam had the opportunity to timely argue (it did not) that Plaintiffs failed to

6  introduce enough evidence related to the negligent recall instruction and/or claims and ask

7  that the instruction be removed after the close of the evidence. Sunbeam did not; and has

8  waived thus argument.

9  Defendant does not provide any factual basis for its conclusion that it was denied an

10  opportunity to defend on this issue.  Whether a recall was done or not done is simply a

11  matter of fact.  No amount of preparation would change the fact that its employees knew

12  that there were dangerous elements to its product, and a recall was not implemented.

13  As to Defendant's claim of the jury's "outrage" against Sunbeam and the jury having

14  "inflamed passions," Plaintiffs point to the fact that the jury found Mr. Shinedling partially

15  responsible.  That is not the act of an inflamed and outraged jury.

16      **2.**      **Defendant Stipulated to Negligent Recall Not Being on the Verdict**

17              **Form**

18  It is pretty outrageous that Defendant would argue that Plaintiffs waived the negligent

19  failure to recall claim when it was Defendant that stipulated on the record that the negligent

20  failure to recall claims would be subsumed in the other negligence causes of action.  In other

21  words, the parties agreed that at Plaintiffs could argue negligent failure to recall, and if the

22  jury found negligence, then Plaintiffs would prevail on that claim. (140:20-141:5 [Ex. C]).

23  Defendant cannot be heard to complain that the claim was not reflected on the verdict form.

24  **B.**      **The Jury Was Properly Instructed on Life Expectancies**

25  The jury was properly instructed on Decedent's or Plaintiffs' life expectancies. Several

26  factors are relevant to the value of the loss of a parent and wife, including life expectancy.

27  *Allen v. Toledo* 109 Cal.App.3d 415, 424 (1980).  In *Allen*, decedent mother made no

28  financial contributions to the family and the court found the use of life expectancy tables

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

*Plaintiffs' Opposition to Defendant's Motion for New Trial- Page 21*

1  proper. *Id.* That CACI 3921 essentially puts a cap on economic damages by the use of the

2  expectancy tables in no way speaks to its use for non-economic damages.

3      Sunbeam wrongly argues that the Shinedlings were required to offered life expectancy

4  evidence at trial, without any case law to support such a claim. It then argues that if Plaintiff

5  had done so, it would have put on contrary evidence. Defendant does not explain what

6  prevented it from putting on any evidence as to life expectancy, or asking for its own

7  instruction. Defendant named Dr. Stoops, believed to be a treating physician of decedent,

8  as a witness, but never called him. (Dkt. 232, 260). In *Newman v. Campell* 23 Cal.App.2d

9  639 (1937), defendant complained that there was conflicting evidence as to plaintiff's health

10  and that it was wrong for the expectancy table to have been admitted. The Court ruled that

11  had defendant wanted an instruction on the weight to be given the table, it could have asked

12  for it, but it was not error to allow the table. Defendant herein made no effort to counteract

13  the table, which was admissible and properly instructed upon. Plaintiffs did not prejudice

14  Sunbeam in any way.

15

16  **VIII.   DEFENDANT HAS WAIVED ANY ARGUMENT THAT THE VERDICT**

17  **IS INCONSISTENT**

18      Defendant waived any objections that there are inconsistencies in the jury's verdict by

19  failing to object before the jury was discharged. *Home Indem. Co. v. Lane Powell Moss &*

20  *Miller*, 43 F.3d 1322, 1331 (9th Cir. 1995).

21

22  **IX.   THE JURY'S VERDICT WAS NOT INCONSISTENT**

23      "When faced with a claim that verdicts are inconsistent, the court must search for a

24  reasonable way to read the verdicts as expressing a coherent view of the case, and must

25  exhaust this effort before it is free to disregard the jury's verdict and remand the case for a

26  new trial." *Toner v. Lederle Laboratories,* 828 F.2d 510, 512 (9th Cir.1987) (*citing Gallick*

27  *v. Baltimore & Ohio R. Co.,* 372 U.S. 108, 119, 83 S.Ct. 659, 666 (1963), *cert. denied,* 485

28  U.S. 942, 108 S.Ct. 1122 (1988). "The consistency of the jury verdicts must be considered

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

in light of the judge's instructions to the jury." *Id.* (*citing Gallick* 372 U.S. at 120–21).

"Negligence and strict products liability are separate and distinct bases for liability that do not automatically collapse into each other. . . ." *Conte v. Wyeth, Inc.,* 168 Cal.App.4th 89, 101 (2008). Cases have reconciled findings of negligence with findings that there was no strict liability. *Hasson v. Ford Motor Co.* 19 Cal.3d 530, 543–544 (1977); *Hernandez v. Badger Construction Equipment Co.* 28 Cal.App.4th 1791, 1828 (1994).

Further, *White v. Ford Motor Co.* 312 F.3d 998 (9th Cir. 2002), opinion amended on denial of reh'g (9th Cir. 2003) 335 F.3d 83, illustrates that a jury can find no causation on a design defect theory but find causation on a negligence theory.

In *White*, a jury was asked if a pickup truck that rolled over and killed a young boy was defective as to its brakes or if the Ford Motor Co. was negligent in its design as to the brakes or warnings. The jury found that the brakes were defective in design but that the defect did not cause the death of the young boy. The jury also found that the product was defective in its warnings, that the defective warnings were a proximate cause of the death. Separately, the jury found that Ford was negligent with respect to the product and such negligence was a cause of death. The Ninth Circuit upheld the denial of Ford's new trial motion on the grounds of an inconsistent verdict holding that:

> As we explained (citation). . ., a 'court has a duty under the seventh amendment to harmonize" a jury's "seemingly inconsistent answers" if a fair reading allows for it. . .[T]he jury verdict must be upheld unless it is impossible to harmonize the answers under a fair reading," though we will not save the general verdict if that would "require us to torture a fair reading." In an inconsistent verdict case, a court asks, not whether the verdict necessarily makes sense under any reading, but whether it can be read in light of the evidence to make sense.
>
> In this case, Ford's reading is plausible: the brakes were defective, but they didn't fail here, and the jury was punishing Ford for making defective brakes and selling them to the general public even though the defect didn't cause this accident. But that isn't the only plausible reading. After reading the record, we agree with the district court that, as the case was presented to the jury, there was an alternative plausible understanding that makes sense of the verdicts.

*Plaintiffs' Opposition to Defendant's Motion for New Trial- Page 23*

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

The jury reasonably could have thought that this particular parking brake was defective and did let go, allowing the truck to run over Walter White. But the jury could nevertheless have concluded that the brake design defect wasn't the "proximate" cause of the death. The brake had been designed years before the accident, with many intervening events. The judge instructed the jury that "[f]or proximate causation to be established, you must find that the injury or damage to plaintiffs was the natural and probable consequence of the defendant's negligence or wrongful act, and that the injury or damage was foreseeable in light of the attending circumstances." The jury could have reasoned that the accident wasn't the "natural and probable consequence" of the brake design defect, because the natural consequence of a manufacturer's discovering a dangerous design defect would be to warn the customers and recall the product for a fix, rather than to leave the dangerous trucks on the street and leave the drivers ignorant of the hazard. Mr. White testified that, had he known that the brake could let go despite being set, he wouldn't have parked the truck on a slope.

That is approximately how the district court, having heard all the evidence, reconciled the verdicts. On our review of the evidence and arguments, it makes sense of the verdicts to us. There is no irreconcilable conflict. *Id.*, at pp. 1005-06

Here, under California law, there are key differences between the negligence, consumer expectation and risk-benefit jury instructions. (Dkt. 293: 20, 21, 22). First, for the negligent design claim, the Plaintiffs were not required to prove that the heater contained a design defect that caused their damages. They only had to show that Defendant was negligent in designing the heater and that *Defendant's negligence* caused their damages. The jury could conclude that it was Defendant's failure to design the heater as a reasonably careful manufacturer that caused the fire rather than the actual design of the heater. For instance, for not designing a heater which met the consumer's expectation of safety.

Under the consumer expectation test, Plaintiff had to prove that the heater's *failure to perform safely* was a substantial factor in causing their harm. The jury was not asked to find, either by instruction or the verdict form, that the heater's design was a substantial factor in causing the harm under this test, as it was for the risk-benefit test.

That the jury found that the heater's failure to perform as safely as an ordinary consumer would expect was a substantial factor in causing Plaintiffs' harm is supported by

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD • SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

its finding on the failure to warn claims, as the jury found that the failure to warn was a substantial factor.  Failure to warn sisters with a consumer's expectation that the product would perform safely. In the absence of the manufacturer's disclosure of a risk known to it, but unknowable to the consumer, the consumer has the expectation that the product is safe.

Defendant's claim that a defect was not found is incorrect.  The questions regarding causation as to each defect claim were separate and distinct.  The jury found defect and causation under the consumer expectation test. The jury properly found causation under the negligence claims.

## X.   BYSTANDER AND DIRECT INFLICTION OF EMOTIONAL DISTRESS ARE SEPARATE INJURIES, THEREFORE THERE WAS NO DOUBLE RECOVERY

Emotional distress suffered by Plaintiffs due to the injury inflicted on decedent is an injury distinct from the emotional distress suffered by Plaintiffs as a result of they themselves having been involved in the fire.  Defendant's position is that Plaintiffs' injuries all stem from the same conduct and Plaintiffs may therefore only be compensated once. This is contrary to law.  For instance, if Plaintiffs had been physically injured in the fire, Defendant would not claim that they were not entitled to damages for bodily injury and emotional damages.  Yes, bystander and direct infliction of emotional distress both relate to emotional damages, but the injuries are different.  The distress one experiences knowing or fearing that a loved one is dying in a fire is completely different than the distress experienced when fearing that one is going to be injured in a fire, himself.  Both forms of distress can be experienced simultaneously - that does not make them the same.  An arm can be broken and gashed at the same time, but we would not say they are the same injury. They are not "duplicate" damages as alleged by Defendant. The fact that the injuries arise out of the same event is irrelevant.

Defendant cites to *Holliday v. Jones*, 215 Cal. App. 3d 102 (1989) for the proposition

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

that recovery for emotional distress damages under two distinct theories arising from the same conduct is impermissible double recovery. Plaintiff in *Holliday* was attempting to seek damages for the one emotional injury under two different theories - negligent and intentional infliction of emotional distress. However, Plaintiff had presented the same evidence under both theories, and the court found that he had been compensated for the emotional injury under a theory of negligent infliction. The distinction of how the distress was inflicted (negligently or intentionally) was of no matter; the injury had been compensated. Here, Plaintiffs stated two separate and distinct injuries, which the jury properly recognized and compensated accordingly. That the jury did not compensate the injuries equally demonstrates that the jury recognized the distinction between the injuries.

## XI. THE AWARDS WERE NOT EXCESSIVE AND DEFENDANT HAS NOT MET ITS BURDEN TO DEMONSTRATE THAT EITHER A NEW TRIAL OR REMITTITUR ARE WARRANTED

*Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 438-39 (1996) holds that a district court sitting in diversity must apply state law standards to remittitur motions. Courts should be reluctant to disturb jury verdicts, particularly where, as here, the damages are incapable of precise measurement. *Monongahela R. Co. v. Black*, 235 F.2d 406 (4th Cir. 1956); see also *McClesky v. Kemp*, 481 U.S. 279 (1987) (core jury function is to make "the difficult and uniquely human judgments that defy codification and that 'build discretion, equity and flexibility into a legal system.'"); *O'Neill v. Krzeminski*, 839 F.2d 9, 14 (2d Cir. 1988) (acknowledging importance of deferring to jury's assessment of damages); *Dunbrock v. Interstate Motor Freight Systems*, 143 F.2d 304, 308 (3d Cir. 1944) ("Courts in general are reluctant to disturb a jury's verdict on the ground of excessiveness where the damages are unliquidated and there is no fixed measure of mathematical certainty. . . . This is particularly significant with respect to damages in tort actions for personal injuries."); *Zarek v. Fredricks* 138 F.2d 689, 691 (3rd Cir. 1943) ("It must be borne in mind that the injuries were non-pecuniary in their nature and to measure them by a yardstick of dollars is a

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD • SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

1   difficult task at best. That is the jury's function.").

2   Over 50 years ago, the California Supreme Court in *Leming v. Oilfields Trucking Co.*

3   44 Cal. 2d 343  (1955) held:

> Defendants claim that the verdict, in the amount of $ 213,460.22, is excessive and appears to have been influenced by passion or prejudice. ..On appeal, without even attempting to summarize or discuss the evidence concerning the nature and extent of the injuries to plaintiff here, defendants argue that the verdict is excessive when compared with verdicts rendered in other cases in which other "severe" injuries were received. . . . . '[Damages] are not excessive as a matter of law because a lesser amount has been deemed adequate compensation for a similar injury.' (citation). *Id*, at 355.

9   Defendants have not met their difficult burden of showing the verdict is "so grossly

10  disproportionate as to raise a presumption that it is the result of passion or prejudice. . . . "

11  *Bertero v. National General Corp.,* 13 Cal. 3d 43, 64 (1974).  It is not even enough to show

12  the verdict is "grossly disproportionate." Rather, it must be "so grossly disproportionate" as

13  to "raise" a presumption of serious impropriety.  This is because the jury's power to assess

14  damages is so "vast." (*Id.*)  In short, it cannot be set aside unless "it shocks the conscience

15  and suggests passion, prejudice or corruption. . . ." *Seffert v. Los Angeles Transit Lines* 56

16  Cal.2d 498, 507 (1961).

17  Although a court reviewing an award of non-economic damages "may consider

18  amounts awarded in similar cases [citations], in the final analysis the question in each case

19  must be determined from its own peculiar facts and circumstances [citation] and it cannot

20  be held as a matter of law that a verdict is excessive simply because the amount may be

21  larger than is ordinarily allowed in such cases." *Daggett v. Atchison, T. & S. F. Ry. Co.* 48

22  Cal.2d 655, 666 (1957); see also *Bertero*, supra, 13 Cal.3d 43, 65, fn. 12..

23  Wrongful death claimants are entitled to damages for the loss of "love, comfort,

24  companionship, society, affection, solace or moral support." *Krouse v. Graham* 19 Cal. 3d

25  59, 67-69 (1977); *Rufo v. Simpson*, 86 Cal. App. 4th 573, 614-616 (2001) (pecuniary value

26  of these "intangible losses" lies within jury's discretion). A court may not set aside the jury's

27  verdict merely because the judge does not agree with the amount of damages. *Phillips v.*

28  *Lyon* 109 Cal. App. 264, 268 (1930). "The fact that an award may set a precedent by its size

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

---

*Plaintiffs' Opposition to Defendant's Motion for New Trial- Page 27*

1    does not  in and of itself render it suspect. The determination of the jury can only be
2    assessed by examination of the particular circumstances involved." *Rodriguez v. McDonnell*
3    *Douglas Corp*. 87 Cal. App. 3d 626 (1979).

4        Defendant addresses what a court should do after it has determined that a damage award
5    is excessive, but does not meet its burden to show that the subject award was excessive, or
6    that its size demonstrates a considerable punitive purpose.

7

8    **XII.      DAMAGES WERE APPROPRIATE**

9        Notably, Defendant does not cite to any evidence to controvert the close relationship
10   that the parties shared with decedent.  The sole basis of their argument is that the award
11   must have been punitive in nature; the award is greater that some arbitrary awards that have
12   been awarded in the past; and the awards for future emotional distress are not commensurate
13   with the awards for wrongful death.

14       Defendant has failed to demonstrate that the awards were punitive in nature.
15   Specifically, Defendant has failed to produce any evidence, such as declarations from jurors,
16   that their intent was to punish.  Defendant's only argument is that the awards were large, and
17   therefor must have been punitive.  This argument must fail for its lack of evidence and
18   authority.  Defendant cites only one case, *Asam v. Ortiz*, No. PC051705, 2014 WL 585350
19   (Cal. Super. Ct. Feb. 3, 2014). This is a Superior Court of California case, and is hardly
20   binding.  Nonetheless, Plaintiffs address it.  In that case, decedent exited off the freeway at
21   40-50 mph and ran into a truck which was parked 13ft. off the freeway.  Decedent's vehicle
22   caught fire, killing him, his wife, and one son.  Two children, plaintiffs, were able to escape.
23   The evidence clearly established that decedent was negligent and that his negligence was
24   a substantial factor in causing the accident.  The jury awarded $120.75 million in wrongful
25   death damages and $30 million in emotional distress damages (more than counsel
26   requested), and found decedent's negligence was not a substantial cause of the accident. The
27   court noted that the fact that the award "far outstrips other awards upheld in the State is not
28   itself dispositive." *Id.* at 9.  However, the court noted that plaintiffs' counsel encouraged

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
1 5 O 3 VENTURA BOULEVARD · SUITE 1 O O O
SHERMAN OAKS, CALIFORNIA 1 4 O 3
PHONE (3 2 3) 6 5 8 - 8 O 7 7 · FAX (3 2 3) 6 5 8 - 8 4 7 7

*Plaintiffs' Opposition to Defendant's Motion for New Trial- Page 28*

1   jurors to include a punitive element in their award, by making "arguments that suggested

2   defendants acted with malice or callousness, even suggesting that defendants "killed three

3   people" and that the jury should punish them."

4          None of that occurred here.  Plaintiffs were not awarded more than was requested; they

5   were awarded less. Counsel asked for $4 million in past damages for wrongful death for Mr.

6   Shinedling, and the jury awarded $300,000. He asked for $11,220,000 for future wrongful

7   death damages and the jury awarded $2,775,000. (91:19-25 [Ex. N]).  For the girls, counsel

8   asked for $4 million past and $12,000,000 future.  (94:23-95:1 [Ex. N]).  The jury awarded

9   $300,000 past and $3,225,000 for future.  For all parties, counsel asked for: past direct

10  emotional damages ($1 million); future direct ($2 million); past bystander ($2 million);

11  future bystander ($10 million). (*Id.* 95:25-96:12).  The jury awarded for Mr. Shindeling past

12  direct ($80,000); future direct ($740,000); past bystander ($600,000) and future bystander

13  ($5,500,000). For Addison past direct ($80,000); future direct ($1,340,000); past bystander

14  ($600,000) and future bystander ($10,050,000).  For Alexia past direct ($80,000); future

15  direct ($1,400,000); past bystander ($600,000) and future bystander ($10,500,000). And for

16  Ava past direct ($80,000); future direct ($1,340,000); past bystander ($600,000) and future

17  bystander ($10,050,000).  These awards are substantially less than was requested, and

18  cannot be compared to the $120.75 million in wrongful death damages and $30 million in

19  emotional distress given in *Asam*, which was more than counsel asked for.

20         The jury was instructed "You must not include in your award any damages to punish

21  or make an example of Sunbeam Products, Inc. Such damages would be punitive damages,

22  and they cannot be part of your verdict."  (42:7-10 [Ex. N]).  There is a strong presumption

23  that the jury followed the jury instructions properly. *United States v. Casamento* 887 F.2d

24  1141, 1151 (2d Cir.1989); *Bingham v. Zolt* 823 F. Supp. 1126, 1131 (S.D.N.Y. 1993). The

25  fact that the jury found Mr. Shinedling 20% at fault suggests that the verdict was not based

26  on prejudice, passion, or a desire to punish.  Certainly if any of these motives were present

27  the jury would have found Sunbeam 100% liable.

28         The differential between the awards for wrongful death, future direct and future

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

1   bystander emotional distress damages makes sense. First, the duration that the girls will be

2   without their mother is significantly less than the duration they will be dealing with

3   emotional issues stemming from their loss, due to the fact that their lifetimes are going to

4   be longer than the time their mother was expected to live - 43 years v. 70-plus.  Second,

5   their direct injury emotional damages related to their time spent escaping from the fire and

6   their risk of being injured in the fire, which was for a relatively short period of time when

7   compared to the amount of time that they had to wait to see if their mother was going to

8   make it out of the fire. While it is surely devastating to be in a house that it is on fire and

9   have to run to escape, it is presumably much more devastating to be on the outside of house,

10  knowing that your mother or wife is in the house and a fire is raging. Even more so when

11  the fire is out and you realize that your mother or wife is gone.

12      With respect to the daughter's direct emotional distress damages as being valid,

13  Plaintiffs incorporate their argument re same as stated in the Opposition to Motion for

14  Judgment as a Matter of Law, herein as though fully set forth.

15      As to Defendant's comparison of wrongful death damages in other cases, as explained

16  above, this is not the test.  Defendant must show that the verdict was "so grossly

17  disproportionate" as to "raise" a presumption of serious impropriety." *Bertero*, at 64.

18  Defendant has failed to do this, and there are certainly cases not cited by Defendant in

19  which the wrongful death damages were much higher than in this matter: *Medina v. City

20  of Fontana* [$15,000,000 for death of daughter (Superior Court for the County of San

21  Bernardino, Case No. SCVSS 094904); *Bankhead Meiers v. Arvinmeritor Inc.*, et al. 2014

22  WL 1622825 [$11,000,000 wrongful death damages, $6,000,000 to wife and $5,000,000

23  to two daughters]; *Santos v. Scott Villa Apartments* 2008 WL 786786 [$12,000,000

24  wrongful death of 30 year old daughter]; *Calderon v. Robert Knieling and Bear Trucking

25  Inc.* 2007 WL 4163766 [$7,000,000 non-economic damages for wife, married only 11

26  months]; *Rastello v. City of Torrance, et al.* 1989 WL 1178506 [$5,000,000 emotional

27  distress, $395,000 wrongful death of 18 year old].

28      Defendant has failed to demonstrate that the verdict was a result of passion, prejudice,

---

*Plaintiffs' Opposition to Defendant's Motion for New Trial- Page 30*

1   or a desire to punish and its motion should be denied.

2

3   **XIII.**      **CONCLUSION**

4        For the reasons stated herein, Defendant's motion should be **denied.**

5

6   DATED:   September 14, 2015             THE HOMAMPOUR LAW FIRM,
                                            A Professional Law Corporation
7

8                                    By: _____
                                            Arash Homampour,
9                                            Wendi O. Wagner,
                                            Corey Arzoumanian,
10                                           Attorneys for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

*Plaintiffs' Opposition to Defendant's Motion for New Trial- Page 31*